2 Berkery Place
Alpine, NJ
07620-0398

**CHARLES V. WETLI, MD** ===============================
*FORENSIC PATHOLOGIST*                    201-750-8220
                                   *CharlesVWetli@gmail.com*

2 May 2016

Mr. Todd Doss, Esq.
Assistant Federal Defender
Orlando Division
Seaside Plaza, Suite 300
201 South Orange Avenue
Orlando, FL 32801-3406

Re:  U.S. v. Troya

Dear Mr. Doss:

Regarding the deaths of the Escobedo family (Jose, Yessica, Luis Julian and Luis Damian), the following items were reviewed:

> Autopsy Reports, including diagrams and toxicology reports
> Scene and Autopsy Photographs
> Indian River Crime Laboratory Reports
> CVs of Drs. Diggs and Mittleman
> Trial Testimony of Dr. Mittleman

Very briefly, all four members of the Escobedo family were found dead in a grassy area off the Florida Turnpike. At the scene, and subsequently at the autopsies, all were found to have died from gunshot wounds.  At issue is the adequacy of the scene and autopsy findings as to allow other Forensic Pathologists to evaluate and interpret the injuries and pathways of the projectiles.

Altogether there were 22 scene photographs. Some depicted all victims as they were found and others depicted each individual victim.  All were clothed and not all gunshot wounds were photographed at the scene. Therefore all that could be ascertained from the scene documentation is that all died of gunshot wounds but no determination could be made about projectile pathways and, except for gunshot wounds to the head, what organs were damaged. Because of blood on the face near the gunshot wound to the head of Jose

Escobedo, gunpowder stippling could not be evaluated. Postmortem gunpowder stippling was evident on the face of Luis Damian Escobedo as seen in photographs taken at the scene as well as the autopsy.

The standard procedure for gunshot wound documentation is to create a system of redundancy to preserve observations and allow subsequent evaluation by others at any time in the future.  This is accomplished by the use of diagrams, the creation of an autopsy report, and photographs.

The diagrams created for all four victims were adequate for delineating the locations of the entry gunshot wounds and, to a limited extent, the location of the projectiles recovered and exit gunshot wounds. However, not all injuries were depicted on the diagrams (see especially the diagrams for Luis Damian where gunpowder stippling is not recorded and Luis Julian where multiple leg injuries are not depicted).

The autopsy reports of all four victims failed to adequately describe projectile pathways and what organs were actually damaged. For example, for Jose Escobedo, it was noted that there was a liter of blood in his abdominal cavity yet there is no mentions as to where this blood came from. Consequently in subsequent trial testimony Dr. Mittleman opined this came from injuries to abdominal fat and mesentery. This is purely speculative based on the information available. The importance is that this information may be relevant to establishing a likely sequence of events: a gunshot wound to the abdomen injuring only fat and mesentery would bleed very slowly whereas if a major blood vessel were injured (e.g. aorta of vena cava) the bleeding would be quite rapid. Likewise the documentation of the gunshot wounds to Luis Julian is highly confusing: the autopsy report documents four gunshot wounds and does not address injuries to one of the legs and, in trial testimony, Dr. Mittleman stated there were six gunshot wounds.

The standard practice for photographic documentation of gunshot wounds is to depict the injury so as to indicate the location on the body and then a closer view to delineate the features of the injury. This was certainly not done in these victims. Generally, there are depictions as to where on the body there were injuries, but most gunshot wounds were not adequately depicted with closer photographs. This was evident in trial testimony of Dr. Mittleman who indicated he could not explain with the photographs as to which was the entry and exit wounds of the perforating gunshot wound of the leg of Jose Escobedo. Likewise, a perforating gunshot wound of Yessica Escobedo (gunshot wound #7) was noted in the protocol to enter the right side of the abdomen anteriorly and exit the back. There was no description of either entry or exit wounds, and it was opined that the injury of the back was a shored or supported exit wound. The problem is that shored or supported exit wounds mimic entry gunshot wounds, and the photographic documentation is inadequate to assess the projectile pathway and, again, there is no description of the wounds or wound track in the autopsy report. Furthermore, it was apparently opined that the entry gunshot wound to the right thigh of Luis Julian was a re-entry wound related to the supported exit wound on the back of the mother, indicating that the thigh of Luis Julian was pressed against his mother when that shot was fired.

However, the scene photographs depict the left thigh was in contact with the mother, not the right. Hence, this conjecture is purely speculative and probably erroneous.

Specific note should be made of the autopsy report and trial testimony concerning Luis Damian Escobedo(a three year old child) who sustained a fatal perforating gunshot wound to his chest.  The entry wound was on the left upper shoulder, slightly posteriorly, and went through both lungs and the heart before exiting the body "at the right armpit".  The lungs were described as hemorrhagic and the heart as having been perforated by the projectile. At trial, the Medical Examiner testified that Luis Damian Escobedo "drowned in his own blood".  However, this does not consider the kinetic energy effect of gunshot projectiles. Because of their mass and velocity, gunshot projectiles impart damage to tissues and organs far removed from the actual projectile pathway, as described in the equation:

Kinetic Energy = mass of the projectile x velocity (of the projectile) squared.  Hence, the damage imparted to the lungs extends far beyond the actual projectile pathway. The damage to the heart is likewise extensive and, since the heart is a hollow organ filled with blood, the effect would be to burst the heart and result in an immediate loss of blood pressure and loss of consciousness, with death occurring moments later. Even though death is nearly immediate, vegetative functions (such as breathing and heart beat) continue for a short period of time. As a result, blood and tissue may be aspirated into the lungs. However, this does not indicate the mechanism of death was "drowning in blood". Also, it is to be noted that the organs of a three year old child are quite small, and the effects of a medium or large caliber bullet are therefore all the more devastating.

The autopsy report specifically notes that there is no gunpowder stippling related to the entry wound at the top of the left shoulder.  Examination of the autopsy photographs, however, reveals a widely dispersed pattern of gunpowder stippling over the left cheek and ear. This stippling is black, not erythemic (red) as is usually seen. This would indicate that this stippling occurred after death (i.e. there is no vital reaction to the embedded gunpowder particles).  Scene photographs depict Luis Damian was not wearing a shirt, and there is no stippling at the top, side, or back of the shoulder. These features indicate that the gunpowder stippling depicted on the left cheek and ear are not related to the gunshot wound to the left shoulder, that the stippling took place after death, and is unrelated to any gunshot injury to this child.

From the materials examined, it is therefore my opinion to a degree of reasonable medical certainty that Luis Damian Escobedo died from a gunshot wound to his chest resulting in a near-immediate death because of the projectile damage to his vital organs (heart and lungs), and that his mechanism of death was from destruction of these vital organs and not from "drowning in his own blood".  Furthermore, the sparse gunshot stippling on his left cheek and ear occurred after death and is unrelated to any gunshot injury sustained by this child.

It is therefore my opinion that the overall documentation of the gunshot wounds to all four victims of the Escobedo family is woefully inadequate and insufficient for any outside evaluation. Consequently, any testimony as to projectile pathways or organ

damage (except for head injuries) is not possible to a degree of reasonable medical or scientific certainty, or even probability.

Please note that I would have been available to testify at trial for this cause between January and March 2009.

Yours Truly,

Charles V. Wetli, MD