**Declaration of Jeff M. Fischbach**

**Pursuant to 28 U.S.C. §1746**

I, Jeff M. Fischbach, declare as follows:

1.     I am the founder and president of SecondWave Informations Systems, an information technology consulting firm. I am a board certified forensic examiner specializing in information, communication, stored data and electronic technologies.

2.     For the last twenty years, I have worked as an expert in the field of digitally-recorded evidence, consulting and testifying in numerous cases in federal and state court, including in California, Oregon, Utah, Alaska, Colorado, Michigan, Texas, Minnesota and Wisconsin. In addition, I have been hired by courts to act independently in the capacity and/or under the supervision of a special master. I also have given numerous lectures on cellular records and forensic analysis to attorneys, law enforcement and judges. A copy of my *curriculum vitae* is attached to this declaration.

3.     In January 2008, I was retained by counsel for Ricardo Sanchez to provide expert assistance in the area of cellular forensics. Although counsel provided me with all of the cellular records produced in discovery, I was asked to focus my attention on determining the location of a 911 call that counsel believed was placed by one of the victims. I was not asked to conduct a more general review and analysis of the cellular tower data that the government provided in discovery and intended to present at trial until close to the time of trial. By that time, I was operating under time constraints, and it was my understanding that I would not testify at trial.

Initials: _____     Date: 5-2-2016

Counsel contacted me during the proceedings and asked that I review trial testimony presented by the government and provide an expert declaration. In the declaration I provided to counsel on February 22, 2009, I expressed only general opinions based on my experience in cellular forensics.

4.  I have been contacted by current counsel for Ricardo Sanchez and Daniel Troya, who have asked me to analyze the cellular records provided in pretrial discovery and to review the testimony at trial. The opinions below are expressed to a reasonable degree of professional certainty.

5.  In the most basic form, a cellular phone is essentially a two-way radio, consisting of a radio transmitter and a radio receiver. When a call is placed, the phone converts voice data into an electrical signal. It is then transmitted via radio waves to a switch center, which routes the signal to the nearest cellular tower in its line of sight with the best signal strength or quality. If the cellular tower is overloaded, offline, or the signal is obstructed, the signal will connect to the next best tower in its sightline. The cellular tower then relays the radio wave to the recipient cellular phone, which converts the wave to an electrical signal and then back to sound again.

6.  Once a phone call is terminated, the only location information that may be available is the location of the cellular tower that processed the call. Call Detail Records (CDRs) are historical records that can provide information detailing dialed and incoming numbers, call completion status, and contact frequency among numbers. They also contain cell site and switch center information which can be used to extrapolate the location of stationary cellular towers. This data is intended to allow technicians to diagnose dropped calls and other network problems; it is not designed or intended for the purpose of locating subscribers – historically or in real-time.

Initials: _____       Date: _5-2-16____

7.    In contrast, GPS is a form of real-time "triangulation" that measures the relative distances between at least two fixed points and one unknown point, in order to calculate the location of the unknown movable object. Triangulation cannot be performed *ex post facto*. As a recent advance and in response to Federal Communications Commission (FCC) mandates, tower locations can be used in a similar fashion to GPS – but only in real-time. This requires the simultaneous use of multiple towers to triangulate a cellular device. Such use is now routinely triggered by dialing "911" on a mobile handset, which can generate a record of both the call and triangulation results.

8.    In this case, the testimony at trial suggested that the cellular tower data could narrow the origination point of a call to a specific area one and a half to two miles from the location of the cellular tower that processed the call. Based on my examination of the records, the discovery produced at trial was patently insufficient to substantiate the whereabouts of an individual handset on a given date and time with such accuracy or precision. The records are only sufficient to determine the location and engineered capabilities of the particular cellular tower that provided cellular service.

9.    The various factors that affect cellular tower range and coverage area – such as geography, cell site design and engineering, network integrity, obstructions, density, and congestion – are not predictable or constant. Though a tower may have been engineered to provide a certain range of coverage, there is no guarantee that the entire coverage area will receive the same quality of service or any service at all.

10.    Each major cellular network provider maintains standard business records that could substantiate the approximate range and operating conditions of their cellular towers, including records that describe the towers' operational behavior, engineered capabilities, tuning

Initials: ____    Date: 5-2-16

and alignment, maintenance, and service history. Such records, which do not appear to have been provided in this case, dictate the actual range of service and would provide a more accurate estimation of an individual's location within the provider network.

11.     I also reviewed the toll records, CDRs, and subscriber information for (956) 266-2004. The number was assigned to Yessica Escobedo by T-Mobile in May 2006. The toll records state that the handset was in the McAllen, Texas when it placed three outgoing calls to (956) 742-9994 at 11:58 PM on October 12, 2006, 12:00 AM on October 13, 2006, and 3:18 AM on October 13, 2006. The CDRs, which provide the cell site and switch data needed to identify the specific cellular towers responsible for providing cellular service, are incomplete for these calls.

12.     The toll records, CDRs, and subscriber information provided by T-Mobile for (786) 853-8416, which the government alleged was used by Ricardo Sanchez, are similarly incomplete. There are calls in early October where the toll records show that the service area is Rio Grande, Texas or Houston, Texas. The CDRs provided by T-Mobile only cover October 12-14, 2006. As a result, the specific towers that processed those calls cannot be identified.

13.     Because these records are incomplete, it is not possible to definitively determine whether the (956) 266-2004 handset traveled to Texas at some point on October 12, 2006. In order to perform a more comprehensive forensic evaluation, I would need to review system information, cell site, and switch data for relevant T-Mobile cellular towers in Florida and Texas during October 2006. Because network providers continuously update their cell site and switch center data, the data provided from 2007 and 2008 is not historically accurate. Historically accurate data is particularly important in this case because T-Mobile acquired wireless spectrum from the FCC in September 2006 and was in the process of upgrading its equipment and network capabilities during this time. I also would need to review the CDRs for (786) 853-8416 and (956)

Initials: _____     Date: 5-2-16

266-2004 for the entire month of October 2006. As noted above, the CDRs for (786) 583-8416 only covered two days, and the CDRs produced by T-Mobile for (956) 266-2004 were generated by a third party subsidiary – Fraudbusters.

14.     Had trial counsel provided adequate notice of these issues then, I would have testified to the same information provided in this declaration.


**I declare under penalty of perjury and pursuant to 28 U.S.C. §1746 that the forgoing is true and correct.**


Signed on _May 2, 2016_

Name _Jeff M. Cashbard_ _____

Initials: _JC_                                                                                  Date: _5-2-16_