IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL DISTRICT IN AND FOR
BREVARD COUNTY, FLORIDA

DANIEL A. TROYA,

        Petitioner,

vs.

                             Case #03-19063-CFC

STATE OF FLORIDA,

        Respondent.

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO RULE 3.850;Fla.R.Crim.P.
## TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Petitioner, Daniel Anothony Troya, hereafter ("Troya"), acting pro se, and pursuant to Rule 3.850;Florida Rules of Criminal Procedures, and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the applicable provisions under the Florida Rules of Criminal Procedures request this Court to vacate his conviction in setting aside his plea of guilty which such conviction is premised on, whereas his petition seeking post conviction relief delineates and enunciates claims, facts and evidence relied upon entitling Troya to such requested habeas corpus relief. Troya incorporates a memorandum of law and arguments in support of such requested relief.

### Synopis Of Troya's Claims For Habeas Relief

Troya will demonstrate with perspicuity that he is "legally innocent" of the charge of escape which the court found him guilty of via Troya's entering a plea of guilty to such charge. He will demonstrate that the evidence was insufficient as a matter of law to support a conviction for escape under the statutory and legal definition for escape, whereas he was charged with "attempted escape" through indictment/charging affidavit and yet found guilty and sentenced for escape by the court. Further Troya will show that the court under well established law

Case # 05-2003-CF-019063-CXXX-XX
Document Page # 56

*22424466*

1.

DivE
cm
Troya070645

could not of construed attempted escape within the context of the escape statutory charging provisions because, counter-intuitively attempted escape is not a lesser included offense of escape; the former contains a specific intent element not present in the latter. Secondly, Troya will demonstrate that the Court unlawfully entered in-to the plea negoitations coercing him to pleading guilty a sencond time after the original plea and conviction was vacated. Troya will also show that his counsel provided fundamental ineffectiveness in three critical areas; 1) counsel adamantly advised Troya that the repeated assults and ongoing intimidation that he was suffering at the ~~county jail~~ STATE prison. was not a cognizable defense for his attempted escape charge; and 2) counsel flagrantly advised Troya telling him that pleading guilty to escape was the same as pleading guilty to attempted escape because both charges were the same under law. This was clearly not true because specific intent elements distinguish the two under governing law; and 3) counsel erroneously told Troya that in exchange for his plea of guilty that the sentence for escape would be ran concurrent with his other sentences being served, whereas ultimately it was ran consecutive.

### JURISDICTION

This Court has jurisdiction to adjudicate Troya's habeas claims presented herein, and to grant his request for relief that he is entitled to under governing law pursuant to Rule 3.850;Fla.R.Crim.P. This is Troya's first legally facially sufficient 3.850 motion challenging the legality of his escape conviction. The legal principles governing when a trial court may properly deny a motion for post-conviction relief without an evidentiary hearing is found under Florida Rules of Criminal Procedure 3.850(d), which permits summary denial only if the "motion, files and records in the case conclusively show that the movant is entitled to no relief." Id. Further, the rule requires that "when the denial is not predicated on the legal insufficiency of the motion on its face an evidentiary hearing is

2.

Troya070646

required under law. Id. In the case sub judice Troya's pleading demonstrates with perspicuity that the sentence handed down by the court was contrary to law and thereby illegally imposed, and as well that he was coerced into pleading guilty to a crime that he was legally not guilty of by the court actually entered into the plea negotiation and as well as counsel's dire ineffectiveness. Thereby' Troya has established the Court's jurisdiction anent Rule 3.850 and set forth sufficient facts and evidence to warrant the collateral relief sought and/or for further evidence and testimony to be presented via an evidentiary hearing ordered by the court.

Expiration Of Troya's Sentence Does Not Moot The Collateral Relief Sought

The expiration of Troya's sentence in this case, does not moot the collateral relief sought, because this conviction continues to have serious collateral consequences. The government heavily relied on this conviction as a aggravating factor in both justifying to the jury that Troya posed a future dangerness and for imposing a death sentence over life imprisonment. See United States v. Troya, #06-80171-CR-DTKH (S.D.Fla.). It is well established law that as long as collateral consequenes of significant magnitude continue to exist after the expiration of an individuals' sentence for a criminal act they are authorized under law to challenge the validity of the conviction itself. See Rawlins v. Kansas, 714 F.3d 1189 (10th Cir.1013); see also Carafas v. La Vallee, 391 U.S. 234, 237-38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Hamdan v. United States, 696 F.3d 1238, 1244-45 (D.C.Cir.2012); United States v. Maddox, 48 F.3d 555, 560 (D.C.Cir.1995); quoting United States v. Caso, ____ F.3d ___, 2013 WL 3762901 (C.A.D.C. July 19th, 2013).

TROYA'S CLAIMS FOR RELIEF; AND ARGUMENTS AND AUTHORITY
SUPPORTING HIS CLAIMS FOR RELIEF

TROYA'S FIRST CLAIM FOR RELIEF

3.

Troya070647

<u>There Is Insufficient Evidence As A Matter Of Law To Support Troya's
Conviction For Escape, Thereby He Is "Legally Innocent" Of Such
Charge And The Coviction Must Be Set Aside.</u>

Statement Of Facts:

1.      On July 29th, 2004 Troya was sentenced to a period of 19.65 Months
for the offense of escape. <u>See Transcript of Pleas and Sentence/July 29th, 2004
p. 5, 1. 10; see also Document Of Adjudication/Count One "Escape"/Marked and
Attached Hereto As Appendix (A).</u>

2.      Through Information, i.e. Charging Affidavit filed the 4th of
February, 2003 Troya was charged with "attempted escape" for an incident that
occurred at the Brevard County Correctional Facility on November 26th, 2002.
<u>See Charging Affidavit/Information attached hereto and marked as Appendix (B).</u>

3.      Under the established plea agreement Troya agreed to plead guilty
to one (1) count of "attempted escape" in exchange for a sentence of 19.65 months
to be ran currently with any other active sentence being served. <u>See Plea Agree-
ment/Marked and attached hereto as Appendix (C).</u>

4.      The court accepted the established plea agreement sentencing Troya
to 19.65 months to be ran with any other active sentence being served, but did
so adjudicating Troya for escape, not attempted escape. <u>See Transcript of Plea
and Sentence/id. p. 11, 1. 2 thr 12.</u>

5.      On the 3rd of December, 2004 via correspondence from the Florida
Department of Corrections, Natasha Carter informed the court that it sentencing
Troya to have his conviction for escape ran current with any other active sent-
ence being served contravened Florida's Statutes pursuant to 944.40 which mandated
such sentence be ran consecutively to any other sentence of imprisonment imposed.
<u>See Correspondence attached hereto and marked as Appendix (D).</u>

4.

Troya070648

6.      The resentencing of Troya on the escape charge occurred on the 28th day of January, 2005. Id. The court finding sufficient evidence accepted Troya's earlier plead of guilty to escape and sentenced him to 19.65 months to be ran consecutively to any other sentence actively being served. Id. p. 16, l. 1 thr 10.

### There was insufficient evidence as a matter of law to support Troya's conviction for escape and that conviction must be set aside

Troya claims that he is actually and legally innocent of the charge of escape that the court convicted him of, whereas the court was only authorized under law to adjudicate Troya on the charge of attempted escape which was the sole charge enunciated through the charging document. See App.(B). The court convicted and sentenced Troya for "escape". See App.(A). This fundamental error that is seen with perspicuity on the face of the record clearly demonstrates that the court was without statutory authority to convict and sentence Troya for a charge not presented through the official charging document. See App.(B). Troya was charged via the charging "Information/Affidavit" with attempted escape which does not share a conterminous statutory boundaries with the charge of escape, even though the statutory elements between the two are contigious. Thereby, Troya is entitled to post-conviction relief for pleading guilty to the wrong offense which the court was not authorized under law to convict him of. See Hodges v. States, 107 So.3d. 538, 540 (Fla.2d DCA 2013); quoting Lacy v. State, 114 So.3d 452, 454 (Fla.4th DCA 2013). The Lacey court readily clarified without equivocation that, ". . . this issue resulted in a fundamentally erroneous plea to the incorrect charge/offense, and warrants postconviction relief." Id. at 454. Due process of law prohibits the conviction of either a legally and/or factually innocent person. Garden v. Stephens, Sup.Ct. #13-546 (2013) cert pending, (5th Cir. 8/2/13). Further as courts have held that, "credible claims of legal innocence as presented here may satisfy the

5.

Troya070649

assertion of innocence factor the same as a viable claim of actual innocence claim does. See U.S. v. Hamilton, 510 F.3d 1209, 1214 (10th Cir.2007); quoting U.S. v. Gauger, 2013 U.S.App.LEXIS 17293 (10th Aug. 20th, 2013). When the elements of the charge does not satisfy the statutory requirements the defendant's conviction constitutes a fundamental injustice the same as being actually innocent of the crime charged. Phillips v. U.S., No. 11-6249 2013 BL 304341 (6th Cir. Nov. 4th, 2013).

An Illegal Sentence Can Be Corrected At Anytime

Both the district court and the state conceded at Troya's resentencing that an illegal sentence can be corrected at anytime. See Transcript of Resentencing, January 28th, 2005 p. 15 l. 11-12; see also Nesbitt v. Sec'y, Dep't of Corr., 2012 U.S.Dist.LEXIS 65482 (M.D.Fla. May 10, 2012); and also U.S. v. Jackson, 923 F.2d 1494 (11th Cir. 1991). Here the court convicted and sentence Troya to a charge that was not authorized under the charging information and thereby illegal creating a fundamental injustice warranting reversal of such erroneous conviction.

Attempted Escape Is Not A Lesser Included Offense Of Escape

For the Court to surmise that its finding Troya guilty of escape in-lieu of attemted escape which the charging information/affidavit authorized because it contends that the two share conterminous or contiguous boundaries under law would be wrong and this is why it would be wrong.

A case that has strong analogous to Troya's case scenario here through comprehensive and cogent analysis found with perspicuity that, "[u]nder the requisite statutory element test, that attempt to escape is not a lesser included offense of escape." Infra at 1124. Further the court held, inter alia, that, "[A] court is not authorized under law to modify a wrongfully imposed escape conviction to attempted escape, because attempt to escape contains an element of specific intent to escape that a charge of escape does not. Infra at 1124. Under such analysis of

6.

Troya070650

performing the statutory element test it is readily seen that attempted escape is not a lesser charge with the escape statute and thereby the court finding Troya guilty of escape in-stead of the charge of attempted escape as the information charged him with cannot be reconciled by contending that attempted escape is submerged in-to the escape statutory provisions, because it is not.

In Peoples v. Bailey, 279 P.3d 1120 (Cal.Sup.Ct. July 12th, 2012) the court performed comprehensive analysis of statutory provisions almost identical in pertinent part with Florida's Statutory Provisions charging escape and attempted escape under Section 944.40;FSA. The California Supreme Court, affirmative a published opinion by the court of appeals which held that there was insufficient evidence of Bailey's escape charge and reversed. A notably distinction militating in Troya's favor here is the fact that Bailey was actually charged by information with both escape and attempted escape. Id. at 1222. In contrast Troya had been charged only with "attempted escape" by information/affidavit. See Appendix (B). In fact Troya had accepted a plea bargain in exchange for pleading guilty to "attempted escape". See Appendix (C). In Bailey he had been convicted by a jury of escape from a County Correctional Facility. Looking to the applicable statute for charging a prisoner with escape or attempted escape the court analyzed Section 4530;CRC which is almost verbatim identical to the Florida Statutory Provisions for charging a prisoner with escape or attempted escape under F.S.A. § 944.40. In pertinent part states that,"[e]very prisoner confined in a state prison . . . , escapes or attempts to escape therefrom . . . is punishable by imprisonment . . . ," Section 4530;CPC holds. In comparison to the Florida statutory language used the difference is one of form, not substance. In relevant pertinent part the Florida Statute states that, "[a]ny prisoner confined in any prison, jail . . . , who escapes or attempts to escape . . ." F.S.A. § 944.40. The distinctions between the two as previously noted are of form, not substance and in reality are distinctions without a difference.

7.

Troya070651

The similarities between these two statutory provisions is not of form, but is of acute substance. The court enunciated in Bailey that Section 4530 does not define escape or attempt to escape, which is exactly the case with the Florida Statute under §944.40. The Bailey court clarified that the statutory provisions do not define escape or attempt to escape and that those terms are defined under case law definitions. Bailey, 279 P.3d 1120, 1125. The Supreme Court has stated that, ["court's and commentators are in general agreement that [the term "escape"] means absenting oneself from custody without permission"]. United States v. Bailey, 444 U.S. 394, 407, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). The term "escape" must be interpreted in light of the plain language of the statute, requiring an actual escape beyond the outer boundary of the prison, jail or other facility having custody of the prisoner. Accordingly, the court held that "[a]n inmate who remains within the bounds of the jail or prison has not escaped that facility 'even if he has broken out of his cell and breached interior security barriers." People v. Lavaie, 1999 70 Cal.App.4th 456, 82 Cal.Rptr.2d 719.. The court readily held that, ample evidence existed to establish that Bailey had attempted to escape from prison, it refused to modify the escape conviction to attempted escape noting that attempted escape contains an element of specific intent to escape that escape does not, whereas it clarified that attempt to escape is not a lesser included offense of escape. People v. Bailey, 279 P.3d at 1124.

This is a case on point although in reverse, whereas the California Supreme Court in affirming the Court of Appeals findings that it could not reduce Bailey's conviction of escape to attempted escape because attempted escape is not a lesser included offense of escape, the same holds true in the case sub judice for the sake of argument that the Brevard County District Court could not find Troya guilty of escape after he entered a plea of guilty to attempted escape, even in the charging affidavit/information had authorized such and it did not. The Court

8.

Troya070652

went on to emphasize this finding clarifying that, "[w]e must not generalize in the law of attempt." United States v. Berrigan, 482 F.2d 171, 187 (3d Cir. 1973). The court went on to state with perspicuity that, "the cases relied on by the state apply the general principle that attempt is a lesser included offense of any crime completed, it is not applicable here, where the attempted offense includes a particularized intent that goes beyond what is required by the completed offense. Id. at 1128. As previously noted, "[u]nlike escape, attempt to escape requires a specific intent to escape, that is not included for a conviction of escape." Brawner v. United States (D.C.2009), 979 A.2d 1191, 1193. In final analysis as the Supreme Court affirmed that, attempt to escape is not a lesser-included offense of escape, whereas the former contains a specific intent element not present in the latter. Bailey, 187 Cal.App. 4th 1142 (Cal.App. 6th Dist. 2010.)

Here the district court finding Troya guilty of escape, see Appx. (A) in-lieu of attempted escape which he had been formally charged with by information, see Appx. (B) constitutes an unlawful conviction which he is legally innocent of, and cannot be reconciled under the specious contention that escape and attempt to escape are embodiments of one another. Thereby, the court's convicting Troya of escape must be set aside.

### TROYA'S SECOND CLAIM FOR RELIEF

#### The Court Improperly Participated In Troya's Plea Negotiation Requiring Setting Aside Troya's Escape Conviction

The Eleventh Circuit Court of Appeals has readily held and clarified that, "[j]udicial participation [in plead negotiations] is plain error under law, and that the defendant does not need to demonstrate prejudice." United States v. Corbitt, 996 F.2d 1132, 1135 (11th Cir.1993); quoting United States v. Hudson, 516 Fed.Appx. 879, 882 (11th Cir.Apr. 16th, 2013). In Hudson the court noted

9.

Troya070653

that the government, i.e. the prosecution and defendant "may discuss and reach a plea agreement," but that [t]he court must not participate in such discussions." United States v. Hudson, 516 Fed.Appx. at 882. Under governing authority, "a bright line rule exist that prohibit[s] the participation of the judge in plea negotiation under any circumstances ... [and] that [rule] admits no exceptions." Id.; United States v. Johnson, 89 F.3d 778, 783 (11th Cir.1996). Simply put, the court noted that, "district court's should not offer [any comments] touching upon the subject of the plea negotiations themselves." Id.; United States v. Tobin, 676 F.3d 1264, 1307 (11th Cir.2012)(emphasis added to original). Here the district court extensively commented on plea negotiations Troya had entered in with the prosecution, literally coercing Troya into accepting the court's sentence via his resentencing procedures which clearly aggravated the time to be served on the new consecutive structure of such sentence imposition. Thereby' rendering Troya's plea unlawfully introduced by the court improperly entering into plea negogiations with Troya making his plea unknowingly and unintelligently given.

Statement Of Facts:

1.   On January 28th, 2005 Troya appeared back before the district court which was the result of the Florida Department of Correction, i.e. Natasha Carter's December 3rd, 2004 Correspondence mailed to the Court claiming that Troya sentence contraved Florida's Statutory mandated under §944.40 that Troya's sentence for escape was to be ran consecutive to any other active sentence that he was serving in-lieu of the concurrent sentence impose by the court. See Appx. (D). This notification by the Florida Department of Correction was noted via Troya's later resentencing proceedings. See Transcript of Re-Sentencing Hearin p.3, L 13&14.

2.   During the re-sentencing hearing Troya acknowledged his confusion as to the reason that he had been returned to the court. Id. p.3, L 15-17.

Troya070654

3. The Court was ambivalent whether or not that it was required under law to have Troya withdraw his original plea of guilty and/or whether or not it was authorized to simply re-sentence him. Id. p.3, L 21-23.

4. The court asked Troya's counsel if Troya wanted to withdraw his original plea (knowing now that the sentence previously ran concurrent was going to be ran consecutive contrary to the original plea agreement). At that point Troya's counsel advised the court that she needed to discuss this new development with Troya. Id. p.3, L 24, 25 & p. 4, L 1.

5. A short time later Troya's Counsel, inter alia, advised the court that Troya wanted to withdraw his previous plea and have the case set back on the docket for trial. Id. p. 4, L 8-13.

6. After further discussions between the court and Troya's counsel the court during this colloquy engaged in discussions directly with Troya. The Court advised Troya stating that, ". . . but you know you're facing a fifteen year felony if you are convicted of this.?" Id. p. 10, L 14-18. Troya answered yes." id. L 19. The court continued to advise Troya that, "... the State is giving you basically less than two years." Again Troya answered yes. id.L 22. The Court continued to address Troya vividly making him aware that, "[O]n an "escape, I would probably give you more than that if you were found guilty. So, you think about your decision to withdraw your plea first before you do that." id. p. 10, L 24&25, p. 11, L 1-3.

7. After further discussion between the Court and Troya the prosecution reiterated to Troya via addressing the court that, inter alia, the court was correct in telling Troya that the State will not downward depart, . . . but as the court advised him that he could be facing up to fifteen years in prison." Id. p.12, L 23-25, p.13, 1-5.

8. During the re-sentencing collquy the State advised the Court that it

11.

Troya070655

had prepared paperwork for Troya to withdraw his original plea and for him to reassert "a new one". The court implicitly stated that, that would not be necessary that, "just re-sentencing, I think, is all we need to do, right?" Id. p.14, L 21-25, p. 15, L 1-3.

9.   Under the cloud of confusion whether or not Troya had to enter a new plea prior to the court re-sentencing him or not the court implicitly states that it can correct and illegal sentence at anytime, whereas the state readily concedes this pronouncement as true. Id. p. 15, L 6-12. The court then re-sentenced Troya for escape adjudicating his guilt and resentencing him to 19.65 months. Id. p.15, L 1-10.

Standards And Authority Of Law Governing Improper Negotiation By The Court

Three rationales support the absolute ban on judicial participation: "(1) judicial involvement in plea negotiations inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty; (2) the prohibition protects the integrity of the judicial process; and (3) the ban preserves the judge's impartiality after the negotiations are completed." United States v. Johnson, 89 F.3d 778,782-83 (11th Cir.1996). Furthermore, while a court may be "motivated primarily by the that [the defendant] be thoroughly apprised of the situation that he faced, . . . this concern, however well-intentioned," will not excuse judicial participation. United States v. Casallas, 59 F.3d 1173, 1178 (11th Cir.1995). Thus, prior to any agreement by the parties, "a court should not offer [any comment] touching upon proposed possible plea agreements," which go beyond a source of information to plea negotiations and amount to "indications of what the judge will accept" that "will quickly become the focal point of further discussions." United States v. Diaz, 138 F.3d 1359, 1363 (11th Cir.1998).

When the district court contrasts the sentence a defendant would receive

12.

Troya070656

if he pled guilty with the sentence he would receive if he went to trial and was found guilty, judicial participation is presumed and the conviction must be set aside. See Casallas, 59 F.3d at 1177(holding that a court's comments contrasting the likely minimum sentence he would receive if he pled with the minimum sentence he would receive if he went to trial, and suggesting that the defendant "talk with his lawyer and see if [a trial] is really what he wants to do" operated to coerce the plea in violation of law. Diaz, 138 F.3d at 1361-63. In the case sub judice this is verbatim what the court did during the colloquy with Troya was to contrast the sentence he would receive if he pled guilty with the sentence he would probably receive if he choose to go to trial.

During the re-sentencing hearing the court addressed Troya directly during the colloquy telling Troya that, ". . . but you know you're facing a fifteen year felony if you are convicted of this?" Statement of Facts ¶6. After Troya acknowledged this fact the court then went on to advise him that the state was "basically giving him less then two years," in exchange for his pleading guilty." id. During this same exchange the court emphasized to Troya that, "[O]n an "escape," I would probably give you more than that if you were found guilty. So, you think about your decision to withdraw your plea first before you do that. id. Here the court's improper comments were far more egregious than in other cases that the court found requiring automatic - vacatur.

A case on point is United States v. Davila, 664 F.3d 1355 (11th Cir.2011)(per curiam), cert granted, 133 S.Ct. 831, 184 L.Ed.2d 646 (2013). In Davila's case, the government acknowledged that the Magistrate Judge violated well established law by improperly participating in the plea discussion. In that case the Magistrate Judge held an in camera hearing following the receipt of a letter from Davila voicing complaints of his attorney's pro forma representation stating, inter alia, that his core dissatisfaction with counsel was he offered absolutely no defensive

13.

Troya070657

strategy, . . . but simply advised that he plead guilty. Davila, 664 F.3d at 1358. In addressing Davila's complaint that his attorney had continued to advise him to plead guilty, the Magistrate Judge told Davila that "often times . . . that is the best advice a lawyer can give his client." Id. "In view of whatever the government's evidence might be," the Magistrate continued, "it might be a good-idea for the defendant to accept responsibility for his criminal conduct[,] to plea guilty[,] and go to sentencing with the best argument . . . still available [without] wasting the Court's time [and] causing the government to have to spend a bunch of money empanelling a jury to try an open and shut case." Ibid. The Magistrate then urged Davila to cooperate in order to gain a downward departure from the sentence indicated by the Sentencing Guidelines. The Magistrate emphasized to Davila telling him that, "the government, they have all of the marbles in this situation and they can file that . . . motion for [a] downward departure from the guidelines if they want to, you know, and the rules are constructed so that nobody can force them to file that [motion] for you. The only thing at your disposal that is entirely up to you is the two or three level reduction for accepting responsibility. That means you've got to go to the cross! You've got to go tell the probation officer everything you did in this case regardless of how bad it makes you appear to be because that is the way you get that three-level reduction for acceptance, and believe me, Mr. Davila, someone with your criminal history needs a three-level reduction for acceptance." Id. at 1356-57.

The Eleventh Circuit Court of Appeals found that the comments by the Magistrate Judgment constituted improper plea negotiation by the court warranting automatic vacatur. Id. at 1358. The Court clarified that the governing law states a bright line rule that "prohibit[s] the participation of the judge in plea negotiations under any circumstances . . . and admits no exceptions." United States v. Johnson, 89 F.3d 778, 783 (11th Cir.1996). The court went on to state that "[j]udicial

14.

Troya070658

participation [in plea negotiations] constitutes plain error, and that the defendant need not show actual prejudice." United States v. Corbitt, 996 F.2d 1132, 1135 (11th Cir.1993). Further, the court held that, "[w]e do not recognize harmless error in the context of judicial participation." Davila, 664 F.3d at 1358. The Supreme Court granted cert. to address whether or not automatic vacatur was mandated for judicial participation and/or whether or not harmless error analysis was applicable in such improper plea negotiations by the court. United States v. Davila, No. 12-167, 569 U.S. ___, 133 S.Ct. 2139, 186 L.Ed.2d 139, 2013 U.S.LEXIS 4541, at *24-25 (U.S.June 13, 2013)(reaffirming that plain-error review, rather than automatic vacatur, governing judicial participation in plea negotiations).

The Supreme Court in conceding the improper participation by the Magistrate Judge during Davila's plea colloquy held, inter alia, that, the Eleventh Circuit's bright line rule mandating automatic vacatur was not appropriate and that precedent requires the reviewing court to consider all that transpired in the trial court in order to assess the impact of the error on the defendant's decision to plea guilty. United States v. Davila, 133 S.Ct. 2139, 2148, 186 L.Ed.2d 139 (2013). The Court held that, "[R]ather than automatically vacating Davila's guilty plea because of the improper participation by the court that, the Court of Appeals should have considered whether it was reasonably probable that, but for the Magistrate Judge's exhortations, Davila would have exercised his right to go to trial. Davila, 133 S.Ct. at 2150. Here Troya's case senario of being subject to the multiple exhortations by the court in proximity of reconsideration for not withdrawing his plea anent the re-sentencing hearing is starkly distinguished of the circumstances in Davila's case that the Supreme Court found not to warrant vacating his guilty plea.

The Court held that, "[I]f Davila's guilty plea had followed soon after the the Magistrate Judge told Davila that pleading guilty might be "the best advise

15.

Troya070659

his attorney could give him" then this case would not have warranted our attention." Id. 2149. The Court itself recognized the government's acknowledgement that, "[b]ad Davila pled guilty "right after the improper participation" taken place by the court then the error would of qualified as prejudical." Id. Of course that is exactly what occurred in Troya's case, whereas the multiple exhortations by the court were the actions coercing Troya to forego withdrawing his plea. The Supreme Court clarified that its' essential point in this matter of prejudicialness resulting from improper participation by the sentencing court during the plea colloquy will be "based on the facts and circumstances of the matter." Id. at 2149.

In Davila the Supreme Court found that the particular facts and circumstances of the Magistrate Judge did not qualify as prejudicial warranting vacation of his guilty plea because the exhortations took place three month prior to him actually entering his plea and furthermore that the sentencing Judge had performed an "exemplary" colloquy where the court asked Davila if anyone had forced him or pressured him to plead guilty today?" Davila responded, "No Sir!" Id. at 2149. In contrast Troya's decision not to withdraw his plea of guilty at the re-sentencing hearing as his attorney advised the court that he had choosen to do after the state had refused to abide by the earlier plea agreement, see Statement of Facts ¶5 followed the court's multiple enhortations to that decision. The Supreme Court stressed that, "[r]ather than automatically vacating Davila's guilty plea because of the court's improper participation, the Court of Appeals should have considered whether it was reasonably probable that, but for the Magistrate Judge's exhortations, Davila would have exercised his right to go to trial. In answering that question the court held that, the Magistrate Judge's comments should be assessed, not in isolation, but in light of the full record. Id. at 2150.

16.

Troya070660

Applying this Rule articulated by the Supreme Court in finding that the facts and circumstances underscoring the admitted improper participation by the Magistrate Judge did not rise to qualifying as to be sufficiently prejudicial warranting vacating of Davila's plea and conviction. In constrast with the facts and circumstances presented in Davila the Supreme Court held that did not satisfy finding such to be of a prejudicial magnitude Troya's case scenario does with perspicuity satisfy - this rule set forth by the court warranting vacating of his plea and conviction. Here when the district court asked Troya's attorney if Troya wished to withdraw his plea and in response his attorney advised the court that he would need to speak with Troya prior to answering that question, and then after speaking with Troya - she unequivocally advised the court implicitly that, "Troya [wished to withdraw--his plea], and to set the case back on the trial docket." Statement Of Facts ¶¶¶ 3,4&5. Thereafter, the court in-stead of setting the case back on the trial docket in allowing Troya to withdraw his plea then directly confronted Troya with the consequences he would or could face if he actively wanted to withdraw his plea of guilty and went to trial. Id. ¶¶¶ 6,7&8. This type of improper participation by the court is exactly the kind of circumstances courts have found to be of prejudicial magnitude warranting vacating a defendant's plea of guilty.

Courts have readily clarified that, "a court should not offer [any comment] touching upon proposed possible plea agreements [especially such plea agreements that the court might accept and what might be the consequences if the defendant should not accept such." United States v. Diaz, 138 F.3d at 1363. With perspicuity the courts' have reiterated that a sentencing judge is 'not to contrast the sentence a defendant would receive if he pled guilty with the sentence he could receive if he went to trial and was found guilty. See Casallas, 59 F.3d at 1177. This type of improper participation demonstrates prejudical

Troya070661

affect and requires vacating the defendant's plea and conviction. Id. Here, that is verbatim what the court did was levy palpable exhortations against Troya anent his unequivocal request to withdraw his plea and to have the case set back on the trial docket. The district court went onto drive home its multiple exhortations levied against Troya for his request to withdraw his plea of guilty telling that, ". . . ,[y]ou need to think about your decision to withdraw your plea first before you do that." Statement Of Facts ¶6. The facts and circumstances in Troya's case demonstrate overwhelming prejudicial effect warranting vacating his plea and conviction based on the egregious nature of the district court's judicial improper participation in his re-sentencing. Here the egregious exhortations by the court levied at Troya seriously affected the fairness, integrity, and public reputation of the judical proceedings warranting vacating Troya's plea and conviction. See United States v. Pena, 20 F.3d 561, 573 (5th Cir. June 18th, 2013); Citing United States v. Davila, No. 12-167, 569 U.S. ___, 133 S.Ct. 2139, 186 L.Ed.2d 139, 2013 U.S.LEXIS 4541, at *24-25 (U.S.June 13th, 2013).

## TROYA'S THIRD CLAIM FOR RELIEF

### Troya's Counsel Provided Fundamental Ineffectiveness In Three Critical Areas

#### Ineffective Assistance Of Counsel Count One:

Counsel adamantly advised Troya that the repeated assults and ongoing intimidation that he was being subjected to by Jail Officicals at the Brevard County Correctional Facility did not support a defense of 'duress or necessity' for the attempted escape charge filed against him. This contention was erroneous under well established law and constitutes ineffective assistance of counsel.

#### Facts Germane To Count One:

1. Several weeks before Troya attempted to escape from the Brevard Correctional Facility which occurred on November 20th, 2002 he was subject to a severe beating

18.

Troya070662

by multiple jail staff in retaliation for an alleged enamored relationship that jail staff perceived that he was having with a female rookie staff member. Contrary to the palpable erroneous perception Troya's and the female rookie staff member's was absolutely cordial and respectful, although because of this erroneous perception Troya was subject to several severe beatings and a myriad of other retaliatory actions. The initial beating was percipitated by an incident that occurred while Troya was in the shower and the rookie female officer was stationed in the unit performing security rounds. She appeared to be observing Troya showering for what seemed an inordinate time to him but he did not find it uncomfortable or disrespectfully and simply continued to take his shower.

2.    Shortly after completing his shower Troya witnessed acouple of the other jail staff, male officers confronting the female rookie and gesturing in his direction. The irrate state of the male officers' was obvious and based on both the gesturing in Troya's direction and the proximity of the shower incident to the confrontation it was certainly reasonable to concluded that the shower incident was the source of the animus by the male staff members against the rookie female officer.

3.    That same night at approximately 10 p.m. Troya was waken by a staff member and told that he needed to get up and go back to the kitcken because he had left his post dirty. Getting dress the staff member told Troya that he needed to hurry up and when Troya told him that he needed to get his shoes on he was told that, "you don't need your shoes on just to run down to the kitcken."

4.    The Officer lead Troya through the vestibule "bubble", where several other staff members were stationed. Troya wasn't sure exactly what was going on, especially when one of the four officers told him that he needed to come with him. The officer lead Troya to a confined area in the back of the bubble where generally clothing items are stored that are returned from the laundry. As Troya

19.

Troya070663

started to enter the confined area he began to ask the sergeant what was going on, but before he could complete his question one of the officer's threw a blanket over his head and grabbed him pinning his arms to his sides. Simultaneous' the other staff member began beating Troya hitting him in his face, head and body. In effort to get away from the savage beating that --he was being subject to he was able to knock the officer holding the blanket over his head and his arms at his side into a wall knocking them both to the floor with the staff member coming down on top of Troya. The beating continued with Troya being severely beaten and kicked until he lost consciousness, but before being knocked out the staff beating him reiterated that, "you fuck with our female staff and we will kill your punk ass. We will beat your punk- ass to death, do you hear me." Troya is not sure how long he was out or how long the beating continued after he was knocked out. He remembers being physically pulled up to his feet and the warranting being repeated that, "we will kill your punk ass if you fuck with that female officer again and if you tell on us you will wish you hadn't."

5.    Troya was bleeding from both his nose and mouth. He had bruises to his head, face, body, back, arms and legs. He could verily walk and fell struggling to get back to his living area. He asked the sergeant if he could see medical and in response was laughed at and told that, "you aren't seeing medical because nothing is wrong with you and if you report that something is you wish you had not caused these problems."

6.    The following day Troya filed a complaint/grievance seeking redress for the beating he was subject to the night before and with perspicuity clarified what had occurred and identified the staff members involved, including the re-taliatory threats made against his life and that he was also denied medical treatment. Almost immediately after filing the complaint Troya was subject to a myriad of retaliation by jail staff. He was subject to being slammed up against a

20.

Troya070664

wall while being strip shook. Troya's personal property was destoryed during a shakedown, and he was repeatedly told by a different staff members that, "we told you what was going to happen if you told on us." Troya was hit in the face on three different occasions while he was asleep by staff during the early morning hours and then laughed at when he asked what the hell was going and told, "go file on that punk because no one cares about your complaints."

7.   Ultimately Troya was placed in disciplinary segregation "the hole" for making complaints/grievances regarding the initial beating and the ongoing other assults and retaliations being taken against him by different staff members. He was interviewed by Internal Affairs and was told that staff members claim that he had assulted a staff member and that - that is when other jail officers intervened in addressing the assult by Troya, whereas Troya sustained some injuries. Approximately two weeks after being placed in the hole he was cleared of the alleged assult on staff and returned to general population and housed in Delt Dorm.

8.   Within a day of being moved to Delt Dorm Troya was jumped on again by three staff members as he got out of the shower and flung to the floor being told that you don't disrespect us with your disrespectful jestures in the shower with female staff present. Troya was kicked several times by the three different staff members, none of the three were female officers, as no female officers were present during his shower. Troya was left on the shower floor after the assult ended.

9.   The following day Troya attempted to escape and when the escape was foiled he was placed in disciplinary segregation.

10.  During Troya's initial interview with Ms. Simpson who the court appointed to represent him anent the criminal attempted escape proceedings he clarified the initial severe beating that he was subject to and the reason that

21.

Troya070665

motivated such, as well as each and everyone of the other assults and other retaliations being taken against him for filing complaints/grievances in redress of such. See Statement Of Facts ¶(s)(1) thr (8). Ms. Simpson advised him that whether he was subject to assults by staff or not was not a defense for his attempted escape and that she would not and could not use such as a defense at trial. Troya reiterated to Ms. Simpson that he was scared that the jail staff was going to kill him during one of the multiple assults that he had been subject to, as well that the assults would continue. Troya advised Ms. Simpson that if she investigated these allegations that he was making that she would see that everything that he was telling her was true. In turn Ms. Simpson unequivocally told Troya that she was not going to waste time investigating the circumstances of his confinement at the jail because it did not matter and would not in any sense justify him trying to escape.

Ineffective Assistance Of Counsel Count Two:

Counsel flagrantly advised Troya telling him that pleading guilty to escape was the same as pleading guilty to attempted escape because both charges were the same under law. This contention was clearly erroneous and constitutes ineffective assistance of counsel.

Ineffective Assistance Of Counsel Count Three:

Counsel erroneously told Troya that in exchange for his plea of guilty that the sentence for escape would be ran concurrent with his other sentences being served, whereas ultimately it was ran consecutively. This erroneous advise constitutes ineffective assistances of counsel.

GUILTY PLEA INEFFECTIVENESS

The Supreme Court in Hill v. Lockhart, 474 U.S. 52, 88 L.Ed.2d 203, 106 S.Ct. 366 (1985), held that the two part Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 2064-74, 80 L.Ed.2d (1984) test applies to

22.

Troya070666

challenges to guilty pleas based on ineffective assistance of counsel. The Hill Court found in the plea bargaining context, a petitioner seeking to establish ineffective assistance of counsel must demonstrate that: 1) Counsel's advise and performance fell below an objective standard of reasonableness; and 2) The petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not of pleaded guilty and would have insisted on going to trial. Id. at 1474 U.S. 591.

The Hill Court further explained that in many guilty plea cases, the "prejudice" inquiry would closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or dispotential exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to adivse the defendant of a potential affirmative defense likely would have succeeded at trial. Id.

The Supreme Court rejected Hill's claim of error of counsel's erroneous advise as to eligibility for parole under the sentence agreed to in the plea bargain, because Hill failed to allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. Hill alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Indeed, Hill mistaken belief that he would become eligibile for parole after serving one-third of his sentence

Troya070667

would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed pleas agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted.

Because Hill failed to allege the kind of "prejudice" necessary under the Supreme Court's holding in Strickland v. Washington sitting out the necessary test for satisfying the second element of that two prong test in demonstrating that the defendant was "prejudiced" by counsel's ineffectiveness the Court held that the district court properly determined that Hill was not entitle to habeas relief, thereby affirming the judgment of the Court of Appeals. Id. That is not the case here, where Troya contrary to Hill demonstrates his counsel's ineffectiveness in three key manner's resulting in prejudice based on the consideration that absent these mutually aggravating ineffectiveness of counsel that Troya would of choosen to go to trial in-lieu of pleading guilty.

Standards For Reviewing Troya's 3.850 Petition

An evidentiary hearing is required on a defendant's 3.850 motion, unless the claims themselves are either facially invalid or conclusively refuted by the record before the court. Where no evidentiary hearing is held in determining the validity of the defentant's claims delineated via a 3.850 motion the court is mandated under law to accept the defendant's factual allegations to the extent that they are not refuted by the record. Foster v. State, 810 So.2d 910, 914 (Fla. 1999)(quoting McLin v. State,827 So.2d 948, 955 (Fla.2002). Here taking Troya's factual allegations as it must as true, he has with perspicuity demonstrated counsel's ineffectiveness in three critical facets of his criminal proceedings satisfying the two prong test under Stricklnad as applied in Hill warranting reversial of his escape conviction.

24.

Troya070668

<u>Absent Counsel's Ineffectivenss Troya Would Not Of Plead Guilty and In-Lieu Of</u>
<u>Would Of Choosen To Go To Trial And There Is A Reasonable Probability</u>
<u>That He Would Of Been Acquitted At Trial</u>

Hill Hill filed a second habeas petition for relief which the Eighth Circuit Court of Appeals affirming the district court's grant of habeas relief held that, Hill's lawyer was ineffective in failing to conduct "minimal research" of the applicable statute governing parole eligibility for a second offender, coupled with counsel's failure to give accurate advise regarding parole eligibility, which was an integral factor in Hill pleading guilty and in his plea negotiations, constituting ineffective assistance of counsel rendering his guilty plea involuntarily given. Hill v. Lockhart, 877 F.2d 698, 691 (8th Cir.1989). In comparison with circumstances the Eighth Circuit found warranting habeas relief in Hill, Troya's counsel's ineffectiveness was far more egregious than that demonstrated in that case.

The Court held that, based on the total absence of investigation by Hill's counsel that he did not need to demonstrate prejudice under the second prong of Strickland to show that he would of been acquitted or given a shorter sentence at trial. Hill, 877 F.2d 691. In comparison Troya's counsel utterly refused to investigate a viable affirmative defense of "duress or necessity" anent the attempted escape charge, or research the statute governing escape and attempted escape, and then mislead Troya concerning the sentence that he would receive would be ran concurrently with any active sentence he was already serving. If it had not been for such ineffectiveness by counsel Troya would of in-lieu of pleading guilty sought trial and based on the affirmative defense available to him under given circumstances stood a good chance of being found not guilty of such attempted escape charge. As the Fifth Circuit has clarified that, "[a] conviction on a guilty plea that is entered based on counsel's faulty legal advice constitutes

Troya070669

a miscarriage of justice." United States v. Scott, 625 F.2d 623 (5th Cir.1981).

Objectively Unreasonable Performance

Based on the evidence Troya has submitted, he can demonstrate that his attorney's failure to pursue a duress defense was objectively unreasonable. Troya's counsel's strategic choice to not pursue this specific defense would of been reasonable "so long as it had been based on her professional judgment and supported with necessary investigation." See Strickland, 466 U.S. 690-91; see also Vinson v. McLemore, 226 Fed.App'x 582, 585 (6th Cir.2007). Strategic choices made after thorough investigation of both law and facts relevant to plausible options are vitually unchallengable, but strategic choices made after less than complete and competent investigation do not receive the same consideration and are only deemed reasonable to the extext that reasonable professional judgments support the limitations on investigation. Srickland, 466 U.S. at 690-91. Here Troya's counsel after he with perspicuity explained the facts motivating his attempted escape, as are described through the foregoing Statement Of Facts ¶(s) (1) thr (8) dismissed his story out-of-hand and advised him that, "it does not matter what happen to him at the STATE prison, and even if he could prove that he was being subject to a campaign of beatings threatening his life that those circumstances would not justify him trying to escape." Troya reiterated to counsel that he had reported the beatings that he was being subjected to and in retaliation for such complaints made was placed in disciplinary segregation and subject to further beatings. Counsel maintained her position that none of those circumstances could be used as a defense for his attempted escape. Counsel made absolutely no investigation of the claims Troya advised her of and dismissed these claims out-of-hand. Well established law clarifies that counsel has a duty to make reasonable investigations in determining strategy choices to pursue or not to pursue. Strickland, 466 U.S. 690-91.

26.

Troya070670

Here Troya's counsel out-of-hand dismissal of these claims and out-right ignoring them altogether without minimal investigation was objectively unreasonable stating a cognizable ineffective assistance of counsel claim, whereas absent such ineffectiveness Troya would of opted for a trial and there is a strong probability that he would of been successful if he had went to trial with a affirmative defense of duress, thereby satisfying the prejudice prong of the Strickland two prong test. See Hill, 474 U.S. at 59.

Prejudice

The Fifth Circuit held that a remand was required to determine whether petitioner was prejudice by his counsel's complete failure to investigate a crime which, upon counsel's advise he plead guilty to. Woodard v. Collins, 898 F.2d 1027, 1029 (5th Cir.1990). The Woodard court found that the first prong of Strickland had been satisfied but found that it could not ascertain from the record whether the second prong of Strickland had been met. First, the Court clarified that, "generally there is a strong presumption that counsel had exercised reasonable professional conduct, id, 104 S.Ct. at 2065, however, no such presumption is warranted when a lawyer advises his client to plea bargrain to an offense, which the attorney has not investigated. Such conduction is beyond the pale of being reasonable. Hill, 894 F.2d at 1029; Strickland, 466 U.S. at 690-91. Secondly, the court analyzed whether or not Woodard had satisfied the second prong of the Strickland test demonstrating prejudice. It held that Woodard could show prejudice if "there was a reasonable probability that, but for counsel's errors, he would not of plead guilty and would insisted on going to trial." Hill, 474 U.S. at 59, 106 S.Ct. at 370. On remand the court held, the district court shall make such determination after hearing evidence and making such findings of whether or not Woodard suffered such prejudice.

Here, an affirmative defense of duress would of had a significant chance of

27.

Troya070671

success if Troya would of opted for such in-lieu of pleading guilty, and thereby he can demonstrate counsel's deficient performance prejudice him. When a defendant challenges their attorney's failure to pursue an affirmative defens, "the resolution of the prejudice prong inquiry will depend largely on whether the affirmative defense would of been successful at trial." Hill, 474 U.S. at 59; see also Hodges v. Colson, 711 F.3d 589, 610 (6th Cir.2013)("[I]t is therefore clear that in determining whether a defendant has shown prejudice, a court must predict whether correction of the deficient performance might have enabled the defendant to succeed at trial..") Here, an affirmative defense had virtually a signifcant chance of success at trial and here is why:

Duress Affirmative Defense

The duress defense is a common law concept that criminal law has incorporated. United States v. Bailey, 444 U.S. 394, 409-10, 100 S.Ct. 624, 634, 62 L.Ed.2d 575 (1980). Under this defense, otherwise criminal behavior may be excused under narrow circumstances. To succeed with this defense, the defendant must show [inter alia]: 1) that the defendant was under an unlawful and present, imminent, and pending danger/threat of such nature as to induce a well-grounded apprehension of death or serious bodily injury. United States v. Willis, 38 F.3d 170, 175 (5th Cir.1994). The duress defense is also known as a "Justification Defense" which serves only as a legal excuse for the criminal act and is based on additional facts and circumstances that are distinct from the conduct consituting the underlying offense itself." United States v. Deleveaux, 205 F.3d 1292, 1298 (11th Cir.2000). "[T]he doctrine of justification and excuse in our criminal law focuses solely on factors related to the commission of the crime, such as duress, necessity, entrapment, and ignorance or mistake." Boyde v. California, 494 U.S. 370, 399 n.5, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990); see also Deleveaux, 205 F.3d at 1297. Justification requires that the defendant

28.

Troya070672

prove "[1] that he acted under immediate threat of death or serious bodily injury, [2] that he had a well-grounded fear that the threat would be carried out, and [3] that he had no reasonable opportunity to escape of inform the authorities." United v. Wattleton, 296 F.3d 1184, 1196 n.20 (11th Cir.2002)(quoting United States v. Alzate, 47 F.3d 1103, 1104 (11th Cir.1995))). As the Eleventh Circuit clarified that, "[t]he first prong of this test requires nothing more than an immediate emergency." United States v. Rice, 214 F.3d 1295, 1297 (11th Cir.2000). The proffered evidence in this case clearly supports Troya's claim--that he was entitled to a affirmative defense of duress/justification contrary to his attorney's "out-of-hand dismissal" of such contentions to the contrary, whereas Troya was under "a present, imminent and impending threat or death or serious bodily harm; he had a well grounded fear of such threats being carried out, and had no reasonable alternative to escape such impending harm.

Arguments Supporting Troya's Affrimative Defense Entitlement

The conditions underlying Troya's escape attempt satisfy all three prongs establishing - an affirmative duress defense contrary to his attorney's out-of-hand denial that, "no matter what circumstances that Troya was being subject to at the ~~county jail~~ STATE prison. would justify his escape attempt under law." This out-of-hand denial by counsel without so much as a cursory investigation was definitively untenable whereas Troya's conditions of confinement stated a viable affirmative defense under the three prong test as enunciated under well established law.

The facts Troya described to his attorney clearly demonstrated that he acted under immediate threat of death or serious bodily injury, whereas he had been subject to a severe beating by at least three different jail staff on one occasion, and several other assults by staff on different occasions leading up

29.

Troya070673

to the time he attempted to escape. See Statement Of Facts ¶(s)(1) thr (8). Further, after the initial horrific beating Troya was subjected to, id. ¶(s) (3)(4)&(5). Staff after inflicking this beating unequivocally told Troya that, "we will kill your punk ass if you fuck with female officer's again and if you tell on us." Id. ¶(4). The following day Troya submitted a Complaint/grievance anent the beating and threats that he was subject to the previous night clarifying the events percipitating such, including being denied medical treatment. Id.¶(6). Almost immediately after filing such complaint Troya was subject to a myriad of retaliatory actions, including but not limited to being slammed up against a wall while being subject to a retaliatory strip shook. Id. Staff reiterated previous threats that, "we told you what would happen if you told on us." Id. Troya was repeatedly assulted by staff while he slept. Id. Troya continued to file complaints/grievances and was told by staff, "go file on that," which sarcasm was made directly following after being assulted while he slept. Id. Ultimately Troya was placed in disciplinary segregation for the numerous complaints that he had filed delineating and enunciating the ongoing assults he was being subject to, as well as the myriad of other retaliatory actions being taken against him by staff. After a pro forma investigation took place by Internal Affairs Troya was moved to Delta Dorm. Id. ¶(7). Within a day of being moved to Delta Dorm Troya was jumped on again by three different staff members as he got out of the shower. He was flung to the floor, punched and kicked repeatedly and then left on the shower floor. Id. ¶(8). The following day Troya tried to escape, although the escape was foiled by jail staff and Troya was placed in disciplinary segregation and remained there. Id. ¶(9). These facts clearly demonstrate that Troya was not only under a immediate threat of death or serious harm, but that he had been seriously harmed on several different occasions and remained

30.

Troya070674

under a realistic threat of death satisfying the first of the three prong test for stating a affirmative duress defense.

In analysis of the second of the three prong test Troya demonstrated as well that not only was he under a "well-grounded" fear that the threats would be carried out, but to the contrary the threats had been carried out and that he continued to live under a campaign of assults being carried out against him with total immunity for those administering the beatings. Troya sedulously and assiduously sought redress for the campaign of assults and other retaliatory actions being taken against him by filing complaints/grievances which was an utter act in futility as the staff administering the beatings mocked and ridiculed him for. The conditions of Troya's confinement as he described to counsel without a doubt satisfied the three prong test for presenting an affirmative defense of duress for the attempted escape charge. Wattleton, 296 F.3d at 1196 n.20 (11th Cir.2002); qouting Alzate, 47 F.3d at 1104 (11th Cir.1995).

As previously noted the duress defense is a common law concept that criminal law has incorporated. States v. Biley, supra, 409-10. It is well established law that under this affirmative defense, otherwise criminal behavior, as in the case sub judice, may otherwise be excused under narrow circumstances. See Id. at 410; United States v. Morazen, 2013 U.S.App.Lexis 13982 (5th Cir. July 10th, 2013). Those narrow circumstances were set forth through the three prong test established through well established. Wattleton, supra; Alzate, supra. Such faulty legal advise of the substance here constitutes ineffective assistance of counsel. Peoples v. Bowen, 791 F.2d 861, 863 (11th Cir. 1986). Counsel's untenablly advising Troya that he was not entitled to a affirmative defense of duress for the attempted escape under the horrific circumstances he suffered and that were chronic was being the pale of being reasonable, Hill, 894 F.2d at 1029, whereas absent such blatantly erroneous advise "there is a reasonability that Troya would not

31.

Troya070675

of plead guilty and in-lieu of would of opted to go to trial. Thereby, the second prong of the Strickland two prong test has been satisfied demonstrating prejudice via counsel's acute ineffectiveness in this instance. Strickland, 466 U.S. at 690-91.

Ineffective Assistance Of Counsel Count Two:

The district court in resentencing Troya on the attempted escape charge, actually sentenced him for escape in-lieu of the attempted escape that he was charged with via the charging affidavit. See Appx.(B). The court in-lieu of the attempted escape Troya was charged with found him guilty and sentenced him for escape which it was not authorized to do under law. See Appx.(A). When Troya brought this enhancement to the attention of his counsel she erroneously advised him that the elements of the attempted escape were encompassed within the statutory provisions for escape and that thereby it did not matter whether or not the court found him guilty of escape or attempted escape because under law they were both the same. The blatant erroneousness of this claim by Troya's counsel did not come to light until from both the Florida Appellate Court and the Supreme Court for California. Lacey v. State, 114 S.3d 452 (Fla. 4th DCA June 5th, 2013); People v. Bailey, 54 Cal.4th 740, 279 P.ed 1120, 143 Cal.Rptr. 3d 647 (July 12, 2013). Troya's counsel's failure to recognize that attempted escape is distinguished from attempted escape under the governing statute con-stitutes ineffective assistance of counsel. Lacey v. State, supra.

Unlike Escape, Attempt To Escape Requires A Specific Intent To Escape

In this case, the charging document with perspicuity authorized Troya to be charged with "attempted escape" and yet the court unambiguously found Troya guilty of escape, thereby Troya is entitled to postconviction relief. See Hodges v. State, 107 So.3d 538, 540 (Fla.2d DCA 2013)("When a defendant alleges that the trial court failed to determine that there was a factual basis for the plea

32.

Troya070676

which it ultimately sentenced them for and that the defendant is actually innocent of the charge convicted and sentenced for by the court or that the defendant plea guilty to the wrong offense, and the defendant set forth facts demonstrating such manifest-injustice postconviction relief is warranted".) In fact the Florida Supreme Court has reiterated the seriousness of such manifest injustice clarifying that, "[E]ven if the [defendant] had not filed a motion to withdraw his plea pursuant to a 3.850 petition, pleading guilty to a authorized charge constitutes ineffective assistant of counsel warranting reversial for such fundamental erroneous plea to a incorrect offense."Quillen v. State, 73 S.3d 890, 893 (Fla. 4th DCA 2011). The instant case falls squarely within the purview of these controlling authorities, whereas Troya's attorney was ineffective for allowing him to plea guilty to an incorrect offense constituting a manifest injustice. Id.; see also Tower v. Phillips, 979 F.2d 807 (11th Cir.1992)("[A] defendant is entitled to a evidentiary hearing where he alleged that his attorney allowed him to plead guilty to an incorrect offense, and that he would not have pled guilty to that charge had he understood the changes that had been made to what he was actually charged with.") That is verbatim the case here that Troya's attorney allowed him to plea guilty to an offense that she knew both that he had not been charged with or was guilty of warranting habeas relief. Id.

Even though Lacey is not on all fours with Troya's case scenario the distinctions are ones without a difference. Those distinctions between Lacey and Troya's claims of ineffective assistance of counsel anent counsel's failure to recognize that Lacey's escape charge was govern by a different statute than what he actually was charged with and plea guilty to, incomparison with Troya's counsel allowing him to plea guilty to an offense that falls under the same statute but are distinctly different under law. Thereby, as in Lacey's case scenario the court

33.

Troya070677

found fundamental error, where counsel failed to recognize Lacey pleading guilty to an incorrect offense warranting postconviction relief, Lacey, 114 So.2d at 454, Troya's case scenario is sufficiently analogous to warrant the same relief.

The Lacey Court found that, "[t]he applicable escape statute depended on the location of the defendant at the time of the attempted escape." Id. at 453. The court went on to clarify that,"Section 944.40 covers escape attempts by a prisoner, who is defined as someone in the custody of the [Department of Corrections] pursuant to section 944.02(6), Florida Statutes..." State v. King, 968 So.2d 658, 658 (Fla.4th DCA 2007). In contrast, section 985.s721, Florida Statutes (2010) "deals with attempts, as defines by section 944.40, from detention facilities for chilren." Id. This analysis is apposite here.

As previously noted Troya was charged via indictment/affidavit with "attempted escape", see Appx.(B), but found guilty of and sentenced for "escape". See Appx. (A). The court's have noted that, "[u]nlike escape, attempted escape requires a specific intent to escape. People v. Bailey, supra at 749. The Supreme Court of California held without equivocation that, "because attempt to escape contains and [element] of specific intent to escape that escape does not, attempt to escape is not a lesser included offense of escape." Id. Thereby, attempt to escape and escape are distinct charges whether or not catalogued under the same and/or separate statutory provisions. Finding Troya guilty of and sentencing him for escape constitutes pleading guilty to an incorrect offense which he was not charged with or guilty the same as the court held in Lacey. Thereby' the court should find Troya's case scenario sufficeintly analogous to the California's Supreme Court's holding in Lacey warranting postconviction relief.

Ineffective Assistance Of Counsel Claim Number Three:

34.

Troya070678

Under Troya's plea agreement his original sentence for the attempted escape was ran concurrent with any active sentence that he was serving. See Sentencing Transcript, July 29th, 2004 p.11. That plea agreement was breached ultimately when Troya was resentenced and in-lieu of being ran currently it was ran consecutively to an active sentence that he was serving. See Transcript Of Re-Sentencing, January 28th, 2005. Here, Troya's counsel misrepresented to him that in exchange for him enter a plea of guilty that any sentence he received would be ran concurrently with any active sentence that he was serving, whereas such misrepresentation constitutes ineffective assistance of counsel. See Warnes v. U.S., 975 F.2d 1207, 1209 (6th Cir. 1992); People v. Bowen, 791 F.2d at 861; see also Tower v. Phillips, 978 F.2d at 807. Absent this misrepresentation by Troya's counsel he would choosen to go to trial instead of pleading guilty, thereby demonstrating prejudice as a result of counsel's ineffectiveness. See Hill, 474 U.S. at 59, 106 S.Ct. at 370; also Strickland, 466 U.S. at 690-91. Under the governing standard of law Troya is required to demonstrate that absent counsel's ineffectiveness, and in this case mutually aggravating ineffectiveness that there is "a reasonable probability" that he would of sought to go to trial instead of choosing to enter a guilty plea, whereas he has satisfied such requirement. Padilla v. Kentucky, 559 U.S. ___, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

### Troya's Legally Innonence Claim Is Synonymous With Actual Innocence Under The Supreme Court's Holding In McQuiggin v. Perkins Allowing Him To Pass Through The Gateway For This Claim To Be Heard On Its Merit In-Lieu Of It Being Statutorily Time Barred

In McQuiggin v. Perkins, 133 S.Ct. 1924 (2013), the Supreme Court held that "actual innocence," if proved, is a gateway through which a habeas petitioner can make it into court even through the statute of limitation has run. Other courts' have readily recognized the importance of the Supreme Court's holding

35.

Troya070679

in McQuiggin clarifying its importance because of its potential for openning up the courthouse doors for prisoners who are innocent but whose convictions are so old that they otherwise would have been barred under a statute of limitations for seeking redress through collateral proceedings. See Parnell v. United States, 2013 U.S.Dist. LEXIS (S.D.Ala. July 18th, 2013). Parnell is a case on point with strong similarities to Troya's claim of 'legal innocence' and would otherwise be time barred for seeking collateral relief for such manifest injustice if not for the "gateway" provided to such legally innocence prisoners announced through the McQuiggin holding. McQuiggin carved out an actual innocence exception to the statute of limitations that stands on its own, separate and apart from the exception that already exist based on equitable tolling. The difference being between the two is that the McQuiggin exception does not require due diligence, but does require actual innocence; whereas equitable tolling requires due diligence but not a showing of actual innocence. Parnell, 2013 U.S.LEXIS *2.

Courts have clarified that "credible claims of legal innocence" may satisfy the assertion - of - innocent factors the same as a viable actual innocenc claim does under applicable standards of law anent exemption from statute of limitations barment. See United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007); citing United States v. Gauger, 2013 U.S.App.LEXIS 17293 (10th Cir. August 20th, 2013). Since the Supreme Court's ruling in McQuiggin the Fifth Circuit Court of Appeals held that, "[d]ue process of law prohibits the conviction of a factually innocent individual and/or a legally innocence individual," and thereby found no distinction between the two for analysis under the McQuiggin 'gateway' to pass through whether the impediment is one of a procedural bar, or expiration of the statute of limitations. See Phillips v. United States, No. 11-629, November 4th, 2013/BL-304341 (6th Cir. 2013); see also Garden v. Stephens, ____ F.3d ____, (5th Cir. 2013)(cert filed August 2, 2013); citing United States v. Gauger,

Troya070680

2013 U.S.App.LEXIS 17293 (10th Cir. Aug. 20th 2013). As previously noted an "[I]llegal sentence can be corrected at anytime. Nesbitt v. Sec'y Dep't of Corr., 2012 U.S.Dist.LEXIS 65482 (M.D.Fla. May 10th, 2012); also United States v. Jackson, 923 F.2d 1494 (11th Cir. 1991).

In Parnell the court held that his contentions in light of the Supreme Court's statement in National Federation of Independent Business v. Sebelius, ___ U.S. ___, 132 S.Ct. 2566, 183 L.Ed.2d 450 Jun. 28, 2012) that "the power to regulate commerce presupposes the existence of commercial activity to be regulated[.]" id. at, 132 S.Ct at 2586 (emphasis in original), and given that the phrase "any sexual activity" contained in §2422(b) does not in any manner constitute commercial activity, Congress exceeded its authority under the Commerce Clause when it included the "any sexual activity" language in §2422(b). Thus, according to Parnell, he is "actually innocent" of violating §2422(b) relying on the holding by the Supreme Court in McQuiggin v. Perkins, supra at 1928. Parnell had sought collateral relief claiming that his guilty plea was not knowing and intelligent because he was misinformed by the district court about the nature of the charge that he was pleading guilty to. The court held that Parnell was entitled to a hearing to make such determinations whether or not he plead guilty to a crime he did not commit and that such collateral challenges were not time barred based on the McQuiggin "actual innocence" gateway created by the Supreme Court in that case. Parnell, 2013 U.S.Dist.LEXIS 15897 (S.D.Ala. Nov. 6th, 2013). The Court went on to stress that, "Parnell's indictment charged him with only using a firearm in violation of §924(c)(1)," and that the district court was not authorized to accept or find him guilty of any other offense other than the one which he was indicted on. Id. at *2. This holding applies with equal force and consideration with Troya's conviction and sentence by the district court for a charge that he had not been indicted for or which was authorized under the charging affidavit.

37.

Troya070681

Under the charging affidavit Troya was charged with attempted escape. See Appx.(B). When the elements of the charge does not satisfy the statutory requirements of the defendant's conviction under the charging affidavit and/or indictment a fundamental injustice has occurred the same as if the defendant was legally innocent of the crime charged. Phillips v. United States, supra, 2013 BL 304341 (6th Cir. Nov. 4th, 2013). Here the district court found Troya guilty of and sentenced him for "escape", not the attempt to escape that he was charged with via charging affidavit and/or indictment. See Appx.(A). Whereas, attempted escape is not a lesser included offense of escape and cannot be reconciled by contending that it is submerged into the escape provisions. See Peoples Bailey, 279 P.3d 1120, _____. As in Parnell the court found that his plea was not knowing and intelligent because the court found him guilty of both "using" and "carrying" a firearm in violation of law, but the charging affidavit/indictment had only charged him with 'using' a firearm in violation of the statute that he was charged under. Thereby' after the the Supreme Court found that congress had exceeded its authority under the Commerce Clause when it included the 'any sexual activity' language in §2422(b), id at *1 and thereby invalidating elements of the charge Parnell's conviction rested on. The same holds true in Troya's conviction for escape, whereas he was charged by indictment/charging affidavit with 'attempted escape' and thereby his conviction is invalid under law the same as if he was actually innocent under the holding by the Parnell court. And' in turn, as the Parnell court found that he falls under and satisfies the McQuiggin gateway requirements overcoming any procedural impediment bar that may exist and/or expiration of the statute of limitation that might of otherwise prohibited the court's review of Troya's legally innocent claims.

Troya's Collateral Challenges To His Escape Conviction Should Be Considered

Troya070682

As Timily Under The Applicable Eleventh Circuit Authority

In Lackawanna County District Attorney v. Coss, 532 U.S. 394, 69 CrL 113 (2001) the Supreme Court established that federal courts have habeas jurisdiction to review aggravating prior convictions that they could not entertain in direct challenges to the prior conviction. In Section 2254 proceedings, federal courts enjoy jurisdiction over challenges to state convictions only when the individual is "in custody" pursuant to a state conviction. Custody as the court pointed out does not always mean or require incarceration. Lackawanna, 532 U.S. at 401-402; Maleng v. Cook, 490 U.S. 488, 491 (1989).

A person cannot be said to be directly in custody due to an aggravating prior conviction after the sentence has been completely served. Nevertheless, in Lackawanna, the Supreme Court ruled that the federal courts have jurisdiction over aggravating prior convictions because the individual is in custody pursuant to a sentence that has been enhanced pursuant to those past convictions. Id at 401. In other words by vacating the "aggravating prior conviction," the defendant may receive a significant reduction to their subsequent sentence. This is germane to Troya's case scenario, whereas his previous escape conviction was used as and found by the jury to be a statutory aggravator in determining a sentence of death in-lieu of a life sentence. See United States v. Troya, 2008 U.S.Dist.LEXIS 124364 (S.D.Fla. Oct. 9, 2008). The five-justice majority in Lackawanna agreed that a subsequently convicted defendant is "in custody" pursuant to an aggravating prior conviction that is used as a statutory enhancement. Lackawanna, 532 U.S. at 401. Here Troya's collateral challenge brought to the constitutionality of his escape conviction satisfies the jurisdiction mandate under the Lackawanna holding in recognizing that the government's use of such and the jury finding it as a statutory aggravator in imposing a death sentence in Troya's capital proceedings is synonymous with a aggravating prior conviction pursuant

34.

Troya070683

to a sentence that has been enhanced pursuant to those convictions. Thereby, Troya satisfies the 'custody' requisite in establishing the court's jurisdiction for entertaining this habeas petition.

### The Statute Of Limitations Began To Run From The Time The Jury Relied On Troya's Escape Conviction As A Statutory Aggravator In Sentencing Him To Death For Purposes Of These Collateral Challenges

In applying the Lackawanna exception it has been clarified that it does not create a new, indefinite and unlimited statute of limitations for habeas corpus attacks. Steward v. Moore, 555 F.Supp.2d 858, 867 (N.D.Ohio 2008). Yet' the courts' have held that, "where a petitioner challenge a subsequent conviction used to impose a suspended sentence, 'or used as a aggravator' to enhance another sentence', that the statute of limitations begins to run with the referenced proceedings on the suspended sentence, not on the (presumably earlier) date of the original conviction becoming final." Green v. Price, 439 F.App'x 777,782-83 (11th Cir. 2011). Further, the statute of limitations period is not jurisdictional, however, and must be plead as any other affirmative defense, and can be waived or forfeited by the state. Grigsby v. Cotton, 456 F.3d 727 (7th Cir. 2006)(Emphasis added to Original). Even habeas motion filed 17 years after sentencing was improperly dismissed because petitioner was denied opportunity to explain reason for dealy in filing and where government could not demonstrate any actual prejudice. Rizzo v. United States, 821 F.2d 1271, 1273 (7th Cir. 1987). Within the meaning of Green under the Lackawanna exception the statute of limitation began to run from the time the government used the escape conviction as a statutory aggravator and the jury relied on it to impose a sentence of death in March 2009. Further, there are other extraordinary circumstances justifying equitable tolling from that date of March 2009 that are ongoing and beyond Troya's control.

### Extraordinary Circumstances

Troya070684

The Eleventh Circuit requires not only "extraordinary circumstances," but also circumstances that are beyond the petitioner's control and unavoidable even with diligence to warrant equitable tolling. See Sandivk v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999); see also Johnson v. Florida Dep't of Corr., 513 F.3d 1328, 1332 (11th Cir. 2008). Here Troya satisfies both of the requisite requirements warranting equitable tolling.

The Eleventh Circuit has held that "[d]ue diligence . . . does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts." Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002). "Moreover, the due diligence inquiry is an individualized one that must take into account the conditions-of-confinement and the reality of the prison system the petitioner is subject to." Id. The facts proffered by Troya here attest to circumstances constituting "extraordinary" warranting equitable tolling.

Since being sentenced to death in March 2009 Troya has been housed within the BOP and with exception of acouple of weeks at the United States Penitentiary at Terre Haute, Indiana. Under applicable BOP Policy Troya is denied all access to Florida State Law materials, as well as has been denied access to any other inmate who has the legal acumen and/or experience to aid him with preparing a meaningful collateral postconviction challenge to his escape charge. Only with in the past six months did Troya fortuitously find another inmate with the legal acumen and experience to assist him with preparing the instant habeas petition, although such preparation was done with a in to-to prohibition to Florida State legal materials with exception of such state law reference via applicable federal citation. Such an ongoing impediment of this egregious nature satisfies the 'extraordinary circumstance' standard warranting equitable tolling. See Lawrence

41.

Troya070685

v. Florida, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007). A habeas petition cannot be dismissed anent a question of whether the petition was timely filed or not. Estremera v. United States, 724 F.3d 773, 775 (7th Cir. 2013). In fact the courts have readily recongized that a statute of limitation is nonjurisdictional and that addressing a petition on its merit prior to reviewing the timiliness of such petition is the far more prudent. Id. at 775-76.

Troya's 3.850 Motion Is Both Legally and Facially Sufficient

Under governing law Troya is entitled to one enencumbered opportunity to file a legally and facially sufficient collateral petition and to receive a decision on the merit to challenges to the legality of his escape conviction. Green v. Tucker, 2013 U.S.Dist.LEXIS 11891 (M.D.Fla. Jan. 29, 2013). This is Troya's first and only collateral petition filed challenging the legality of his escape conviction, whereas it clearly states all grounds for relief and the fact supporting each ground as it is required to do under well established law. Schlup v. Delo, 513 U.S. 298, 317, 323 (2013). Troya's petition is signed and declared to under penalty of perjury as mandated under applicable authority to constitute being a "legally and facially" sufficient 3.850 filing. Green v. Tucker, supra.

Conclusion

Based upon all of the above allegations, the entire record of this prosecution, arguments and authority cited therein, Troya respectfully request that the Court grant him the following relief:

1.   Require respondent's to file a Answer to Troya's Motion in the form prescribed under the applicable governing Rules of Fla.R.Crim.P.

2.   Permit Troya to file a traverse to the respondent's response, regarding any affirmative defense(s) asserted and/or other arguments presented in response.

3.   Conduct an evidentiary hearing to resolve any factual disputes raised by the respondent's response, because Troya has alleged facts which if proven

42

Troya070686

true, entitles him to relief. Troya is entitled to a full evidentiary hearing to establish the facts he presented through his 3.850 Motion. See Hurley v. Moore, 233 F.3d 1295, 1298 (11th Cir. 2000).

4.  Vacate Troya's guilty plea and conviction, and issue an appropriate order setting this case back on the docket for trial proceedings; and

5.  Grant Troya any other relief the Court finds to be equitable and just under the governing laws of the State of Florida.

RESPECTFULLY SUBMITTED,

75817-004.

Daniel A. Troya #75817-004
United States Penitentiary
P.O. Box 33
Terre Haute, IN 47808
Petitioner/Pro Se

## Declaration Under Penalty of Perjury

The undersigned does attest under pains of perjury that the above and foregoing is true and correct to the best of his knowledge and beliefs, whereas such declaration is made under the applicable laws of the State of Florida.

75817-004.

Daniel A. Troya
declarant

Subscribed and sworn to me this ___6___ day of February, 2014.

Notary Public

JOHN SAMUEL EDWARDS III
Notary Public, State of Indiana
Clay County
My Commission Expires
October 24, 2018

My Appointment Expires:
10 / 24 / 2018

## Certificate Of Service

I hereby certify that on the ___6___ day of February, 2014 I deposited in

43.

Troya070687

the United States Mail, first class postage prepaid, a true and correct copy of the foregoing 3.850 Motion for Habeas Corpus Relief addressed to:

State Attorney General
State Attorney General Office
State of Florida
The Capitol P1-01
Tallahassee, Fl 32399-1050

Daniel A. Troya
declarant

44.

Troya070688

Appendix (A)
3.850 Petition

(166)



RESERVED FOR RECORDING

| ☒ IN THE CIRCUIT COURT, EIGHTEENTH JUDICIAL CIRCUIT, BREVARD COUNTY, FLORIDA | | |
|---|---|---|
| ☐ IN THE COUNTY COURT, BREVARD COUNTY, FLORIDA | | |

| DIVISION | | CASE NUMBER |
|---|---|---|
| ☐ CIVIL<br>☒ CRIMINAL<br>☐ JUVENILE<br>☐ TRAFFIC | ☒ JUDGMENT<br>☐ JUDGMENT/ORDER OF PROBATION<br>☐ JUDGMENT/ORDER OF COMMUNITY CONTROL | 05 203 CF 19063 A-XXX-XX |

| PLAINTIFF | DEFENDANT | FILED IN OPEN COURT |
|---|---|---|
| STATE OF FLORIDA<br>vs | Daniel A. Troya<br>First   Middle   Last   Suffix<br><br>OBTS NO. 0501068125 | This ____ day of ___<br>20_5_ at 5.32 P M.<br><br>CLERK OF COURTS<br>BY _____ DC |

☐ PROBATION VIOLATOR          ☒ RESENTENCE
☐ COMMUNITY CONTROL VIOLATOR   ☐ AMENDED AS TO _____
☐ RETRIAL                      ☐ VICTIM IS A MINOR

Court was opened with the Honorable ___CHARLES M. HOLCOMB___ presiding, and in attendance:
State Attorney _I. GILL / A. NIXON_ ; Trial Clerk _C. MAHANEY / L. TODD_
Court Reporter _C. REDDOW / M. CIPO_ On _F 28 05_
The defendant, _Daniel A. Troya_ , being personally before the court represented by
_M Simpson_ , his attorney of record, and having

☐ Been tried and found guilty ☐by jury ☐by court of the following crime(s)
☒ Entered a plea of guilty to the following crime(s)
☐ Entered a plea of nolo contendere to the following crime(s)

| COUNT | CRIME | OFFENSE STATUTE NUMBER(S) | DEGREE |
|---|---|---|---|
| 1 | Escape | 944.40 | F-2 |

☐ THE ☐ PROBATION ☐ COMMUNITY CONTROL PREVIOUSLY ORDERED IN THIS CASE IS REVOKED.
☐ THE PRIOR ADJUDICATION OF GUILT IN THIS CASE IS CONFIRMED.
and no cause having been shown why the defendant should not be adjudicated guilty.
☐ IT IS ORDERED THAT ADJUDICATION OF GUILT BE WITHHELD.
☒ IT IS ORDERED THAT the defendant is hereby ADJUDICATED GUILTY of the above crime(s).
☐ and having been convicted or found guilty of, or having entered a plea of nolo contendre or guilty,
regardless of adjudication, to attempts or offenses relating to sexual battery (ch.794), lewd and lascivious conduct
(ch.800), or murder (s. 782.04), aggravated battery (s. 784.045), burglary (s. 810.02), carjacking (s. 812.133), or home
invasion robbery (s. 812.135), or any other offense specified in section 943.325, the defendant shall be required to submit
blood or other biological specimens.

| DONE AND ORDERED<br>BREVARD COUNTY, FL | _____<br>JUDGE | DATE<br>1-28-05 |
|---|---|---|

LAW 172     DISTRIBUTION:  ORIGINAL-COURT FILE    [ ] DEFENDANT      [ ] PROBATION & PAROLE     [ ] SHERIFF
Troya070689                            [ ] DEFENSE ATTORNEY/PD   [ ] STATE ATTORNEY     [ ] DEPT. OF CORRECTIONS(2)

APPENDIX (B) 3.850 Petition (113)

**ARREST/NOTICE TO APPEAR**
**PROBABLE CAUSE AFFIDAVIT/**
**JUVENILE REFERRAL**

| Location of Offense (Business Name, Address) |
| --- |
| Brevard Correctional Institution, 855 Camp Rd, Cocoa, FL |

FDLE Number: 04947508  DOC Number: 414211  FBI Number: 474209183

Name (Last, First, Middle): TROYA, Daniel A.   Alias: NONE

| Race | Sex | Date of Birth | Height | Weight | Eye Color | Hair Color | Complexion | Build |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| W | M | 04/27/87 | 5'11 | 177 | BRN | BRN | Light | Medium |

Scars, Marks, Tattoos, Unique Physical Features: NONE NOTED

Local Address (Street, Apt. Number): Brevard C.I. 855 Camp Rd   (City) Cocoa   (State) FL   (Zip) 32927   Phone: 321 634-6000

Social Security Number: 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   Place of Birth: ILLINOIS   Citizenship: U.S.

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that the above-named Defendant committed the following violation of law:

On the 26th day of November 2002 at 31:29

Inmate Daniel Troya, Inmate Jeffrey Buchson and Inmate Erik Vanlydick, while under sentence and commitment of the Florida Department of Corrections, and while incarcerated at Brevard C.I. did attempt to escape from Brevard C.I. by exiting through a window in the dormitory, placing makeshift dummies in their assigned bunks, and wearing home made civilian clothes. Inmate Troya, after being advised of his Miranda rights, declined to make a statement. All evidence pertaining to this case is maintained in the Inspector's Office. A copy of the investigative report is attached.

In accordance with F.S.S. 948.21, I hereby request reimbursement of investigative costs consisting of ____ hrs @ $____ per hr and/or ____ miles @ ____ per mile for a total of $____. Affidavit enclosed Y___ N___.

**Mandatory Appearance in Court**

I AGREE TO APPEAR AT THE TIME AND PLACE DESIGNATED TO ANSWER THE OFFENSE CHARGED OR TO PAY THE FINE SUBSCRIBED. I UNDERSTAND THAT SHOULD I WILLFULLY FAIL TO APPEAR BEFORE THE COURT AS REQUIRED BY THIS NOTICE TO APPEAR, THAT I MAY BE HELD IN CONTEMPT OF COURT AND A WARRANT FOR MY ARREST OR A TAKE INTO CUSTODY ORDER SHALL BE ISSUED.

Sworn to and subscribed before me, this ___ day of Feb. 2003

Lona B Roger   LONA B ROGERS

Officer: B.E. Glover, Inspector

| COURT FILE | STATE ATTORNEY | SHERIFF'S RECORDS | JAIL | LAW ENFORCEMENT | DEFENDANT'S COPY |
| --- | --- | --- | --- | --- | --- |

Troya070690

*Appendix (C) 3.850 Petition*

## PRESENT OFFENSE

(23)

Plea Agreement: Pre-plea.

Circumstances: On November 26, 2002 at approximately 3:23 a. m., the defendant, Daniel Troya and co-defendants Jeffrey Burleson and Erik Vonlydick, while under sentence and commitment of the Florida Department of Corrections, and while incarcerated at Brevard Correctional Institute, did attempt to escape from the Brevard Correctional Institution, by exiting through a window in the dormitory, placing makeshift dummies in their assigned bunks and wearing homemade civilian clothes.

Correctional Officer Lawrence Henderson, while assigned as "J" Dormitory Housing Officer, and while conducting a security check of the fire exit door in wing #3, observed three unescorted inmates running outside of "M" Dormitory. All three inmates were apprehended without incident.

During the search, on top of "J" Dormitory, a pillowcase containing a homemade screwdriver, a pair of inmate work gloves and 9 sections of rope, constructed from inmate bed sheets were recovered.

A search cell # 202 "D" Dormitory revealed the defendant and co-defendants used an automobile screwdriver to separate the metal windowpanes in order to exit through the window. It was also discovered that the defendant and co-defendant constructed mannequins from inmate uniforms with the use of toilet paper, the insides of mattresses and pillows, library books and other clothing. The mannequins were placed into their respective assigned bunks, so that it appeared that they were present.

Defendant's Statement:

## VICTIM IMPACT & RESTITUTION

**EXTENT OF VICTIM INJURY OR LOSS** (summary): None

**VICTIM'S STATEMENT:**  See Attached ☐

Restitution:   NO ☒   YES ☐ (Specify amount, name, address, phone #, and how payable)

| Name | Address | Phone # | Amount | Case or UC # |
|------|---------|---------|--------|--------------|
| Payable to: | | | $ | |
| Payable to: | | | $ | |
| Payable to: | | | $ | |
| Payable to: | | | $ | |
| | | TOTAL | $ | |

DC3-215 (Revised 12-02)                                                                                              Page 2

Troya070691

Appendix (D) 3.850 Petition



**FLORIDA
DEPARTMENT of
CORRECTIONS**

05-2003-CF-19063-CxRx-xx

SCOTT ELLIS

2004 DEC -9 A 11: 22

CLERK OF CIR. CT.
BREVARD CO. FL.

Governor
**JEB BUSH**

Secretary
**JAMES V. CROSBY, JR.**

*An Equal Opportunity Employer*

2601 Blair Stone Road · Tallahassee, FL 32399-2500

http://www.dc.state.fl.us

December 3, 2004

The Honorable Charles Holcomb
Circuit Judge of Brevard County

RE: Inmate Troya, Daniel DC# W14211

Dear Judge Holcomb:

The above inmate was received into the Department's custody on 12-3-2003, after having been sentenced in Brevard County case number 03-19063. This case was ordered to run concurrent to the prison term inmate Troya is currently serving. We have structured these sentences to run concurrent as directed.

Case number 03-19063 is a conviction under Florida Statutes 944.40 for Escape. That statute states, in part: "The punishment of imprisonment imposed under this section <u>shall</u> run <u>consecutive</u> to any former sentence imposed upon any prisoner." [emphasis added]

If there is any change made regarding how case number 03-19063 should run to this inmate's other cases, please have the clerk's office forward a corrected commitment in that case to the undersigned.

Sincerely,

*Natasha Carter*

Natasha Carter
Bureau of Sentence Structure & Population Management
Phone: (850) 488-4960; Facsimile number (850) 922-6016
e-mail: Carter.Natasha@mail.dc.state.fl.us

cc: Assistant State Attorney Gary F. Large

33
64

Troya070692

P.O. Box 33

Terre Haute, IN 47808

Darron Terry

STATE OF FLORIDA, COUNTY OF BREVARD
I HEREBY CERTIFY that the above and foregoing
is a true copy of the original filed in this office
SCOTT ELLIS, Clerk Circuit and County Court
DATED JAN 27 2016 BY _____ D.C.

Brevard county clerk of courts
P.o. Box 219
Titusville, Florida 32781-0219



7009 1680 0000 7043 9723

  

  

Troya070693

03CF-019063 CXqp 4/r

Clerk Of The Court
Brevard County Courthouse
700 S. Park Ave #H
Titusville, FL 32780

**SCOTT ELLIS**

**2014 FEB 27  AM 9: 51**

FILED IN TVL-01
CLERK OF CIR. CT.February **6th** , 2014
BREVARD CO. FL

RECEIVED
FEB 1 3 2014

Dear Clerk,

Please find enclosed my Motion for Postconviction Relief, whereas I have enclosed the original and two copies of my Habeas Petition filed pursuant to Rule 3.850;Fla.R.Crim.P. for filing with the court. The habeas petition I believe fully satisfies all filing requirements including page limitations, as well as all other mandated under law for filing and processing the same. If for any reason additional information and/or documentation is required for filing and processing the instant action please advise and I will provide such.

If filing fees are necessary for docketing and processing this action please advise and I will have such cost satisfied. Thank you for your attention to this matter...

Sincerely,

Daniel a. Troya

Daniel Anothony Troya #75817-004
United States Pentintiary
P.O. Box 33
Terre Haute, IN 47808
Petitioner/Pro Se

DAT/wip

cc: file

Case # 05-2003-CF-019063-CXXX-XX
Document Page # 57

*22483808*

Troya070694