

## VILLANOVA UNIVERSITY SCHOOL OF LAW

DONALD N. BERSOFF
DIRECTOR, J.D./PH.D PROGRAM
IN LAW AND PSYCHOLOGY

PHONE 610-519-7948
FAX 610-519-6282
INTERNET E-MAIL:
BERSOFFD@LAW.VILL.EDU

June 27, 2001

APA Ethics Office
American Psychological Association
750 First St., NE
Washington, DC 20002-4242

Dear Ethics Office:

I am filing the enclosed complaint against Thomas V. Ryan, Ph.D. Joining me in this complaint are three defendants found guilty of murder against whom Dr. Ryan testified with regard to sentencing. One of these defendants, Mr. Stitt, is on death row awaiting execution. The two others are serving life sentences.

The allegations against Dr. Ryan are serious and require immediate attention. As I explain in the complaint, it is literally a matter of life and death.

I appreciate your prompt attention to this matter. If there is additional information or clarification you require, please let me know.

Sincerely yours,

Donald N. Bersoff, Ph.D., J.D.

**ETHICS COMPLAINT FORM**
**APA ETHICS OFFICE**

Please type or print in ink.  The document entitled "Information for Individuals Filing APA Ethics Complaints" which is included as part of the Ethics Complaint Packet may assist you in completing this form.

1. Person Making Complaint: Donald N. Bersoff, Ph.D., J.D.

Address: 780 College Ave.
Haverford, PA 19041

Phone: (610) 519-7948 (to 7/31/01), 649-8448 (after 8/1/01)

2. Member(s) Against Whom You Are Complaining:
Thomas V. Ryan, Ph.D.

Address: Slatley Complex, Suite C-1, 511 Thornrose Ave.
Staunton, VA 24401

Phone: (540) 887-2773

3. Please specify as accurately as possible the earliest date and the most recent date of the alleged unethical behavior:

_____

4. Have you discussed this situation with the psychologist(s) you are complaining about?
___✓___ Yes          _____ No

5. Are you a member of the American Psychological Association?
___✓___ Yes          _____ No

6. Have you filed a complaint with any other organization(s)?
_____ Yes          ___✓___ No

   **If you answered Yes, please indicate below where else you have filed and the date:**

   _____ State Licensing Board _____
   _____ State Psychology Association Ethics Committee _____
   _____ Civil suit (e.g., malpractice) _____
   _____ Grievance Committee _____
   _____ Other _____

   {Please describe the status of these complaint(s) in Item #7}

Ethics Complaint Form
Page 2

7. Please help us to understand your complaint by providing the following information typed or printed (in ink) on separate paper:

    (a)   A **concise**, one paragraph summary of the nature of the alleged ethical misconduct;

    (b)   A detailed description of the alleged misconduct, specifying as accurately as possible the <u>dates</u> and:

        (i)   the sequence of events leading up to the behavior,

        (ii)  a complete account of the behavior and the Ethical Standards you believe have been violated,

        (iii)  any relevant information about what happened after the behavior occurred,

        (iv)  the status of any other complaints you have filed and any other steps you have taken to address this situation.

## RELEASES

8. I hereby give the member(s) against whom I am making this complaint permission to give the APA Ethics Committee any confidential information regarding me, including any records of our interactions, and to answer all questions the Committee may have concerning such information.

Signature: _Dorothy Benoff_      Date: _6/27/01_

9. I hereby give the APA Ethics Committee permission to send to the member(s) against whom I am making this complaint copies of any materials submitted by me or on my behalf concerning this complaint.

Signature: _Dorothy Benoff_      Date: _6/27/01_

10. I hereby waive any right to subpoena from APA or its agents, for the purposes of private civil litigation, any documents or information concerning this matter.

Signature: _Dorothy Benoff_      Date: _6/27/01_

_See attachment ~ Exhibit A_

**\*\*\*\* IMPORTANT \*\*\*\***

Please sign each of the releases without modification. We will only process your complaint form if these releases are complete. If they are incomplete, processing of your complaint will be delayed while we return this form to you for your signature.

Date revised: August 14, 1996

**Please return completed form to:**
**APA Ethics Office, 750 First Street, NE, Washington, DC 20002**

Ethics Complaint Against **Thomas V. Ryan, Ph.D**, of Staunton, Virginia
Complainant:  Donald N. Bersoff, Ph.D, J.D.

Responses to Question 7

Question 7(a)

This complaint concerns seriously misleading statements about violence risk assessment and future dangerousness offered by Dr. Ryan as an expert witness in three criminal cases, each involving the death penalty.  I believe Dr. Ryan acted unethically in each instance.

* In U.S. v. Haynes, Dr. Ryan submitted to the court a misleading and empirically unsupported evaluation and prediction of the defendant's future dangerousness.  Upon receipt of affidavits from myself and several psychologists prominent in the field of risk assessment identifying the gravity of these flaws, Dr. Ryan's report and the offer of his testimony were withdrawn.  The defendant, Mr. Haynes, was sentenced to life without parole.

* The statements about the defendant's future risk of violence that were withdrawn in Haynes were very similar to the misleading and unsupported testimony Dr. Ryan had given as a witness in an earlier case, U.S. v. Stitt.  That defendant, Mr. Stitt, was sentenced to death.  After the Haynes report was withdrawn, I and another psychologist contacted Dr. Ryan to discuss his ethical obligation with respect to the Stitt testimony. Dr. Ryan, however, denied any ethical impropriety and declined to retract his testimony.

* In the third matter, Idaho v. Smith, during sworn testimony Dr. Ryan misled the court by dissembling about the events in the Haynes case.  The defendant, Mr. Smith, was sentenced to life without parole.

These three events occurred between May and October 2000.

Q 7(b)

### Case 1 – United States v. Willis Haynes

This case was a death penalty prosecution tried in Maryland's federal district court. As the prosecution's expert witness, Dr. Ryan submitted a capital sentencing evaluation of Willis Haynes, the 22-year-old African American defendant.  (Dr. Ryan's report dated May 12, 2000 is attached as Exhibit B.  The Committee is directed particularly to pages 5-7, the risk assessment segment of his evaluation.)  Without ever having interviewed Mr. Haynes (who declined to see any examiner), Dr. Ryan offered the opinion that he was a psychopath likely to continue to be dangerous in the future, even in a federal maximum security penitentiary.  As the basis for his opinion, Dr. Ryan substantially relied on two instruments: the Hare Psychopathy Checklist Revised (PCL-R) and the HCR-20.  As I will explain in further detail below, I believe Dr. Ryan's actions in this case were at odds with accepted

professional standards as set forth in the APA's Code of Ethics and the Specialty Guidelines for Forensic Psychologists.   As set forth in the affidavit I submitted to the Haynes court, it is my opinion that "given the dearth of data generally accepted in the relevant psychological community to support his opinion, his improper generalization of the test scores to the defendant, his failure to appropriately address the lessened accuracy of his findings as a result of the absence of a personal interview, and his misleading use of extant studies, Dr Ryan acted below the professional standards of those holding themselves out as forensic psychologists."

The relevant events concerning the Haynes case are as follows.  Dr. Ryan was the prosecution's expert on the issue of future dangerousness.  A defendant found guilty of a federal capital offense may be sentenced either to life in prison without the possibility of parole, or execution.  In deciding between these two alternatives, the prosecution may allege as an "aggravating factor" that the defendant will continue to be dangerous even if sentenced to life imprisonment without any chance of release.  Dr. Ryan's report asserted a scientific foundation for the opinion that Mr. Haynes would be violent and dangerous in prison.  Dr. Ryan claimed that "a plethora of empirical studies" demonstrated that individuals like Mr. Haynes "are at very high risk for violence recidivism, including those who are institutionalized."

After Dr. Ryan's report had been submitted by the prosecution, but before he was called to testify to his conclusions, four nationally known academic researchers and experts in forensic psychology reviewed the report at the request of Mr. Haynes' counsel.  They included:  Stephen Hart, a psychology professor at Simon Fraser University who was extensively involved in the development and validation of both the PCL-R and the HCR-20 and whose work on violence risk is known and respected throughout North America and Europe; Kirk Heilbrun, chair of the Department of Clinical & Health Psychology at MCP Hahnemann University, co-director of its Law & Psychology Department, and a leading expert on violence risk assessment; John Edens, a faculty member in the Department of Psychology at Sam Houston State University, who specializes in violence risk assessment and has performed research involving the PCL-R and violence risk; and Norman Poythress, a professor in the Department of Mental Health Law and Policy at the University of South Florida and co-author of the highly regarded treatise Psychological Evaluations for the Courts, who has also conducted research involving violence risk assessment and the PCL-R.

Based on their extensive knowledge of the field, all four of these experts contradicted seriously misleading and inaccurate statements at the core of Dr. Ryan's report.  Each provided for the court a sworn affidavit detailing the lack of scientific support for Dr. Ryan's statements and conclusions.  The Committee is referred to the full text of these very powerful affidavits.  In summary, however, the affidavits explain that use of the PCL-R and HCR-20 for prediction of violence in a maximum security prison is not justifiable; and that additional issues prevent reliance on these instruments where the individual to be evaluated is (a) African-American; (b) of young age; and (c) has been evaluated solely on the basis of a records review without benefit of clinical interview.

The affidavit I submitted to the court in Haynes analyzes in ethical terms the substantive deficiencies identified by Drs. Hart, Heilbrun, Edens and Poythress, as well as certain misleading turns of phrase used by Dr. Ryan. It states my opinion that Dr. Ryan could be viewed as violating at least nine provisions of the APA ethics code as well as five provisions of the Specialty Guidelines. My affidavit and the affidavits of the other four experts are attached as Exhibit C.

The prosecution, after reviewing the affidavits critical of Dr. Ryan's evaluation, withdrew Dr. Ryan as a witness. Its notice to the court stated:

> After reviewing the affidavits filed by the defendant in support of his motion, including the affidavit of Donald N. Bersoff which stated an opinion that Dr. Ryan acted below the applicable professional standards, and after additional consultation, Dr. Ryan retracted his report entitled "Capital Sentencing Evaluation."

Based upon Dr. Ryan's retraction of his report, the government will not be introducing the results of the PCL-R analysis or the diagnosis of psychopath as set forth in his report.

The prosecution's submission is attached as Exhibit D.

## Case 2 – United States v. Richard Stitt

Following the retraction of his report in Haynes, Dr. Stephen Hart and I learned that Dr. Ryan had given very similar testimony in a previous case in which he had acted as the prosecution's future dangerousness expert, U.S. v. Richard Stitt. That case, too, was a federal death penalty trial. In Stitt, however, unlike Haynes, Dr. Ryan's opinion testimony regarding the defendant's future dangerousness had gone essentially unchallenged. Relying on the same types of misleading assertions about the PCL-R that had been criticized and subsequently withdrawn in Haynes, Dr. Ryan had testified forcefully that Mr. Stitt, an African-American, was a psychopath, that as such he could not be rehabilitated, and that he posed a high risk of future violence, even in a federal penitentiary, for the rest of his life. Mr. Stitt was sentenced to death. Immediately below, are two answers Dr. Ryan gave with regard to his evaluation of Mr. Stitt's predilection for future violence

> A.      [M]y opinion is that in problemistic (sic) terms he's at high risk for committing future violence. I know that there are two different scenarios, one being out in the community and one being in federal prison. My opinion is that although the risks may be slightly lower in a maximum security facility, it's still high. [Tr. 973.]

> A.      In a prison, I remain convinced that it would be a moderate to very high risk. [Tr. 974.]

Dr. Ryan claimed that research demonstrated that neither treatment nor aging would diminish the threat posed by Mr. Stitt:

Q.    Dr. Ryan, in your expert opinion and with a reasonable degree of scientific certainty, do you believe that the defendant, Richard Stitt, is amenable to any treatment?

A.    I believe that based upon my assessment of treatment that has been attempted with him as well as the research that looks at treatment for individuals with anti-social features, psychopathy, that he is not amenable to treatment, unfortunately.

Q.    Do you believe that the defendant, Richard Thomas Stitt, will be amenable to any rehabilitation of his criminal conduct?

A.    No, I do not.

Q.    Do you believe that the defendant, Richard Thomas Stitt, will be able to stop his violent behavior?

A.    I can't say that with a hundred percent accuracy, but my clinical opinion and talking in probabilities is no, there's no reason to suspect that that would decrease or stop.

Q.    That is also in the confines of a federal penitentiary?

A.    Correct, and reference to some of Dr. Pasquale's testimony about age, it is true that after age 40 the incidence of violence does decrease dramatically and as a neuropsychologist, we are interested in that and it appears it has something to do with decrease in testosterone levels in men.  However, there is evidence that shows individuals diagnosed as psychopaths, the incidence of violence does not decrease as it does in non-psychopaths. [Tr. 983-984.]

Dr. Ryan's testimony erroneously suggested to the jury that the violence prediction he was making with respect to Mr. Stitt was exactly the purpose for which the PCL-R had been created.  The PCL-R, according to Dr. Ryan, was "really developed in order to get a better handle on more violent criminal offenders and as to whether or not they are at greater risks...." [Tr. 959.]  According to Dr. Ryan, "the DSM-IV ... didn't seem to be very effective in predicting whether or not an individual would then go on and commit future acts of violence.  So this particular measure was developed in order to get a better handle on this whole notion of psychopathy.  [Tr. 959-960.]

Dr. Ryan testified repeatedly that his use of the PCL-R with an African American individual was well-justified and had been endorsed personally by Dr. Robert Hare, author of the instrument.  "I was so interested in the checklist and whether, in particular, it could be applied to African-American populations that I contacted Dr. Hare personally." [Tr. 960].  [See also Tr. 1021-27.]

Although retained as a partisan witness by the prosectuion, which was he paying him at the hourly rate of $450 [Tr. 993], Dr. Ryan attempted to portray himself as having a

neutral role in the case:

> A.    I came and I introduced myself and indicated to Mr. Stitt who I was and that I had been retained **by the government to provide an objective independent assessment**, and that the relationship that I would have with him is different than your typical doctor-patient relationship. I wasn't there to care for him and follow his care. I was asked to provide **an objective assessment** and that I may or may not see him again, and that I would provide a report that would go to the government, the courts and the other parties. [Tr. 957-58; emphasis added.]

By letter dated August 21, 2000, Dr. Stephen Hart and I brought to Dr. Ryan's attention our serious concerns about his testimony in the Stitt case. We pointed out how similar it was to the statements retracted in Haynes, and asked him to join together with us to inform the appropriate authorities in the U.S. Department of Justice about the situation. Dr. Ryan refused to do so, denying that his testimony presented ethical concerns. The correspondence originated by Dr. Hart and myself and Dr. Ryan's response are attached as Exhibit E.

## Case 3 – Idaho v. Smith

On October 13, 2000, Dr. Ryan testified as a prosecution witness in a state death penalty sentencing in Idaho. Questioned under oath about the events that led to retraction of his report in Haynes, Dr. Ryan gave answers that were evasive, combative and misleading. Although difficult to convey in excerpted fashion, the flavor of Dr. Ryan's testimony and his apparent disregard for the truth may more readily be appreciated by listening to his tape recorded testimony. An official transcript of the court proceedings has not yet been produced, but the Idaho court has provided audio tapes of the procedings. An audio tape of portions of Dr. Ryan's testimony is provided as Exhibit F.

In essence, Dr. Ryan claimed that there was nothing inappropriate about his use of the PCL-R and HCR-20 in Haynes, and that ethical considerations and the criticisms contained in the affidavits of the other four experts and myself played no role in the retraction of the report – an assertion plainly contradicted by Exhibit D, where it is stated:

> After reviewing the affidavits filed by the defendant in support of his motion, including the affidavit of Donald N. Bersoff which stated an opinion that Dr. Ryan acted below the applicable professional standards, and after additional consultation, Dr. Ryan retracted his report entitled "Capital Sentencing Evaluation."

Responding to cross-examination questions suggesting that Stephen Hart's affidavit demonstrated that his (Dr. Ryan's) use of the PCL-R and the HCR-20 in the Haynes case was inappropriate, Dr. Ryan answered:

A.    He didn't say my use. He said its use, in a generic fashion. There was nothing in there about what I did or what my procedures were about.

Dr. Ryan went on to suggest, in a highly misleading fashion, that the Haynes evaluation was never actually "filed":

A.    (Dr. Ryan) By the way, that report was never filed.

Q.    It was tendered, was it not?

A.    Yes, but they never filed with the courts.

Q.    Okay. It was actually given to the U.S. Attorney, right?

A.    Yes.

Dr. Ryan repeatedly asserted that the only part of his Haynes evaluation that was problematic was his statement that "a plethora" of research supported his conclusions. He stated that "plethora might have been a stronger word than I probably would have used today." Asked under oath for citations to research that supported his claims, however, Dr. Ryan was unable to identify anything at all.

Dr. Ryan testified that he withdrew the Haynes report on his own volition, without prompting from the prosecution and not on account of external criticism, because "what I realized is that by not having seen the defendant, and because of the gravity of the case, because it was a capital murder case, that I did not want to submit my report and let that be part of the reocrd. So I decided to withdraw my report from the case. And that hurt the U.S. Attorneys I was working with and I knew that. But I made that professional judgment, to be conservative, and to not have my report be part of the record. So I withdrew it, and I did not testify in that case.

**Conclusion**

In the affidavit I submitted about Dr. Ryan's evaluation in Haynes, I noted the ethical standards that might be relevant. They are a nonexhaustive but relatively inclusive list that could apply to all three of these cases.

One of the major purposes of the Ethics Code and the Specialty Guidelines is to safeguard against the misuse of science and to ensure that empirically-supported and generally accepted scientific conclusions are presented to the court. Forensic experts recognize that their credentials and testimony may have a profound impact on jury and judge decisionmaking and, therefore, have a responsibility to confirm that their opinions are firmly grounded in science and that any inferences they draw from science are generally supported. It is my opinion that Dr. Ryan failed to act as a cautious, objective scientist; his testimony belies a committed but incompetent advocate acting in a self-protective manner. As Dr. John Edens has written recently regarding the events in Haynes:

Although the use of PCL-R results in the context of release decision-making for an offender clearly would be defensible on ethical and scientific grounds (i.e., given the established association with recidivism), allowing such results to influence what is literally a life or death decision by a jury when that information is not particularly relevant to the issue at hand (i.e., likelihood of future institutional violence) seems not only incompetent and factually misleading, but also highly unethical.

Edens, J. (in press). Misuses of the Hare Psychopathy Checklist-Revised in court: Two case examples. Journal of Interpersonal Violence. A pre-publication copy of Dr. Edens' article is attached as Exhibit G.

Clearly, Dr. Ryan's failure to guard against the misuse of his influence and to take responsibility for fairness and accuracy in his public statements not only damages psychology's reputation for honesty and candor in the courts; it is truly a matter of life and death for those he evaluates.

Because Dr. Ryan will likely testify in future death penalty cases I urge the committee to adjudicate this matter as expeditiously as possible.

**ETHICS COMPLAINT FORM**
**APA ETHICS OFFICE**

Please type or print in ink. The document entitled "Information for Individuals Filing APA Ethics Complaints" which is included as part of the Ethics Complaint Packet may assist you in completing this form.

1. Person Making Complaint:  __SHAWN ERIC SMITH  #49159__

Address:  ___Idaho Maximum Security Institution - C-Block___

_____PO Box 51, Boise, ID  83702_____

Phone: (   )  __N/A__

2. Member(s) Against Whom You Are Complaining:  __DR. THOMAS RYAN__

Address:  __STATLER COMPLEX, SUITE C-1, 511 THORNROSE AVENUE, STAUNTON, VA  24401__

Phone: (540)  __887-2773__

3. Please specify as accurately as possible the earliest date and the most recent date of the alleged unethical behavior:

_October 10-13, 2000 and March 23, 2001_

4. Have you discussed this situation with the psychologist(s) you are complaining about?     _____ Yes     __X__ No

5. Are you a member of the American Psychological Association?     _____ Yes     __X__ No

6. Have you filed a complaint with any other organization(s)?     _____ Yes     __X__ No

   **If you answered Yes, please indicate below where else you have filed and the date:**

   _____ State Licensing Board _____
   _____ State Psychology Association Ethics Committee _____
   _____ Civil suit (e.g., malpractice) _____
   _____ Grievance Committee _____
   _____ Other _____

   {Please describe the status of these complaint(s) in Item #7}

Ethics Complaint Form
Page 2

7. Please help us to understand your complaint by providing the following information typed or printed (in ink) on separate paper:

  (a)  A concise, one paragraph summary of the nature of the alleged ethical misconduct;

  (b)  A detailed description of the alleged misconduct, specifying as accurately as possible the <u>dates</u> and:

       (i)  the sequence of events leading up to the behavior,

       (ii)  a complete account of the behavior and the Ethical Standards you believe have been violated,

       (iii)  any relevant information about what happened after the behavior occurred,

       (iv)  the status of any other complaints you have filed and any other steps you have taken to address this situation.

**RELEASES**

8.  I hereby give the member(s) against whom I am making this complaint permission to give the APA Ethics Committee any confidential information regarding me, including any records of our interactions, and to answer all questions the Committee may have concerning such information.

Signature: _____  Date: 6-21-0

9.  I hereby give the APA Ethics Committee permission to send to the member(s) against whom I am making this complaint copies of any materials submitted by me or on my behalf concerning this complaint.

Signature: _____  Date: 6-21-0

10.  I hereby waive any right to subpoena from APA or its agents, for the purposes of private civil litigation, any documents or information concerning this matter.

Signature: _____  Date: 6-21-1

**** **IMPORTANT** ****

Please sign each of the releases without modification. We will only process your complaint form if these releases are complete. If they are incomplete, processing of your complaint will be delayed while we return this form to you for your signature.

Date revised:  August 14, 1996

Please return completed form to:
APA Ethics Office, 750 First Street, NE, Washington, DC  20002

Ethics Complaint Against Thomas V. Ryan, Ph.D. of Staunton, Virginia
Complainant:  Shawn Eric Smith

Responses to Question 7

Question 7(a)

This complaint concerns seriously misleading statements about prior testimony provided by Dr. Thomas Ryan in the case of <u>United States v Willis Haynes.</u>   Dr. Ryan provided testimony about the Haynes case when testifying as to neurological testing and evaluation of the defendant in <u>Idaho v Smith</u>.

Dr. Ryan testified as a prosecution witness at the resentencing hearing of a capital charged defendant in the state of Idaho.  The imposition of a death sentence was a strong possibility as death had previously been imposed at the initial sentencing.

An official transcript has not been prepared, although audio tapes were made available to counsel.

Dr. Ryan  had submitted a report on the client in the Haynes case and had utilized the PCL-R in evaluating the defendant.  Dr. Ryan only reviewed documents to conduct the evaluation;  never interviewing the defendant.  When the report provided to the US Attorney General office was given to defense counsel, defense counsel contacted four (4) experts who submitted affidavits contradicting Dr. Ryan's evaluation.   These experts were individuals who had 1) assisted in the development of the PCL-R testing instrument, experts in the assessment of risk assessment and 3) the ethical standards and obligations of professionals in forensic settings.  Dr. Ryan's report was then withdrawn.  The following are excerpts from Dr. Ryan's testimony in the <u>Idaho v Smith</u> case:

Mr. Kehne:     Okay, and did the author, Stephen Hart, tell you, you should not mention in your report that this is a research tool?
Dr. Ryan:     Of course he didn't say that.
Mr. Kehne:     But you didn't say that in your report, did you"
Dr. Ryan:     No, I did not.   By the way, that report was never filed.
Mr. Kehne:     It was tendered, was it not?
Dr. Ryan:     Yes, but it was never filed with the courts.
...
Mr. Kehne:     And after they received it, they got an affidavit from one of the authors, Stephen Hart, who you just mentioned, right"
Dr. Ryan:     That's correct.
Mr. Kehne:     Stephen Hart said your use of that instrument, as described in your report is improper, right?
Dr. Ryan:     He didn't say my use.  He said its use, in a generic fashion.  There was nothing in there about what I did or what my procedures were about.
...
Mr. Kehne:     Okay, so it was in your report that you said there is a plethora of studies supporting the use of the PCL-R, right?
Dr. Ryan:     Yes
...
Mr. Kehne:     As it turns out, Stephen Hart says it hasn't been normed sufficiently.

Dr. Ryan:      No.
Mr. Kehne:     Right?  That's what he says in the affidavit.
Dr. Ryan:      That's what he says in the affidavit.
...
Mr. Kehne:     So I, I understand you say you would never do anything in a forensic setting, maybe elsewhere, we don't need to get into that, that might possibly be misleading, because it's so important, right?
Dr. Ryan:      It is my intention –
Mr. Kehne:     Yes or no?
Dr. Ryan:      To help the courts, so I would never intentionally mislead the courts.
Mr. Kehne:     Okay, intentionally or otherwise, when you said there was a plethora of this research in the Haynes case that was untrue.
Dr. Ryan:      From the materials that I had sent to me, there were quite a few articles there, yes.
Mr. Kehne:     Okay, in hindsight, that was untrue.
Dr. Ryan:      In hindsight, that was strong language on my part.

This complaint is filed with the understanding that there are stringent ethical standards for professionals involved in forensic proceedings.  It is apparent through his testimony regarding the Haynes case, in <u>Idaho v Smith</u>, that Dr. Ryan has misapplied those APA Ethical Standards.  In providing expertise in death penalty cases the weight of an experts testimony is much more burdensome.  The expert must comply fully with all the ethical standards created by the APA.  Dr. Ryan did not honor those standards in the <u>United States v Haynes</u> case nor in the <u>Idaho v Smith</u> case.

**ETHICS COMPLAINT FORM**
**APA ETHICS OFFICE**

Please type or print in ink.  The document entitled "Information for Individuals Filing APA Ethics Complaints" which is included as part of the Ethics Complaint Packet may assist you in completing this form.

1. Person Making Complaint: Willis Mark Haynes,
   c/o Joshua R. Treem, Esquire – Counsel of Record
   Address: Schulman, Treem, Kaminkow, Gilden & Ravenell, LLC
   401 E. Pratt Street, Suite 1800 – The World Trade Center
   Baltimore, Maryland 21202

Phone: ( 410) __332-0850__

2. Member(s) Against Whom You Are Complaining: _____
   Dr. Thomas V. Ryan, Ph.D.

Address: Statler Complex, Suite C-1

   511 Thornrose Avenue, Staunton, VA  24401

Phone: (540 ) __887-2773__

3. Please specify as accurately as possible the earliest date and the most recent date of the alleged unethical behavior:

   April 2000 – June 2000

4. Have you discussed this situation with the psychologist(s) you are complaining about?
   _____ Yes      __X__ No

5. Are you a member of the American Psychological Association?
   _____ Yes      __X__ No

6. Have you filed a complaint with any other organization(s)?
   _____ Yes      __X__ No

   **If you answered Yes, please indicate below where else you have filed and the date:**

   _____ State Licensing Board _____
   _____ State Psychology Association Ethics Committee _____
   _____ Civil suit (e.g., malpractice) _____
   _____ Grievance Committee _____
   _____ Other _____

   (Please describe the status of these complaint(s) in Item #7)

Ethics Complaint Form
Page 2

7. Please help us to understand your complaint by providing the following information typed or printed (in ink) on separate paper: See attachment.

    (a)    A concise, one paragraph summary of the nature of the alleged ethical misconduct;

    (b)    A detailed description of the alleged misconduct, specifying as accurately as possible the dates and:

        (i)    the sequence of events leading up to the behavior,

        (ii)    a complete account of the behavior and the Ethical Standards you believe have been violated,

        (iii)    any relevant information about what happened after the behavior occurred,

        (iv)    the status of any other complaints you have filed and any other steps you have taken to address this situation.

## RELEASES

8. I hereby give the member(s) against whom I am making this complaint permission to give the APA Ethics Committee any confidential information regarding me, including any records of our interactions, and to answer all questions the Committee may have concerning such information.

Signature: _Willis Hayner by: [signature]_ Date: _6/22/01_
Joshua R. Treem, Esquire – Counsel for Willis Mark Haynes

9. I hereby give the APA Ethics Committee permission to send to the member(s) against whom I am making this complaint copies of any materials submitted by me or on my behalf concerning this complaint.

Signature: _Willis Hayae by: [signature]_ Date: _6/22/01_
Joshua R. Treem, Esquire – Counsel for Willis Mark Haynes

10. I hereby waive any right to subpoena from APA or its agents, for the purposes of private civil litigation, any documents or information concerning this matter.

Signature: _Willis Hayne by: [signature]_ Date: _6/22/01_
Joshua R. Treem, Esquire – Counsel for Willis Mark Haynes

**** IMPORTANT ****

Please sign each of the releases without modification. We will only process your complaint form if these releases are complete. If they are incomplete, processing of your complaint will be delayed while we return this form to you for your signature.

Date revised: August 14, 1996

Please return completed form to:
APA Ethics Office, 750 First Street, NE, Washington, DC 20002

## ETHICS COMPLAINT FORM - APA ETHICS OFFICE

**Continuation Sheet**

7.    This complaint concerns Dr. Ryan's actions and statements as a prosecution witness in a criminal proceeding in which I faced the death penalty.  Details are set forth in the complaint filed by Donald N. Bersoff, Ph.D., J.D. and accompanying exhibits.

C

## ETHICS COMPLAINT FORM
## APA ETHICS OFFICE

Please type or print in ink. The document entitled "Information for Individuals Filing APA Ethics Complaints" which is included as part of the Ethics Complaint Packet may assist you in completing this form.

1. Person Making Complaint: _Richard Thomas Stitt_____

Address: _c/o Gerald T. Zerkin, Gerald Zerkin & Associaties,_____

_530 E. Main Street, Suite 800, Richmond, VA 23219_____

Phone: (804) _788-4412_____

2. Member(s) Against Whom You Are Complaining: _Thomas V. Ryan, Ph.D_

_____

Address: _Statler Complex, Suite C-1, 511 Thornrose Avenue,_____

_Staunton, VA 24401_____

Phone: (540 ) _887-2773_____

3. Please specify as accurately as possible the earliest date and the most recent date of the alleged unethical behavior:
   _May 2000 - October 2000_____

4. Have you discussed this situation with the psychologist(s) you are complaining about?
   _____ Yes     _X_____ No

5. Are you a member of the American Psychological Association?
   _____ Yes     _X___ No

6. Have you filed a complaint with any other organization(s)?
   _____ Yes     _X__ No

   **If you answered Yes, please indicate below where else you have filed and the date:**

   _____ State Licensing Board _____
   _____ State Psychology Association Ethics Committee _____
   _____ Civil suit (e.g., malpractice) _____
   _____ Grievance Committee _____
   _____ Other _____

   (Please describe the status of these complaint(s) in Item #7)

Ethics Complaint Form
Page 2

7. Please help us to understand your complaint by providing the following information typed or printed (in ink) on separate paper:

    (a)   A **concise**, one paragraph summary of the nature of the alleged ethical misconduct;

    (b)   A detailed description of the alleged misconduct, specifying as accurately as possible the <u>dates</u> and:

        (i)   the sequence of events leading up to the behavior,

        (ii)  a complete account of the behavior and the Ethical Standards you believe have been violated,

        (iii)  any relevant information about what happened after the behavior occurred,

        (iv)  the status of any other complaints you have filed and any other steps you have taken to address this situation.

## RELEASES

8. I hereby give the member(s) against whom I am making this complaint permission to give the APA Ethics Committee any confidential information regarding me, including any records of our interactions, and to answer all questions the Committee may have concerning such information.

Signature: *Richard Reaves Stitt, by his* Date: 6/19/01
        *atty, Gerald I. Zerkin*

9. I hereby give the APA Ethics Committee permission to send to the member(s) against whom I am making this complaint copies of any materials submitted by me or on my behalf concerning this complaint.

Signature: *Richard Reaves Stitt by his* Date: 6/19/01
        *atty, Gerald I. Zerkin*

10. I hereby waive any right to subpoena from APA or its agents, for the purposes of private civil litigation, any documents or information concerning this matter.

Signature: *Richard Reaves Stitt, by his* Date: 6/19/01
        *atty, Zerkin*

**** IMPORTANT ****

Please sign each of the releases without modification. We will only process your complaint form if these releases are complete. If they are incomplete, processing of your complaint will be delayed while we return this form to you for your signature.

Date revised: August 14, 1996

7.  This complaint concerns Dr. Ryan's actions and statements as a prosecution witness in a criminal proceeding in which I faced the death penalty.  Details are set forth in the complaint filed by Donald N. Bersoff, Ph.D, J.D. and accompanying exhibits.