**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**DANIEL TROYA,**

       **Movant,**                    **Civil Action No. 16-80700-Civ-Scola**
**v.**                               **Crim. No.:  9:06-cr-80171-CR-DTKH-3**

**UNITED STATES OF AMERICA,**

       **Respondent.**

_____/

**MOTION FOR LEAVE TO CONDUCT DISCOVERY AND**
**MEMORANDUM IN SUPPORT**

Daniel A. Troya, through undersigned counsel, moves this Court to grant leave to conduct certain discovery, set forth in detail below. This discovery request is pursuant to the Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution and governed by Rule 6 of the *Rules Governing Section 2255 Proceedings for the United States District Courts* (hereinafter Habeas Rule 6). The requested discovery is critical to guarantee Mr. Troya a full and fair opportunity to amend his § 2255 motion and ensure a fully developed factual record for judicial review of the claims for relief advanced in that post-conviction motion. Mr. Troya requests this Court resolve this discovery motion and any subsequent motions for discovery prior to any final opportunity to amend Mr. Troya's § 2255 motion, and well prior to any evidentiary hearing on any of the claims advanced in that post-conviction motion. In support of this motion, Mr. Troya states the following:

**I.**      **Law Governing Discovery**

      **A.**      **Introduction**

Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts gives this Court express authority to order discovery:

1

**(a) Leave of Court Required.** A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. . .[1]

Rule 6(a) incorporates the United States Supreme Court's directive that a federal habeas corpus petitioner is "'entitled to careful consideration and plenary processing of [his claims,] including full opportunity for presentation of the relevant facts.'" *Harris v. Nelson*, 394 U.S. 286, 298 (1969); *see also Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977); *Cf.* Rules Governing Section 2254 Cases in the United States District Courts, Advisory Committee Note to Rule 6 ("Subdivision (a) is consistent with *Harris v. Nelson*").[2]

### B.      Good Cause

This Court may grant movants, such as Daniel Troya, leave to conduct discovery when "good cause" for doing so is shown. Under guiding principles of the United States Supreme Court, such "good cause" for discovery in habeas proceedings is established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997).[3] *See also Holley v. Smith*, 792 F.2d 1046 (11th Cir.1986)(the rules governing discovery in ordinary civil cases are applicable to petitions for the writ of habeas corpus to the extent authorized by the court for good cause shown).

*Bracy* is a seminal case addressing discovery in habeas cases, most specifically Habeas Rule 6. In *Bracy* the Court established the analytical framework for lower courts to apply when

---

[1] Rule 6 for § 2255 proceedings differs from the corresponding discovery rule under the § 2254 rules in that it includes the processes of discovery available under the Federal Rules of Criminal Procedure as well as the civil.

[2] The Advisory Committee Notes to the Rules Governing Section 2254 Cases in the United States District Courts are "fully applicable to discovery under [the analogous Rule] for Section 2255 motions." Advisory Committee Notes to Rule 6, Rules Governing Section 2255 Proceedings for the United States District Courts.

[3] By contrast, the Supreme Court has indicated that such good cause is absent when the petitioner's allegations are patently frivolous (i.e., the product of "fantasy which has its basis in the paranoia of prison rather than fact." *Harris*, 394 U.S. at 300).

considering discovery requests in habeas cases. The Court described the proper application of habeas discovery principles through Habeas Rule 6 by referencing prior case law and incorporating that into modern procedural governance:

> In *Harris* [*v. Nelson*, 394 U.S. 286 (1969)], we stated that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." 394 U.S. at 300. Habeas Corpus Rule 6 is meant to be "consistent" with *Harris* . . . It may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to . . . [prove his claim], but we hold that he has made a sufficient showing, as required by Habeas Corpus Rule 6(a), to establish "good cause" for discovery.

*Bracy*, 520 U.S. at 908-9.

Plainly, "good cause" to engage in discovery is a far lower standard than that required to prove a claim. In *Bracy*, for example, the Supreme Court unanimously reversed the lower courts' denial of discovery, even though the Court found Bracy's argument that discovery would support his theory for relief was admittedly "speculative" and "only a theory at this point." *Id*. at 905, 908. The Court noted, "**difficulties of proof aside,** there is no question that, if [the evidence sought] could be proved . . . in petitioner's own case [it] would violate the Due Process Clause of the Fourteenth Amendment." *Id*. at 905 (emphasis added). *See, e.g., Willis v. Newsome*, 771 F.2d 1445 (11th Cir. 1985)(in federal habeas corpus actions, where specific allegations before the court show reasons to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry); *Willis v. Zant*, 720 F.2d 1212 (11th Cir. 1983)(petitioner's claim that young adults were underrepresented in the jury pool remanded to the district court for an evidentiary hearing, and, if necessary, discovery); *Horton v. Zant*, 687 F. Supp. 594 (M.D. GA.1988)(discovery ordered "to permit petitioner's

3

counsel to ascertain the facts" to support his *Swain v. Alabama* claim). *See also Murphy v. Johnson*, 205 F.3d 809, 813-814 (5th Cir. 2000) ("where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he [is] entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry"); *East v. Scott*, 55 F.3d 996 (5th Cir. 1995) (although a "district court generally has discretion to grant or deny discovery requests under Rule 6, a court's blanket denial of discovery is an abuse of discretion if discovery is indispensable to a fair, rounded, development of the material facts").

### C.    Discovery is more favored under §2255 than §2254 cases.

Although governed by the same Eighth Amendment jurisprudence, capital § 2255 and § 2254 proceedings vary in ways critical to federal practice. The most important of these is that in a capital § 2254 case, the main post-conviction process should occur in state court. By the time the petitioner has entered federal court, the primary opportunity to develop extra-record facts in support of the petition has already taken place.  If the § 2254 petitioner does not succeed in state court, he has a chance to pursue federal claims for relief in the federal system, but the opportunity for new factual development, the ability to obtain a hearing, and the possibilities of relief will all be  dependent on the state court process. *See, e.g.* 28 U.S.C. § 2254(e) (2) (setting forth conditions for evidentiary hearing in § 2254 cases).

For a capital § 2255 litigant the federal district court is both the first and last place where a capital § 2255 movant can develop facts necessary to support his constitutional claims.[4]  The federal prisoner is not constrained by exhaustion requirements or state procedural rulings like his

---

[4] Any claims not raised in the initial § 2255 motion are barred as successive and can be reviewed only if strict preconditions are met (e.g., innocence of the underlying crime or retroactive rules created by the United States Supreme Court). *See* 28 U.S.C. § 2255(h).

state counterpart. Indeed, the federal district court has much more latitude in § 2255 litigation, both as a forum for fact-development, and with respect to the adjudication of the claims on the merits.[5]

The lower standard for fact development in capital § 2255 cases is reflected, for instance, in the text of the statute governing evidentiary hearings which creates a presumption in favor of allowing fact development: "*Unless* the motion and the files and the records of the case *conclusively* show that the prisoner is entitled to no relief, the court *shall . . . grant a prompt hearing thereon . . ."* (emphasis added).

Legislative history also underscores the need for fact development in capital § 2255 cases. When Congress passed the AEDPA, it severely limited a federal district court's discretion to even grant an evidentiary hearing on a § 2254 petition. *See* 28 U.S.C. 2254(e). Congress however, placed no such similar limitations on the standard for granting an evidentiary hearing in § 2255 proceedings. *See Stead v. United States*, 67 F. Supp. 2d 1064, 1074 n.5 (D.S.D. 1999) ("Although the AEDPA modified, to some extent, the *Townsend* standard for obtaining evidentiary hearings in 28 U.S.C. § 2254 cases, Congress made no parallel changes in § 2255 practice and evidently chose to leave intact the *Townsend* standard and to create a discrepancy between the right to a hearing in § 2254 and § 2255 cases.")

---

[5] Additionally, motions under § 2255 can be based on violations of federal statutory criminal law and criminal procedure codes as well as the federal Constitution, and accordingly are subject to a wider range of potentially available federal legal claims than are state prisoner actions under § 2254. *See* 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution *or laws of the United States . . .* may move the court which imposed the sentence to vacate, set aside or correct the sentence") (emphasis added). Thus, a § 2255 investigation must be more far-ranging because the potential cognizable claims can be statutory in nature as well as constitutional.

Because this is Daniel Troya's first § 2255 motion and he sets forth a sufficient basis for alleging possible deprivations of his constitutional rights, this Court should allow him the ability to discover evidence which could prove that he is entitled to relief.

### D.        Discovery Is Especially Warranted in a Capital Case

The policies favoring discovery are even stronger in capital cases than in noncapital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *McFarland, v. Scott,* 512 U.S. 849, 855 (1994). Because this is a death penalty case, broad discovery is necessary to ensure that extra measure of process which is demanded in capital cases. "[I]f death is involved, the petitioner should be presented every opportunity possible . . . to present facts relevant to his constitutional claims." *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987). Given the gravity of this capital case, Daniel Troya requests this Court's leave to conduct discovery which will enable him to fully investigate, develop, and present any and all relevant constitutional claims for relief in his initial capital § 2255 motion.

## II. The movant has diligently sought records through other available means prior and subsequent to the filing of the §2255 motion.

In the course of investigating the filing of a postconviction motion in this case, the defense team diligently sought documents from the United States Attorney's Office and other federal agencies through FOIA requests, and from state agencies pursuant to requests under Chapter 119, *Florida Statutes.* In addition, other public records and those available through Accurint were searched.  A number of documents were obtained through these efforts, permitting the movant to allege in good faith the claims raised in the §2255 motion.

Discovery is nonetheless needed to ensure full factual development of the claims. Under FOIA, the available documents held by federal agencies are far more limited than those this Court can require to be turned over, or that can be subpoenaed. A number of documents provided by federal and state agencies were liberally redacted, and many were withheld. More troubling is the United States Attorney Office's representative's delay and negligent obstruction in responding to Mr. Troya's FOIA request for its file, and continued failure to produce it together with any asserted exemptions pursuant to the FOIA request. The footnote below outlines the efforts of the post-conviction defense team to obtain the requested file prior to filing the §2255 motion. [6]

---

[6] Throughout the 2255 investigation, current counsel worked diligently to secure the information in the prosecution's files relevant to the claims through FOIA requests, even communicating directly with the United States Attorney's office. On June 8, 2015, the defense emailed and mailed the Freedom of Information Request to the Executive Office for United States Attorneys was made June 8, 2015, and an acknowledgement was received on June 18. An amended request was later made, and treated as a duplicate request on July 28, 2015. When no file was received by the defense, inquiry was made of the Assistant U.S. Attorney on December 10, 2015, and email sent on February 2, 2016. It was then discovered the Department of Justice had sent correspondence to the wrong person and address, and having received no response, closed the file on October 30, 2015. Counsel brought the mistake to the Department's attention, and the Executive Office reopened the FOIA request. The defense sent subsequent frequent follow-ups on February 3, 4, 11, 16, 17, and 23. On February 23, 2016, the defense attempted to obtain information as to the fee amount to undertake the approval process for payment. It was not until February 25, 2016 the EOUSA informally advised it would be asserting exemption 7A under FOIA and would not be releasing all of the records. On March 14, 2016, the EOUSA advised it was told by the District's staff it may take a week (or a little over a week) for them to complete their review of the records and their 7A analysis.  The EOUSA understood the defense was seeking these records to assist in post-conviction litigation on behalf of Mr. Troya and thus, the records were needed as quickly as possible.  In order to help expedite the process, the EOUSA offered the defense an opportunity to narrow the search by specifying particular records most important to the defense. EOUSA said if the defense took such a step, it would provide this narrowed request to the district, and ask that they tailor their search per the request. On March 16, 2016, the defense respectfully declined the narrowing request, seeking the entire file and saying we would respond to any claimed exemption. On March 18, 2016, the defense received an email from EOUSA saying it would not be assessing a search fee in light of the delay in processing our request. However, to date, no exemption assertion has been made and no files have been produced.

**III. Results of the Informal Discovery Engaged in by the Parties.**

The government recently responded to an informal document request made by the defense mirroring in large measure that described below. The government has provided some documents in response to the informal request, but for many referred to discovery provided to the defense pretrial, denied the documents were in the U.S. Attorney files, suggested some documents may be in the custody of other agencies or persons, or invoked privilege or lack of good cause. To the extent the U.S. Attorney's office denies documents requested are in its files, the movant requests the Court formally order a complete search and certification of their absence. The absence of requested documents in the U.S. Attorney files does not necessarily mean such documents do not exist, and supports the movant's motion for discovery of the files of other agencies and agents who investigated this case. To the extent privilege is claimed, the government should be required to identify specific documents for which privilege is invoked, and this Court should review those documents *in camera.*

**IV. The specific allegations which, if fully developed, may warrant relief, and the related discovery requests.**

Some of the claims raised in the § 2255 motion are purely legal in nature so no discovery is sought as to those claims. However, Mr. Troya has alleged specific facts in a number of claims, which only when fully factually developed may warrant relief. The discovery requests are tailored to these specific claims.

Attached to this motion are the proposed interrogatories and document production requests. To the extent the U.S. Attorney's Office does not have files of the agencies cooperating in the investigation, the defense requests subpoenaes *duces tecum* issue to the extent the Court views those agencies as non-parties. The connection of the requested discovery to the claims alleged is discussed below. Petitioner also seeks to serve related interrogatories, as well as

interrogatories identifying potential witnesses for any claim upon which this Court grants an evidentiary hearing.

**A.    Claim V (P. 41-53) - *Juror misconduct in providing misleading or incomplete information during voir dire*.**

This claim alleges, with supporting documentation, specific instances of juror misconduct in falsely answering questions during *voir dire* related to prior drug, weapons, or other criminal activity of themselves and their family.  In its informal discovery response, the U.S. Attorney denies having researched the background of the jurors. However, objection was made to any notes regarding jury selection. The discovery requested from the United States Attorney is related to this issue and is as follows:

1. Documents concerning or referencing the criminal history of any seated juror, alternate juror, or family member thereof;

2. Documents concerning or referencing the former or current employment by a prosecutorial or law enforcement agency of any seated juror, alternate juror, or family member thereof;

3. Documents concerning or referencing the witnessing of a crime by any seated juror, alternate juror, or family member thereof; and

4. Documents concerning or referencing the prosecution's awareness of any undisclosed information relevant to the accuracy and completeness of the information provided by the jury venire.

5. Juror interviews.

**B.    Claim VI (P. 53-63) - *failure to timely challenge the composition and selection of grand and petit juror members*.**

The motion sets forth a prima facie case of unlawful composition and selection of grand and petit jurors. However, as alleged in the motion, the information provided by the Clerk was incomplete. The complete information is essential to an adequate factual development of this

claim, and the Clerk of Court should be required to conduct a search for such information and provide what it has or certify it was never in possession. Moreover, Mr. Troya has demonstrated in his § 2255 motion that the percentages of black and Hispanic population reported in the AO 12 forms at the time of his trial are very likely erroneous. Mr. Troya, therefore, also seeks information about the accuracy of the reported numbers and how they came to be reported. The discovery requested is:

> 1.  AO-12 Report pursuant to Administrative Order AO 1993-50 (for the period November 1993 – October 1997)

> 2. AO-12 Report pursuant to Administrative Order AO 2005-32 (for the period November 2005-October 2007)

> 3. Any other AO-12 or JS-12 reports during the period of April 1998 – March 2002 or 2005, 2006, 2007, or 2009 for the Palm Beach Division.

> 4. All current census estimates the Administrative Office of the Courts provided to the district clerk for each year of the AO12s referenced in the 2255 motion. Providing these estimates to the clerk is duty of the Administrative Office, see Instructions for Part IV of AO, and provide the source of data for the population. These census estimates were not recorded by the clerk on the completed AO 12 forms.

> 5.  All voter registration data that was used to fill the wheels. This information should have been received from the Secretary of State and should be maintained by the jury clerk's office.

> 6. Any underlying data from years 2007-2010 and explanations or discussions about how that data relates to census information. Mr. Troya specifically requests any documents discussing, mentioning, or relating to the discrepancies between the percentage of blacks and Hispanics reported in the AO12 and the accurate data in the census reports.

**C.**     **Claim XI (P. 93-153).** *Ineffective retention and use of experts, and government's false and misleading expert testimony.*

This claim alleges both the ineffectiveness of counsel and in some subsections the unlawful conduct of the government in its use of expert testimony in the case. Every section

contains the details of the errors, and is supported by reports of experts.  Document discovery is requested for the following sub-claims.

### 1.    *Firearms and Toolmark Testimony* **p. 104.**

Here, Mr. Troya alleges both ineffective use of an expert by trial counsel and significantly flawed ballistics testimony was presented by the government, and that claim is supported by a report of an expert.  As to subsection a, below, the government has responded by reference to previously provided discovery.  As to the remaining subheadings, it has deferred to other agencies while also contending good cause does not exist. The backup information requested is essential to demonstrating the significant deficiencies in the testimony and other evidence presented at trial regarding ballistics and firearm identification. The defense seeks to issue a subpoena *duces tecum* to those agencies as set forth at the conclusion of this motion, including the Indian River County Sheriff's Office Crime Laboratory. The document discovery requested is the following:

> a. Any and all documents including opinions, reports (including interim or amended reports), memoranda, testing results, bench notes, and correspondence concerning the examination of the casings and projectiles collected from the crime scene, the casings and projectiles collected at Suwanee Drive and Mercer Avenue, the projectiles collected from Garden Court, and the AK-47 rifle collected from Garden Court;

> b. Documents relating to the manufacturer and model of the microscopes used for comparison purposes, and any manuals describing proper uses and maintenance of the instrument;

> c. Documents containing internal written policies and standards for toolmark comparisons and guidelines for rendering an opinion;

> d. Any and all photomicrographs of the comparison subjects;

> e. Diagrams or photographs of subject evidence at all stages of collection and testing;

f. Results of all test-firings of the recovered weapon, including notes, reports, opinions and photomicrographs of the test-firing subjects;

g. Copies of written procedures (often called Standard Operating Procedures (SOPs)) for evidence testing, including procedures for preparation, instrument analysis, instrument calibration, and all required quality control practices;

h. Laboratory quality manuals (however named) in effect at the time the subject work was performed;

i. Laboratory quality procedures (however named), including internal audit procedures, training and qualification procedures, and document control procedures, in effect at the time the subject work was performed;

j. Internal and external audit reports generated or received by the laboratories;

k. For the analysts involved in the subject casework, a copy of the personnel file and all internal and external proficiency testing results for toolmark identification (including sponsoring agency, date(s) performed, responsible analyst, true values, reported results, raw data, scores, related correspondence, and corrective action records, as appropriate);

l. Access by defense experts to the casings and projectiles collected from the crime scene, the casings and projectiles collected from Mercer Avenue and Suwanee Drive, the projectiles collected from Garden Court, and the AK-47 rifle collected from Garden Court.

### 2. *Cell Tower Tracking Expert* – p. 144

In Section D of the §2255 motion, Mr. Troya details counsel's ineffectiveness in utilizing experts, the misleading and false nature of the government expert's testimony regarding the whereabouts of the cell phones during the time of the events at issue at trial, and misinformation regarding the calls from Texas. The government's informal response references discovery previously provided and redirects counsel to the cell company. Most of the data requested was not provided to or sought by the defense, and is essential to factual development of the claim

showing the misleading nature of cell tower tracking testimony.  The following documents are requested, both from the government, and through subpoena *duces tecum* to the cell tower companies referenced:

> a. Documents concerning or referencing the operational behavior, engineered capabilities, tuning and alignment, maintenance, and service history for cellular towers maintained by Verizon Wireless, T-Mobile, and MetroPCS in Florida during the applicable periods;
>
> b. Documents concerning or referencing system information, cell site, and switch data for T-Mobile cellular towers in Florida and Texas for October 2006;
>
> c. Cell phone records for all cell phones through search, seizure, or voluntary consent;
>
> d. Call detail reports (CDRs) for (786) 853-8416 and (956) 266-2004 for October 2006.

**D.**      **Claim XVI (p. 221-225) – *Brady/Giglio claim regarding promises made to cooperators, a*nd Claim XV-IAC (p. 207-225)- *Cross of cooperators***

In separate claims, the movant raises *Brady/Giglio* and ineffective assistance issues related to the testimony of the cooperating witnesses. The defense informally requested the government provide the documents requested below and the government responded that documents responsive to first request was provided in discovery and that NADDIS files are  not discoverable and a court order would be required.  Full factual development of the claim counsels this Court to permit full discovery of these areas:

> 1. Documents that contain information that Kevin Vetere, Melvin Fernandez, Carlos Bonilla, and Carlos Rodriguez expected or received any benefit of any type from the government, whether or not that benefit accrued as a result of a formal deal or cooperation agreement;
>
> 2. NADDIS files for Jose Luis Escobedo (NN 4004649), Yessica Escobedo, Hugo Flores (NN 3239166), Jose Manuel Escobedo, Benito Rodriguez, Danny Varela, Daniel Troya, Liana Lopez, Ricardo Sanchez, Kevin Vetere, Juan Gutierrez, Andres Molina, Servando Salazar, Martin Soto, "Muneco," Oscar Flores-Venegas, Jose Luis Escobedo, Sr. (NN4004649), Belinda Guerra, Rudy Espinosa-

Garza, Vicente Garcia, Guadalupe Garcia, Ana Jessica Garza, Fructuoso Garza, Eduardo Diaz, Leonel Diaz, Robert Ruiz, Roberto Carlos Iracheta-Gonzalez, Erlinda Garza, and Ramiro Nevarez, Jr.

E.   **Claim XII, Section 12 (p. 182-187):** *The false vouching the government would continue to investigate and prosecute Danny Varela***, and Claim XVII, Section 2 (p. 226-239)-** *The Government's violation of Brady and Napue in failing to disclose exculpatory information about Varela and others***.**

Claim XII, Section 12, and Claim XVII, Subsection A of the motion sets forth how the government repeatedly told the jury it should both convict and vote for a death sentence in part because it would continue to investigate Mr. Varela for the murders, and with sufficient evidence, charge him and seek the death penalty. Documents demonstrating the government has undertaken no such investigation since trial are essential to full factual development of this claim of false and misleading representation. Subsection B of Claim XVII addresses the government's failure to disclose, and misrepresentation of, Yessica Escobedo's cell phone having been used by a third party in a call from Texas. Subsection C addresses the failure of the government to disclose to the defense any information regarding the actual drug deal and the participation of others in it.   Subsection D addresses the Government's failure to disclose exculpatory information from the security booth at the Briar Bay Neighborhood. Subsection E is the related government failure to disclose exculpatory Information of Mr. Troya's lessened culpability for the murders.

1.   *Varela.*

The defense has requested the following documents:

a. Documents that contradict the government's stated reason for failing to charge Danny Varela with murder; namely, that the government purportedly did not have enough evidence to prosecute him. Such documents include, but are not limited to: any cooperation agreement between Mr. Varela and the government; documents indicating that Mr. Varela provided information to the government, whether or not such information was provided as part

14

of a formal cooperation agreement; documents indicating that prosecution of Mr. Varela would adversely affect any criminal investigation or prosecution; and/or documents indicating that any improper conduct on the part of law enforcement rendered prosecution of Mr. Varela infeasible;

b. Documents that indicate that Mr. Varela was a co-conspirator in the carjacking conspiracy;

c. Documents that indicate that Mr. Varela participated in the murder of the Escobedos in any way, including as an accomplice; that Mr. Varela intended to murder the Escobedos; or that Mr. Varela knew that the murders of the Escobedos would occur beforehand;

d. Documents regarding cooperating witness Mario Davis that Mr. Varela had direct involvement in the murders and from Phillip Perez regarding Mr. Varela's large-scale drug trafficking and gun possession.

e. Documents indicating further investigation of Varela for the murders in this case was conducted since trial.

The government's informal response to several of the requests set forth above is that there was no debriefing or agreement with Varela. However, the defense request the government be required to formally certify that representation. In addition, the absence of such documents in the files of the U.S. Attorney does not end the matter. Government investigators and law enforcement officers frequently retain separate files, and the defense should be permitted to issue subponaes *duces tecum* to the cooperating agencies.

### 2.   *Yessica Escobedo's cell phone.*

The § 2255 motion raises supported allegations Yessica Escobedo's cell phone was used to make calls from Texas within hours of the killings. In addition to the cell company and tower documents requested above, the defense also seeks:

a. Documents that indicate or suggest that Yessica Escobedo's cell phone traveled to Texas on October 12th or 13th, 2006.

15

The government has responded to the informal request only with reference to documents provided in discovery pretrial.

### 3.     *The Daytona drug deal.*

a.     Documents that reveal the identity of the individual or individuals with whom the Escobedos allegedly conducted a drug deal in the Daytona Beach area on the night/morning of October 12th/13th and documents that provide information as to the details, nature, and scope of this drug deal.

The government has responded with some documents. It should certify those are all it has that are relevant, or provide those that are.

### 4.     *The Security Booth video.*

a.     Documents that contain video footage of the area around the Briar Bay security booth.

On this request as well, when made informally, the government responded with reference to pretrial discovery only.

**F.     Claim XVIII (p. 239-240) – *The Government's failure to disclose exculpatory evidence about Mr. Troya's brain damage*, Claim XXV (p. 292-332)- *Trial counsel's ineffective investigation and development of mental health evidence*, and Claim XXVI (p. 332-432)- *Ineffective failure to investigate personal history and background***

As the trial record shows, government law enforcement agents interviewed potential defense mitigation witnesses sentencing, and the government was permitted to conduct a mental health evaluation of Mr. Troya. In addition, the government represented to the Court it had retained a neuropsychiatrist who could read PET scans. The movant requests any and all documents related to these events for full factual development of these claims.

The defense requests:

1. Documents relating to Mr. Troya's character; economic, educational, and psychosocial background; mental health history; cognitive, intellectual, and adaptive functioning; and/or related to individuals

16

involved in Mr. Troya's life and upbringing, that would tend to mitigate his convictions or lead to other mitigating evidence.   This information includes, but is not limited to, information about Mr. Troya's or his family members' substance abuse; physical, psychological, or sexual abuse; dysfunctional family patterns and dynamics; dysfunctional peer relationships; poverty and attendant economic disadvantages; poor educational or employment performance; racism; organic, neurological, or other medical problems; mental disorders; and developmental disabilities;

2. Documents concerning the government's mental health case, including the identity of any experts who were consulted and the content of those consultations; and any documents regarding Mr. Troya, including the reports and notes of experts. This request includes the firewalled U.S. Attorney's file;

After some initial confusion, the government provided documents relating to Dr. Brannon's evaluation of Mr. Troya prior to trial. However, the government has advised counsel it has not been able to determine whether firewalled counsel has any documents related to this request. It should be required to do so. In addition, the government should be required to certify it has no other related documents, or provide them, including any documents related to the retention of a neuropsychiatrist it advised the Court would review the PET scan conducted by the defense.

### G.  Claim XXI, Section 14 (p.189-191)-IAC *The defense Sentencing summation ineffectively concedes uncharged shootings*

This claim concerns much of the non-statutory aggravation presented by the government at sentencing, challenging trial defense counsel's failure to adequately challenge the government's presentation of Mr. Troya's participation in other shootings for which he was neither charged nor convicted. The defense seeks:

Documents relating to the investigation of a shooting on April 28, 2006, at 1305 Suwanee Drive, Apartment B, West Palm Beach; the investigation of a shooting on April 28, 2006, at 1910 Mercer Avenue, West Palm Beach; and the investigation of a shooting on September 11, 2006, on the 1300 block of Haverhill Road in West Palm Beach.

The government's response to the informal discovery request for the information set forth above was to refer counsel to documents provided to the defense prior to trial.

**H.   Claim XXIII (p. 267-284).** *Arbitrary Application of the Death Penalty*

This claim raises far-reaching factual issues relating to the use of the death penalty. In order to fully develop this claim factually, the movant must be provided with the standards and reasons by the government in seeking the death penalty in this case.[7]

> 1. Documents relating to prosecutors' discretion under the Federal Death Penalty Act that leads to the selection of defendants to prosecute capitally, including data regarding the seeking of the death penalty by location and jurisdiction; the criteria used by United States Attorneys to determine whether or not to seek the death penalty; and the criteria used by the United States Attorney General to determine whether or not to authorize the death penalty and whether or not to reject a settlement or to overrule a United States Attorney's decision not to seek the death penalty in a particular case;

> 2. Documents relating to the United States Attorneys' agreement to waive the seeking of the death penalty against Mr. Troya and the United States Attorney General's decision to reject the proffered settlement and direct the United States Attorney's Office to seek the death penalty against him;

> 3. Documents relating to the conditions of confinement on federal death row at United States Penitentiary – Terre Haute, including but not limited to interim and final reports of investigations into the provision of medical and mental health treatment to death row prisoners, and interim and final reports of investigations into the use of force by prison staff upon death row prisoners.

For request three, should the Court not require the government to provide the documents, it should permit the issuance of a subpoena *duces tecum* to the Bureau of Prisons.

**I.       Claim XXIV (p. 284-292)** *Matamoros dangers preclude defense investigation prior and subsequent to trial.*

This claim raises, with significant factual development and support, the extraordinary dangers facing the defense team prior to trial and the post-conviction team subsequently, in

---

[7] As to request one, the government contends it does not have the information; as to two, that it is work product privileged, and as to three, that it does not have the documents.

investigating in Matamoros, where the decedent's family and other individuals connected to Luis

Escobedo's drug smuggling operation were located. Such dangers preclude an effective defense.

To ensure a full factual development of this claim, the documents requested are:

> Any investigation that was undertaken by the U.S. Government or cooperating agencies prior or subsequent to trial related to the charges in this case, and any measures taken by any investigators, law enforcement or otherwise to ensure their safety.

### J.      *Discovery relevant to all claims*

Mr. Troya seeks all documents within the U.S. Attorney's file, since the file relates to all

claims raised.[8] As set forth in the § 2255 motion and note six, above, counsel sought the U.S.

Attorney files through FOIA requests from the beginning of their investigation, and the U.S.

sent letters to the wrong party, causing serious delay and negligent obstruction, eventually

promising to provide them, but now raising an objection.. Doc. 25 at 222, fn. 85 & n. 6, *infra.*

Mr. Troya further seeks documents, either through the U.S. Attorney, or subpoena *duces*

*tecum* to the agencies described below:

1. Documents requested from the Bureau of Alcohol, Tobacco, and Firearms that were withheld or redacted from Mr. Troya's record request dated June 22, 2015;[9]

2. Documents requested from the DEA that were withheld or redacted from Mr. Troya's record request dated June 15, 2015;

3. Documents requested from the FBI that were withheld or redacted from Mr. Troya's record request dated June 22, 2015;

4. Documents requested from the Bureau of Prisons that were withheld or redacted from Mr. Troya's record request dated June 22, 2015;

---

[8]  These requests, unless otherwise noted, shall apply to any of the material detailed in footnote six *supra* collected and/or maintained by any municipal, state, or federal governmental agency involved in Mr. Troya's case.

[9] Reference dates provided within this request refer to the initial public records request from a particular agency and include any and all amendments, supplements, and responses by both parties thereafter.

5. Documents requested from the Florida Department of Law Enforcement that were withheld or redacted from Mr. Troya's record request dated July 14, 2015;

6. Documents that were requested from West Palm Beach Police Department purportedly held by DEA and not provided pursuant to Mr. Troya's record request dated June 15, 2015;

7. Documents that were requested from Greenacres Police Department purportedly held by DEA and not provided pursuant to Mr. Troya's record request dated July 14, 2015;

8. Documents requested from Crimestoppers and never provided;

**WHEREFORE**, for the foregoing reasons, Mr. Troya respectfully requests the Court grant him leave to conduct the requested discovery related to the claims contained in his § 2255 motion.

If the Government alleges any of the materials sought by Mr. Troya through discovery are privileged and/or are attorney work product, Mr. Troya moves the Court to order the Government to produce the questioned material for *in camera* inspection and review by the Court. Additionally, Mr. Troya requests that if any such material is produced for *in camera* review that the Court determines is privileged and not discoverable, the Court maintain such material under seal as part of the Court record for purposes of any subsequent appellate proceedings.

Counsel for the movant has conferred with the government in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

20

**Respectfully Submitted**,

| | |
|---|---|
| */s/ Steven H. Malone* | */s/ D. Todd Doss* |
| STEVEN H. MALONE | D. TODD DOSS |
| Steven H. Malone, P.A. | Assistant Federal Defender |
| 1217 South Flagler Drive | Federal Defender's Office, MDFL |
| Second Floor | 201 South Orange Ave., Ste. 300 |
| West Palm Beach, FL 33401 | Orlando, FL 32801 |
| Tele: 561-805-5805 | Tele: 407-648-6338 |
| Email: stevenhmalone@bellsouth.net | Email: todd_doss@fd.org |
| Florida Bar No. 305545 | Florida Bar No. 0810384 |
| *Counsel for Daniel A. Troya* | *Counsel for Daniel A. Troya* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 12, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in this case, either via transmission of the Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ *Steven H. Malone*
STEVEN H. MALONE


/s/ *D. Todd Doss*
D. TODD DOSS

21