United States District Court
for the
Southern District of Florida

Daniel A. Troya, Movant                    )
                                           )
v.                                         )
                                           )   Civil Action No. 16-80700-Civ-Scola
United States of America,                  )
Respondent                                 )

## Order Dismissing Claims

This matter is before the Court upon Daniel Troya's ("Movant") Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. ("Motion") (Am. Mot. ECF No. 25). The Movant is in the custody of the United States Bureau of Prisons after having been sentenced to death for the October 13, 2006, murders of two young children: Luis Damian Escobedo (three years old) and Luis Julian Escobedo (four years old). (Verdict, Case No. 06-CR-80171 (Hurley, J), ECF No. 796). The Movant was also sentenced to life imprisonment for the murder of the children's parents, Jose Luis Escobedo and his wife Yessica Escobedo. The Movant's convictions and sentences were affirmed on direct appeal. *United States v. Troya*, 733 F.3d 1125 (11th Cir. 2013). The United States Supreme Court has denied a writ of certiorari. *Sanchez v. United States*, 135 S.Ct. 2048 (2015). The instant Motion has followed.

The Motion contains twenty-three claims for relief with multiple sub-claims: (I) juror misconduct, (II) trial counsel failed to timely challenge the composition and selection of the grand and petit jury venires, (III) the statute that was used to convict and sentence the Movant to death is impermissibly vague, (IV) denial of effective assistance of counsel when the Movant was charged with a non-existent crime of felony murder used to enhance his sentence - trial and appellate counsel, (V) ineffective assistance of counsel for failing to move to dismiss the indictment - trial and appellate counsel, (VI) ineffective assistance of counsel for failing to request a jury instruction on manslaughter, (VII) ineffective assistance of counsel for failing to retain competent experts, failure to consult with experts, failure to file motions to exclude govt. experts, and failure to object to Government expert testimony, (VIII) ineffective assistance of counsel for failing to object to numerous trial errors, (IX) ineffective assistance of counsel for failing to object to the use of juvenile convictions in aggravation, (X) ineffective assistance of counsel for

failing to properly challenge the "three step process", (XI) ineffective assistance of counsel for failing to object to improper questioning of Government cooperating witness, (XII) *Brady* and *Giglio* violations (promises made to certain cooperating witnesses), (XIII) *Brady* violations during sentencing, (XIV) *Brady* violation for failure to provide evidence of defendant's brain damage, (XV) ineffective assistance of counsel for failing to challenge battery conviction used in aggravation, (XVI) ineffective assistance of counsel for failing to object to jury instructions and verdict forms, (XVII) ineffective assistance of counsel for conceding defendant's involvement in two uncharged shootings, (XVIII) ineffective assistance of counsel for failing to challenge the Government's evidence regarding an escape, (XIX) the death penalty violates the Eighth Amendment, (XX) ineffective assistance of counsel for failing to move for appropriate relief when counsel could not adequately investigate due to "life-threatening dangers", (XXI) ineffective assistance of counsel for failing to appropriately investigate mental health mitigation, (XXII) ineffective assistance of counsel for failing to timely and effectively investigate the Movant's personal history and background, and (XXIII) cumulative effects of error. (Am. Mot. ECF No. 25).

The Court has carefully reviewed the Motion and record of the prior proceedings. The Court has determined that certain of the Movant's claims should be dismissed. The dismissed claims fall into three categories: (1) claims that are procedurally barred for having not been raised on direct appeal, (2) claims, even if they were not procedurally barred, the record shows that the Movant is clearly not entitled to relief, and (3) claims not procedurally barred but the record conclusively shows that the Movant is not entitled to relief.

The claims dismissed require no further response from the Government. *See* Rule 4(b) of the § 2255 Rules. ("The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.").

## Standards Applicable to Motions Pursuant to 28 U.S.C. § 2255

28 U.S.C. § 2255 allows a prisoner in custody under sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence.

To obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See Hill v. United States,* 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255).

Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio,* 442 U.S. 178, 185 (1979). Rather, 28 U.S.C. § 2255 is intended to redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill,* 368 U.S. at 428. A collateral challenge under 28 U.S.C. § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady,* 456 U.S. 152, 165 (1982) (making clear a motion pursuant to 28 U.S.C. § 2255 will not be allowed to do service for an appeal). Consequently, "[a]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (internal quotation marks and citation omitted).

In addition, defendants ordinarily are precluded from asserting claims they failed to raise on direct appeal. *See McNeal v. United States,* 249 F.3d 747, 749 (8th Cir.2001). "A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise the claim in a [28 U.S.C. § ] 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." *Id.* (citing *Bousley v. United States,* 523 U.S. 614, 622 (1998); *see also Massaro v. United States,* 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the [defendant] shows cause and prejudice."). "'[C]ause' under the cause and prejudice test must be something *external* to the [defendant], something that cannot be fairly attributed to him." *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)(emphasis in original). If a defendant fails to show cause, a court need not consider whether actual prejudice exists. *McCleskey v. Zant,* 499 U.S. 467, 501 (1991). Actual innocence under the actual innocence test "means factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 623-24; *see also McNeal v. United States,* 249 F.3d 747, 749 (8th Cir. 2000)("[A] defendant must show factual innocence, not simply legal insufficiency of evidence to support a conviction.").

The Court dismisses the following claims: (I) juror misconduct, (II) trial counsel failed to timely challenge the composition and selection of the grand and petit jury venires, (III) the statute that was used to convict and sentenced the Movant to death is impermissibly vague, (XII) *Brady* and *Giglio* violations (promises made to certain cooperating witnesses), (XIII) *Brady* violations during sentencing, and (XIX) the death penalty violates the Eighth Amendment. Claim I is procedurally defaulted. Claims XII, XIII, and XIX are procedurally defaulted but, even if they were not subject to a procedural bar, would be dismissed because the Movant is clearly not entitled to relief. Claims II and III are not procedurally barred but should be dismissed because they are claims in which the Movant is clearly not entitled to relief.

### *Procedural Default*

Under the procedural default rule, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). The United States Supreme Court has explained, this rule "is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

On April 3, 2012, the Movant filed his direct appeal with the United States Court of Appeals for the Eleventh Circuit. (*See* Direct Appeal, Case No. 09-12716-P). The challenge to his conviction and sentence was filed more than three years after his trial. (Case No. 06-CR-80171 (Hurley, J), ECF. 792). The Court has reviewed the claims asserted by the Movant on direct appeal and the claims argued here. The Court concludes that certain of those claims could have and should have been made on direct appeal. Therefore, the Movant is foreclosed from raising those claims in this collateral proceeding absent one of the two limited exceptions to the procedural default rule.

The exceptions are: (1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence. *See Lynn*, 365 F.3d at 1234. Under the cause and prejudice exception, a §2255 movant can avoid application of the procedural default bar by "show[ing] cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *Id.* Under the actual innocence exception—as interpreted by current Supreme Court doctrine—a movant's procedural default is excused if he can show that he is actually

innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself. *See Dretke v. Haley*, 541 U.S. 386, 388 (2004).

However, the Movant has argued neither cause and prejudice nor actual innocence. Indeed, the Movant has not acknowledged that his claims should have been brought on direct appeal such that he now must meet an exception to a known and existing procedural bar in order to raise these claims in a collateral proceeding. It is noteworthy that the actual innocence exception means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 330, 339 (1992)("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence."); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). The Movant has not argued that he is factually innocent. The Court finds that the Movant has failed to establish an entitlement to any exception to the well-known and established procedural default rule.

*Claim I*

In his first claim for relief, the Movant contends that six jurors "[a]ppear to have provided answers that were untrue and/or seriously misleading." (Am. Mot. ECF No. 25 at 60). The transgressions alleged by the Movant range from one juror who failed to disclose that her grandson had multiple arrests on drug charges to an alternate juror who was a convicted felon in the State of New Jersey. The Movant argues that these omissions violated his right to due process and an impartial jury.

The inaccuracies and omissions alleged by the Movant in the underlying substantive claim are ones that could have been discovered either before trial, during trial, or in the three years between trial and the direct appeal. The information at issue existed at the time of trial and could have been investigated and discovered. In order to obtain a new trial for juror misconduct, the Movant must show that "a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough v. Greenwood*, 464 U.S. 548, 556 (1984).

Despite the Movant's factual arguments here, which may or may not have merit, the threshold question is whether the Movant should have raised this issue on direct appeal. Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it

will be considered procedurally barred in a § 2255 proceeding. *See Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir.1989) (and the cases cited therein), cert. denied, 494 U.S. 1018, 110 S.Ct. 1322, 108 L.Ed.2d 498 (1990).

On August 10, 2007, the defense sought court approval for the retention of a jury selection expert. (Tr. Case No. 06-CR-80171 (Hurley, J), ECF. No. 236). Counsel estimated that the jury selection expert would expend 100 hours of time on this case. On December 3, 2008, over thirty days before trial, defense counsel was given completed juror questionnaires to analyze. (Tr. Case No. 06-CR-80171 (Hurley, J), ECF. No. 546). During jury selection, Rebecca Lynn, the defense's jury selection expert was present in the courtroom. (Tr. Case No. 06-CR-80171 (Hurley, J), ECF. No. 648 at 3). Jury selection began on January 6, 2009. (Tr. Case No. 06-CR-80171 (Hurley, J), ECF. No. 648).

However, the veracity of jurors' answers were not investigated or challenged in advance of trial. Moreover, three years passed between jury selection and direct appeal without this issue being raised; despite the fact that Movant was appointed multiple appellate lawyers to research and argue his direct appeal.

The Court concludes that the Movant had ample opportunity to develop the factual basis for this claim well before filing his direct appeal. The factual basis for this claim was available to the Movant – had he looked – before his trial. "Courts have long and consistently affirmed that a collateral challenge, such as a §2255 motion, may not be a surrogate for a direct appeal." *See e.g. United States v. Frady,* 456 U.S. 152, 165 (1982). Accordingly, Claim I is dismissed.

### Rule 4, Rules Governing Section 2255 Proceedings

Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts mandates that the Court promptly examine the motion and if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.* The claims summarized below are subject to dismissal. Three claims are not only procedurally barred but, even if they were not, they would be subject to dismissal pursuant to Rule 4. The remaining two claims are not procedurally barred but are still subject to dismissal. Following a review of the

record in the underlying criminal proceedings, the Court finds that it is plain from the record that the Movant would not be entitled to relief. The five claims subject to dismissal are as follows:

### *Procedural Default and Rule 4: Entitlement to Relief*

*Claim XII*

The Movant's twelfth claim for relief is that the Government failed to disclose *Brady* material. (Am. Mot. ECF No. 25 at 240-259). Specifically, the Movant argues that the government relied primarily on the testimony of cooperating witnesses to obtain a conviction. (*Id.* at 240). The Movant maintains that these cooperating witnesses and the Government had reached undisclosed agreements for favorable treatment. The Movant asserts that those agreements were not disclosed to the defense.

In Claim XII, the Movant takes issue with three specific witnesses who testified at trial: Melvin Fernandez, Kevin Vetere, and Carlos Rodriguez. The Movant appears to argue that because these witnesses were never charged or had their existing sentences greatly reduced (even less than what the Government was asking) that there must have been an undisclosed agreement. The Movant contends that the witnesses did not testify before the jury about these agreements and the Government did not disclose their existence. The Movant asserts that the results of the witnesses' favorable treatment by the Government "point[s] to the strong possibility a promise of leniency was made directly to his defense counsel" but withheld from the jury. (*Id.* at 244). The Movant offers no factual support for this contention. The Movant acknowledges his failure but claims that he lacks the evidence he needs to support his claim because the Department of Justice has not provided him with copies of the prosecutors' files; as requested in a Freedom of Information Act request dated June 8, 2015. (*Id.* at 241, n.85).

The Movant did not raise the substantive issue on direct appeal. According to the Movant, the Rule 35, Fed. R. Crim. P. sentence reduction hearings for both Mr. Vetere and Mr. Rodriguez took place in 2009. (Am. Mot. ECF No. 25 at 242-44). This was years before the Movant's direct appeal. Therefore, the Movant is barred from raising this claim now on collateral attack unless the Movant can show cause for his failure to raise the issue and actual prejudice resulting from the error. *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir.1990). He has not done so.

Further, the claim is without any factual support. "In order to establish a *Brady* violation, a defendant must prove: (1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense." *United States v. Schier*, 438 F.3d 1104, 1106 n. 1 (11th Cir. 2006) (citing *Moon v. Head*, 285 F.3d 1301, 1308 (11th Cir. 2002)).

*Brady* requires only that the prosecution disclose evidence; *Brady* does not require the prosecution to identify possible theories of defense or assist in the presentation of the defense's case. *See United States v. Marrero*, 904 F.2d 251, 261 (5th Cir.1990). Finally, "neither *mere speculation* that the prosecution might possess information helpful to the defense nor base assertions, without more, of the presence of exculpatory information in the prosecution's files would be sufficient to warrant a *Brady* determination." 25 James Wm. Moore et al., Moore's Federal Practice § 616.06[2] (3d ed.1997)(emphasis added). Here, the Movant does little more than speculate that the witnesses must have reached an undisclosed agreement with the Government in exchange for their testimony. A favorable outcome for the cooperating witnesses, in and of itself, does not serve as the basis for a *Brady* claim. Even if the claim was not procedurally barred from review, Rule 4(b) provides that, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Claim XII is dismissed.

### *Claim XIII*

In Claim XIII(A), the Movant contends that Danny Varela was not charged with the murders of the Escobedo family but either should have been or the information as to why he was not should have been disclosed. (*Id.* at 246). The Movant argues that "[t]he information in the possession of the government that explains why it did not charge Mr. Varela with the murders – whether or not the government characterizes it as a 'deal' – is exculpatory to Mr. Troya." (*Id.* at 254). The Movant maintains that "significant circumstances detailed" in his Motion call into question the Government's prior assurances that all information regarding promises made to witnesses were disclosed. In addition, the Movant argues that the Government failed to disclose exculpatory

evidence that was material to the guilt and penalty phase of the trial. (*Id.* at 245).

The Movant first raised this issue before the guilt phase of trial. (Mot. Bill of Part., 06-CR-80171 (Hurley, J), ECF. No. 275 at 5-6). The Movant sought a bill of particulars "outlining the particular conduct of each defendant at the scene of the homicide with as much specificity as possible" citing *Brady* for support of the request. (*Id.* at 6). The magistrate judge denied the motion finding that the Movant "simply speculates as to why the Government has not sought the death penalty as to Varela." (Order, 06-CR-80171 (Hurley, J) ECF. No. 307 at 16). The claim argued here was made and rejected before the Movant's trial began.

The Court notes that the Movant did not raise these issues on direct appeal. As such, the Movant is barred from raising this claim now on collateral attack unless the Movant can show cause for his failure to raise the issue and actual prejudice resulting from the error. *Cross*, 893 F.2d at 1289. He has not done so. The Court must dismiss Claim XIII(A).

The Court must reach a similar conclusion as to the remaining, but less developed, sub-claims of Claim XIII. The Movant asserts that the Government failed to disclose material exculpatory information regarding: (B) information regarding Yessica Escobedo's cell phone, (C) an alleged drug deal in Daytona Beach, (D) information from the security booth at the Briar Bay neighborhood, (E) benefits provided to cooperating witness Kevin Vetere, (F) Mr. Troya's lessened culpability for the murders. (Am. Mot. ECF No. 25 at 255-59).

Similar to sub-claim (A), the Movant has provided little to no detail about what actual evidence exists that the Government withheld. More importantly, however, is the fact that these arguments were available before, during, or after trial. None were made on direct appeal. Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge. *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir.1994). The Movant has offered no explanation for his failure to raise this claim on direct appeal. A defendant cannot overcome this procedural bar unless he can demonstrate a cause for this default and show actual prejudice suffered as a result of the alleged error. *Id.* A defendant can also overcome the procedural bar created by the failure to appeal if he could show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for

the procedural default." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). The Movant has not alleged that he has obtained newly discovered information illustrating the Government's withholding of evidence. Rather, this claim makes the same arguments which were available to him prior to his direct appeal.

More importantly, the Movant has only averred that *if* such information exists that the Government "had an obligation to disclose" the information. The Movant has not argued that such information exists; that it ever existed or that the Government has ever possessed such information. Claim XIII is the textbook definition of a fishing expedition which must be dismissed pursuant to Rule 4(b). "The district court was not required to allow a fishing-expedition based only on [the defendant's] incredible allegations." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1218 (11th Cir. 2014)(citing *Machibroda v. United States*, 368 U.S. at 495 (1962)("The language of [§ 2255(b) ] does not strip the district courts of all discretion to exercise their common sense."). Claim XIII is dismissed.

*Claim XIX*

In his nineteenth claim for relief, the Movant argues that his "death sentences are unconstitutional under the Eighth Amendment to the United States Constitution because the death penalty is inconsistent with evolving standards of decency, is arbitrary, serves no valid penological purpose, and is torturous." (Am. Mot. ECF No. 25 at 286). The Movant asserts that his death sentence was obtained "pursuant to an arbitrary process" and "operated by means of and promoted discrimination of race." (*Id.*). The Movant contends that his sentence and continued confinement deprive him of his rights to due process; equal protection, and freedom from the infliction of torture and cruel and unusual punishment as guaranteed by the "United States Constitution, decisional law, and other mandatory rules; and international law as set forth in treaties, customary law, and international human rights law." (*Id.*). With the limited exception of certain dissenting opinions from the United States Supreme Court, the Movant has offered no binding precedent for his argument. The Movant cites to statutes or case law from certain states within the United States that have abolished or abandoned the death penalty. The Movant also presents statistical information from the international community on the worldwide evolution of the abolition of the death penalty. The Movant contends that the administration of the death penalty lacks reliability and is arbitrary. Finally, the Movant asserts "[t]he conditions under which Mr. Troya is confined

under sentence of death, and the length of time under which he will be confined prior to execution, constitute conditions of physical and psychological torture and inhumane treatment." (*Id.* at 297).

Even if the Movant makes a compelling argument regarding capital punishment, the constitutionality of the death penalty it is one that could have and should have been made before today. The Movant cites no change in the law since the affirmation of his conviction and sentence in 2013. The bulk of the Movant's argument was available to him prior to the filing of his direct appeal. When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice. The Movant has failed to provide reason for why this claim was not raised on direct appeal at the first opportunity to do so. Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." *See Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990), cert. denied, 498 U.S. 849, 111 S.Ct. 138, (1990)("When a defendant fails to pursue an available issue on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error.").

Moreover, even if he was not compelled to bring this claim before filing the instant Motion, it is clear from the record and applicable law, the Movant is not entitled to relief. The Movant has failed to provide with Court with any binding legal precedent to support his argument. As such, he has failed to satisfy the standards established by *Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.* Claim IX is dismissed.

### *Rule 4: Entitlement to Relief*

#### *Claim II*

The Movant's second claim for relief is that counsel was ineffective for failing to "challenge the composition and selection of the Grand and Petit Jury Venires in Violation of the Fifth, Sixth, and Eighth Amendments." (Am. Mot. ECF No. 25 at 72). After review the Court finds that this claim is entirely without merit and does not require an evidentiary hearing.

Any analysis of an ineffective assistance of counsel claim should begin with *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court set forth the two-prong test that a convicted defendant must meet to demonstrate that his or her counsel rendered ineffective assistance. First, a defendant "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. Second, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court defines a "reasonable probability" as one "sufficient to undermine confidence in the outcome." *Id.* And "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. In 2011, the Supreme Court clarified the *Strickland* standard.

> In *Strickland*, this Court made clear that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation ... [but] simply to ensure that criminal defendants receive a fair trial." 466 U.S., at 689, 104 S. Ct. 2052. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*, at 686, 104 S. Ct. 2052 (emphasis added). The Court acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.*, at 689, 104 S. Ct. 2052.

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

The Movant's sole argument on the deficiency prong of *Strickland* is that "[i]t cannot be disputed that the defense bar recognized the ability to challenge the grand jury process, as such a challenge had been available for years prior to Mr. Troya's trial." (Am. Mot. ECF No. 25 at 72). The underlying constitutional claim is that his jury was selected from a jury pool "that underrepresented racial and ethnic and minorities." (*Id.*). The Movant's claim suffers from a fatal infirmity because it fails to assert, other than in a conclusory fashion, that counsel's performance was deficient. Indeed, there is only a singular paragraph devoted to the argument that counsel's performance

was unconstitutional. (Am. Mot. ECF No. 25 at 72-73). The Movant cites no law or fact to support his argument.

Effectively, the Movant is contending that between 2006 - 2009 the Southern District of Florida's jury selection process did not comport with the constitutional requirement that the jury pool be selected from a fair racial cross section of the community. In support, the Movant has provided statistical data and census information for Palm Beach County, Florida. (*Id.* at 82-88). Some of the Movant's data came from this Court's statistical records while the remainder came from outside sources.  The Movant alleged that the Court's AO 12 reports ("Report on Operation of the Jury Selection Plan") inaccurately reported the percentage of Hispanics and African-American residing in Palm Beach County, Florida at the time of the Movant's trial. According to the Movant, this inaccuracy resulted in minority groups being underrepresented in the jury pool. The Movant has not asserted that *his* jury specifically was underrepresented by minority venire persons; rather, simply that the entire jury selection process in the Southern District of Florida was flawed. While the Court specifically rejects this assertion, it will for the sake of resolving this claim without an evidentiary hearing, assume that this assertion was true. In fact, for the sake of argument, the Court will also assume that the Movant's actual jury was statistically underrepresented by racial minorities.

However, these assumptions, in and of themselves, do not make a meritorious claim for ineffective assistance of counsel. Simply because the underlying claim may be a valid claim for relief had it been made, this is not enough to prevail. The Movant must also show that a constitutionally effective lawyer should have and would have known that this was a claim worthy of pursuit and investigation. The Movant has not done so; indeed, he has not even made the argument.

The Movant would have to show that defense counsel should have known that the Southern District of Florida was inaccurately reporting statistical data and that inaccurate reporting resulted in an unconstitutionally disproportionate amount of racial minorities being underrepresented in the jury pool in Palm Beach County, Florida from 2006 - 2009. In other words, every defense lawyer in the Southern District of Florida should have been challenging the racial make-up of its' client's juries from 2006-2009. The Court finds no support in the record for this argument.

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is whether some reasonable attorney could have acted in the circumstances . . . [as this attorney did]- whether what . . . [this attorney] did was within the 'wide range of reasonable professional assistance.'" *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc) (quoting *Strickland*, 466 U.S. at 689) (citation omitted). *See also Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (stating that to show unreasonableness "a petitioner must establish that no competent counsel would have made such a choice."). The Court cannot find that no competent counsel would have proceeded to trial without challenging the jury selection process in the Southern District of Florida from 2006 - 2009. Claim II is dismissed because it plainly appears that the Movant is not entitled to relief.

*Claim III*

The Movant's third claim for relief is that his "murder convictions and resulting death sentences are based on an impermissibly vague statute, in violation of due process and the Fifth, Sixth, Eighth Amendments." (Am. Mot. ECF No. 25 at 82). The constitutional basis for this claim is *Johnson v. United States*, 135 S.Ct. 2551 (2015). In 2015, the United States Supreme Court held "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." (*Id.* at 2563). The Movant asserts that at sentencing the "jury was instructed that it could find Mr. Troya guilty of a 'crime of violence' based on either on a drug trafficking crime or on carjacking in which a killing occurs, under 18 U.S.C. §2119(3)." (Am. Mot. ECF No. 25 at 82). The Movant argues that *Johnson* has voided 18 U.S.C. §924(c)(3)(B) for vagueness.

To begin, this claim is not procedurally barred in that *Johnson* was decided after the Movant's direct appeal in 2012. However, because "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts,* the claim must be dismissed.

At trial, the jury was instructed:

Now, I want to draw your attention to this. In a sense Congress set forth two ways that the predicate to the crime can be established.

You can prove, or the Government can prove beyond a reasonable doubt that a Defendant carried or used a firearm during and in relation to a crime of violence. The crime of violence is alleged to be the armed carjacking that is set out in Count 6.

Or carried or used a firearm during and in relation to a drug trafficking crime, and the drug trafficking crime that is alleged is the crime set out in Count 1, the count of conspiracy to possess with intent to distribute.

So let's look at this particular crime, that is, the crime of carrying or using a firearm during and in relation to a crime of violence and/or a drug trafficking crime.

It is a federal crime or offense for anyone to use a firearm -- to use or carry during and in relation to a crime of violence or a drug trafficking crime which results in the death of a person that would be murder as described under federal law.

Now, I want you to know as a matter of law the crime of carjacking is in fact classified as a crime of violence. So the crime that is set forth in Count 6 is in fact classified under the law as a crime of violence. The crime that is set out in Count 1, the crime of conspiracy to possess with intent to distribute controlled substances, as a matter of law that is classified as a drug trafficking crime.

\* \* \*

You know that Count 1, the conspiracy to possess with intent to distribute controlled substances, I told you that is a drug trafficking crime. And that is the specific drug trafficking crime that is referred to in this count.

You remember I also told you that the crime of armed carjacking is in fact categorized as a crime of violence. That is the specific crime of violence that is alleged in this count.

(Tr. Case No. 06-CR-80171 (Hurley, J), ECF No. 771 at 61-64). The jury unanimously found that "the Government has established beyond a reasonable doubt that the Defendant, Daniel Troya intentionally and specifically engaged

in an act of violence, knowing that the act created a grave risk of death to the persons in Count 6 of the indictment." (Tr. Case No. 06-CR-80171 (Hurley, J), ECF No. 857 at 25). Specifically, the jury determined that the Movant was guilty of "knowingly carr[ying] or us[ing] a firearm during and in relation to a crime of violence and/or a drug trafficking crime. . ." (Verdict Form, Case No. 06-CR-80171 (Hurley, J), ECF No. 796 at 3). The indictment clearly states that armed carjacking is a crime of violence. (Indictment, Case No. 06-CR-80171 (Hurley, J), ECF No. 305 at 8-12). The Movant's argument here is contingent upon finding that carjacking is not uniformly considered a crime of violence.

While the specific jury instruction that the Movant takes issue was given during the guilt phase, his claim is that the Federal Death Penalty Sentencing statute's §924(c)(3)(B) residual clause is vague and unconstitutional. The Movant argues that because the Armed Career Criminal Act's ("ACCA") residual clause (18 U.S.C. §924 (e)(2(B)(ii)) was found to be unconstitutionally vague in *Johnson* and §924(c)(3)(B) is materially indistinguishable, it must be "similarly stricken." (Am. Mot. ECF No. 25 at 83).

The Court disagrees. The Court finds that the statutory language of 924(c)(3)(B) is distinctly narrower that the residual clause of the ACCA and the Supreme Court was clear in limiting the holding in *Johnson* to those circumstances prescribed by the ACCA's residual clause. *See United States v. Taylor,* 814 F.3d 340 (6th Cir. 2016)("the *Johnson* opinion itself stressed that its reasoning did not control other statutes that refer to predicate crimes."); *see, e.g., Leocal v. Ashcroft,* 125 S.Ct. 377, n.7 (2004) (comparing 18 U.S.C. § 16(b) with U.S.S.G. § 4B1.2(a)(2), which contains the same language as the ACCA residual clause); *United States v. Serafin,* 562 F.3d 1105, 1109, 1114 (10th Cir. 2009) (comparing § 924(c)(3)(B) with U.S.S.G. § 4B1.2(a)(2) and with the ACCA residual clause).

More importantly, it is without question that the United States Court of Appeals for the Eleventh Circuit has held that the crime of carjacking "is always and without exception a crime of violence." *See United States v. Moore,* 43 F.3d 568, 573 (1994)(citing *United States v. Singleton,* 16 F.3f 1419, 1422 (5th Cir. 1994). The Court recently denied a claim virtually identical to the one made here by the Movant.

> Even assuming that *Johnson* invalidated § 924(c)'s residual clause, that conclusion would not assist Smith because the elements of the underlying conviction on which his § 924(c) conviction was

based—carjacking, in violation of 18 U.S.C. § 2119—meet the requirements that the force clause in § 924(c)(3)(A) sets out for a qualifying underlying offense. In fact, our precedent says just that. In *United States v. Moore*, 43 F.3d 568 (11th Cir. 1994), we held:

> The term "crime of violence" as Congress defined it in 18 U.S.C § 924(c)(3) clearly includes carjacking. "Tak[ing] or attempt[ing] to take by force and violence or by intimidation," 18 U.S.C. § 2119, encompasses "the use, attempted use, or threatened use of physical force...." 18 U.S.C. § 924(c)(3)(A).

*Id.* at 572–73 (emphasis added). Stated another way, an element requiring that one take or attempt to take by force and violence or by intimidation, which is what the federal carjacking statute does, satisfies the force clause of § 924(c), which requires the use, attempted use, or threatened use of physical force. In short, our precedent holds that carjacking in violation of § 2119 satisfies § 924(c)'s force clause, and that ends the discussion.

> Accordingly, regardless of the validity of § 924(c)'s residual clause, Smith's § 924(c) conviction meets the requirements of that statute's force clause.

*In re Smith*, 2016 WL 3895243 (11th Cir., July 18, 2016). Whether the Movant's argument regarding the vagueness of 924(c)'s residual clause under *Johnson* is correct, it is inapplicable to his claim because the offense of carjacking is rooted in the force clause of the statute which remains unaffected by *Johnson*. Claim III is dismissed.

It is **ordered and adjudged** as follows:

1. The Motion to Vacate, Set Aside, or Correct Sentence (Am. Mot. ECF No. 25) is **dismissed,** in part. Claims I, II, III, XII, XIII, XIX are **dismissed.**

2. The Movant's Motion to Interview Jurors (Mot. ECF No. 33) is **denied** as moot.

3. The Movant's Motion for Leave to Conduct Discovery and Memorandum in Support (Mot. ECF No. 34) is **denied**, in part. Based on the dismissal of certain claims herein, the Movant's Motion for Leave to Conduct Discovery is **denied** as moot as to Requests A (Claim I), B (Claim II), D (Claim XII), & E (Claim XIII). As to the remaining requests, the Government shall file a timely response. The

Movant's Motion to File Discovery Motion in Excess of Ordered Ten Page Limit (Mot. ECF No. 35) is **granted**.

**Done and ordered**, at Miami, Florida, on October 17, 2016.

Robert N. Scola, Jr.
United States District Judge