UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DANIEL TROYA,
     Movant,

v.                                 Case No.      9:16-CV-80700-SCOLA

UNITED STATES OF AMERICA,
     Respondent.

_____/

## MOTION FOR REHEARING OF ORDER DISMISSING CLAIMS

The movant Daniel Troya moves for rehearing of this Court's order at Document 40 dismissing some claims, stating:

This Court dismissed claims I, II, III, XII, XIII, and XIX based on procedural default and insufficiency of the allegations, or a combination of the two.  A review of the Court's order demonstrates this Court may have overlooked pertinent caselaw and habeas doctrine, and should reinstate the claims.

**A.**      **Under Section 2255 Rule 4, Summary Dismissal Is Only Appropriate Where Mr. Troya's Claims Are "Palpably Incredible" or "Patently Frivolous or False" on Their Face.**

Rule 4 of the Rules Governing Section 2255 Proceedings (the "2255 Rules") requires the Court to conduct a preliminary review and make an initial consideration of the allegations in the pleading.  The Court may dismiss a § 2255 motion only "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing § 2255 Proceedings.  Summary dismissal under Rule 4 of the Rules Governing Section 2255 Proceedings is rarely warranted in a capital § 2255 case and the standard for such a dismissal is extremely high. Except in limited circumstances,[1] summary

_____

[1] In § 2255 cases (unlike § 2254 cases), a judge is allowed to rely on his or her own recollection

1

dismissal is only appropriate where it is apparent from the face of the pleading the movant has failed to state a viable claim. *See e.g. Herrera v. Collins*, 506 U.S. 390, 441 (1998) (Blackmun, J., dissenting). In keeping with the preliminary nature of the Court's review at this initial stage, the Supreme Court has held "[t]he critical question is whether these allegations, when viewed against the record…were 'so palpably incredible,' so 'patently frivolous or false,' as to warrant summary dismissal." *Blackledge*, 431 U.S. 63, 76 (1977) (citation omitted).

At this stage, the Court must accept all of Mr. Troya's allegations as true unless conclusively refuted by the record. *See* 28 U.S.C. § 2255(b); *Puglisi v. U.S.,* 586 F.3d 209, 213 (2d Cir. 2009).  Rule 4 only permits dismissal if "it *plainly appears* that petitioner is *not* entitled to relief…The rule does not require habeas courts to dismiss a petition simply because all the facts showing entitlement to relief have not yet been fully developed." *Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1109 (9th Cir. 1996).  The belief or contention that "allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence." *Machibroda v. United States*, 368 U.S. 487, 495 (1962).  As the Second Circuit concisely stated, "Rule 4 does not confer unbridled discretion to dispose of all such habeas applications *sua sponte.*  Summary dismissal is appropriate only in those cases where the pleadings indicate that petitioner can prove no set of facts to support a claim entitling him to relief." *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983).[2]

Because summary dismissal may only be granted when a motion is "patently frivolous," *sua sponte* dismissal is not warranted in Mr. Troya's case.  Although Rule 4 itself does not

---

of events. *See Blackledge,* 431 U.S. at 74 n. 4. This exception obviously does not apply in Mr. Troya's case.

[2] The Eleventh Circuit has cited *Williams* and *Calderon* favorably when discussing Rule 4 in the case *Wingfield v. Sec'y*, 203 F. App'x 276, 277-78 (11th Cir. 2006).

explicate the "frivolousness" standard, the Supreme Court and the Eleventh Circuit have provided guidance in caselaw.  In *Prather v. Norman,* 901 F.2d 915 (1990), the Eleventh Circuit reviewed the district court's dismissal of a prisoner's § 1983 suit which had been construed as a habeas petition and then dismissed as "frivolous" pursuant to the *in forma pauperis* statute, 28 U.S.C. § 1915.  According to the district court, even though that complaint stated a claim, it was frivolous because the plaintiff had "little or no chance of success." *Id.* at 918.  In reversing, the Eleventh Circuit noted the Supreme Court decision in *Neitzke v Williams*, 490 U.S. 319 (1989), had rejected such reasoning and held that Rule 12(b)(6) is not the same as frivolousness.  When "a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate but dismissal on the basis of frivolousness is not." *Prather,* 901 F.2d at 918 (quoting *Nietzke*, 490 U.S. at 328).  As the Eleventh Circuit explained, claims can be dismissed as frivolous only when then factual allegations are "clearly baseless" or the legal theories "indisputably meritless." *Id*.  Neither is true of Mr. Troya's allegations.

Moreover, the plain language of Rule 4(b) directs the Court to look at Mr. Troya's § 2255 motion as a whole and determine whether to dismiss "the motion" based on whether "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing § 2255 Proceedings.  Thus, unless it "plainly appear[s]" Mr. Troya is entitled to no relief on any of his claims, Rule 4(b) does not contemplate dismissal at this preliminary stage.  The language of Rule 4(b) thus is markedly different from the language the rulemakers used elsewhere in the Federal Rules where they provided that motions could be directed to, and orders of dismissal entered on, individual claims.  *See e.g.,* Fed. R. Civ. P. 56(a) (directing party to identify "*each claim* or defense – or the part of each claim or defense – *on which summary judgment is sought*")

3

(emphasis added); Fed. R. Civ. P. 12(b)(6) (noting party may submit a motion to dismiss for "*failure to state a claim* upon which relief can be granted") (emphasis added). Rule 4(b) concerns preliminary review, and not a motion to dismiss or summary judgment, and it does not permit dismissal of individual claims or allegations unless the motion as a whole is plainly without merit and must be dismissed as a whole.

In his § 2255 Motion, Mr. Troya has set forth facially adequate allegations that are not conclusively contradicted by the record. He has alleged multiple claims, including ineffective assistance of counsel, prosecutorial misconduct, juror misconduct, and other constitutional violations, and specific, extra-record facts to support his allegations. At this stage, that is sufficient to meet his burden and survive summary dismissal.

### B.      § 2255 favors full development of legal claims

The "initial consideration" of Habeas Rule 4 is only the first step of a three-step process for evaluating § 2255 motions and dismissal pursuant to that rule is not favored by Circuit Courts of Appeal. *See e.g. Williams v Kullman*, 722 F.2d 1048, 1050-51 (2d Cir. 1983) (courts generally should await state's answer or permit amendment before summarily dismissing habeas corpus petition). If the Court does not or cannot determine from the specified materials that the moving party is "plainly" not entitled to relief, the § 2255 Rules require the Court to "order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant may then submit a reply to the United States attorney's answer. Rule 5(d), Rules governing § 2255 Proceedings. The Court may permit discovery pursuant to Rule 6 and the Court "may direct the parties to expand the record by submitting additional materials relating to the motion." Rule 7(a), Rules Governing § 2255 Proceedings. If the motion survives the initial Rule 4(b) review, the Court must still determine whether an evidentiary hearing is necessary after which it will decide whether Mr. Troya is

entitled to relief on his claims. *See* Rules 6, 7, and 8(a), Rules Governing § 2255 Proceedings.

The expectation that §2255 motions, like Mr. Troya's, that are adequately pled and supported by facts will survive summary dismissal is highlighted by the structure of the Rules Governing Section 2255 Proceedings.  As discussed above, after setting forth the standards for a preliminary review in Rule 4, Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a), Rules Governing § 2255 Proceedings.  The Supreme Court has held this language permits a movant to obtain discovery when "he has made specific allegations before the court [that] show *reason to believe* that [he] may, if the facts are fully developed, be able to demonstrate that he is…*entitled to relief.*" *See Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (emphasis added) (further stating that where such good cause is shown, "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry"); *Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003); *Puglisi,* 586 F.3d at 213-14 (noting that because there is no pre-motion discovery in a § 2255 case, the petitioner "may need only to identify available sources of relevant evidence rather than obtain it as in civil cases or seek a discovery order from the court under Rule 6 of the Rules Governing Section 2255 Proceedings").  It thus follows that Mr. Troya need not allege *all* of the facts that will ultimately entitle him to relief, but only provide a pleading sufficient to offer reason to believe that he will be entitled to relief if he gets discovery.  That rule only makes sense, because at this stage Mr. Troya has not had the benefit of discovery and has had to rely on document requests which do not carry the force of law to obtain records from government

agencies.  The § 2255 Motion more than establishes good cause to believe that, if he is given discovery, his motion will prevail.

The need to allow full evidentiary development of claims that, if true, would entitle the movant to relief is particularly crucial in a capital proceeding, where this Court's findings of fact will likely determine the constitutionality of Mr. Troya's conviction and death sentence. *See e.g. United States v. Sampson*, 820 F. Supp. 2d 202, 212-13 (D. Mass. 2011) ("Potentially meritorious claims that allege specific facts, that are based on information outside the presiding judge's knowledge and the records of the case…may not be summarily dismissed, even if the ultimate likelihood of success on the merits appears relatively low to those familiar with the trial.").

**C.    This Court should not have *sua sponte* dismissed on the basis of a procedural default.**

This Court dismissed a number of Mr. Troya's claims by applying the doctrine of procedural default. Doc 40, *Order* at 4 (dismissing claims I, II, III, XII, XIII, XIX as defaulted). This Court should grant rehearing and vacate this decision based on several grounds.

First, application of procedural default as part of a Rule 4 dismissal violates both the purpose of Rule 4 and Eleventh Circuit law. Rule 4 was implemented in an attempt relieve the burden on the responding party by allowing the judge to weed out palpably frivolous claims prior to ordering a responsive pleading.  Procedural default, however, is an affirmative defense and Mr. Troya has no obligation to preemptively account for an affirmative defense. *See, e.g., Vance v. Terrazas*, 444 U.S. 252, 269 n.11 (1980) (recognizing the well-established rule that "an affirmative defense [must] be pleaded and proved by the party attempting to rely on it."); *Twin City Fire Ins. Co. v. Hartman, Simon & Woods, LLP*, 609 F. App'x 972, 978 (11th Cir. 2015) ("a plaintiff's complaint need not anticipate and counter affirmative defenses."); *La Grasta v. First*

*Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("plaintiffs are not required to negate an affirmative defense in their complaint") (quotation marks and alterations omitted); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1276 (3d ed. 2016) (noting that a plaintiff "is not under any obligation to plead on the subject of [an] anticipated defense").

Indeed, the Eleventh Circuit has repeatedly held that it is reversible error to summarily dismiss claims based on an alleged procedural default prior to a response. *See e.g. Davis v. Dugger,* 829 F.2d 1513, 1521 (11th Cir. 1987) (holding that it is error to dismiss for failure to exhaust "before the state responded and either set out an exhaustion defense or waived exhaustion"); *Martin v. Sec'y Dept. of Corr.*, 262 Fed.Appx. 990, 993 (11th Cir. 2008) ("Acting through their attorneys general, states can waive procedural bar defenses in federal habeas proceedings… A district court may not dismiss a habeas petition for failure to exhaust state remedies unless the state first responds and raises an exhaustion defense or waives exhaustion.").

Furthermore, even if the Eleventh Circuit allowed summarily dismissal based on a procedural default, the Supreme Court has clearly held that a court cannot *sua sponte* dismiss without proper notice. *See e.g. Day v. McDonough*, 547 U.S. 198 (2006) (before dismissing on its own initiative based on a procedural bar, "a court must accord the parties fair notice and an opportunity to present their positions."); *In re Jackson*, 826 F.3d 1343, 1347 (11th Cir. 2016) (granting motion for leave to file successive § 2255 motion so movant receives fair notice and opportunity to be heard on procedural bar); *Esslinger v. Davis*, 44 F.3d 1515, 1528 & n.45 (11th Cir. 1995) ("[i]f the petitioner is to be afforded due process, he must receive notice of the court's inclination to interpose the default, an opportunity to demonstrate 'cause' for the default and 'prejudice,' and, if material issues of fact are present, an opportunity to present his evidence.").

With proper notice and opportunity to be heard, Mr. Troya can demonstrate cause and

prejudice to excuse any default the Government may assert as an affirmative defense. Moreover, with proper notice, Mr. Troya could show that the Court's application of procedural default to certain claims not raised on direct appeal was misplaced.  Claims involving facts outside of the trial record normally cannot be raised on direct appeal, which is based on the record created at trial. *See* Federal Rules of Appellate Procedure, Rule 10.  Thus, claims based on extra record facts are generally not considered defaulted as the result of a failure to raise them on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621-22 (1998) (noting there is an exception to procedural default rule "when the facts were 'dehors the record and their effect on the judgment was not open to consideration and review on appeal'") (quoting *Waley v. Johnston*, 316 U.S. 101, 104 (1942) (per curiam)); *Mills v United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (a ground is "available" on direct appeal when "its merits can be reviewed without further factual development.").  Such claims include all *Strickland* ineffectiveness allegations, *see Massaro v. U.S.,* 538 U.S. 500 (2003), *Brady* and *Giglio* claims, *see Martinez v. Ryan*, 132 S.Ct. 1309, 1321 (2012) (Scalia, J. dissenting) and juror misconduct claims. *See U.S. v. Sampson*, 820 F.Supp.2d 151 (D. Mass. 2011); *U.S. v. Fell*, 2014 WL 3697810 (D. Vt. July 24, 2014).

Because Mr. Troya's claims were improperly dismissed, he respectfully requests that this Court vacate its previous opinion and order the Government to file a responsive pleading.

**D.      The Dismissed Claims.**

**Claim I, p. 41 - JUROR MISCONDUCT DEPRIVED MR. TROYA OF HIS RIGHT TO A FAIR AND IMPARTIAL JURY UNDER THE FIFTH, SIXTH AND EIGHTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 28 U.S.C.A. § 1865**

Within this claim, Mr. Troya raises a profound issue going to the heart of the right to a trial by jury. He contends that several jurors "[a]ppear to have provided answers that were untrue and/or seriously misleading." (Am. Mot. ECF No. 25 at 60).  These allegations of juror

misconduct are not just talk: they are supported by extensive documentation contained in the appendix. This Court dismissed this claim and denied the juror interview motion as moot, concluding that the issue should have been raised on direct appeal, and that the factual basis of the claim was available prior to trial and during the pendency of the appeal. Doc. 40, pp. 5-6. The Court is mistaken on both grounds.

The Supreme Court has spoken directly to the issue of default in favor of the movant. *See Williams v. Taylor*, 529 U.S. 420, 443 (2000). In *Williams*, the defendant raised a § 2254 claim based on juror bias. One juror who had been previously married to the lead state witness, and represented by one of the prosecutors during the divorce, failed to disclose those facts when asked if she was related to any witness or had been represented by any of the attorneys.  The Court of Appeals concluded state habeas counsel was not diligent in pursuing the claim and that it was defaulted in federal habeas. The United States Supreme Court disagreed, holding:

> The Court of Appeals held state habeas counsel was not diligent because petitioner's investigator on federal habeas discovered the relationships upon interviewing two jurors who referred in passing to [the juror] Stinnett as "Bonnie Meinhard." *See Brief for Petitioner* 35. The investigator later confirmed Stinnett's prior marriage to Meinhard by checking Cumberland County's public records. See 189 F.3d, at 426 ("The documents supporting [petitioner's] Sixth Amendment claims have been a matter of public record since Stinnett's divorce became final in 1979. Indeed, because [petitioner's] federal habeas counsel located those documents, there is little reason to think that his state habeas counsel could not have done so as well"). **We should be surprised, to say the least, if a district court familiar with the standards of trial practice were to hold that in all cases diligent counsel must check public records containing personal information pertaining to each and every juror.** Because of Stinnett and Woodson's silence, there was no basis for an investigation into Stinnett's marriage history. Section 2254(e)(2) does not apply to petitioner's related claims of juror bias and prosecutorial misconduct.

529 U.S. at 443 (emphasis supplied).  Likewise, in this case, Mr. Troya is not barred from merits review of his juror misconduct claims in this Court simply because trial counsel failed to investigate whether prospective jurors were telling the truth about their backgrounds.

**Direct Appeal.**

The Court imposes a duty on appellate counsel which finds no support in the law.  In *United States v. Fell*, 2013 WL 1953322, at 2 (D. Vt. 2013), the district court correctly concluded that procedural default did not bar juror misconduct claims not raised on direct appeal where nothing in the record supported it:

> The government argues that all of Fell's juror claims, raised for the first time in this motion, are procedurally defaulted. In general, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). The purpose of the rule is to "conserve judicial resources and to respect the law's important interest in the finality of judgments." *Id.* Like ineffective assistance of counsel claims, however, juror misconduct claims may be poorly suited to resolution on direct appeal. Evidence of juror misconduct may not appear in the trial record. *Cf. id*. at 504–05 (discussing ineffective assistance claim). A district court-in particular the one that presided over voir dire, jury selection, trial and verdict-has the opportunity to develop a record and to weigh the facts relevant to determining whether a defendant has been deprived of his right to a fair and impartial jury. *Cf. id*. at 505–06. Accordingly, where, as here, the trial record did not disclose grounds for raising the jury issues on appeal, and the jury claims could not be presented without additional factual development, the procedural default rule will not apply to bar the claims. *See Waley v. Johnston*, 316 U.S. 101, 104 (1942) (*per curiam*) (holding that an issue was appropriately raised by habeas corpus petition where "[t]he facts relied on are dehors the record and their effect on the judgment was not open to consideration and review on appeal"); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998) (distinguishing a *Waley* claim from one that can be fully addressed on direct review based on the record); *see also Ida v. United States*, 191 F.Supp.2d 426, 436 (S.D.N.Y.2002) (holding that a juror misconduct issue was properly raised in a § 2255 motion).

Appellate counsel could not have raised this claim, because there were no facts in the record to support it. It is axiomatic that issues raised on appeal must be supported by the record. *Massaro,* 538 U.S. at 506 ("Even meritorious claims would fail when brought on direct appeal if the trial record were inadequate to support them."). No record support existed upon which appellate counsel could have possibly raised the juror misconduct issue. Accordingly, appellate counsel was under no obligation to investigate it during the course of the appeal. *See Bousley v. United States,* 523 U.S. 614, 621-22 (1998) (noting there is an exception to procedural default rule

"when the facts were 'dehors the record and their effect on the judgment was not open to consideration and review on appeal.'") (quoting *Waley v. Johnston*, 316 U.S. 101, 104 (1942) (per curiam)).

This Court's reasoning is also directly at odds with the Federal Rules of Appellate Procedure. Rule 10 describes the entirety of the record on appeal in a case as only those matters originating in the district court from which the judgment is being appealed:

**FRAP 10. The Record on Appeal**

(a) Composition of the Record on Appeal. The following items constitute the record on appeal:

> (1) the original papers and exhibits filed in the district court;

> (2) the transcript of proceedings, if any; and

> (3) a certified copy of the docket entries prepared by the district clerk.

Appellate counsel are required to ensure a complete record is filed, but that record derives from what occurred in the district court. This Court's reasoning – that appellate counsel were obligated to investigate and raise this claim which had no record support - retroactively revises the appointment of appellate counsel to both appellate and habeas counsel, and in effect improperly shortens the one-year period following the conclusion of the appeal within which to file a § 2255 motion.

**Procedural Default and Rule 4: Entitlement to Relief**

**Claim XII - THE GOVERNMENT VIOLATED *BRADY V. MARYLAND* AND *GIGLIO V. UNITED STATES* BY FAILING TO ACCURATELY REVEAL THE EXTENT OF THE PROMISES MADE TO COOPERATING WITNESSES, IN VIOLATION OF THE FIFTH, SIXTH AND EIGHTH AMENDMENTS**

The Court dismisses this claim finding both procedural default for not raising it on appeal and that the allegations are not sufficient.  The Court errs on both points.

11

**Procedural Default.**

Regarding Mr. Troya's claim that two of the cooperating witnesses were sentenced in 2009, this Court concludes appellate counsel should have investigated the issue and raised it earlier. Doc. 40 at 7. But as discussed above, appellate counsel have no such obligation. And by requiring such claims to be raised on appeal, this Court essentially substitutes its own significantly shortened statute of limitations for § 2255 motions. This restrictive timetable is plainly at odds with the statutory scheme, and contrary to *Massaro*.

In any event, with proper notice and the opportunity to be heard, Mr. Troya can demonstrate how the government's failure to disclose exculpatory facts would establish cause and prejudice to excuse any default the government may choose to assert. *See, e.g., Banks v. Dretke*, 540 U.S. 668, 692-94 (2004) (State's failure to disclose witness's status as informant established cause for failure to raise claim); *Julius v. Jones*, 875 F.2d 1520, 1525 (11th Cir. 1989) ("This Court is unwilling to hold on the facts of this case that, if the prosecutor failed to produce evidence which was required to be produced under *Brady* and which failure was unknown to defendant's counsel, the claim is procedurally barred because defense counsel did not ferret out the violation. Such a ruling would reward the wrongdoer because he was not timely found out.").

**Sufficiency of allegations.**

This Court's order dismissing Mr. Troya's *Brady/Giglio* claims cites to cases arising in other habeas contexts and applies standards of review that are inapposite here. For example, this Court appears to conflate merits review with the low threshold of Rule 4 review. In rejecting a *Brady* allegation, for example, this Court cited Moore's Federal Practice § 616.06[02]. Doc. 40 at 8. Nothing in this section of Moore's Federal Practice, or the numerous cases footnoted by this

section, discuss or relate to the determination of whether a *Brady* allegation is patently frivolous. In fact, most of the cited cases are direct appeal cases and all decide the *Brady* claims on the merits.  Mr. Troya does not dispute that a *Brady* allegation without sufficient evidentiary support would fail to win on the merits.  However, such a determination here would be premature; as it can only be made after proper discovery and an evidentiary hearing. Thus, as set forth below, this Court erroneously mixed the standard for an evidentiary hearing with that of Rule 4.

The Court references the allegations of the prior attempts at discovery under FOIA and concludes: "Here, the Movant does little more than speculate that the witnesses must have reached an undisclosed agreement with the Government in exchange for their testimony. A favorable outcome for the cooperating witnesses, in and of itself, does not serve as the basis for a *Brady* claim." Doc. 40 at 8.  The movant agrees he would likely need additional support for his claim to succeed at an evidentiary hearing, but that is not the standard here. Under Rule 4(b), the standard is "whether these allegations, when viewed against the record…were 'so palpably incredible,' so 'patently frivolous or false,' as to warrant summary dismissal." *Blackledge*, 431 U.S. at 76 (citation omitted).   They are not. This Court should reinstate the claim and permit discovery.

**Claim XIII, p. 226 - THE GOVERNMENT VIOLATED ITS OBLIGATIONS PURSUANT TO *BRADY V. MARYLAND* BY FAILING TO DISCLOSE EXCULPATORY INFORMATION TO THE DEFENSE THAT WAS MATERIAL TO THE GUILT AND PENALTY PHASES OF TRIAL.**

In dismissing Claim XIII(A), regarding the government not charging Danny Varela with the murders, this Court *sua sponte* invoked procedural default, reasoning the claim was raised at trial and not on appeal. Doc 40 at 9. The Court misapprehends the law and facts in so ruling.

**Sufficiency of Allegations.**

This Court dismissed Claim XIII based on language from *Winthrop-Redin v. United States*, 767 F.3d 1210 (11th Cir. 2014). Doc. 40 at 10.  That case, however, did not involve summary dismissal under Rule 4 but rather whether the movant met the legal standard necessary for an evidentiary hearing on his claims.  *Winthrop-Redin* actually provides support for Mr. Troya and highlights the low threshold necessary to survive Rule 4 review.  The fact that Winthrop-Redin's claims were denied on the merits and that the Eleventh Circuit granted a Certificate of Appealability necessarily means his allegations survived summary dismissal, even though they were subsequently found to be "conclusory" and a "fishing expedition" by the Eleventh Circuit.

*Machibroda v. United States*, 368 U.S. 487 (1962), another case cited by this Court and by the *Winthrop-Redin* panel, also provides useful guidance in separating the Rule 4 standard from a determination of whether a hearing is required.  In *Machibroda*, the Supreme Court vacated the lower court's refusal to grant a hearing because the movant's allegations, although improbable, were not palpably incredible. *Id* at 495-96.  The Supreme Court remanded because the prosecutorial misconduct alleged would have occurred outside of the courtroom and thus could not be refuted by the record, and there was discovery which could potentially shed light on the allegations (i.e. jail visitor and mail records). *Id.* at 494-95.  Again, this standard, albeit also with a low threshold, pertains to evidentiary hearings, the necessity of which is a determination to be made after Rule 4 review and Rule 6 discovery.

Mr. Troya alleged that after the pre-trial *Brady* motion was denied and the first phase of the trial was concluded, "The government's ostensible reason for not charging Mr. Varela with murder has now been explicitly stated.  This justification – that the government could not prove

14

his guilt beyond a reasonable doubt – collapses under the weight of the government's trial presentation." Doc. 4 at 234. Mr. Troya further alleged that, "The government has also withheld information that further demonstrates Mr. Varela's direct connection to (and thus, liability for) the murders.  The government did not disclose information from cooperating witness Mario Davis that Mr. Varela had direct involvement in the murders.  The government also did not disclose information from Phillip Perez regarding Mr. Varela's large-scale drug trafficking and gun possession." Doc. 4 at 235. In light of the fact jurors thought it was a travesty that Danny Varela was not charged with the murders, there is a reasonable possibility that Mr. Troya would not have been convicted or received a death sentence had the jurors known of the information or had the opportunity to convict Danny Varela of the murders. Id. *See also* Bentele, Multiple Defendant Cases: When The Death Penalty is Imposed on the Less Culpable Offender, 38 Rutgers Law Record 119, 129-131 (2011)(discussing cases and studies showing "jurors' sensitivity to the importance of equal treatment of equally culpable participants...")

These allegations accepted as true clear the low threshold of Rule 4 in light of the case law detailed above. Mr. Troya should be further granted discovery and an evidentiary hearing to afford him an opportunity to establish this claim. Any prejudice found should be considered both individually and cumulatively.

**Claim XIX, p. 267 - MR. TROYA'S DEATH SENTENCES VIOLATE THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION'S PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENTS.**

The Court's imposition of a procedural defense where none has been asserted by the government is in error, as briefed above. In any event, an Eighth Amendment bar to execution cannot be waived under these circumstances. "[A]s a general principle,…a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether

the conviction or sentence became final before the rule was announced." *Montgomery v Louisiana*, 136 S. Ct. 718, 731 (2016). An Eighth Amendment prohibition against an execution is one such substantive rule, *see id.*, and Mr. Troya's challenge is therefore cognizable in these § 2255 proceedings.

This Court observes there is "no binding precedent" to support the claim. Doc 40 at 10. But that has never been the standard, particularly for claims founded on the Eighth Amendment, which is interpreted in light of "evolving standards of decency." "The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958). Moreover, "the Clause forbidding 'cruel and unusual' punishments 'is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice.'" *Gregg v. Georgia*, 428 U.S. 153, 171 (1976) (quoting *Weems v. United States*, 217 U.S. 349, 378 (1910)).

In fact, the district court in *United States v. Fell*, 5:01-cr-00012-GWC-1 (D. Vt.), recently conducted a nine-day evidentiary hearing on the issues outlined in this claim to develop a comprehensive, up-to-date record cataloguing the deficiencies of the operation of the death penalty under the Eighth Amendment. This Court should likewise reinstate the claim and ultimately permit an evidentiary hearing.

**Rule 4: Entitlement to Relief**

**Claim II, p. 51 - TRIAL COUNSEL FAILED TO TIMELY CHALLENGE THE COMPOSITION AND SELECTION OF THE GRAND AND PETIT JURY VENIRES IN VIOLATION OF THE FIFTH, SIXTH, AND EIGHTH AMENDMENTS.**

In Claim II of his § 2255 Motion, Mr. Troya alleged that trial counsel was ineffective for failing to investigate and challenge the composition and selection of the grand and petit jurors in his case. This Court dismissed that claim because it believed Mr. Troya had failed to properly

allege the deficient performance prong of his *Strickland* claim. Order at 12-14. This dismissal is based on errors of both law and fact.

This Court's order states that Mr. Troya had pled only "a singular paragraph devoted to the argument that counsel's performance was unconstitutional" and that Mr. Troya had cited "no law or fact to support his argument." Order at 12-13. [3] Contrary to the Court's assertion, Mr. Troya's pleading met the requirements of Rule 4. First, Mr. Troya alleged the factual basis for his claim: that trial counsel failed to challenge the composition and selection of the grand and petit jurors in his case, specifically as to Hispanics and African-Americans. Moreover, Mr. Troya did cite caselaw supporting his claim. He alerted this Court to the constitutional amendments upon which his claims are based, citing to Supreme Court caselaw supporting such challenges. This alone is sufficient to meet the pleading requirements. As courts have held, a petitioner may alert a court that a federal constitutional claim is at issue by relying on federal or state cases employing federal constitutional analysis, *see, e.g., Williams v. Lord,* 996 F.2d 1481, 1483 (2d Cir. 1993), *cert. denied,* 510 U.S. 1120 (1994), or by alleging the claim using "magic words" that invoke a specific federal constitutional right. *See, e.g., Ford v. Georgia,* 498 U.S. 411, 419 (1981) (petitioner's challenge to "pattern of excluding black persons from juries 'over a long period of time' . . . could reasonably have been intended and interpreted to raise a claim under the Equal Protection Clause")*; McNulty v. Olim,* 652 F.2d 1369, 1370 (9th Cir. 1981) (use of words "ineffective assistance" exhausted Sixth Amendment claim).

Mr. Troya's pleading, however, went even further and specifically cited to Eleventh Circuit cases where trial counsel were found ineffective for failing to raise the very same kind of

---

[3] Counsel notes that this language is reproduced verbatim in the order dismissing claims in Mr. Ricardo Sanchez's case. Sanchez Order at 22. Because the section of Mr. Troya's motion that dealt with this issue was more than one paragraph and cited numerous cases (as discussed *infra),* perhaps the Court confused the two motions in its order.

claim Mr. Troya's lawyers failed to raise. *See* Motion at 53-54 (citing *Goodwin v. Balkcom*, 684 F.2d 794 (11th Cir. 1982) and *Hollis v. Davis*, 912 F.2d 1343 (11th Cir. 1990)). Thus it is incorrect that Mr. Troya pled only a "single paragraph" that "cites no law or fact". On this basis alone, the Court should grant reconsideration and vacate its dismissal of this claim.

The order dismissing Mr. Troya's claims also relied on flawed legal reasoning by imposing a "knowledge" requirement on his *Strickland* claim. *See* Doc. 40 at 13 ("Movant must also show that a constitutionally effective lawyer should have and would have known that this was a claim worthy of pursuit and investigation"; "Movant would have to show that defense counsel should have known that the Southern District of Florida was inaccurately reporting statistical data and that inaccurate reporting resulted in an unconstitutionally disproportionate amount of racial minorities being underrepresented…"). Mr. Troya is not required to make such a showing.

Pursuant to *Strickland* and its progeny, Mr. Troya need not prove that trial counsel should have known, prior to collecting data on the composition of the federal jury wheel, whether meritorious claims existed. Rather he must merely allege (as he did) that the claim is the kind of issue that reasonably effective capital counsel is expected to investigate. *See Padilla v. Kentucky*, 559 U.S. 356, 366-67 (2010). Existing professional norms clearly show that capital counsel, at the time of Mr. Troya's trial, had a duty to investigate the manner in which the grand and petit juries are composed. In addition to the caselaw cited by Mr. Troya, the American Bar Association standards at the time of Mr. Troya's trial (and described by the Supreme Court as guides to the reasonableness of effective representation, *see Padilla* at 366-67) clearly show that reasonably effective capital counsel would have investigated these issues. *See e.g.* 2003 ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases,

Guideline 10.10.2 (Counsel should investigate "challenges to the selection of the grand jury and grand jury forepersons as well as to the selection of the petit jury venire."); *see also* related Commentary to Guideline 10.10.2 ("Bearing in mind that the history of capital punishment in this country is intimately bound up with its history of race relations counsel should determine whether discrimination is involved in the jury selection process. Counsel should investigate whether minorities or women are underrepresented on the jury lists from which grand and petit juries are drawn, or if race or gender played a role in the selection of grand jury forepersons.")

Furthermore, because this is a preliminary review pursuant to Rule 4, the pertinent question is not whether this Court believes Mr. Troya will ultimately prevail on the claim. The issue is whether Mr. Troya has pled facts which, if true, state a claim for relief. In light of the fact that prevailing capital defense norms mandated that counsel investigate this issue and the existence of Eleventh Circuit caselaw granting habeas relief on similar grounds, it is clear that Mr. Troya's claim cannot be dismissed pursuant to Rule 4.

**Claim III, p. 61 - MR. TROYA'S MURDER CONVICTIONS AND RESULTING DEATH SENTENCES ARE BASED ON AN IMPERMISSIBLY VAGUE STATUTE, IN VIOLATION OF DUE PROCESS AND THE FIFTH, SIXTH, EIGHTH AMENDMENTS.**

This Court dismissed Claim III of Troya's amended § 2255 petition that his death sentence was based upon an impermissibly vague statute after *Johnson v. United States*, 135 S. Ct. 2551 (2015). Doc. 25 at 82.  In so finding, the Court cited *United States v. Moore*, 43 F.3d 568 (11th Cir. 1994), stating that, "it is without question that the United States Court of Appeals for the Eleventh Circuit has held that the crime of carjacking 'is always and without exception a crime of violence." Doc. 40 at 16. This Court went on to further rule that, "Whether the Movant's argument regarding the vagueness of 924(c)'s residual clause under *Johnson* is correct,

it is inapplicable to his claim because the offense of carjacking is rooted in the force clause of the statute which remains unaffected by *Johnson*." Doc. 40 at 17.

The Court's order misapprehends the precedential value of *United States v. Moore*, 43 F.3d 568 (11th Cir. 1994). *Moore* decided carjacking was a crime of violence based upon the residual clause and is therefore no longer good law. *See Moore*, 43 F.3d at 568. Since *Moore* was decided in 1994, intervening caselaw has wrought significant changes in the methodology for determining whether specific crimes constitute a crime of violence. Such changes implicitly abrogated the decision in *Moore*. *See In re Rogers*, 825 F.3d 1335, 1349 n.8 (11th Cir., June 17, 2016)(explaining that in deciding whether to grant an application, the Court has "an obligation to evaluate whether [the] binding precedent clearly has been abrogated by intervening caselaw"). *Moore* was decided prior to *Leocal v. Ashcroft*, 543 U.S. 1, 125 S. Ct. 377 (2004), *Descamps v. United States*, 133 S.Ct. 2276 (2013), *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), *Curtis Johnson v. United States,* 559 U.S. 133, 130 S. Ct. 1265 (2010) (*Curtis Johnson*), and *Mathis v. United States,* 136 S.Ct. 2243 (2016). And the *Moore* panel's *ipse dixit* conclusion that "[t]he term "crime of violence" as Congress defined it in 18 U.S.C. § 924(c)(3) clearly includes carjacking" — which lacked explanation or analysis — cannot be squared with those decisions and the strict, element-by-element comparison required by the categorical approach. *See Moore*, 43 F.3d at 572–73. Based upon the different "mode of analysis" now dictated by *Curtis Johnson*, *Mathis, Moncrieffe*, and *Descamps*, *Moore* has been effectively abrogated at this time.[4]

---

[4] In similar circumstances, the Court has easily declared prior precedents "effectively overruled." *See, e.g., United States v. Howard*, 742 F.3d 1334, 1337, 1343-1345  (11th Cir. 2014); *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008); *Dawson v. Scott*, 50 F.3d 884, 892 n. 20 (11th Cir. 1995); *see also* Scalia, Antonin, J., *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1177 (1989) (lower courts are not only bound by the narrow "holdings" of higher court decisions, but also by their "mode of analysis").

This conclusion is especially true in light of the fact that *Moore* arguably rests its holding upon the residual clause of § 924(c), not the force clause. *See Moore*, 43 F.3d at 572–73.

A closer analysis of § 2119 reveals why it does not qualify as a crime of violence under § 924(c)'s elements clause. § 2119 states that a carjacking occurs when an individual "with the intent to cause death or serious bodily harm takes a motor vehicle . . . from the person or presence of another *by force and violence or by intimidation*, or attempts to do so . . . ." 18 U.S.C. § 2119 (emphasis added). Under the least-culpable-act rule, the Court must presume Mr. Troya's carjacking offense occurred by the use of intimidation rather than by force or violence. *See Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013). According to the Eleventh Circuit's pattern jury instruction, an individual may be convicted of carjacking by intimidation where "an ordinary person" would be put in fear of bodily harm. Accordingly, Mr. Troya's carjacking conviction did not require the threatened "use" of "physical force" so it could not qualify as a "crime of violence" under § 924(c)'s elements clause.

Furthermore, this Court misapprehended the precedential value of *In re: Smith*, 2016 WL 3895243 (11th Cir. July 18, 2016), because it is not binding precedent. This Court cited *In re: Smith* noting that the Eleventh Circuit had recently denied a claim very similar to Mr. Troya's. Doc. 40 at 16-17. *In re Smith* should not be considered binding precedent because it involved an Eleventh Circuit ruling on an application for leave to file a second or successive (SOS) motion to vacate, set aside, or correct sentence. Judge Martin of the Eleventh Circuit recently observed that it is neither wise nor just for these types of rulings to qualify as binding precedent. *See United States v. Seabrooks*, 2016 WL 6090860 (11th Cir. October 19, 2016). In expounding why an SOS order should not be binding outside the SOS context, Judge Martin stated,

> The statute requires us to act on these applications within thirty days. 28 U.S.C. § 2244(b)(3)(D). Unlike our Court's merits decisions, the statute strictly prohibits

21

any review of our rulings on these applications. Id. § 2244(b)(3)(E). Our Court has even ruled that we can't consider a prisoner's application if that prisoner has already made substantively the same claims in an earlier application. *In re Baptiste,* 828 F.3d 1337 (11th Cir. 2016). This makes it possible for a three-judge ruling (or even a two-judge ruling) on one of these applications to say things rejected by every other member of the court.

It is neither wise nor just for this type of limited ruling, resulting from such a confined process, to bind every judge on this court as we consider fully counseled and briefed issues in making merits decisions that may result in people serving decades or lives in prison.

*Id.* at 49.

In light of the foregoing, Mr. Troya requests this Court reconsider its ruling, and grant further briefing on the issue of the continued viability of *United States v. Moore*, 43 F.3d 568 (11th Cir. 1994). Also, if the Court determines it is also basing the dismissal of Claim III on the inapplicability of *Johnson* to cases involving § 924(c), Mr. Troya requests that the Court grant briefing on that issue as well.

Wherefore, Mr Troya requests this Court reconsider its Order Dismissing Claims, vacate the Order, and reinstate Mr. Troya's dismissed claims.

Respectfully submitted,

*/s/ Steven H. Malone*
STEVEN H. MALONE
Steven H. Malone, P.A.
1217 South Flagler Drive
Second Floor
West Palm Beach, FL 33401
Tele: 561-805-5805
Email: stevenhmalone@bellsouth.net
Florida Bar No. 305545
*Counsel for Daniel A. Troya*

*/s/ D. Todd Doss*
D. TODD DOSS
Assistant Federal Defender
Federal Defender's Office, MDFL
201 South Orange Ave., Ste. 300
Orlando, FL 32801
Tele: 407-648-6338
Email: todd_doss@fd.org
Florida Bar No. 0810384
*Counsel for Daniel A. Troya*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 8, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in this case, either via transmission of the Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ *Steven H. Malone*
STEVEN H. MALONE


/s/ *D. Todd Doss*
D. TODD DOSS

23