**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-80700-CV-SCOLA**
**(Case No. 06-80171-Cr-Hurley (s)(s)(s))**

DANIEL TROYA,
                    Petitioner,

vs.

UNITED STATES OF AMERICA,
                    Respondent.
_____/

**GOVERNMENT RESPONSE TO TROYA'S MOTION TO RECONSIDER (CV-DE 45)**
**THE COURT'S ORDER DISMISSING CLAIMS (CV-DE 40)**

The United States of America, through the undersigned Assistant United States Attorney, hereby answers Petitioner's Motion to Reconsider.  CV-DE 45.  As fully set forth below, the Court correctly followed procedural rules and case law in reviewing Petitioner's claims and dismissing those claims that lack factual or legal merit, are procedurally barred, or both.  The Petitioner cannot show that the Court committed clear error or a manifest injustice in dismissing certain claims.  For all the reasons set forth herein, Petitioner's Motion for Reconsideration lacks merit and should be denied.

**RELEVANT PROCEDURAL BACKGROUND**

On May 3, 2016, Troya filed the instant Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255.  CV-DE 1.  Pursuant to Court order (CV-DE 14) Troya filed a properly certified, unredacted version of his § 2255 motion on May 31, 2016 (CV-DE 25).   In support of his motion, Troya supplemented the record with 1,758 pages of documentary evidence which purportedly support his claims.  CV-DE 5-1 et seq., CV-DE 6-1 et seq., CV-DE 25-1 et seq.

A few days prior to this amended filing, the Court entered an order, *sua sponte*, requiring the parties to meet and confer regarding discovery and scheduling issues (including the filing of

amended pleadings) pursuant to Fed. R. Civ. Pro. 26(f) and Local Rule 16.1(b).  Although standard fare in general civil litigation, such orders are rarely entered in habeas proceedings, where all legal claims must be alleged within a one year deadline (*See* 28 U.S.C. § 2255(f)), all facts supporting these claims must be included in the original petition (*See* Rule 2, Rules Governing Section 2255 Proceedings), the record is complete due to the extensive proceedings in the companion criminal case (*See* Note to Rule 7, Rules Governing Section 2255 Proceedings), and discovery is rarely available (*See* Rule 6(a), Rules Governing Section 2255 Proceedings).   The court's order was the first time that the possibility of discovery or filing amended pleadings was mentioned in the record. By the time the court's order was entered, Troya's one-year deadline under § 2255(f) had already come and gone.

Pursuant to the Court's order, the parties conferred on the issue of discovery and scheduling and filed a Joint Status Report and Proposed Scheduling Order. CV-DE 17.  This joint filing, which Troya never objected to, indicated that the Government opposed the availability of any discovery as a matter of law and that Troya anticipated filing an amended petition only in response to any new discovery received, if discovery was ordered by the Court.   Hence the parties suggested that the deadline for filing amended pleadings would be 90 days from the close of discovery, if discovery was ordered by the Court.  To date, discovery has not been ordered.

Following the filing of this Joint Status Report, the Court entered a Scheduling Order (CV-DE 29) on July 14, in which the Court ordered the Government to respond to Troya's amended petition on or before October 12, 2016, set deadlines for the filing of discovery motions and replies, and indicated that at the then-set December 2, 2016, status conference, the Court would rule on the discovery motion and set deadlines for the filing of amended pleadings, if necessary.    The court entered a Revised Scheduling Order on October 20, 2016 (CV-DE 42), cancelling the

2

December 2, 2016 status conference and re-setting it for December 20, 2016 at 9:30 a.m. The implication of the Joint Report and the Court's Scheduling Order is that unless and until the Court grants the discovery motion, the filing of an amended petition is neither anticipated nor likely.

Troya filed his motion for discovery on September 12, 2016 (CV-DE 34).

By paperless order entered on October 4, 2016, the Court granted the Government an extension until November 14, 2016, to respond to all of Sanchez's remaining, non-dismissed claims. CV-DE 38.   On October 18, 2016, prior to the expiration of the initial response period set for the United States, the Court issued an order partially dismissing Troya's claims, and denying Troya's Motion to Interview Jurors.  CV-DE 40.  In that order, the Court dismissed Troya claims V, VI, VII, XVI, XVII, and XXIII.[1]   The Court determined that Claim V (juror misconduct) was procedurally defaulted as it could have been raised, but was not raised on direct appeal.  The Court further determined that claims XVI (*Brady* and *Giglio* violations concerning promises allegedly made to cooperating witnesses), XVII (*Brady* violations during sentencing concerning co-defendant Varela), and XXIII (constitutionality of death penalty) are procedurally defaulted but, even if they were not subject to a procedural bar, should be dismissed because the Movant is clearly not entitled to relief.  Finally, the Court dismissed claims VI (ineffective assistance of counsel regarding failure to challenge the jury venires) and VII (Section 924(c) impermissibly vague) on the grounds that Movant is clearly not entitled to relief.

On November 8, 2016, Troya filed the instant Motion to Reconsider.  CV-DE 45.

---

[1] The Court's Order Dismissing Claims, CV-DE 40, denominated Troya's claims in a different numbering sequence than that used by Troya in CV-DE 25. To avoid confusion of issues, the United States will cite to the original issue number used in CV-DE 25.

## MEMORANDUM OF LAW

In his Motion to Reconsider, Troya claims that the Court's order dismissing claims was improper in that the Court used the wrong legal standards (CV-DE 45 at p. 1-4, 18); lacked the authority to dismiss some claims while allowing others to survive (CV-DE 45 at p. 3-4); failed to provide notice of the impending dismissal and the opportunity to correct any perceived deficiencies (CV-DE 45 at p. 6-8); lacked authority to dismiss claims due to procedural default *sua sponte* and before the government response was filed (CV-DE 45 at p. 6-8); and denied Troya of the opportunity to expand upon his claims through discovery (CV-DE 45 at p. 4-6).  There is no legal merit to any of these claims.

While the Rules Governing Section 2255 Proceedings do not directly address motions for reconsideration, they do contemplate the use of the federal rules of civil and criminal procedure to the extent that they are not inconsistent with any statutory provisions or the Rules Governing Section 2255 Proceedings.  *See* Rule 12, Rules Governing Section 2255 Proceedings.  Federal Rule of Civil Procedure 59(e) addresses motions for reconsideration.  "While Rule 59(e) does not set forth any specific criteria, the courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Williams v. Cruise Ships Catering & Serv. Int'l, N.V.*, 320 F.Supp.2d 1347, 1357–58 (S.D.Fla.2004) (*citing Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994)); *see also Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366, 1369 (S.D.Fla.2002).  "[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Wendy's Int'l, Inc. v. Nu–Cape Const., Inc.*, 169 F.R.D. 680, 685 (M.D.Fla.1996); *see also Campero USA Corp. v. ADS Foodservice, LLC*, 916 F.Supp.2d

1284, 1290 (S.D.Fla.2012) ("A motion for reconsideration is an extraordinary remedy to be employed sparingly.") (citation omitted). " A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F.Supp. 1561, 1563 (S.D.Fla.1992). Simply put, a party "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir.2005).

Troya does not meet the burden of justifying reconsideration. He has not pled an intervening change in controlling law or the availability of new evidence. What Troya does plead falls far short of establishing a need to correct clear error or prevent a manifest injustice.

Troya insinuates that the Court did not apply the correct legal standard. The standard is set forth in Rule 4, a rule to which the Court cited in its order of dismissal. The Court correctly applied this rule. Troya claims that the Court erred in dismissing certain claims *sua sponte* before the Government's answer was filed. The rules governing 2255 petitions clearly allow for, and indeed require, the Court to examine the petition and dismiss it "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings, that the moving party is not entitled to relief". Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. "If the motion is not dismissed, the judge must order the United States Attorney to file an answer". *Id*. A 2255 is unusual in the sense that, unlike other motions in Federal Court, no response is required to be filed unless and until the court specifically orders that a response be filed. *See* Rule 5, Rules Governing Section 2255 Proceedings for the United States District Courts). The propriety and requirement of early review of 2255 claims is expressly contemplated by the rules. *See* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States

District Courts. The Court did not err in dismissing specific claims before the government to filed a response.

Troya further claims that the Court lacked the authority to dismiss some claims, but not others.  It is true that Rule 4 does not expressly contemplate the retention of some claims. However, it also does not specifically exclude this approach.  Indeed, the rule provides that "if the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response within a fixed time, *or to take other action as the judge may order*".  Rule 4 (italics added).  Dismissing certain claims and ordering the Government to respond to the remaining claims, as the Court did herein, is an entirely appropriate action under this rule.

Troya further argues that claims that "[s]ummary dismissal under Rule 4 of the Rules Governing Section 2255 Proceedings is rarely warranted in a capital § 2255 case and the standard for such dismissal is extremely high" but provides no legal support for the claim—no citations to rules or case law.  The undersigned could also find no support for this proposition.  Indeed, Rule 4 applies equally to all Section 2255 cases.

Troya argues that the Court must accept all of his allegations as true unless they are conclusively refuted by the record.  CV-DE 45 at p. 2.  The Court correctly applied this standard as well.   CV-DE 40 at p. 13.  The majority of the dismissal order contains no factual findings. The few factual findings that are made are either supported by the record or the Court specifically credited Troya's interpretation of the evidence. *See id*.   Troya cites to and misquotes *Machibroda v. United States*, 368 U.S. 487, 495 (1962) in an attempt to muddy the applicable legal standard and support his allegation that the Court erred in dismissing certain claims.  Troya misquotes *Machibroda* as stating that "[t]he belief or contention that 'allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence.'"  The actual

6

quote states, "[t]he government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence."  Troya's reworking of this quotation makes it appear that the Court's view of the allegations cannot serve as a basis for dismissal when that was not the holding of *Machibroda*.  In *Machibroda*, a 2255 petitioner had made detailed and specific factual allegations that he had received certain promises from the Assistant United States Attorney. *See Id*. at 489-90, 495, 82 S.Ct. 510.   The Supreme Court remanded the case for an evidentiary hearing after finding that "the District Court did not proceed in conformity with the provisions of 28 U.S.C. § 2255, when it made findings on controverted issues of fact ... without a hearing." *Id.* at 494, 82 S.Ct. 510.   In making this decision, the Court was careful to note that:

> [w]hat has been said is not to imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not strip the district courts of all discretion to exercise their common sense.

*Machibroda v. United States*, 368 U.S. 487, 495, 82 S. Ct. 510, 514, 7 L. Ed. 2d 473 (1962). The Court cited to the last sentence of this quote in its order dismissing claims.  CV-DE 40 at p. 10.  Contrary to what Troya wrote, the Court is allowed to use its own common sense in reviewing the record and determining which claims to dismiss.  It correctly exercised that judgement herein.

Troya also argues that the Court erred in dismissing claims before Troya had an opportunity to provide legal and factual support for his claims.  The rules governing section 2255 proceedings specifically require 2255 motions to clearly state the factual and legal basis for their claims in the initial petition.   *See* Rule 2, Rules Governing Section 2255 Proceedings for the United States

District Courts.   Such petitions must be filed with the strict deadlines set forth in 28 U.S.C. § 2255 (f), which deadline in Troya's case expired on May 4, 2016.  A timely filed motion "must specify all grounds for relief and state the facts supporting each ground."  Rule 2(b)(1) & (2), Rules Governing Section 2255 Proceedings for the United States District Courts.  That the motion should contain all supporting facts and supporting evidence is further reinforced by the mandatory early review and possible summary dismissal of claims based solely on the "motion, any attached exhibits, and the record of prior proceedings".   Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

Troya claims that the order of dismissal was premature in that it was issued before discovery was ordered and therefore Troya was not given an opportunity to flesh out his claims with information learned through discovery.  Discovery has not yet been ordered in this case, and might never be ordered.  *See* Rule 6, Rules Governing Section 2255 Proceedings for the United States District Courts. Indeed, the Court was in possession of Troya's discovery motion, and was presumably aware of its merits or lack thereof, when the order to dismiss was filed.  Troya is not entitled to delay these proceedings and choose when, and how, he will cure any legal deficiencies.

Curiously, Troya uses the discovery argument for claims that were dismissed not because of undeveloped factual basis, but because of procedural default.   In support thereof, Troya misquotes the case of *United States v. Sampson*, 820 F. Supp. 2d 202, 212-13 (D. Mass. 2011) and writes: "[p]otentially meritorious claims that allege specific facts, that are based on information outside the presiding judge's knowledge and the records of the case…may not be summarily dismissed, even if the ultimate likelihood of success on the merits appears relatively low to those familiar with the trial."  CV-DE 45 at 6.  The use of the ellipse changed the meaning of the quote, which actually reads: "[p]otentially meritorious claims that allege specific facts, that are based on

information outside the presiding judge's knowledge and the records of the case, *and that are not barred by procedural considerations* may not be summarily dismissed, even if the ultimate likelihood of success on the merits appears relatively low to those familiar with the trial." *United States v. Sampson*, 820 F. Supp. 2d 202, 212–13 (D. Mass. 2011)(*italics added*).  The implication of this complete quote is that claims that are procedurally barred may be summarily dismissed. There is no requirement that the Court refrain from dismissing procedurally defaulted claims unless and until discovery is completed.

Troya further claims that the Court erred in *sua sponte* dismissing claims on the basis or procedural default as this is "an affirmative defense and Mr. Troya has no obligation to preemptively account for an affirmative defense." CV-DE 45 at p. 6.  In support of this argument, Troya cites to several cases and a legal treatise—all of which pertain to garden variety civil cases, and not collateral attacks on criminal sentences.   A review of 2255 case law in this circuit shows that Troya's interpretation of procedural default issues is patently incorrect.

A petitioner is procedurally barred from raising, for the first time in a collateral attack on his conviction, issues that were capable of being raised on direct appeal, unless the petitioner can demonstrate both: "(1) 'cause' excusing his . . . procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982); *see also Keeney v. Tamayo-Reyes*, 112 S. Ct. 1715, 1719 (1992) (cause and prejudice standard applicable to failure to take an appeal); *accord Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 2565 (1991); *United States v. DeBernardo*, 880 F.2d 1216, 1227 (11th Cir. 1989) (failure to take an appeal may be raised as a bar to collateral relief).    Where a defendant makes no showing of cause and prejudice regarding the failure to raise issues on direct appeal that are raised for the first time in a Section 2255 motion, summary dismissal of those claims is warranted.

*See Parks v. United States*, 832 F.2d 1244, 1246 (11th Cir. 1987). Troya made no attempt to show cause or prejudice with regard to claims that could have been raised on appeal. As such, pursuant to Eleventh Circuit precedent, the Court did not err in summarily dismissing those claims under the procedural default rule.

Troya further argues that "the Eleventh Circuit has repeatedly held that it is reversible error to summarily dismiss claims based on a procedural default prior to a response." CV-DE 45 at p. 7. In support of this argument, Troya cites to *Davis v. Dugger,* 829 F.2d 1513, 1521 (11th Cir. 1987), and *Martin v. Sec'y Dept. of Corr.*, 262 Fed.Appx. 990, 993 (11th Cir. 2008). Neither of these cases is applicable to the case at bar. Both *Davis* and *Martin* involved 2254 petitions that were dismissed based on failure to exhaust state remedies. Generally, a habeas petitioner cannot raise a claim in federal court if the claim was not first exhausted in state court. *See* 28 U.S.C. § 2254(b)(1). The general rule in such cases is that the 2254 claim should not be dismissed on failure to exhaust until the state files its response and either raises or waives the exhaustion bar or states that the defendant has actually exhausted the claim in state court. The 2255/2254 distinction is important because, as the Eleventh Circuit stated in *Esslinger v. Davis*, 44 F.3d 1515, 1526 (11th Cir. 1995), the federal court may not be in the best position to determine if all state remedies have been exhausted. Troya actually cites to *Esslinger,* 44 F.3d at 1528 & n.45, in his Motion for Reconsideration and includes the following quote: "[i]f the petitioner is to be afforded due process, he must receive notice of the court's inclination to interpose the default, an opportunity to demonstrate 'cause' for the default and 'prejudice,' and, if material issues of fact are present, an opportunity to present his evidence.". *Esslinger* is factually inapplicable to the instant case. *Esslinger* involved 2254 where the district court was attempting to interpret state rules and procedures to determine whether a procedural bar existed when the state had already opined that

10

the procedural bar did not exist and affirmatively waived the procedural bar defense.  The instant case does not involve the challenge of a state sentence under 2254 and the exhaustion of state remedies but a challenge to a federal sentence under 2255 and the question of whether Troya failed to raise certain issues in his direct appeal in federal court.  As a federal judge with knowledge of federal procedures and access to Troya's federal case records, the Court was quite able to correctly deduce whether Troya failed to raise issues that he could have raised in his direct appeal.

Troya further argues that the "Supreme Court has clearly held that a court cannot *sua sponte* dismiss without proper notice".  CV-DE 45 at 7.  Troya cites to *Day v. McDonough*, 547 U.S. 198 (2006) for support of this argument and for the proposition that "before dismissing on its own initiative based on a procedural bar, 'a court must accord the parties fair notice and an opportunity to present their positions.'" and  *In re Jackson*, 826 F.3d 1343, 1347 (11th Cir. 2016) for the proposition that "granting motion for leave to file successive § 2255 motion so movant receives fair notice and opportunity to be heard on procedural bar".   CV-DE 45 at 7.  Both of these cases dealt with the issue of timeliness under §2255(f)—a statute of limitations issue subject to equitable tolling—and not procedural bars in general.  The Supreme Court has never held that proper notice must be given before a 2255 is dismissed, in whole or in part, under Rule 4 and/or due to procedural default for matters not related to the statute of limitations.  Courts to address the issue have held, or found in *dicta*, that such notice is not required.  *See United States v. Oliver*, 865 F.2d 600, 604 (4th Cir. 1989)("A dismissal under Rule 4(b) does not require notice to the appellant and an opportunity to respond to the allegations forming the basis for dismissal"); *see also  United States v. Delbridge*, 504 Fed. Appx. 145 (3rd Cir. 2012)(*unpublished*)(upholding the district court's denial of a 2255 motion where one of the issues raised on appeal was whether the court erred in enforcing a 2255 waiver without providing the petitioner with notice and an opportunity to respond).  Indeed,

the text of Rule 4 contemplates notice to the petitioner only *after* the court has ordered the dismissal. *See* Rule 4 (b), Rules Governing 2255 Proceedings.

Procedural default was the sole ground for dismissing claim V (juror misconduct). Troya claims that the Court erred in dismissing claim V as procedurally barred and states that

> "[n]o record support existed upon which appellate counsel could have possibly raised the juror misconduct issue. Accordingly, appellate counsel was under no obligation to investigate it during the course of the appeal. *See Bousley v. United States*, 523 U.S. 614, 621-22 (1998) (noting there is an exception to procedural default rule "when the facts were 'dehors the record and their effect on the judgment was not open to consideration and review on appeal.'") (*quoting Waley v. Johnston*, 316 U.S. 101, 104 (1942) (*per curiam*)).

CV-DE 45 at p. 10. Troya is factually incorrect. The Court, as noted in its dismissal order, "carefully reviewed the Motion and record of the prior proceedings". CV-DE 40 at 2. A careful review of the record shows that appellate counsel was investigating the jury issues raised in claims V and VI and sought to have and did have both the jury plan and questionnaires added to the record for the appeal. See CR-DE 1111, 1112, 1115, 1116, 1117 & 1118. Thus, the facts giving rise to claim V were part of the record on appeal and could have been raised, but were not raised, on direct appeal. Claim V is, therefore, procedurally barred unless and until Troya establishes cause and prejudice which, as the court correctly concluded, Troya has not.

Procedural default was also part of the basis for dismissing claims XVI (*Brady* and *Giglio* violation concerning promises allegedly made to cooperating witnesses), XVII (*Brady* violations during sentencing concerning co-defendant Varela), and XXIII (constitutionality of death penalty). Troya claims that the court was incorrect in its determination that these claims were procedurally defaulted. The factual basis for Troya's claims were known to Troya before his appeal was filed, and as the Court correctly pointed out, both claims of government misconduct and challenges to

12

the death penalty can be raised in direct appeal. As Troya could have, but failed to, raise these claims in his direct appeal, they are procedurally barred unless and until Troya establishes cause and prejudice which, as the court correctly concluded, Troya has not done. Troya further argues that the Court was premature in dismissing claims XVI and XVII before discovery was ordered or completed. As stated above, discovery is not guaranteed in 2255 cases and there is no requirement that a Court allow discovery when, as here good cause has not been shown.

Troya states that with advance notice, he could prove both cause and prejudice to overcome the procedural bars. As stated above, Troya was required to provide this information in his initial filing. It is important to note that Troya is not a *pro se* defendant. He is represented by two learned counsel. They knew, or should have known from a cursory review of the rules and relevant case law, that they had one year from the declination of Troya's *writ of certiorari* to file a motion pursuant to 28 U.S.C. §2255 and that this motion needed to set forth all legal and factual basis for relief, including any supporting documentation. It is clear that counsel knew of this requirement given their voluminous 2255 motion, which was 466 pages long, and the 1,758 pages of documentation that they filed in support on their motion. Even the Form 2255 requires petitioners to answer whether an issue was raised on direct appeal and to explain why the issue was not so raised. *See* Appendix of Forms, Rules Governing 2255 Proceedings. Troya provides no explanation as to why his learned counsel chose to ignore habeas case law and neglect to explain the cause for his procedural default in any of these pages. The obvious reason for this, of course, is that there is no such excuse. Even now, Troya provides no such explanation, only a vague promise that he could provide such information if given sufficient notice. This is insufficient under the law.

Claims VII (trial counsel failed to timely challenge the composition and selection of the grand and petit jury venires) and VIII (the statute that was used to convict and sentence the Movant to death is impermissibly vague) were the only claims that the Court dismissed solely on the ground that the record as a whole shows that Troya is clearly not entitled to relief.   Claim VIII involves purely legal issues and Troya has failed to establish that any grounds for the court to reconsider its dismissal of that claim: no new facts, no new case law, and no proof that the Court committed clear error or that reversal is necessary to prevent manifest injustice.  Instead, Troya regurgitates the same arguments that he made, and that the court rejected, in his initial filing.  The Court should not reverse its dismissal of this claim.

Troya states that the Court erred in dismissing claim VII (ineffective assistance of counsel in failing to challenge the jury venire composition) and argues that the Court "relied on flawed legal reasoning by imposing a 'knowledge' requirement on [Troya's] Strickland claim".  CV-DE 45 at 18.   Troya went on to argue that it was sufficient to allege that this was "kind of issue that reasonably effective capital counsel is expected to investigate", citing to *Padilla v. Kentucky*, 559 U.S. 356, 366-67 (2010) and ABA rules.   CV-DE 45 at 18-19.   Troya's reliance on *Padilla* is misplaced.  That case dealt with counsel's failure to correctly advise a defendant that he would be deported as a result of his guilty plea.  The Court has never held that counsel must follow ABA rules to be effective.  In fact, the Court has said quite the opposite in numerous cases including *Bobby v. Van Hook*, 558 U.S. 4 (2009), a case cited favorably in *Padilla*.  In *Bobby*, the Court wrote:

> To make matters worse, the Court of Appeals (following Circuit precedent) treated the ABA's 2003 Guidelines not merely as evidence of what reasonably diligent attorneys would do, but as inexorable commands with which all capital defense counsel " 'must fully comply.' " 560 F.3d, at 526 (quoting *Dickerson v. Bagley,* 453 F.3d 690, 693 (C.A.6 2006)). *Strickland* stressed,

14

however, that "American Bar Association standards and the like" are "only guides" to what reasonableness means, not its definition. 466 U.S., at 688, 104 S.Ct. 2052. We have since regarded them as such.[1] See *Wiggins v. Smith,* 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). What we have said of state requirements is *a fortiori* true of standards set by private organizations: "[W]hile states are free to impose whatever specific rules they see fit to ensure that criminal defendants are well represented, *we have held that the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices.*" *Roe v. Flores–Ortega,* 528 U.S. 470, 479, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

*Bobby v. Van Hook*, 558 U.S. 4, 7–9, 130 S. Ct. 13, 16–17, 175 L. Ed. 2d 255 (2009).  Determining

what are "objectively reasonable choices" must include an inquiry as to what was known to

lawyers at the time.  As stated by the Court in *Strickland*:

> Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. These basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4–1.1 to 4–8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. Indeed, the existence of detailed guidelines for representation could distract counsel from the

15

> overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial. Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and *to evaluate the conduct from counsel's perspective at the time*.

*Strickland v. Washington*, 466 U.S. 668, 688–89 (1984)(citations omitted, italics added). In this case, the Court looked to what counsel would have known about the district's jury venire plan to, as *Strickland* encouraged, "to evaluate the conduct from counsel's perspective at the time". In so doing, the Court concluded that Troya had not established that counsel knew or should have known that there were issues with the venire plan. This was an entirely appropriate inquiry. As the Court correctly explained:

> "The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is whether some reasonable attorney could have acted in the circumstances . . . [as this attorney did]- whether what . . . [this attorney] did was within the 'wide range of reasonable professional assistance.'" *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc) (quoting *Strickland*, 466 U.S. at 689) (citation omitted). *See also Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (stating that to show unreasonableness "a petitioner must establish that no competent counsel would have made such a choice."). The Court cannot find that no competent counsel would have proceeded to trial without challenging the jury selection process in the Southern District of Florida from 2006 - 2009.

CV-DE 40 at p. 14. Petitioner's claim was dismissed because he failed to meet his burden of establishing that no competent counsel would have failed to challenge the venire plan. This is the

16

correct statement of his burden.  Showing that counsel failed to comply with ABA rules was insufficient.  The Court correctly dismissed this claim.

## CONCLUSION

To prevail on a motion for reconsideration, Troya must show (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.  *See Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366, 1369 (S.D.Fla.2002).  Troya's motion for consideration makes none of these showings.  Troya's motion contains no newly available facts or law, and does not show, and indeed cannot show, that the court made clear error or that reversal of the Court's order is necessary to prevent a manifest injustice.  The Court's order was legally sound.

The rules governing Section 2255 proceedings clearly contemplate an early review of petitions, to weed out those claims that are procedurally barred or lack merit.  This review is limited to the petition, any additional exhibits attached to the petition, and the record below.  The Court reviewed the record, and Troya's filings, and applied the correct legal standards to determine that certain claims were either procedurally barred, lack merit, or both.   Troya chose not to address procedural bars, made no effort to explain why certain claims that could have been raised on direct appeal were not so raised, and therefore failed to meet his burden under the procedural default rule. The Court was correct in summarily dismissing claims that lack legal merit, factual support, or are procedurally barred. Indeed, the Court was expressly following the rules governing Section 2255 proceedings in implementing this winnowing procedure.

For all the foregoing reasons, Troya's Motion for Reconsideration should be denied.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: */s Stephen Carlton*
STEPHEN CARLTON
ASSISTANT UNITED STATES ATTORNEY
500 S. Australian Ave., Suite 400
West Palm Beach, Florida 33401-6235
Admin. No. A5500011
Tel. (561) 209-1053
Telefax (561) 659-4526
E-mail: Stephen.Carlton@USDOJ.GOV
*Attorney for the United States*

18

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 29, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Stephen Carlton*
      Stephen Carlton
      Assistant United States Attorney

## SERVICE LIST

**Daniel Troya v. United States**
**Case No. 16-80700-CV-SCOLA**
**United States District Court, Southern District of Florida**

**Stephen Carlton**
**Brandy Galler**
**Stephanie Evans**
Assistant U.S. Attorneys
Stephen.Carlton@usdoj.gov
Brandy.Galler@usdoj.gov
Stephanie.D.Evans@usdoj.gov
U.S. Attorney's Office
500 S. Australian Ave, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 820-8711
Facsimile: (561) 659-4526
Attorneys for United States
[Service via CM/ECF]

**Donald Todd Doss**
201 S. Orange Avenue
Suite 300
Orlando, FL 32801
todd_doss@fd.org
Attorney for Plaintiff
[Service via CM/ECF]

**Steven Holt Malone**
1217 South Flagler Drive
Second Floor, Flagler Plaza
West Palm Beach, FL  33401
stevenhmalone@bellsouth.net
Attorney for Plaintiff
[Service via CM/ECF]