# UNITED STATES SENATE
## COMMITTEE ON THE JUDICIARY

## QUESTIONNAIRE FOR JUDICIAL NOMINEES

## <u>PUBLIC</u>

1. **Name**: State full name (include any former names used).

   Robert Nichols Scola, Jr.; Robert N. Scola, Jr.; Bob Scola; Bobby Scola

2. **Position**: State the position for which you have been nominated.

   United States District Judge for the Southern District of Florida

3. **Address**: List current office address. If city and state of residence differs from your place of employment, please list the city and state where you currently reside.

   Lawton E. Thomas Courthouse
   175 NW First Avenue, Room 2826
   Miami, Florida 33128

4. **Birthplace**: State year and place of birth.

   1955; Worcester, Massachusetts

5. **Education**: List in reverse chronological order each college, law school, or any other institution of higher education attended and indicate for each the dates of attendance, whether a degree was received, and the date each degree was received.

   1977 – 1980, Boston College Law School; J.D. (*cum laude*), 1980
   1973 – 1977, Brown University; B.A., 1977

6. **Employment Record**: List in reverse chronological order all governmental agencies, business or professional corporations, companies, firms, or other enterprises, partnerships, institutions or organizations, non-profit or otherwise, with which you have been affiliated as an officer, director, partner, proprietor, or employee since graduation from college, whether or not you received payment for your services. Include the name and address of the employer and job title or description.

   1995 – present
   State of Florida, 11th Judicial Circuit in and for Miami-Dade County
   Lawton E. Thomas Courthouse
   175 NW First Avenue, Room 2826
   Miami, Florida 33128
   Circuit Court Judge

2007 – present
Florida International University College of Law
Judicial Externship Program
University Park Campus, Rafael Diaz-Balart Hall
Miami, Florida 33199
Adjunct Professor

1994 – present
University of Miami School of Law
Litigation Skills Program
1311 Miller Drive
Coral Gables, Florida 33146
Adjunct Professor

1993 – 1995
Robert N. Scola, Jr., P.A.
2400 South Dixie Highway
Miami, Florida 33131
Attorney/President

1992 – 1993
Quinon, Strafer and Scola, P.A.
2400 South Dixie Highway
Miami, Florida 33131
Attorney/Law Partner

1986 – 1992
Robert N. Scola, Jr., P.A.
2400 South Dixie Highway
Miami, Florida 33131
Attorney

1980 – 1986
Dade County State Attorney's Office
1351 Northwest Twelfth Street
Miami, Florida 33125
Assistant State Attorney/Deputy Chief Assistant

1979 – 1980
Boston College
131 Kostka Hall
Chestnut Hill, Massachusetts 02167
Area Coordinator of Undergraduate Dorms

Summer 1979
Mirick O'Connell Law Firm
100 Front Street
Worcester, Massachusetts 01608
Summer Law Clerk

Other Affiliations (uncompensated):

1990 – 1995
Florida Association of Criminal Defense Lawyers – Miami Chapter
150 West Flagler Street, Suite 1700
Miami, Florida 33130
Board of Directors (1990 – 1995)
President (1994 – 1995)

7. **Military Service and Draft Status**: Identify any service in the U.S. Military, including dates of service, branch of service, rank or rate, serial number (if different from social security number) and type of discharge received, and whether you have registered for selective service.

I have never served in the military. I registered for the selective service on January 2, 1974.

8. **Honors and Awards**: List any scholarships, fellowships, honorary degrees, academic or professional honors, honorary society memberships, military awards, and any other special recognition for outstanding service or achievement.

Jurist of the Year Award, American Academy of Matrimonial Lawyers, Florida Chapter, 2011
Hon. William Hoeveler Professionalism Award, Florida Bar Committee on Professionalism, 2007
Judge Steven Levine Award, Miami-Dade County Justice Association, 2006
Justice Award, Miami-Dade County League of Prosecutors, 2005
Judge of the Year Award, Florida Bar Law Related Education Program, 2004
Jurist of the Year Award, First American Family Law Inn of Court, 2002
Hon. Gerald Kogan Judicial Distinction Award, Florida Association of Criminal Defense Lawyers, Miami Chapter, 2001

9. **Bar Associations**: List all bar associations or legal or judicial-related committees, selection panels or conferences of which you are or have been a member, and give the titles and dates of any offices which you have held in such groups.

Cuban American Bar Association (1988 – present)
Eleventh Circuit Court Conflict Screening Committee (1992 – 1995)
Eleventh Judicial Circuit Rotation of Judges Committee (2002 – 2002)
First American Family Law Inn of Court (2001 – 2005 and 2009 – present)
Florida Association of Criminal Defense Lawyers – Statewide (1987 – 1995)

Florida Association for Women Lawyers (1987 – present)
The Florida Bar (1980 – present)
     Grievance Committee (1992 – 1995)
          Chairperson (1993 – 1995)
     Criminal Procedure Rules Committee (1999 – 2002)
     Family Rules Committee (2002 – 2004)
     Capital Cases Committee (1986 – 1988)
Florida College of Advanced Judicial Studies (1997 – present)
     Department Head (1999)
Florida Conference of Circuit Court Judges Education Committee (1997 – 2007)
     Vice-Chairman (2006 – 2007)
Florida Association of Criminal Defense Lawyers – Miami Chapter (1987 – 1995)
     Board of Directors (1989 – 1995)
     President (1994 – 1995)
     Secretary (1993 – 1994)
National Association of Criminal Defense Lawyers (1987 – 1995)
U.S. Attorney/Defense Attorney Liaison Committee (1994 – 1995)

10. **Bar and Court Admission**:

    a.  List the date(s) you were admitted to the bar of any state and any lapses in membership. Please explain the reason for any lapse in membership.

       Florida, 1980
       Massachusetts, 1981

       In Florida, I was suspended in 1981 for failure to timely pay bar dues. Upon learning I was delinquent, I immediately paid what was owed and was reinstated. In Massachusetts, I elected to take inactive status in 1996 after I began working as a circuit court judge.

    b.  List all courts in which you have been admitted to practice, including dates of admission and any lapses in membership. Please explain the reason for any lapse in membership. Give the same information for administrative bodies that require special admission to practice.

       United States Court of Appeals for the Second Circuit, 1990
       United States Court of Appeals for the Eleventh Circuit, 1987
       United States District Court for the Southern District of Florida, 1982
       United States District Court for the Middle District of Florida, 1987
       United States District Court for the Northern District of Florida, 1991
       United States District Court for the Eastern District of Michigan, 1989

       There have been no lapses in membership.

4

11. **Memberships**:

   a.  List all professional, business, fraternal, scholarly, civic, charitable, or other organizations, other than those listed in response to Questions 9 or 10 to which you belong, or to which you have belonged, since graduation from law school. Provide dates of membership or participation, and indicate any office you held. Include clubs, working groups, advisory or editorial boards, panels, committees, conferences, or publications.

      Florida International University
          Community Advisory Board (2000 – 2005)
          Community Service Advisory Board (2006 – present)

   b.  The American Bar Association's Commentary to its Code of Judicial Conduct states that it is inappropriate for a judge to hold membership in any organization that invidiously discriminates on the basis of race, sex, or religion, or national origin. Indicate whether any of these organizations listed in response to 11a above currently discriminate or formerly discriminated on the basis of race, sex, religion or national origin either through formal membership requirements or the practical implementation of membership policies. If so, describe any action you have taken to change these policies and practices.

      To the best of my knowledge, the organization listed in 11a does not currently discriminate and did not formerly discriminate on the basis of race, sex, religion or national origin.

12. **Published Writings and Public Statements**:

   a.  List the titles, publishers, and dates of books, articles, reports, letters to the editor, editorial pieces, or other published material you have written or edited, including material published only on the Internet. Supply four (4) copies of all published material to the Committee.

      Robert N. Scola, Jr. and Victoria Platzer, *Using Mini Trials for Maxi Results*, Florida Bar Family Law Section Commentator, Summer 2003. Copy supplied.

      Robert N. Scola, Jr. and H. Scott Fingerhut, *Tough Times in the Sunshine State - Florida Gets Tough On Crime With –"10/20/Life" and "Three Strikes You're Out" but Defendants Aren't the Only Ones in Trouble*, Florida Bar Journal, November 1, 1999. Copy supplied.

      Robert N. Scola, Jr. and H. Scott Fingerhut, *To Seal or not to Seal: when a Statute and Court Rule Conflict, which Prevails?*, Florida Bar Journal, April 1995. Copy supplied.

b. Supply four (4) copies of any reports, memoranda or policy statements you prepared or contributed in the preparation of on behalf of any bar association, committee, conference, or organization of which you were or are a member. If you do not have a copy of a report, memorandum or policy statement, give the name and address of the organization that issued it, the date of the document, and a summary of its subject matter.

In 2008, while a candidate in a judicial retention election, I signed the Judicial Elections Campaign Pledge to Conduct a Fair Judicial Campaign. Copy supplied.

As a member of the Florida Bar Rules of Criminal Procedure Committee in 2000, I proposed a change to Rule 3.250 of the Florida Rules of Criminal Procedure which addresses whether the State or defendant has the right to present the rebuttal closing argument in criminal cases. My proposal was rejected by the Committee at the time but I prepared a Minority Report setting forth the reasons for the proposed change. This Rule was later adopted in 2006. A copy of my report is supplied.

In 2000 and 2001 I participated on the Eleventh Judicial Circuit Rotation of Judges Committee whose task was to determine if a formal plan of rotation of judges among different divisions of the Circuit and County Courts should be implemented in our Circuit. A copy of a Report of a Subcommittee that I co-authored is supplied.

c. Supply four (4) copies of any testimony, official statements or other communications relating, in whole or in part, to matters of public policy or legal interpretation, that you have issued or provided or that others presented on your behalf to public bodies or public officials.

On November 30, 2010, I gave remarks before the Florida Federal Judicial Nominating Commission. My notes are supplied.

On July 14, 2009, I gave remarks before the Florida Federal Judicial Nominating Commission. My notes are supplied.

On September 17, 1992, as chair of the State Court Committee of the Florida Association of Criminal Defense Lawyers, I wrote a letter to Chief Just Leonard Rivkind urging him to assign newly elected Judge Leslie Rothenberg to the civil division rather than criminal. I have been unable to obtain a copy of the letter but press coverage is supplied.

d. Supply four (4) copies, transcripts or recordings of all speeches or talks delivered by you, including commencement speeches, remarks, lectures, panel discussions, conferences, political speeches, and question-and-answer sessions. Include the date and place where they were delivered, and readily available press reports about the speech or talk. If you do not have a copy of the speech or a transcript or recording of your remarks, give the name and address of the group before whom

6

the speech was given, the date of the speech, and a summary of its subject matter. If you did not speak from a prepared text, furnish a copy of any outline or notes from which you spoke.

I have been extensively involved in teaching judicial and legal education courses. This list represents the speeches and talks I have been able to identify through searches of my files, computer and Internet databases. I have tried my best to list all such events, although there may be some that I have not been able to identify or locate.

March 14, 2011: Florida New Judges' College. I gave a presentation on Contempt to Florida's newly elected or appointed judges. Presentation slides supplied.

January 3, 2011: Florida New Judges' College. I gave a presentation on Alternatives to Contempt to Florida's newly elected or appointed judges. Presentation slides supplied.

January 3, 2011 through January 6, 2011: Florida New Judges' College. I was part of a panel that led a Trial Skills Workshop for Florida's newly elected or appointed judges. I have no notes, transcript or recording. The address of the Florida State Courts Administrator is 500 South Duval Street, Tallahassee, Florida 32399.

February 2, 2011: University of Miami Pre-Law Society. I gave a presentation on How to Become a Judge in Florida. Presentation slides supplied.

December 3, 2010: 11th Judicial Circuit. I gave a presentation to our circuit's newly elected judges entitled Welcome to the Bench. Presentation slides supplied.

November 19, 2010. "Put Something Back Program." I gave a presentation on Contempt to attorneys. The presentation slides used were the same as those supplied for the March 14, 2011 event.

August 19, 2010: Florida Bar. I participated in a panel discussion on Ethics and Professionalism for New Attorneys for the Florida Bar, Bridge the Gap. I have no notes, transcript or recording. The address of the Florida Bar is 651 East Jefferson Street, Tallahassee, Florida 32399.

May 21, 2010: "Put Something Back Program." I gave a presentation on Contempt to attorneys for the Miami-Dade County "Put Something Back" Program. The presentation slides used were the same as those supplied for the March 14, 2011 event.

7

May 13, 2010: Florida Association of Criminal Defense Lawyers, Miami Chapter. I participated in a panel discussion on Professionalism. I have no notes, transcript or recording. The Chapter has no physical address, but the contact person is Sabrina D. Puglisi, (305) 530-7000.

April 30, 2010: American Academy of Matrimonial Lawyers, Florida Chapter Annual Meeting. I participated in a panel during a Parenting Issues Workshop. I have no notes, transcript or recording. The address of the Academy is 3046 Hawks Glen, Tallahassee, Florida 32312.

March 22, 2010: Florida New Judges' College. I gave a presentation on Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the March 14, 2011 event.

February 10, 2010: Florida Court's Legal Staff and Counsel. I gave a presentation on "Contempt: If You Must, Do It Right." The presentation slides used were the same as those supplied for the March 14, 2011 event.

January 6, 2010: Florida New Judges' College. I gave a presentation on Alternatives to Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the January 3, 2011 event.

June 2, 2009: Florida College of Advanced Judicial Studies. I gave a presentation on Juror Misconduct. Presentation slides supplied.

May 29, 2009: "Put Something Back Program." I gave a presentation on Contempt to the Miami-Dade County "Put Something Back" Program. The presentation slides used were the same as those supplied for the March 14, 2011 event. Supplemental written materials supplied.

March 16, 2009: Florida New Judges' College. I gave a presentation on Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the March 14, 2011 event.

January 29, 2009: Florida Defense Lawyers Association and Dade County Defense Bar Association. I participated in a panel discussion entitled, "View from the Bench – The Professionalism Judges Expect." I have no notes, transcript or recording. The address of the FDLA is 6105 M Memorial Highway, Tampa, Florida 33615.

January 7, 2009: Florida New Judges' College. I gave a presentation on Alternatives to Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the January 3, 2011 event.

January 5, 2009 through January 8, 2009: Florida New Judges' College. I was part of a panel that led a Trial Skills Workshop for Florida's newly elected or appointed judges. I have no notes, transcript or recording. The address of the Florida State Courts Administrator is 500 South Duval Street, Tallahassee, Florida 32399.

December 9, 2008: Florida Conference of Circuit Court Judges. I gave a presentation on Contempt to Florida Circuit Court Judges. The presentation slides used were the same as those supplied for the March 14, 2011 event.

December 5, 2008: 11th Judicial Circuit. I gave a presentation to our circuit's newly elected judges entitled Welcome to the Bench and Ethics for Judges and Their Families. The Welcome to the Bench presentation slides were the same used for the December 3, 2010 event. The Ethics for Judges presentation slides are supplied.

September 25, 2008: International Association of Defense Counsel. I gave a presentation on the "Do's and Don'ts" of Legal Advocacy to a group of civil defense lawyers. Presentation slides supplied.

June 18, 2008: Dade County Civil Defense Lawyers. I gave a presentation on Cross-Examination of the Plaintiff to a group of civil defense lawyers. Presentation slides supplied.

March 12, 2008: Dade County Bar Association, Young Lawyers Section "Lunch with the Judge." I participated in informal discussions with the attorneys that attended the event. I have no notes, transcript or recording. The address of the Bar is 123 NW First Avenue, Suite 214, Miami, Florida 33128.

March 3, 2008: Florida New Judges' College. I gave a presentation on Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the March 14, 2011 event.

February 21, 2008: Florida Association for Women Lawyers. I gave a presentation as part of a panel discussion on The "CSI Effect" in the Courtroom to a group of lawyers. I have no notes, transcript or recording. The address of FAWL is P.O. Box 38339, Tallahassee, Florida 32315.

January 7, 2008: Florida New Judges' College. I gave a presentation on Alternatives to Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the January 3, 2011 event.

January 7, 2008 through January 9, 2008: Florida New Judges' College. I was part of a panel that led a Trial Skills Workshop for Florida's newly elected or appointed judges. I have no notes, transcript or recording. The address of the

9

Florida State Courts Administrator is 500 South Duval Street, Tallahassee, Florida 32399.

June 13, 2007: Florida Conference of Circuit Court Judges. I gave a presentation on Ethics for Judges and Their Families to judges. The presentation slides used were the same as for the December 5, 2008 event.

March 12, 2007: Florida New Judges' College. I gave a presentation on Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the March 14, 2011 event.

January 8, 2007: Florida New Judges' College. I gave a presentation on Alternatives to Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the January 3, 2011 event.

January 8, 2007 through January 10, 2007: Florida New Judges' College. I was part of a panel that led a Trial Skills Workshop for Florida's newly elected or appointed judges. I have no notes, transcript or recording. The address of the Florida State Courts Administrator is 500 South Duval Street, Tallahassee, Florida 32399.

December 15, 2006: 11th Judicial Circuit. I gave a presentation to our circuit's newly elected judges entitled Welcome to the Bench and Ethics for Judges and Their Families. The Welcome to the Bench presentation slides were the same used for the December 3, 2010 event. The Ethics for Judges presentation slides used were the same as for the December 5, 2008 event.

December 6, 2006: Florida Conference of Circuit Court Judges. I gave a presentation on Professionalism for Judges and Attorneys to Florida circuit court judges. Presentation slides supplied.

September 26, 2006: Florida Association of Criminal Defense Lawyers, Miami Chapter. I participated in a panel discussion on Professionalism and Ethics for Attorneys. I have no notes, transcript or recording. The Chapter has no physical address, but the contact person is Sabrina D. Puglisi, (305) 530-7000.

May 23, 2006: Florida College of Advanced Judicial Studies. I gave a presentation entitled, "Fundamentals of Family Law: Attorney's Fees." Presentation slides supplied.

May 2006: Florida College of Advanced Judicial Studies. I gave a presentation on Parenting Tools in High Conflict Divorces to Florida judges. Presentation slides supplied.

10

March 21, 2006: Florida New Judges' College. I gave a presentation on Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the March 14, 2011 event.

March 22, 2006: Florida New Judges' College. I gave a presentation called a Family Law Primer to Florida's newly elected or appointed judges. Presentation slides supplied.

January 28, 2006: I received the Judge Steve Levine Award from the Dade County Trial Lawyers Association. I made very brief (less than one minute) remarks in accepting the award. I have no notes, transcript or recording. The Association is now known as the Miami-Dade Justice Association and has no physical address.

January 9, 2006: Florida New Judges' College. I gave a presentation on Alternatives to Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the January 3, 2011 event.

December 2005: Florida Conference of Circuit Court Judges. I gave a brief presentation on Judicial Independence to Florida circuit court judges and introduced the guest panelists (Professors Kmiec and Chemerinsky). The notes of my presentation are supplied.

June 2005: Florida Conference of Circuit Court Judges. I gave a presentation to Florida circuit court judges on Family Law Case Law and Legislative Update. Notes supplied.

May 2005: I gave a presentation on Contempt to the Florida College of Advanced Judicial Studies. The presentation slides used were the same as those supplied for the March 14, 2011 event.

April 30, 2005: I received the Justice Award from the League of Prosecutors. I made very brief remarks in accepting the award. I have no notes, transcript or recording. The address of the League is 7545 South West 54 Court, Miami, Florida 33143.

March 14, 2005: Florida New Judges' College. I gave a presentation on Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the March 14, 2011 event.

March 15, 2005: Florida New Judges' College. I gave a presentation called a Family Law Primer to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the March 22, 2006 event.

January 3, 2005: Florida New Judges' College. I gave a presentation on Alternatives to Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the January 3, 2011 event.

December 9, 2004: Florida Conference of Circuit Court Judges. I gave a presentation on Contempt to Florida Circuit Court Judges. The presentation slides used were the same as those supplied for the March 14, 2011 event.

November 19, 2004: Nuts and Bolts Seminar. I gave a presentation on Contempt to attorneys. The presentation slides used were the same as those supplied for the March 14, 2011 event.

November 9, 2004: First American Family Law Inn of Court. I gave a presentation to family law lawyers on Temporary Attorney's Fees: A Judge's Perspective. Presentation slides supplied.

October 7, 2004 and October 8, 2004: Florida Bar, Family Law Section. I gave a presentation to attorneys on Temporary Attorney's Fees: A Judge's Perspective. The presentation slides used were the same as those supplied for the November 9, 2004 event.

June 22, 2004: Florida Conference of Circuit Court Judges. I gave a presentation to Florida circuit court judges on Family Law Case Law and Legislative Update. I have no notes, transcript or recording. The Conference does not have a physical address.

April 13, 2004: I gave a presentation on Contempt to the First American Family Law Inn of Court. The presentation slides used were the same as those supplied for the March 14, 2011 event.

March 8, 2004: Florida New Judges' College. I gave a presentation on Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the March 14, 2011 event.

January 7, 2004: Florida New Judges' College. I gave a presentation on Alternatives to Contempt to Florida's newly elected or appointed judges. The presentation slides used were the same as those supplied for the January 3, 2011 event.

December 9, 2002: Conference of Circuit Court Judges. I co-taught a seminar with Victoria Platzer on the use of mini trials to resolve cases prior to trial. Notes of the presentation are supplied.

September 23, 2002: Florida College of Advanced Judicial Studies. I co-presented a course on Parenting Tools in High Conflict Cases. Presentation slides supplied.

June 25, 2002: Florida Conference of Circuit Court Judges. I gave a presentation on Adoptions. Materials supplied.

May 29, 2002: Dade County Defense Bar Association. I participated in an open discussion on the issue of whether judges should be required to rotate among the different divisions of the circuit court. Notes supplied.

2002: We the People High School Mock Trial Competition. I served as a judge for the competition. I have no notes, transcript or recording, but press coverage is supplied. The competition was sponsored by the Dade County Bar Association, which is located at 123 NW First Avenue, Suite 214, Miami, Florida 33128.

September 13, 2001: Florida College of Advanced Judicial Studies. I gave a presentation on First Appearance and Bond Hearings. Materials supplied.

June 2001: Florida Conference of Circuit Court Judges. I gave a presentation on Williams Rule Evidence. Materials supplied.

December 2000: Florida Conference of Circuit Court Judges. I gave a presentation on Juror Misconduct to Florida Circuit Court Judges. The slides used were the same as those supplied for the June 2, 2009 event.

September 2000: Miami-Dade County State Attorney's Office. I gave a presentation on Professionalism for Prosecutors for newly hired assistant state attorneys. The presentation slides used were the same as supplied for the December 6, 2006 event.

June 2000: Florida Association of Criminal Defense Lawyers. I gave a presentation entitled, "Real Evidence for Real Trial Lawyers," to criminal defense lawyers. Presentation slides and written materials supplied.

May 11, 2000: Florida College of Advanced Judicial Studies. I gave a presentation on Post-Conviction Relief to Florida judges. Presentation slides supplied.

May 10, 2000: Florida College of Advanced Judicial Studies. I gave a presentation on the Proper Exercise of Peremptory Challenges to Florida judges. I was a last-minute replacement for a presenter who became ill and did not prepare materials. I have no notes, transcript or recording. The address of the Florida State Courts Administrator is 500 South Duval Street, Tallahassee, Florida 32399.

13

May 8, 2000: Florida College of Advanced Judicial Studies. I gave a presentation on First Appearance and Bond Hearings to Florida judges. The materials used were the same as those supplied for the September 13, 2001 event.

May 8, 2000: Florida College of Advanced Judicial Studies. I gave a presentation on Sentencing to Florida judges. Presentation slides supplied.

February 2000: Miami-Dade County Bar Association, Criminal Courts Committee. I gave a presentation on Advanced Evidence for criminal defense lawyers. The slides used were the same as those supplied for the June 2000 event.

January 12, 2000: Florida Conference of Circuit Court Judges. I gave a presentation on Case Management of Criminal Trials to Florida Circuit Court Judges. I have no notes, transcript or recording. The Conference does not have a physical address.

January 11, 2000: Florida Conference of Circuit Court Judges. I gave a presentation on Sentencing to Florida Circuit Court Judges. The presentation slides were the same as those supplied for the May 2000 Sentencing event before the Florida College of Advanced Judicial Studies.

January 2000: Florida Conference of County Court Judges. I gave a presentation on Juror Misconduct to Florida County Court Judges. The slides used were the same as those supplied for the June 2, 2009 event.

January 2000: Florida Bar, Criminal Law Section. I gave a presentation to attorneys on Sentencing. The presentation slides were the same as those supplied for the May 2000 Sentencing event before the Florida College of Advanced Judicial Studies.

November 1999: Miami-Dade County State Attorney's Office. I gave a presentation on Advanced Evidence to assistant state attorneys. The presentation slides were the same as those supplied for the June 2000 event.

October 1999: Florida International University Criminal Justice Honors Society. I gave a presentation on Sentencing to college students. The presentation slides were the same as those supplied for the May 2000 Sentencing event before the Florida College of Advanced Judicial Studies

September 1999: Miami-Dade County State Attorney's Office. I gave a presentation on Post-Conviction Relief to assistant state attorneys. The presentation slides used were the same as those supplied for the May 2000 event for the Florida College of Advanced Judicial Studies.

September 1999: Florida Association of Criminal Defense Lawyers. I gave a presentation on Sentencing to criminal defense lawyers. The presentation slides

were the same as those supplied for the May 2000 Sentencing event before the Florida College of Advanced Judicial Studies.

June 1999: Florida Conference of Circuit Court Judges. I gave a presentation on Post-Conviction Relief to Florida circuit court judges. The presentation slides used were the same as those supplied for the May 2000 event for the Florida College of Advanced Judicial Studies.

May 1999: Florida College of Advanced Judicial Studies. I gave a presentation on Post-Conviction Relief to Florida judges. The presentation slides used were the same as those supplied for the May 2000 event for the Florida College of Advanced Judicial Studies.

May 1999: Florida College of Advanced Judicial Studies. I gave a presentation on Juror Misconduct to Florida judges. The slides used were the same as those supplied for the June 2, 2009 event.

May 1999: Florida College of Advanced Judicial Studies. I gave a presentation on First Appearance and Bond Hearings to Florida judges. The materials used were the same as those supplied for the September 13, 2001 event.

1999: University of Miami School of Law. I gave a presentation on the Pros and Cons of the Death Penalty. Notes supplied.

1998: Rotary Club of North Miami (it was a municipality in Northern Dade County but I am not sure if it was North Miami). I spoke on the State of the Justice System. Notes supplied.

May 20, 1998: Florida College of Advanced Judicial Studies. I gave a presentation to Florida judges on Advanced Evidence. The slides used were the same as those supplied for the June 2000 event.

May 19, 1998: Florida College of Advanced Judicial Studies. I gave a presentation on Post-Conviction Relief to Florida judges. The presentation slides used were the same as those supplied for the May 2000 event for the Florida College of Advanced Judicial Studies.

May 19, 1998: Florida College of Advanced Judicial Studies. I gave a presentation on Mistrials to Florida judges. Notes supplied.

April 1998: Appellate Court Law Clerks and Central Staff Attorneys. I gave a presentation on Post-Conviction Relief to court staff attorneys. The presentation slides used were the same as those supplied for the May 2000 event for the Florida College of Advanced Judicial Studies.

15

From 1995 to 2004, I served as a judge during the Chester Bedell Memorial Mock Trial Competition, which is sponsored by the Trial Lawyers Section of the Florida Bar. I have no notes, transcript or recording. The address of the Florida Bar is 651 East Jefferson Street, Tallahassee, Florida 32399.

e. List all interviews you have given to newspapers, magazines or other publications, or radio or television stations, providing the dates of these interviews and four (4) copies of the clips or transcripts of these interviews where they are available to you.

Susannah Nesmith, *Seniority List Irks Miami-Dade Judges*, Miami Daily Business Review, Oct. 23, 2009. Copy supplied.

John Pacenti, *Three Finalists for Obama's First Judge Pick in S. Florida*, Miami Daily Business Review, July 17, 2009. Copy supplied.

Gary Blankenship, *Bill Would Give Prosecution the Last Say in Some Cases*, Florida Bar News, Apr. 30, 2005. Copy supplied.

Jan Pudlow, *Tomorrow's Trial Lawyers Get First-Rate Training Today*, Florida Bar News, Mar. 1, 2004. Copy supplied.

Manny Garcia, *Former Miami Zoning Inspector Pleads Guilty*, Miami Herald, Oct. 13, 1999. Copy supplied.

July 30, 1998: I hosted an episode of the WLRN show You Be the Judge. The topic was the pros and cons of plea bargaining. I have been unable to obtain a copy of the tape and/or transcript of the show.

Amy Driscoll, *Electronic Bracelet Program in Limbo*, Miami Herald, Dec. 14, 1996. Copy supplied.

Manny Garcia, *The Son 'All Rises' Also; Dade Bailiff Follows in Father's Footsteps*, Miami Herald, Nov. 25, 1995. Copy supplied.

David Lyons, *Costa Rica Seething Over U.S. Drug Case*, Miami Herald, Aug. 14, 1993. Copy supplied.

Bruce Vielmetti, *BCCI Figures Get Jail Terms Shortened*, St. Petersburg Times, Feb. 4, 1992. Copy supplied.

Joan Fleischman and Ronnie Ramos, *Police Charged with Drug Rip-Offs*, Miami Herald, Jan. 25, 1990. Copy supplied.

Joan Fleischman and Sydney P. Freedburg, *Cops Relieved of Duty Had Given Business a Try*, Miami Herald, June 4, 1989. Copy supplied.

16

Joan Fleischman, *1982 Probe of Two Cops is Reopened*, Miami Herald, May 27, 1989. Copy supplied.

Stephen J. Hedges, *Jury Still Out on Judge's Style*, Miami Herald, Feb. 15, 1987. Copy supplied.

Jonathon King, *Decade Later, His Name is Off Felon List*, South Florida Sun-Sentinel, Sept. 5, 1986. Copy supplied.

Al Messerschmidt, *State Drops Police Coke-Theft Case*, Miami Herald, Feb. 1, 1986. Copy supplied.

Craig Gemoules, *No Crime in Murder, State Says*, Miami Herald, Nov. 17, 1985. Copy supplied.

Fred Tasker, *I-95 Bandit Shows Signs of Prejudice*, Miami Herald, Aug. 14, 1985. Copy supplied.

Mary Voboril, *Teen's Latest Trouble: Deadly Arson*, Miami Herald, Apr. 14, 1985. Copy supplied.

Staff, *UM Players to Face Arson Charge May 13*, Miami Herald, Mar. 8, 1985. Copy supplied.

Al Messerschmidt, *Killer Sentenced to Die in Jail*, Miami Herald, Feb. 9, 1985. Copy supplied.

Joan Fleischman, *Man Who Shot and Wounded Metro Officer Gets 34-Year Sentence*, Miami Herald, June 13, 1984. Copy supplied.

Joan Fleischman, *Man Gets 271 Years for Shooting Cop*, Miami Herald, June 7, 1984. Copy supplied.

Joan Fleischman, *Man Gets 134 Years in Traffic Slaying*, Miami Herald, Apr. 20, 1984. Copy supplied.

Al Messerschmidt, *Woman Changes Mind about Prayer, Pleads Guilty*, Miami Herald, Oct. 5, 1983. Copy supplied.

Staff, *Man Hurt in Plane Crash*, Miami Herald, Aug. 31, 1983. Copy supplied.

Staff, *Rapist is Sentenced to 198 More Years*, Miami Herald, Mar. 5, 1983. Copy supplied.

17

Lisa G. Baird, *Youth Gets 15 Years for Shooting Officer*, Miami Herald, Nov. 21, 1982. Copy supplied.

13. **Judicial Office**: State (chronologically) any judicial offices you have held, including positions as an administrative law judge, whether such position was elected or appointed, and a description of the jurisdiction of each such court.

Circuit Court Judge of the 11th Judicial Circuit of Florida in and for Miami-Dade County from 1995 to the present. I was initially appointed by Governor Lawton Chiles in 1995 and have since been elected and re-elected without opposition in 1996, 2002 and 2008.

The Circuit Court is the highest trial level court in Florida and has jurisdiction over all juvenile, family and probate proceedings as well as felony criminal cases and civil cases involving disputes of over $15,000.00. The Circuit Court also has jurisdiction over the appeals from county court cases as well as certiorari review of local administrative decisions.

My first assignment was in the Criminal Division where I presided over a wide variety of felony cases, ranging from possession of cocaine to first degree murder, death penalty trials. From 2001 to 2005 and 2009 to present, I have been assigned to the Family Division of the Eleventh Judicial Circuit Court where I handle dissolution of marriage, paternity, adoption and domestic violence injunction cases. Between 2005 and 2009 I was assigned to the Civil Division of the Eleventh Judicial Circuit where I handled a wide range of civil cases including foreclosure, personal injury, medical malpractice and commercial disputes. Since 2001, as part of my duties as a Circuit Court judge, I also serve as an appellate judge for county court and administrative law cases. Consequently, approximately four times per year, I sit as a member of a panel of three judges hearing appeals of civil, criminal and administrative law cases.

a. Approximately how many cases have you presided over that have gone to verdict or judgment? 600

i. Of these, approximately what percent were:

| | |
|---|---|
| jury trials: | 33% |
| bench trials: | 67% |
| civil proceedings: | 75% |
| criminal proceedings: | 25% |

b. Provide citations for all opinions you have written, including concurrences and dissents.

In March 2000, I was invited to sit by designation for one week as an associate judge for the Florida 4th District Court of Appeal. During my assignment there, I wrote the following opinions:

18

*Kammer v. Hurley*, 765 So. 2d 975 (Fla. 4th DCA 2000)

*Butler v. State*, 767 So. 2d 534 (Fla. 4th DCA 2000)

*Continental Concrete, Inc. v. Lakes at La Paz III Ltd. Partnership*, 758 So. 2d 1214 (Fla. 4th DCA 2000)

*Wertkin v. Wertkin*, 763 So. 2d 461 (Fla. 4th DCA 2000)

*Willis v. State*, 760 So. 2d 1018 (Fla. 4th DCA 2000)

As a member of a Circuit Court Appellate Panel handling appeals from County Court cases and administrative hearings, I have authored the following opinions:

*United Services Auto v. Affiliated Health Care, Inc. a/a/o Sarah Shoemaker*, Consolidated Case numbers 03-208 AP and 03-429 AP

*United Auto v. Interscan, Inc. a/a/o Gonzalez*, Case number 08-9867 AP

*United Auto v. Professional Medical Group. a/a/o Rodriguez*, Case number 08-323 AP

*United Auto v. Restrepo*, Case numbers 08-279 AP and 08-598 AP

*Las Balmeras, Inc. v. Town of Golden Beach*, Case number 08-149 AP

*Allcare Health and Wellness Center, P.A. a/a/o Swartz*, Case number 02-17872 AP

*United Auto v. Andrade*, Case number 06-062/06-294 AP

*Carlson v. State*, Case number 05-414 AP

*Diaz v. State*, Case number 07-017 AP

*Dynamic Medical Services, a/a/o Rossitch*, Case number 03-600 AP

*Miami-Dade County v. Anderson*, Case number 00-357 AP

*Espinosa v. Alonso*, Case number 07-065 AP

*Executive Style Cleaners v. Todywala*, Case number 00-13490 AP

*Franco v. State*, Case number 98-440 AP

*Garrido a/a/o Bueno v. United Auto*, Case number 09-008 AP

19

*State v. Guerrero*, Case number 03-144 AP

*Khoury v. State*, Case number 99-431 AP

*Lautaro Development, LLC v. Miami-Dade Count*, Case number 01-268 AP

*Marroquin v. State*, Case number 03-095 AP

*Miller v. State*, Case number 08-326 AP

*Revoredo v. United Auto*, Case number 04-421 AP

As a Circuit Court Judge of the 11th Judicial Circuit of Florida in and for Miami-Dade County, I have written the below-listed unpublished opinions which are filed in the court file by the Miami-Dade County Clerk of Courts. The final judgments of dissolution of marriage entered by me are not included:

*Fisher Family Holdings v. Citicorp North America, Citicorp Investment Services, Citibank and Entenberg*, Case No. 02-12094 CA 23

*Countrywide Home Loans v. De Los Reyes*, Case No. 05-8975 CA 11

*Presidential Club v. Presidential Estates Homeowners Ass'n; Feld; Joseph; Miami-Dade County*, Case No. 07-18588 CA 11

*Rey v. Woodlawn Park Cemetery Co.*, Case No. 02-20278 CA 11

*Robinson v. Ford Motor Co., Lehman-Reyf Assocs., LLC*, Case No. 01-21364 CA 11

*State Farm Mut. Auto. Ins. Co. v. Martinez, Martinez, Martinez and Castaneda*, Case No. 05-10688 CA 11

*Caravel Inv., Inc. v. Walgreen Co.*, Case No. 98-9990

*Cartaya v. Perez, Ing, Awan, Miami Int'l Cardiology Consultants, Inc., and Tenet Hialeah Healthsystem, Inc.*, Case No. 04-18054 CA 11

*Cordoves and OAC Inv. LLC v. Gorra and F & G Developers Corp.*, Case No. 04-26572 CA 11

*Fountain Park Village Homes Condo Ass'n, Inc. v. Garcia v. Camps*, Case No. 07-25312 CA 11

*Greenwald v. Pujol*, Case No. 05-11994 & Case No. 05-11997 CA 11

20

*Heiberger v. Shahak*, Case No. 02-26681 CA 11

*Heydarian v. KMart Corp. and Hawkins Constr., Inc.*, Case No. 97-4087 CA 11

*Merida Inv. Grp., Inc. v. Genie Pools Miami Florida, Inc.*, Case No. 04-16541 CA 11

*Da Silva Nicolau and Rodrigues Conduto v. Coutts (USA) Int'l and Guerra*, Case No. 03-6704 CA 11

*Fountain Park Village Homes Condo. Ass'n Inc. v. Garcia and Camps*, Case No. 07-25312 CA 11

*Blue Dolphin Studios, Inc. v. Adler Group Constr., Inc.*, Case No. 03-5644 CA 23

*Arroyo v. Ford Motor Co. and Courtesy Ford, Inc.*, Case No. 02-2866 CA 11

*Gibraltar Bank v. Avior Techs., Inc. v. AIG Aviation, Inc., Nat'l Union Fire Ins. Co. of Pittsburgh, PA and Cessna Aircraft Co.*, Case No. 00-19074 CA 11

*BAC Funding Corp. v. Falcon Constr. Corp., Masterpiece Constr. Corp., MCC Int'l, Inc., and Shapiro*, Case No. 99-3926 CA 11

*State v. Winningham*, Case No. 95-5000

*State v. Burroughs*, Case No. F96-2754

*State v. Joseph*, Case No. 96-20056

*State v. Toomer*, Case No. 98-7378B &98-5977B

*State v. Scarlett*, Case No. F98-29427B

*State v. Maturah*, Case No. 99-26847

*State v. Castillo*, Case No. 94-35627

*State v. Dailey*, Case No. 99-6076

*State v. Perez*, Case No. 96-5331A

*State v. White*, Case No. 95-13115

*Blain v. Blain*, Case No. 10-615 FC 29

*Carrillo v. Perez-Sanchez*, Case No. 10-7401 FC 29

*Planas Diez v. Banco Dominicano del Progreso, S.A.*, Case No. 09-11709 FC 04

*Boessert v. Silva*, Case No. 08-2486 FC 29

*Taliaferro v. Taliaferro*, Case No. 08-30973 FC 29

*Gonzalez v. Gonzalez*, Case No. 07-10156 FC 29

*Horton v. Vazquez*, Case No. 07-3162 FC 04

*Loftus Quinones v. Quinones*, Case No. 07-16348 FC 29

*Amador v. Suarez Ressler*, Case No. 06-11620 FC 29

*McDade v. McDade*, Case No. 06-9743 FC 29

*Gomez v. Robledo*, Case No. 04-14626 FC 29

*Jimenez v. Jimenez*, Case No. 04-30949 FC 29

*Del Carmen Ballesteros v. Ballesteros*, Case No. 03-31694 FC 29

*Williams v. Williams*, Case No. 89-36249 FC 29

c. For each of the 10 most significant cases over which you presided, provide: (1) a capsule summary of the nature of the case; (2) the outcome of the case; (3) the name and contact information for counsel who had a significant role in the trial of the case; and (3) the citation of the case (if reported) or the docket number and a copy of the opinion or judgment (if not reported).

1. *Imbesi v. The Bal Harbour Club and AVA Acquisitions*, Case No. 97-18345 (11), Miami-Dade Circuit Court, Civil Division

In January 2005, I inherited this case that had been pending since 1997 and I was the seventh judge assigned to the case. The case was an incredibly complex one involving multiple parties with multiple claims and cross-claims and, in spite of its age, most of the legal issues had yet to be resolved. The dispute centered around the sale of the Bal Harbour Club, one of the last beach front properties subject to high rise construction. The case was resolved amicably on the eve of the trial date. A copy of my Order on Motion for Partial Summary Judgment is supplied.

22

Attorneys with a significant role:

Michael A. Hanzman, Esq.
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
(305) 529-9100

David A. Rothstein, Esq.
2665 South Bayshore Drive, PH-2B
Miami, FL 33133
(305) 374-1920

Michael Olin, Esq.
169 East Flagler Street, Suite 1224
Miami, FL 33131
(305) 677-5088

Steven J. Brodie, Esq.
Carlton Fields
100 S.E. Second Street, Suite 4200
Miami, FL 33101
(305) 539-7302

2. *State v. Gonzalez and Franqui*, Case No. F92-2141B & D, 786 So. 2d 559 (Fla. 2001); 804 So. 2d 1185 (Fla. 2001). Miami-Dade Circuit Court, Criminal Division

Gonzalez and Franqui, in a premeditated fashion, shot and killed a uniformed police officer during a bank robbery. The week before the bank robbery, they had killed a victim during another robbery attempt. I presided over the separate sentencing phases for the Defendants after a reversal on appeal due to a failure by the predecessor trial court to sever the Defendants. Each jury recommended a sentence of death and I imposed a sentence of death. The sentences were affirmed on appeal. A copy of my Sentencing Order is supplied.

Attorneys with a significant role:

Abraham Laeser, Esq.
1525 Daytonia Road
Miami Beach, FL 33141
(305) 725-5505

Gail Levine, ASA
1350 NW Twelfth Avenue
Miami, FL 33136
(305) 547-0100

23

Bruce Fleisher, Esq.
1980 Coral Way
Miami, FL 33145
(305) 859-7999

Hon. Reemberto Diaz
Lawson E. Thomas Courthouse Center
175 N.W. First Avenue
Miami, FL 33128
(305) 349-5681

Eric M. Cohen, Esq.
2937 SW 27th Avenue, Suite 202
Miami, FL 33133
(305) 443-1600

3. *Robinson v. Ford Motor Co.*, Case No. 01-21364 CA 11, Miami-Dade Circuit Court, Civil Division

This case was a lawsuit against Ford Motor Company for an alleged defective design resulting in a rollover and the death of the Plaintiff. The jury returned a verdict in favor of the Defendant, Ford Motor Company.

Attorneys with a significant role:

Richard L. Denney, Esq.
870 Copperfield Drive
Norman, OK 73072
(405) 364-8600

Laurie Waldman Ross, Esq.
Ross & Girten
9130 South Dadeland Boulavard, Suite 1612
Miami, FL 33156
(305) 670-8010

John Seipp, Jr., Esq.
2 Alhambra Plaza, Suite 800
Coral Gables, FL 33134
(305) 995-5600

24

Vaughn Crawford, Esq.
One Arizona Center
400 East Van Buren Street
Suite 1900
Phoenix, AZ 85004
(602) 382-6000

4. *Szentpaly v. The McDonnough's Inv. Grp., Inc. d/b/a Chicken Kitchen; Chicken Kitchen USA, LLC; and Lacroix*, Case No. 04-10065-CA-11, Miami-Dade Circuit Court, Civil Division

The Plaintiff lost a leg after being hit by a delivery car driven by an employee of a Chicken Kitchen franchise. The trial centered on the issue of the liability of the franchisor, Chicken Kitchen USA, under an agency theory based upon the franchisor's control or ability to exercise control over the franchisee. The jury returned a significant verdict in favor of the Plaintiff.

Attorneys with a significant role:

Ervin Gonzalez, Esq.
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
(305) 476-7400

Alexander L. Martone, Esq.
30 S.E. Seventh Street
Boca Raton, FL  33432
(561) 362-5402

Frank Allocca, Esq.
28 West Flagler Street
Suite 1106
Miami, FL 33130
(305) 374-1994

Charles L. Balli, Esq.
Buckner, Shifrin, Rice & Etter, P.A.
46 SW First Street
Second Floor
Miami, FL  33130
(305) 679-9744

5. *Smith v. Smith, Palm Springs Gen. Hosp., Inc. and Brusa, Inc.*, Case No. 1996-28167, 795 So. 2d 71 (Fla. 3d DCA 2001) (App. Dism.), Miami-Dade Circuit Court, Family Division

This was the first significant and complex case I handled upon assignment to the Family Division. In addition to the dissolution of marriage issues, there were also issues relating to a trust and trust agreement. After a Final Judgment of Dissolution of Marriage was entered by the predecessor judge, I conducted a hearing on the former wife's request for attorneys' fees and damages owed to her by the former husband. A copy of my Final Order on Damages is supplied.

Attorneys with a significant role:

A.J. Barranco, Esq.
Barranco & Kircher, PA
150 West Flagler Street, Suite 1400
Miami, FL 33130
(305) 371-8575

Bruce Christensen, Esq.
Richman Greer, PA
201 South Biscayne Boulevard, 10th Floor
Miami, FL 33131
(305) 373-4000

6. *Bakerman v. The Bombay Co.*, Case No. 2001-9307 CA 23, 961 So. 2d 259 (Fla. 2007), Miami-Dade Circuit Court, Civil Division

This was a civil case in which the Plaintiff, a store employee, fell and was injured while using a ladder that was too short and wobbly. The main issue in the case was whether his lawsuit against his employer fell within the Florida exception to worker's compensation immunity. The court allowed the case to be submitted to the jury and a verdict was returned in favor of the Plaintiff. Although the verdict was overturned by the intermediate appellate court, the Florida Supreme Court ultimately affirmed the judgment for the Plaintiff.

Attorneys with a significant role:

Robert Pelier, Esq.
4649 Ponce De Leon Boulevard, Suite 305
Coral Gables, FL 33146
(305) 529-9199

26

John M. Mullen Esq.
110 S.E. Sixth Street, 15th Floor
Fort Lauderdale, FL 33301
(954) 525-7500

7. *Efron v. Efron*, Case No. 1999-12806-FC-28, Miami-Dade Circuit Court, Family Division

This was a complicated family law case which involved numerous legal and factual disputes as to children's issues, equitable distribution, alimony, jurisdiction and venue. Ultimately, the court entered an order granting the Husband's Motion for Change of Venue and the matter was transferred to Puerto Rico where each party had filed actions relating to the dissolution of marriage. A copy of the Order Granting the Transfer of Venue is supplied.

Attorneys with a significant role:

Mitchell Karpf, Esq.
2400 North Commerce Parkway, Suite 309
Weston, FL 33326
(954) 809-3300

Jacqueline Valdespino, Esq.
Valdespino & Associates, PA
2641 Abaco Avenue
Miami, FL 33133
(305) 442-1200

8. *Gonzalez v. Penalver*, Case No. 2004-22701 CA 11, Miami-Dade Circuit Court, Civil Division

This was a medical malpractice case against a doctor who performed a hernia operation on the Plaintiff. The jury returned a verdict in favor of the Defendant doctor.

Attorneys with a significant role:

Ilisa Hoffman, Esq.
4601 Ponce de Leon Boulevard, Suite 350
Coral Gables, FL 33146
(305) 667-1074

James Traitz, Esq.
9155 South Dadeland Boulevard, Suite 1014
Miami, Florida 33156
(305) 670-1405

27

9. *De Saad v. Banco Industrial de Venezuela, C.A. and BIV Inv. and Mgmt., Inc. and Joseph Beeler, P.A.*, Case No. 2001-13868 CA 11, Miami-Dade Circuit Court, Civil Division

This case was a nine-day, non-jury trial. The Plaintiff was a bank employee who was indicted in federal court for money laundering relating to transactions she performed as a bank employee. After her acquittal, she sought indemnification from her employer, the bank, claiming that since she had been acquitted of conduct relating to her employment, she was entitled to indemnification pursuant to Florida Statute. The court ruled in favor of the Plaintiff and entered a 73-page Order and Verdict Following Non-Jury Trial, a copy of which is supplied.

Attorneys with a significant role:

William Petros, Esq.
Petros & Elegant
4090 Laguna Street, 2nd Floor
Coral Gables, FL 33146
(305) 446-3699

William Richie, Esq.
2 South Biscayne Boulevard, 34th Floor
Miami, FL 33131
(305) 372-8808

Mark Cheskin, Esq.
Hogan & Lovells US LLP
1111 Brickell Avenue, Floor 19
Miami, Florida 33131
(305) 459-6625

10. *Dunn v. East Coast Electric, Inc.*, Case number 1999-23457-CA-11, Miami-Dade Circuit Court, Civil Division

The Plaintiff, an employee of Florida Power and Light, was severely injured on a high rise construction project when an electric busway exploded. The court handled several lengthy pre-trial hearings, including on whether an amendment to claim punitive damages should be allowed and whether the Defendant's pleadings should be stricken due to a discovery violation. A copy of the court's Order Granting in Part and Denying in Part Plaintiff's Motion to Strike East Coast Electric's Defenses, Enter a Default on Liability, and/or Other Sanctions for Willful Discovery Abuse is supplied.

Attorneys with a significant role:

Robert Dickman, Esq.
4500 South Le Jeune Road
Coral Gables, FL 33146
(305) 667-8488

Benjamin Esco, Esq.
9150 South Dadeland Boulevard, Suite 1400
Miami, FL 33156
(305) 350-5300

d.  For each of the 10 most significant opinions you have written, provide: (1) citations for those decisions that were published; (2) a copy of those decisions that were not published; and (3) the names and contact information for the attorneys who played a significant role in the case.

1.  *Kammer v. Hurley*, 765 So. 2d 975 (Fla. 4th DCA 2000)

Attorneys with a significant role:

Daniel Pearson, Esq. (deceased)

Lenore C. Smith, Esq.
2400 East Commercial Boulevard, Suite 1100
Ft. Lauderdale, FL 33308
(954) 958-2500

Julie Littky-Rubin, Esq.
1919 North Flagler Drive
West Palm Beach, FL 33407
(561) 899-2109

2.  *Butler v. State*, 767 So. 2d 534 (Fla. 4th DCA 2000)

Attorneys with a significant role:

Lue Anne Goodine Butler, Esq.
Child Welfare Legal Services
111 South Sapodilla Avenue, Suite 212
West Palm Beach, FL 33401
(561) 650-6901

James J. Carney, AAG
Office of the Attorney General
1515 North Flagler Drive, 9th Floor
West Palm Beach, FL 33401
(561) 837-5000

3. *Continental Concrete, Inc. v. Lakes at La Paz III Ltd. P'ship*, 758 So. 2d 1214
(Fla. 4th DCA 2000)

Attorney with a significant role:

Thomas D. Daiello, Esq.
350 Camino Gardens Boulevard, Suite 301
Boca Raton, FL 33432
(561) 395-1599

Larry R. Leiby, Esq.
Malka & Kravitz, P.A.
1300 Sawgrass Corporate Parkway, Suite 100
Fort Lauderdale, FL 33323
(954) 514-0984

4. *Wertkin v. Wertkin*, 763 So. 2d 461 (Fla. 4th DCA 2000)

Attorneys with a significant role:

Martin H. Colin, Esq.
501 North Country Club Drive
Atlantis, FL 334621005
(561) 330-1750

Barbara Compiani, Esq.
Kreusler-Walsh Compiani & Vargas, PA
501 South Flagler Drive, Suite 503
West Palm Beach, FL 33401
(561) 659-5455

5. *Willis v. State*, 760 So. 2d 1018 (Fla. 4th DCA 2000)

Attorneys with a significant role:

Craig A. Boudreau, Esq.
420 South State Road 7, Suite 108
Wellington, FL 33414
(561) 641-5722

Marrett W. Hanna, AAG
Hanna Hedrick Willis Shuler LLC
222 Palm Court
Delray Beach, FL 33444
(561) 891-9000

6. *Carlson v. State*, Case No. 05-414 AP (2005).  Opinion supplied.

Attorneys with a significant role:

Barry Silver, Esq.
Barry M. Silver PA
1200 South Rogers Circle, Suite 8
Boca Raton, FL 33487
(561) 483-6900

Kenneth Chase, Esq.
Lathrop & Gage DC, PLLC
1300 Eye Street, NW, Suite 1050E
Washington, DC 20005
(202) 962-0309

7. *State v. Gonzalez*, Case No. F92-2141D (Sentencing Order) (1998).  Opinion supplied in response to 13(c).

Attorneys with a significant role:

Abraham Laeser, Esq.
1525 Daytonia Road
Miami Beach, FL 33141
(305) 725-5505

Gail Levine, ASA
1350 NW Twelfth Avenue
Miami, FL 33136
(305) 547-0100

Bruce Fleisher, Esq.
1980 Coral Way
Miami, FL 33145
(305) 859-7999

Hon. Reemberto Diaz
Lawson E. Thomas Courthouse Center
175 N.W. First Avenue
Miami, FL 33128
(305) 349-5681

8. *Lautaro Dev., LLC v. Miami-Dade Count*, Case No. 01-268 AP (2005).
Opinion supplied.

Attorneys with a significant role:

Stanley Price, Esq.
Bilzin Sumberg Baena Price & Axelrod, LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131
(305) 350-2374

Elliot Scherker, Esq.
Greenberg Traurig
333 Avenue of the Americas, Suite 44
Miami, FL 33131
(305) 579-0579

Robert Krawcheck, Esq.
2655 South Le Jeune Road, Suite 500
Coral Gables, FL 33134
(786) 282-3945

9. *Miller v. State*, Case No. 08-326 AP.  Opinion supplied.

Attorneys with a significant role:

Ignacio Vazquez, ASA
Miami-Dade County State Attorney's Office
1350 NW Twelfth Avenue
Miami, FL 33136
(305) 547-0690

Carlos Miller, *pro se*

10. *Augie Enters. v. August, Individually and as Trustee*, Case No. 05-7368 CA
(2006).  Opinion supplied.

Attorneys with a significant role:

32

Richard M. Goldstein, Esq.
Goldstein Tanen & Trench, PA
2 South Biscayne Boulevard, Suite 3700
Miami, FL 33131
(305) 374-3250

Gary Brooks, Esq.
Brooks & Alayon
4551 Ponce De Leon Boulevard
Coral Gables, FL 33146
(305) 221-2110

e.   Provide a list of all cases in which certiorari was requested or granted.

I am not aware of any cases in which certiorari was requested or granted.

f.   Provide a brief summary of and citations for all of your opinions where your
decisions were reversed by a reviewing court or where your judgment was
affirmed with significant criticism of your substantive or procedural rulings.  If
any of the opinions listed were not officially reported, provide copies of the
opinions.

*Bieda v. Bieda*, 42 So. 3d 859 (Fla. 3d DCA 2010).  The former husband was
delinquent in his alimony and child support payments by over $287,000.  The
former wife filed suit to collect the support arrearage upon learning that the
former husband had a certificate of deposit for over $200,000.  I issued a
temporary injunction freezing the account and granted the former wife's motion
for entry of a final judgment for the amount of the arrearage, reimbursement, and
attorney's fees.  The appellate court reversed the final judgment, holding that the
trial court failed to provide the former husband with notice and a time for
response.  Opinion supplied.

*Skylake Ins. Agency, Inc. v. NMB Plaza, LLC*, 23 So. 3d 175 (Fla. 3d DCA 2009).
I held that a long-term lease was unenforceable due to its failure to comply with
the witness requirement under § 689.01, Fla. Stat. (2003).  The appellate court
reversed, holding that Defendant breached the implied covenant of good faith and
fair dealing by failing to cure the defect.

*Village of Doral Place Ass'n, Inc. v. RU4Real, Inc.*, 22 So. 3d 627 (Fla. 3d DCA
2009).  I refused to set aside a tax deed sale for a common area of a condominium
after the association had failed to pay taxes for that parcel of land.  The Third
DCA held that the tax deed sale was illegal because it violated *§ 718.107, Fla.
Stat. (2003)*, which forbids the separate sale of the common elements of a
condominium.

33

*Open Permit Services of Florida, Inc. v. Curtiss*, 15 So. 3d 822 (Fla. 3d DCA 2009). Plaintiff initiated an action for specific performance against defendant to enforce the parties' contract for the purchase and sale of a home. The appellate court affirmed my order denying specific performance, but reversed in part, holding that Defendant should not have been relieved of his obligation to cure all outstanding costs, taxes, and liens on the property.

*First Home View Corp. v. Guggino*, 10 So. 3d 164 (Fla. 3d DCA 2009). I set aside a default judgment of foreclosure. The appellate court reversed, holding that I erred in vacating the final judgment and foreclosure sale where the affidavit of diligent search was legally sufficient and the lender conducted an adequate search prior to constructive service.

*Trumbull Ins. Co. v. Woltenarski*, 2 So. 3d 1050 (Fla. 3d DCA 2009). I entered an order awarding attorney's fees for the entire prosecution of an automobile accident negligence and Personal Injury Protection ("PIP") case. The appellate court reversed, holding that the PIP claim did not relate back to the original negligence complaint. The case was remanded for a hearing on attorney's fees related solely to the PIP claim.

*Antar v. Seamiles, LLC*, 994 So. 2d 439 (Fla. 3d DCA 2008). My order in favor of Seamiles was reversed based upon improper consideration of a self-serving affidavit. Opinion supplied.

*Cessna Aircraft Co. v. Avior Techs., Inc.*, 990 So. 2d 532 (Fla. 3d DCA 2008). This was a commercial dispute concerning damages caused by alleged improper repairs to a plane. Plaintiff brought claims under breach of contract and tort theories. The appellate court affirmed the verdict as to breach of contract but reversed as to tort.

*AC Holdings 2006, Inc. v. McCarty*, 985 So. 2d 1123 (Fla. 3d DCA 2008). The Plaintiffs filed a foreclosure action alleging that Defendant failed to comply with terms of the mortgage. Defendant's counsel failed to respond to the Plaintiff's summary judgment motion, which was granted. I rejected an affidavit filed by Defendant's new counsel in support of a motion for reconsideration. The appellate court reversed, holding that exigent circumstances required that the affidavit be accepted.

*Mejia v. Ruiz*, 985 So. 2d 1109 (Fla. 3d DCA 2008). The Plaintiff commenced proceedings supplementary to establish that the Defendant had committed a fraudulent transfer. I found that she failed to meet her burden of proof. On appeal, the court found that there was sufficient evidence of fraud to prove that fraudulent transfer.

*Martin v. Adorno & Yoss, LLP*, 983 So. 2d 744 (Fla. 3d DCA 2008). A law firm brought a claim against Martin, a former partner, for breach of fiduciary duty.

34

The firm moved for, and was granted, summary judgment. The appellate court reversed, holding that the record indicated that issues of material fact remained to be resolved, rendering summary judgment inappropriate. The case was remanded for further proceedings. Martin was later disbarred for the conduct relating to the court's granting of summary judgment.

*Bravo v. Hoover Indus., Inc.*, 978 So. 2d 835 (Fla. 3d DCA 2008). The entry of summary judgment was found to be improper. The appellate court held that even though Plaintiff belatedly requested permission to amend her complaint in order to properly state a cause of action, the trial court should have allowed her to do so.

*Ben-David v. Educ. Res.*, 974 So. 2d 1138 (Fla. 3d DCA 2008). The Defendant, a lawyer, was delinquent in two school loans. Although the two loans totaled over $15,000.00 (the circuit court's jurisdictional limit) each loan was less than $15,000.00 and the court did not have subject matter jurisdiction over the case.

*Benites v. Almeida*, 973 So. 2d 498 (Fla. 3d DCA 2007). The appellate court reversed a verdict in favor of Plaintiff and held that a set-off for PIP benefits should have been applied.

*Mills v. Mills*, 948 So. 2d 885 (Fla. 3d DCA 2007). On remand following reversal of the predecessor court's order, I revised the alimony award. The appellate court noted that its prior opinion was unclear as to the scope of the remand but reversed the judgment. Opinion supplied.

*Ocean Club Cmty. Ass'n, Inc. v. Curtis (Ocean Club III)*, 994 So. 2d 1115 (Fla. 3d DCA 2007). In *Ocean Club II*, the appellate court agreed with my decision that Curtis was entitled to an award of attorney's fees pursuant to § 448.08 Fla. Stat. for prevailing on the conversion count, but found error in the amounts awarded and reversed and remanded for reconsideration. In *Ocean Club III*, I denied Ocean Club's motion for attorney's fees. On appeal, the court reversed. Opinion on attorney's fees supplied.

*Robinson v. Scott*, 974 So. 2d 1090 (Fla. 3d DCA 2007). I granted a motion to dismiss based upon Plaintiff's failure to comply with pre-suit discovery. On appeal, the court reversed, holding that a finding of prejudice was required to support the sanction of dismissal.

*Williams v. Miami-Dade Cnty.*, 969 So.2d 389 (Fla. 3d DCA 2007). Petitioner, a county corrections officer, was fired for living with her boyfriend who was a convicted felon. The department standard operating procedures prohibit knowingly associating with persons engaged in unlawful activities. I affirmed the termination but the appellate court held that the employee was not adequately informed that she could not live with an ex-felon.

*Castro v. Miami-Dade Cnty.*, 967 So. 2d 230 (Fla. 3d DCA 2007). An addition on the Defendant's home was built in violation of the setback provisions of the county zoning code. However, the county had approved plans for improving the addition. The appellate court held that the county was equitably stopped from enforcing the code violation.

*Browne v. City of Miami*, 948 So. 2d 792 (Fla. 3d DCA 2006). Plaintiff, a City of Miami employee, sued Defendant. The Defendant filed a motion for summary judgment claiming that Plaintiff failed to exhaust the required administrative remedies, and the motion was granted. The appellate court reversed, holding that Defendant was estopped from arguing that Plaintiff failed to exhaust his administrative remedies where the Civil Service Board told him that it had no jurisdiction.

*The Church of Christ Written in Heaven, Inc. v. The Church of Christ Written in Heaven of Miami, Inc.*, 947 So. 2d 557 (Fla. 3d DCA 2006). A default final judgment was entered against the Defendant due to its failure to respond to a complaint filed by Plaintiff. The Defendant filed a motion to vacate the final default judgment and I determined that there had been a showing of excusable neglect and granted the motion. The appellate court reversed, holding that the motion to vacate was legally insufficient as it contained only a bare allegation of excusable neglect and meritorious defense.

*DeMayo v. Chames*, 934 So. 2d 548 (Fla. 3d DCA 2006). Former husband retained an attorney to represent him in post-dissolution proceedings to modify child support and alimony. The retainer agreement included an attorney's charging lien upon former husband's interests in any and all real and personal property, as well as a waiver of his homestead. I granted the attorney's request to enforce the homestead waiver. That ruling was originally affirmed by a three judge panel but was later reversed, *en banc*. Opinion supplied.

*The RCA Records Label, Inc. v. Reyes*, 922 So. 2d 367 (Fla. 3d DCA 2006). I entered an order requiring RCA Records Label to deposit royalties for Reyes into an escrow account, to be held in trust prior to the entry of judgment. On appeal, the court reversed and remanded to the trial court to lift its injunction, holding that the law does not authorize a court, in an action at law for money damages, to restrain a Defendant from using its unrestricted assets prior to the entry of judgment. Opinion supplied.

*Jauregui v. Bobb's Piano Sales and Service, Inc.*, 922 So. 2d 303 (Fla. 3d DCA 2006). I took over a division for a judge who had left the bench following a non-jury trial but prior to entry of the final judgment. The predecessor court had announced certain findings on the record and I tried to incorporate those findings into a final judgment. The appellate court reversed.

36

*Rios v. Moore*, 902 So. 2d 181 (Fla. 3d DCA 2005). The Plaintiff in a personal injury case gave significant, inconsistent answers in her discovery responses concerning prior injuries. I granted Defendant's motion to dismiss for fraud on the court. The appellate court reversed, holding that the facts did not rise to a level of fraud or collusion justifying a dismissal of the claim. Opinion supplied.

*Austin v. Austin*, 898 So. 2d 118 (Fla. 3d DCA 2005). I denied former husband's petition for modification of alimony upon finding that the husband's net worth, which included his home and pension plan, had increased. The appellate court reversed, holding that the husband's significant decrease in income was a sufficient change in circumstance to warrant a temporary reduction in alimony payments. Opinion supplied.

*Herrera v. Herrera*, 895 So. 2d 1171 (Fla. 3d DCA 2005). The appellate court reversed my award of exclusive use and possession of the home to the wife while the children were minors, holding that the husband's pre-marital home was a non-marital asset not subject to equitable distribution. Opinion supplied.

*Splash Entm't, Inc. v. Sons of Ireland, Inc.*, 867 So. 2d 423 (Fla. 3d DCA 2004). I granted a motion for summary judgment upon finding that a lien was unenforceable because it was not recorded within ninety days of creation of the security interest as required by statute. The appellate court reversed, holding that a lien is enforceable if it was received within the statutory ninety-day period.

*Dienstag v. Dienstag*, 864 So. 2d 9 (Fla. 3d DCA 2003). The parties entered into a prenuptial agreement containing a provision in which the parties agreed to waive all alimony. In the final judgment for dissolution of marriage, the wife was awarded bridge-the-gap alimony for twenty-four months. The alimony award was reversed, but the final judgment was affirmed in all other respects. Opinion supplied.

*Jessee v. Jessee*, 839 So. 2d 842 (Fla. 3d DCA 2003). The appellate court found that I improperly awarded marital home to the wife as lump sum alimony. Opinion supplied.

*Prio v. Barough*, 834 So. 2d 263 (Fla. 3d DCA 2002). The former wife waited 13 years before filing a motion to enforce the final judgment on dissolution of marriage seeking to recover arrearages in child support. I found that the enforcement of the support payments was barred by laches and res judicata. The appellate court reversed, holding that support obligations accruing under a court order become vested rights of the payee and vested obligations of the payor, which are not subject to retroactive modifications. Opinion supplied.

*Perdomo v. State*, 829 So. 2d 280 (Fla. 3d DCA 2002). Defendant was convicted of sexual battery based upon DNA evidence. The case was remanded for further

37

hearing for the State to qualify its expert as to his competence and to establish the methodology used to calculate the DNA statistics.

*Rashotsky v. Rashotsky (Rashotsky II)*, 829 So. 2d 275 (Fla. 3d DCA 2002). Following a remand from the appeal of a predecessor court's order, I reviewed the trial transcript and re-calculated the husband's alimony obligation. On appeal, the court reversed, stating that I should have taken evidence to determine the husband's alimony obligation.

*Walton v. State*, 808 So. 2d 1292 (Fla. 3d DCA 2002). Defendant filed a post conviction motion seeking to have his sentence reduced. I granted the motion and reduced the sentence. The appellate court affirmed the order granting the motion, but reversed the sentence because Defendant was not present for the re-sentencing.

*Martin v. State*, 795 So. 2d 143 (Fla. 3d DCA 2001). A habitual offender sentence on one count was reversed. Sentences on four other counts were upheld and the total sentence was unaffected by the appellate ruling.

*Labady v. State*, 783 So. 2d 275 (Fla. 3d DCA 2001). During a plea colloquy, I asked Defendant if he was aware that his plea could have adverse consequences to his immigration status. The appellate court held that the Defendant should have been advised that he could be subject to deportation.

*Rodriguez v. State*, 777 So. 2d 1143 (Fla. 3d DCA 2001). The Defendant filed a Motion for Post Conviction Relief due to claims of ineffective assistance of counsel. I denied the motion. On appeal, the court found that the Record did not conclusively refute all of the Defendant's ineffective assistance claims and the case was remanded for an evidentiary hearing.

*Scarlett v. State*, 766 So. 2d 1110 (Fla. 3d DCA 2000). Relying on United States Supreme Court precedent, I admitted illegally seized cocaine during a probation violation hearing, finding that the exclusionary rule did not apply to probation violation hearings. On appeal, the court reversed, holding that in Florida evidence obtained through an unlawful search is inadmissible in a probation revocation hearing. Opinion supplied.

*State v. S.C.*, 762 So. 2d 1008 (Fla. 3d DCA 2000). I sealed the record of a juvenile defendant. On appeal, the court vacated that order without prejudice due to the Defendant's failure to follow the procedure established in Fla. R. Crim. P. 3692 and Fla. Stat. ch. 943.0585 and 943.059 (1999).

*Cheatham v. State*, 751 So. 2d 751 (Fla. 3d DCA 2000). Cheatham appealed from an order of revocation of his probation. The appellate court reversed, holding that the record was unclear as to whether the trial court would have revoked

Cheatham's probation and given him the same sentence had he not committed violations that were not listed in the affidavit.

*Mullis v. State*, 749 So. 2d 1273 (Fla. 3d DCA 2000). I summarily denied Defendant's motion for post-conviction relief, and the appellate court held that the record did not conclusively show that the Defendant was not entitled to relief on the voluntary intoxication ground.

*Nieves v. State*, 779 So. 2d 294 (Fla. 3d DCA 1999). The Defendant was sentenced to prison with credit for time served. When the prison did not award him credit, he filed a motion with the court. Since the court had given him the credit already, the motion was denied. On appeal, the court reversed.

*State v. Green*, 747 So. 2d 1007 (Fla. 3d DCA 1999). Defendant, charged with unlawful driving as a habitual traffic offender, filed a Motion to Dismiss, claiming that his status as a habitual traffic offender expired years earlier. I granted the motion and reduced the charge to driving with a suspended license. The appellate court reversed, holding that his failure to seek reinstatement allowed the license to remain revoked even past the expiration of the revocation period.

*Garcia v. State*, 736 So. 2d 1224 (Fla. 3d DCA 1999). Garcia filed a 3.800(a) motion requesting credit for additional jail time served both before and after sentencing. I denied the motion. The order was affirmed in part and reversed in part.

*Miller v. State*, 734 So. 2d 1200 (Fla. 3d DCA 1999). The reason for a sentence which departed below guidelines was not supported by the record and was reversed for resentencing within guidelines.

*Bennett v. State*, 732 So. 2d 1130 (Fla. 3d DCA 1999). Defendant filed a post conviction relief motion which I denied. The appellate court reversed, holding that the record did not show conclusively that Defendant was not entitled to relief. The case was remanded for an evidentiary hearing.

*Winningham v. State*, 732 So. 2d 1223 (Fla. 3d DCA 1999). My denial of a post-conviction relief motion was reversed due to failure to attach record excerpts refuting Defendant's allegations.

*Tejada v. State*, 729 So. 2d 965 (Fla. 3d DCA 1999). Defendant admitted to lying under oath when he testified and I held him in direct criminal contempt. The appellate court reversed the contempt order, holding that because Defendant had lied three days earlier, the court could not conduct a summary contempt hearing.

*State v. Harris*, 718 So. 2d 933 (Fla. 3d DCA 1998). Harris received a twenty-five-year mandatory sentence for a first-degree felony as a violent career criminal. The appellate court held that a life sentence was mandated.

*White v. Singletary*, 717 So. 2d 1054 (Fla. 3d DCA 1998). The appellate court found that improper impeachment of Defendant on cross-examination was reversible error.

*State v. Meyers*, 708 So. 2d 661 (Fla. 3d DCA 1998). My order sentencing Defendant to 65 months as a Violent Career Criminal was reversed for failing to impose the minimum mandatory. The court has discretion to not impose a Violent Career Criminal sentence, but once it does, it must impose the minimum mandatory.

*Castillo v. State*, 705 So. 2d 1037 (Fla. 3d DCA 1998). Defendant was convicted of first-degree murder. The appellate court found that the evidence supported a finding that Castillo committed second-degree murder and remanded the case with instructions to enter judgment against Castillo, convicting him of second-degree murder.

*State v. Evans*, 705 So. 2d 631 (Fla. 3d DCA 1998). I allowed the Defendant to vacate a plea based upon defective plea colloquy. The appellate court reversed, holding that the plea was not to be vacated automatically simply because the plea colloquy was insufficient.

*Wilson v. State*, 698 So. 2d 1377 (Fla. 3d DCA 1997). Following a probation violation hearing, the court violated the Defendant's sex offender probation and imposed a sentence which was calculated by assessing points for penetration of the victim's sexual organ rather than for contact with the sexual organ, resulting in a higher sentence for the defendant. On appeal, the order violating the probation was upheld but the case was remanded for resentencing using the correct score and to properly award credit for time served.

*State v. Sherrill*, 678 So. 2d 7 (Fla. 3d DCA 1996). My order imposing a sentence below the guidelines was reversed for lack of contemporaneous written reasons for departure. The case was remanded for re-sentencing within the guidelines.

g. Provide a description of the number and percentage of your decisions in which you issued an unpublished opinion and the manner in which those unpublished opinions are filed and/or stored.

As a member of a trial level court, 99% of the decisions I issue result in an unpublished opinion. Those opinions which I have personally written are stored in my computer in a directory for each type of case (civil, criminal or family). The opinions that were not written by me but which were submitted by the parties for my review and execution, are filed in the court file which is maintained by the Clerk of Courts.

h. Provide citations for significant opinions on federal or state constitutional issues, together with the citation to appellate court rulings on such opinions. If any of the opinions listed were not officially reported, provide copies of the opinions. ·

*Butler v. State*, 767 So.2d 534 (Fla. 4th DCA 2000) (No error in failing to conduct *Faretta* inquiry of criminal defendant who was experienced criminal defense attorney).

*Carlson v. State*, Case number 05-414 AP (upholding constitutionality of State's Hunter Harassment Law against First Amendment Free Speech challenge). Opinion supplied in response to 13(d).

i. Provide citations to all cases in which you sat by designation on a federal court of appeals, including a brief summary of any opinions you authored, whether majority, dissenting, or concurring, and any dissenting opinions you joined.

I have not sat by designation on a federal court of appeals.

14. **Recusal:** If you are or have been a judge, identify the basis by which you have assessed the necessity or propriety of recusal (If your court employs an "automatic" recusal system by which you may be recused without your knowledge, please include a general description of that system.) Provide a list of any cases, motions or matters that have come before you in which a litigant or party has requested that you recuse yourself due to an asserted conflict of interest or in which you have recused yourself sua sponte. Identify each such case, and for each provide the following information:

a. whether your recusal was requested by a motion or other suggestion by a litigant or a party to the proceeding or by any other person or interested party; or if you recused yourself sua sponte;

b. a brief description of the asserted conflict of interest or other ground for recusal;

c. the procedure you followed in determining whether or not to recuse yourself;

d. your reason for recusing or declining to recuse yourself, including any action taken to remove the real, apparent or asserted conflict of interest or to cure any other ground for recusal.

Our jurisdiction does not have an "automatic" recusal system. Florida Rule of Judicial Administration 2.160(e) provides that the motion to recuse must be filed within a reasonable time not to exceed 10 days after the discovery of the facts that would require disqualification. The motion must be served upon the judge and the judge must rule within 30 days of service. If the judge does not rule within 30 days, the motion is automatically granted. A judge may not dispute the allegations in a motion to recuse, but must accept the allegations in a motion to recuse as true and then determine whether those facts, if true, would warrant recusal.

41

I have been able to locate the following cases in which motions to recuse or disqualify me were filed:

*Blain v. Blain*, 2010-615-FC-29. The court prepares its own orders from the bench. Following an oral argument, I took a short recess and then printed out and handed out a two page order. The attorney claimed that since the order was printed out only a few minutes after the hearing, I must have made my mind up before the hearing. The motion was denied as legally insufficient.

*Ben-David v. Education Resources*, 2001-29442 CA 11. Defendant was an attorney who refused to pay her three school loans. Although the total of the three loans exceeded the court's jurisdictional limit ($15,000.00), each loan was less than the court's jurisdictional limit and the case should therefore have been brought in the county court. The appellate court reversed and remanded for a trial in the county court. The appellate court directed that attorney's fees be granted to the Defendant. I did not feel I could be impartial in granting attorney's fees and recused sua sponte.

*McDade v. McDade*, 2006-9743-FC-29. The former husband filed two motions based upon his dissatisfaction with my rulings. This is not a legally recognized ground for recusal and I denied the motion as legally insufficient.

*Ursi v. Ursi*, 2008-18912-FC-29. The husband filed a motion claiming I made a comment on the record showing bias against him. The transcript of the hearing specifically refuted the husband's allegation and I denied the motion.

*Colarusso v. Colarusso*, 2008-22130-FC-29. The husband asked to be allowed to share time with his children in the presence of his pregnant girlfriend while the divorce case was still pending. I denied the motion, stating that I did not believe it was a good thing for a still-married man to be sharing time with his children and pregnant girlfriend. The husband filed a motion seeking to recuse based upon this statement, which I denied. A writ of prohibition was sought and the appellate court ordered that I recuse myself.

*Hunt v. Hunt*, 1991-46419-FC-29. The former husband filed a motion based upon his dissatisfaction with my rulings, which is not a legally recognized ground for recusal. The motion was denied.

*Imbesi v. Bal Harbour*, 1997-18345-CA-11. Plaintiff filed a motion based upon his dissatisfaction with my rulings, which is not a legally recognized ground for recusal. The motion was denied as legally insufficient.

*Balbin v. Lexington Ins. Co.*, 1997-18802-CA-11 and 2004-15065-CA 11. The Plaintiff, a *pro se* litigant, claimed that I denied him a full opportunity to argue his pleadings. Although these allegations were untrue, I had to accept them as true for the purpose of ruling on the motion and the motion was granted.

*Caravel Investments, Inc. v. Walgreen Co.*, 1998-9990-CA-11. The Plaintiff filed a motion claiming that I had overheard his conversations with his attorney at counsel table during a hearing which the Plaintiff claimed were attorney/client communications. I determined that for me to have heard the conversation from afar, the Plaintiff had to have been speaking too loudly to have reasonably believed his conversation was private and privileged. The motion was denied as legally insufficient.

*Tome v. Pita*, 2000-20659-FC-28. The former wife filed a motion based upon her dissatisfaction with my ruling, which is not a legally recognized basis for recusal. I denied the motion as legally insufficient.

*Samaroo v. Samaroo*, 1999-17490-FC-28. I had filed a bar complaint against the partner of one of the attorneys in the case and the attorney claimed that because I knew she was a partner of the attorney I sanctioned, I might not award attorney's fees out of fear that the sanctioned attorney would share in the award. The motion was granted.

*Paraschak v. Lewis*, 2001-11567-FC-28. I had recently filed a bar complaint against the attorney in the case and the attorney claimed I might be biased against his client. The motion was granted. The attorney later apologized for the conduct leading to the bar complaint and he has appeared many times before me since then and has not filed any further motions to recuse.

*Partlowe v. Gomez*, 1998-11694-FC-28. In this case, the attorney filed a motion claiming that I had been involved in an improper, ex parte communication with the opposing party. Because I had to accept the allegation as true, I granted the motion. However, I determined that the attorney was reckless in his accusations -- which were absolutely not true -- and filed a bar complaint against him for which he was sanctioned.

*Fernandez & Fernandez*, 1998-26129-FC-28. The attorney claimed in his motion that because I had been typing on the computer during the attorney's argument and printed out the order shortly after the hearing ended, I must have already made up my mind prior to hearing all of the arguments. I granted the motion, not because it was legally sufficient, but because the allegation was so ludicrous that I felt I could not be fair to that attorney.

*State v. Gonzalez and Franqui*, F92-2141B & D. I handled the re-sentencing of these two death penalty cases. I was not in any way involved in the first trials of the two defendants. One of the prosecutors in the first trial, who had left the prosecutor's office before the second trial, was a close friend of mine. In our circuit, the judge who handles a capital case must handle all future post-conviction motions on the case -- even if the judge has transferred to another division of the court. I felt that there may someday be a claim of prosecutorial misconduct from the first trial and the credibility of the prosecutor who was my friend may be called into question. After the sentences were affirmed on direct appeal, and to avoid the appearance of impropriety, I *sua sponte* entered an order of recusal for all future post-conviction motions on the cases.

15. **Public Office, Political Activities and Affiliations**:

    a.  List chronologically any public offices you have held, other than judicial offices, including the terms of service and whether such positions were elected or appointed. If appointed, please include the name of the individual who appointed you. Also, state chronologically any unsuccessful candidacies you have had for elective office or unsuccessful nominations for appointed office.

        I have not held any public offices other than a judicial office.

    b.  List all memberships and offices held in and services rendered, whether compensated or not, to any political party or election committee. If you have ever held a position or played a role in a political campaign, identify the particulars of the campaign, including the candidate, dates of the campaign, your title and responsibilities.

        I have never held membership or office in any political party or election committee.

        In 1994, I volunteered to work on the gubernatorial campaign of Lawton Chiles. I worked on one or two afternoons stuffing envelopes.

        Since I am an elected official, I ran for office in 1996, 2002 and 2008 and was actively involved in my own campaign to the extent permitted by the Judicial Canons. I was unopposed in each campaign.

16. **Legal Career:** Answer each part separately.

    a.  Describe chronologically your law practice and legal experience after graduation from law school including:

        i.  whether you served as clerk to a judge, and if so, the name of the judge, the court and the dates of the period you were a clerk;

            I have never served as a clerk to a judge.

        ii.  whether you practiced alone, and if so, the addresses and dates;

            From 1986 to 1992 and from 1993 to 1995, I practiced alone at Robert N. Scola, Jr. P.A.

            From 1986 to 1991, the address of the office was 2600 Douglas Road, Penthouse One, Coral Gables, Florida 33134.

            From 1991 to 1992 and 1993 to 1995, the address of the office was 2400 South Dixie Highway, Miami, Florida 33131.

iii.   the dates, names and addresses of law firms or offices, companies or governmental agencies with which you have been affiliated, and the nature of your affiliation with each.

1980 – 1986
Dade County State Attorney's Office
1341 Northwest 12th Street
Miami, Florida 33125
Assistant State Attorney (1980 – 1986)
Major Crimes Prosecutor (1984 – 1986)
Deputy Chief Assistant State Attorney (1986)

1986 – 1991
Robert N. Scola, Jr. P.A.
2600 Douglas Road, Penthouse One
Coral Gables, Florida 33134
Attorney

1991 – 1992
Robert N. Scola, Jr. P.A.
2400 South Dixie Highway
Miami, Florida 33131
Attorney

1992 – 1993
Quinon, Strafer & Scola, P.A.
2400 South Dixie Highway
Miami, Florida 33131
Partner

1993 – 1995
Robert N. Scola, Jr. P.A.
2400 South Dixie Highway
Miami, Florida 33131
Attorney

iv.   whether you served as a mediator or arbitrator in alternative dispute resolution proceedings and, if so, a description of the 10 most significant matters with which you were involved in that capacity.

I have never served as an arbitrator or mediator.

45

b. Describe:

    i. the general character of your law practice and indicate by date when its character has changed over the years.

    From 1980 to 1986, I worked as a prosecutor in state court starting in county court handling misdemeanor cases and finishing as a major crimes prosecutor handling first degree murder, death penalty cases.

    From 1986 to 1995, I worked as a criminal defense attorney, mostly as a solo practitioner except for a one year period from 1992 to 1993 when I joined two other attorneys who also practiced criminal defense.

    ii. your typical clients and the areas at each period of your legal career, if any, in which you have specialized.

    From 1980 to 1986, I specialized in the prosecution of state criminal cases and my client was the State of Florida.

    From 1986 to 1995, I specialized in criminal defense in both state and federal courts. It is difficult to define my "typical client" because they ranged from the innocent individual who was wrongfully accused to career criminals to police officers charged with corruption to professionals charged with white collar crimes. I have represented men and women from virtually every sector of our community. Additionally, I represented scores of indigent defendants both *pro bono* and as a Specially Appointed Public Defender.

c. Describe the percentage of your practice that has been in litigation and whether you appeared in court frequently, occasionally, or not at all. If the frequency of your appearances in court varied, describe such variance, providing dates.

100% of my practice as an attorney involved litigation. During my tenure as an Assistant State Attorney I was in court on a daily basis and during my time as a private attorney I was in court on an almost daily basis.

    i. Indicate the percentage of your practice in:
        1. federal courts:      45%
        2. state courts of record:     50%
        3. other courts:      5%
        4. administrative agencies:     0%

    ii. Indicate the percentage of your practice in:
        1. civil proceedings:     1%
        2. criminal proceedings:     99%

    d.   State the number of cases in courts of record, including cases before administrative law judges, you tried to verdict, judgment or final decision (rather than settled), indicating whether you were sole counsel, chief counsel, or associate counsel.

        Out of 600 total cases, I was sole counsel in 575; in 15 cases I was chief counsel and in 10 cases I was associate counsel. Most of the non-jury trials were in 1980-1981 when I was a prosecutor assigned to misdemeanor court and tried about 5 non-jury trials per day.

        i.  What percentage of these trials were:
- 1. jury:        17%
- 2. non-jury:    83%

    e.   Describe your practice, if any, before the Supreme Court of the United States. Supply four (4) copies of any briefs, amicus or otherwise, and, if applicable, any oral argument transcripts before the Supreme Court in connection with your practice.

        I have never practiced before the Supreme Court of the United States.

17. **Litigation**: Describe the ten (10) most significant litigated matters which you personally handled, whether or not you were the attorney of record. Give the citations, if the cases were reported, and the docket number and date if unreported. Give a capsule summary of the substance of each case. Identify the party or parties whom you represented; describe in detail the nature of your participation in the litigation and the final disposition of the case. Also state as to each case:

    a.   the date of representation;

    b.   the name of the court and the name of the judge or judges before whom the case was litigated; and

    c.   the individual name, addresses, and telephone numbers of co-counsel and of principal counsel for each of the other parties.

1. *State v. Johnson*, F82-22512; 455 So. 2d 1039 (Fla. 3rd DCA 1984).

I prosecuted the Defendant for the first degree murder of his wife, who had been bludgeoned to death with a hammer. There were no eyewitnesses to the crime, and the Defendant tried to make it appear as if his wife had been killed by a burglar. After a two-week trial, the jury took less than one hour to convict the Defendant as charged. The jury subsequently recommended a sentence of death. The trial judge, however, overrode the jury's recommendation and imposed a life sentence. The Defendant's conviction and sentence were affirmed by the Third District Court of Appeal.

47

Judge Morton Perry presided over the trial in the 11th Judicial Circuit Court of Florida in January 1983. I was the Assistant State Attorney representing the State with co-counsel John M. Hogan, now at Holland & Knight, 701 Brickell Avenue, Miami, Florida 33131; telephone (305) 789-7693. The Defendant was represented by Arthur Carter, who is no longer practicing law.

2. *State v. Mack*, F82-17735A; 461 So. 2d 142 (Fla. 3d DCA 1984), *rev. denied*, 471 So. 2d 43 (Fla. 1985).

This Defendant was charged with first degree murder, armed robbery and possession of a firearm by a convicted felon for an incident during which he shot and killed Metro-Dade Police Officer Cheryl Seiden. The possession of a firearm by a convicted felon count was severed from the other charges and the Defendant was tried by another prosecutor and convicted of the murder and robbery. I was then assigned to try the remaining count of possession of a firearm by a convicted felon. The Defendant was convicted after a jury trial.

Judge Thomas Carney presided over the trial in the 11th Judicial Circuit Court of Florida in June 1983. I was the sole prosecutor on behalf of the State. The Defendant was represented by Joel Hirschhorn, 550 Biltmore Way, PH 3A, Coral Gables, Florida 33134; telephone (305) 445-5320.

3. *State v. Snook*, F83-15647; 478 So. 2d 403 (Fla.3d DCA 1985), *cause dismissed*, 487 So. 2d 297 (Fla. 1986).

In this case, the Defendant, a teen-age adult, brutally beat his grandmother to death when she caught him burglarizing her apartment to steal money for drugs. The Defendant presented an insanity defense claiming that he suffered from a drug-induced psychosis due to his ingestion of LSD, marijuana and alcohol. The Defendant was convicted of first degree murder and sentenced to life in prison without eligibility for parole for 25 years.

Judge Sidney Shapiro presided over the trial in the 11th Judicial Circuit Court of Florida in February 1984. I was co-counsel with then-Assistant State Attorney John Kastrenakes, now a Circuit Court Judge in Palm Beach. Main Judicial Complex, 205 North Dixie Highway, West Palm Beach, Florida 33401; telephone (561) 355-7875. The Defendant was represented by Joel Robrish, 848 Brickell Avenue, Suite 800, Miami, Florida 33131; telephone (305) 373-5150.

4. *State v. Rojas*, F83-18500; 469 So. 2d 849 (Fla. 3d DCA 1985).

This Defendant killed the victim in an act of vigilante justice. The victim attempted to shoot the Defendant at point blank range but the gun mis-fired. The Defendant left the scene and, instead of calling the police, obtained a gun, returned to the scene and shot and killed the victim. The jury convicted the Defendant of first degree murder at the trial.

48

Judge Howard Gross presided over the trial in the 11th Judicial Circuit Court of Florida in April 1984. I was the sole prosecutor in the case. The Defendant was represented by Nathaniel Barone, P.O. Box 551806, Fort Lauderdale, Florida 33301; telephone (305) 458-8541.

5. *State v. Diaz*, F83-1891-B; 513 So. 2d 1045 (Fla. 1987), *cert. denied*, 484 U.S. 1079 (1988).

The Defendant was charged with first degree murder arising from an armed robbery at a bar. The Defendant fired several shots to "round up" the customers, then shot and killed the manager. The Defendant had previous convictions for robbery and murder. After the trial, the Defendant was convicted and sentenced to death. The Florida Supreme Court affirmed the conviction and sentence. The Defendant was executed by lethal injection in 2006.

Judge Amy Steele Donner presided over the trial in the 11th Judicial Circuit Court of Florida in October 1986. I was the Assistant State Attorney representing the State of Florida, with co-counsel John Kastrenakes who is now a Circuit Court Judge in Palm Beach. Main Judicial Complex, 205 North Dixie Highway, West Palm Beach, Florida 33401; telephone (561) 355-7875. The Defendant was *pro se*, with stand-by counsel Robert Lamons, 4160 West 16th Avenue, Suite 404, Hialeah, Florida 33012; telephone (305) 826-8171.

6. *United States v. BCCI*, 88-330-CR-T-13-B, *aff'd in part, rev'd in part sub nom. U.S. v. Awan*, 966 F.2d 1415 (11th Cir. 1992).

In this seven-month-long trial, the Defendants were charged with money laundering and conducting a cocaine importation conspiracy. The central Defendants in the case were *Banco de Credito Commercial International* (BCCI) and 5 of its officers. The arrests of the Defendants were the culmination of a two and one half year undercover operation involving the laundering of millions of dollars of narcotics proceeds. The Defendants were acquitted of the drug conspiracy charge but were convicted of money laundering.

United States District Court Judge W. Terrell Hodges presided over this trial in the United States District Court for the Middle District of Florida from January 1990 through July 1990. I was sole counsel for Defendant Armbrecht. The government was represented by then-AUSA Mark Jackowski, 600 Superior Avenue East, Suite 2100, Cleveland, Ohio 44114; telephone (216) 348-5788, and AUSA Michael Rubenstein, 400 North Tampa Street, Tampa, Florida 33634; telephone (813) 274-6000. The co-Defendants were represented by attorneys: James Jay Hogan, 2400 South Dixie Highway, Miami, Florida 33130; telephone (305) 854-8989; Bennie Lazzara, 1 North Dale Mabry Highway, Tampa, Florida 33609; telephone (813) 873-0026; John Hume, 607 14th Street NW, Washington, DC 20005; telephone (202) 628-6600; Gary Trombley, 707 North Franklin Street, Tampa, Florida 33634; telephone (813) 229-7918; and Pat Doherty, P.O. Box 2354, Sylva, North Carolina 28779; telephone (828) 586-0142.

7. *United States v. Gonzalez*, 89-698-Cr-Kehoe.

The Defendant was charged with conspiracy to possess cocaine and possession of cocaine. The government alleged that her husband and another man had traveled to the Bahamas on the husband's vessel. Federal agents had received a tip that the vessel would be returning to the United States with cocaine. Agents claimed the Defendant was conducting counter-surveillance at the marina. The first trial resulted in a hung jury. During the second trial, the agent recanted his testimony and admitted he was mistaken about the "counter-surveillance" my client allegedly conducted, and she was acquitted.

United States District Court Judge James Kehoe presided over the two trials in September 1990 and October 1990. I was sole counsel for Defendant Gonzalez. The government was represented by then-AUSA Guy Lewis, The Offices at Cocowalk, Grand Avenue, Suite 340, Coconut Grove, Florida 33133; telephone (305) 442-1101.

8. *United States v. Gonzalez*, 89-712-Cr-Davis, 21 F.3d 1045 (11th Cir. 1994).

The Defendant was a police officer with the Metro-Dade Police department who, over the course of approximately eight years, was involved in numerous rip-offs of drug dealers. He and his partner stole millions of dollars of drugs and money from persons they arrested or investigated. The Defendant was convicted after a jury trial and sentenced to 20 years in prison. His sentence was later reduced to 11 years after he cooperated with the government in other investigations.

United States District Court Judge Edward Davis presided over the trial in the Southern District of Florida in January 1991. I was the sole trial counsel for Defendant Gonzalez. The government was represented by AUSA Richard Scruggs, 1350 NW Twelfth Avenue Miami, Florida 33128; telephone (305) 547-0100, and Donna Bucella, U.S. Customs and Border Patrol, 1300 Pennsylvania Avenue NW, Washington, DC 20005; telephone (202) 334-1150. The co-Defendants were represented by: Jose Quinon, 2333 Brickell Avenue, Suite A-1, Miami, Florida 33130; telephone (305) 858-5700; Albert Levin, 261 NE First Street, 6th Floor, Miami, Florida 33132; telephone (305) 379-7101; and Paul Finizio, 106 SE Ninth Street, Fort Lauderdale, Florida 33304; telephone (954) 767-6000.

9. *United States v. Abel*, 91-413-Cr-Moore; *United States v. Cerceda*, 172 F.3d 806 (11th Cir. 1999) (*en banc*) (*per curiam*), *cert. denied sub nom. De la Mata v. U.S.*, 120 S. Ct. 444 (2000).

Defendant was indicted for a massive cocaine importation conspiracy involving eight separate shipments of drugs totaling over 3,000 kilograms of cocaine, and was convicted following a month-long jury trial. After I became a judge, Abel was sentenced by a successor judge to 20 years in federal prison.

United States District Court Judge K. Michael Moore presided over the trial in the Southern District of Florida in January 1994 and Chief Judge William O'Kelley of the Northern District of Georgia presided over the post-trial motions in March 1995 after the

50

judges of the Southern District recused themselves.  I was sole trial counsel for the lead Defendant Abel.  However, attorneys Jose Quinon, 2333 Brickell Avenue, Suite A-1, Miami, Florida 33130, telephone (305) 858-5700, and G. Richard Strafer, 201 South Biscayne Boulevard, Suite 1380 Miami, Florida 33131, telephone (305) 374-9091, assisted me in preparing both the pre-trial motions and for trial.  The government was represented by AUSA Karen Rochlin, 99 NE Fourth Street, Miami, Florida 33132; telephone (305) 961-9000.  The co-Defendants were represented by:  Edward Shohat, 800 Brickell Avenue, Miami, Florida 33131; telephone (305) 358-7000;  Joel Kaplan, 100 Biscayne Boulevard, Miami, Florida 33131; telephone (305) 374-2111;  G.P. Della Ferra, 10800 Biscayne Boulevard, Miami, Florida 33161; telephone (305) 892-6869;  Frank Quintero, 2100 Ponce de Leon Boulevard, Suite 1180, Coral Gables, Florida 33134; telephone (305) 446-0303; Robert Becerra, 1001 Brickell Bay Drive, Suite 2002, Miami, Florida 33131; telephone (305) 350-5690; and  Julio Gutierrez, 2464 SW 137th Avenue, Miami, Florida 33175; telephone (305) 325-8600.

10. *State v. Hernandez*, F94-2024C (Brown).

The Defendant was charged with assisting two co-Defendants in selling crack cocaine to an undercover police officer.  I was appointed as a Specially Appointed Public Defender to represent the Defendant, who was a 16-time convicted felon.  The Defendant – with his 16 convictions brought to the attention of the jury – testified and was acquitted.  This case was significant because it demonstrated that even a person with a horrendous criminal record can be wrongfully accused and is entitled to competent representation and the ability to prepare and present a defense.

Judge Joel Brown presided over this trial in the 11th Judicial Circuit Court in October 1994.  I was the sole defense counsel appointed as a Specially Appointed Public Defender.  The prosecutor in the case was Leslie Quezaire, 201 NW Seventh Street, #207, Miami, Florida 33136; telephone (305) 788-8594.

18. **Legal Activities**:  Describe the most significant legal activities you have pursued, including significant litigation which did not progress to trial or legal matters that did not involve litigation.  Describe fully the nature of your participation in these activities.  List any client(s) or organization(s) for whom you performed lobbying activities and describe the lobbying activities you performed on behalf of such client(s) or organizations(s). (Note: As to any facts requested in this question, please omit any information protected by the attorney-client privilege.)

I have not performed lobbying activities on behalf of any client or organizations.

I have been active with Florida Bar committees as both an attorney and a judge.  From 1993 to 1995, I served on a Florida Bar Grievance Committee which investigated allegations of misconduct by attorneys.  I served as the Chairperson from 1994 to 1995.

Once I was appointed to the bench, I served on the Florida Criminal Rules of Procedure Committee from 1999 to 2002 and on the Family Rules Committee from 2004 to 2006.

I was an active member of the Florida Association of Criminal Defense Lawyers – Miami Chapter from 1987 to 1995 and served on the Board of Directors from 1990 to 1995. I served as the President from 1994 to 1995.

Since my appointment to the bench, most of my legal activities have involved legal education to judges and attorneys. I have taught courses at the Florida College of Advanced Judicial Studies from 1997 through 2009 and served as the Department Head for Criminal Courses in 1999. I have also been a member of the Florida Conference of Circuit Court Judges Education Committee from 1997 to 2007 and served as Vice-Chairman from 2006 to 2007. I have also taught a number of courses at Circuit Court Conferences.

I have also participated as a member of the First Family Law American Inn of Court during the years I have served as a judge in the Family Division (2001 to 2005 and 2009 to present).

From 2000 to 2002, I served on the Eleventh Judicial Circuit Rotation of Judges Committee. The committee was comprised of judges whose task was to determine whether a formal rotation plan for the 11th circuit should be implemented and, if so, to devise such a plan. The assignment of judges within the divisions of the circuit had previously been made based solely on seniority. As a result of many judges having commenced their judicial careers at an early age, many positions in the civil division were "locked up" for potentially more than 20 years and it was taking judges over 10 years to be able to be assigned to the civil division. A survey of the 20 circuits in Florida revealed that only Broward and Miami-Dade made assignments based almost exclusively on seniority. The other circuits had formal or informal plans which allowed for movement by the judges among the different divisions. Our committee adopted a formal rotation plan which was implemented by Chief Judge Joseph Farina in 2003 and has been followed by his successor, Chief Judge Joel Brown.

19. **Teaching**: What courses have you taught? For each course, state the title, the institution at which you taught the course, the years in which you taught the course, and describe briefly the subject matter of the course and the major topics taught. If you have a syllabus of each course, provide four (4) copies to the committee.

I have taught as an Adjunct Professor in the University of Miami School of Law Litigation Skills Program every semester since 1994. This is a trial skills program in which the students perform different parts of a trial and are critiqued by adjunct professors. There is no lecturing by the adjunct professors.

Since 2007, I have been in charge of the Florida International University Judicial Externship Program during each summer. Approximately 16 students are assigned to work with a judge for 30 hours per week for 10 weeks. There is also a two-hour per week classroom component that I conduct. We utilize a textbook, Cochran, *JUDICIAL*

*EXTERNSHIPS: The Clinic Inside the Courthouse*, 3rd Edition.  A copy of the syllabus for the class is supplied.

20. **Deferred Income/ Future Benefits**:  List the sources, amounts and dates of all anticipated receipts from deferred income arrangements, stock, options, uncompleted contracts and other future benefits which you expect to derive from previous business relationships, professional services, firm memberships, former employers, clients or customers.  Describe the arrangements you have made to be compensated in the future for any financial or business interest.

I have no anticipated receipts from deferred income arrangements, stock, options, uncompleted contracts and other future benefits from previous business relationships, professional services, firm memberships, former employers, clients or customers and there are no arrangements for being compensated in the future for any financial or business interest.

21. **Outside Commitments During Court Service**: Do you have any plans, commitments, or agreements to pursue outside employment, with or without compensation, during your service with the court? If so, explain.

The only outside employment I would like to pursue if I am fortunate enough to be confirmed is to continue to teach at the University of Miami Law School and at Florida International University College of Law.

22. **Sources of Income**:  List sources and amounts of all income received during the calendar year preceding your nomination and for the current calendar year, including all salaries, fees, dividends, interest, gifts, rents, royalties, licensing fees, honoraria, and other items exceeding $500 or more (if you prefer to do so, copies of the financial disclosure report, required by the Ethics in Government Act of 1978, may be substituted here).

See attached Financial Disclosure Report.

23. **Statement of Net Worth**:  Please complete the attached financial net worth statement in detail (add schedules as called for).

See attached Net Worth Statement.

24. **Potential Conflicts of Interest**:

   a.  Identify the family members or other persons, parties, categories of litigation, and financial arrangements that are likely to present potential conflicts-of-interest when you first assume the position to which you have been nominated.  Explain how you would address any such conflict if it were to arise.

   My wife, Jacqueline Hogan Scola, is a State of Florida Circuit Court Judge in the criminal division.  There is a possibility that a defendant from a case over which

53

she had presided could file a 2254 petition and the matter could be assigned to me. Were such an event to occur, I would *sua sponte* recuse myself from the case.

My wife also worked in the United States Attorney's Office for the Southern District of Florida from 1995 to 2002. If a defendant who was prosecuted by her files a 2255 petition there is a slight chance the matter would be assigned to me. Were such an event to occur, I would *sua sponte* recuse myself from the case.

I am not aware of any other situations that are likely to present potential conflicts of interest when I first assume the bench.

b. Explain how you will resolve any potential conflict of interest, including the procedure you will follow in determining these areas of concern.

I will follow all applicable provisions of the Canons of Judicial Ethics and existing case law and if there is any conflict of interest or appearance of a conflict of interest, I will recuse myself from the case.

25. **Pro Bono Work**: An ethical consideration under Canon 2 of the American Bar Association's Code of Professional Responsibility calls for "every lawyer, regardless of professional prominence or professional workload, to find some time to participate in serving the disadvantaged." Describe what you have done to fulfill these responsibilities, listing specific instances and the amount of time devoted to each.

During my 16 years on the bench, I have been prohibited by the Florida Canons of Judicial Conduct from handling cases on behalf of any clients, including the disadvantaged. I have participated in the Court's Put Something Back Pro Bono Project by lecturing to attorneys who receive free credit hours of legal education in exchange for taking a pro bono case from the courts. I have also organized a Judges' Habitat for Humanity outing to help build a home.

26. **Selection Process**:

a. Please describe your experience in the entire judicial selection process, from beginning to end (including the circumstances which led to your nomination and the interviews in which you participated). Is there a selection commission in your jurisdiction to recommend candidates for nomination to the federal courts? If so, please include that process in your description, as well as whether the commission recommended your nomination. List the dates of all interviews or communications you had with the White House staff or the Justice Department regarding this nomination. Do not include any contacts with Federal Bureau of Investigation personnel concerning your nomination.

In Florida, the senators utilize a nominating commission. The Florida Federal Nominating Commission was put together by Senators Bill Nelson and Mel

54

Martinez. The commission is comprised of members selected by both Senator Nelson (2/3 of the members) and Senator Martinez (1/3 of the members). When Senator George Lemieux was appointed to replace Senator Martinez, he did not replace any of the members selected by Senator Martinez.

I submitted an application to the Florida Federal Judicial Nomination Commission in October 2010 and was interviewed by the Commission on November 30, 2010. I was selected by the Commission, along with Judge Jerald Bagley and Federal Magistrate Judge John O'Sullivan, on that same date. The Commission does not recommend one candidate and does not rank the candidates. On December 11, 2010, I interviewed with Senators Nelson and Lemieux in Miami.

Since February 11, 2011, I have been in contact with pre-nomination officials from the Department of Justice. On March 18, 2011, I met with representatives from the White House Counsel's Office and the Department of Justice in Washington, DC. On May 4, 2011, the President submitted my nomination to the Senate.

b. Has anyone involved in the process of selecting you as a judicial nominee discussed with you any currently pending or specific case, legal issue or question in a manner that could reasonably be interpreted as seeking any express or implied assurances concerning your position on such case, issue, or question? If so, explain fully.

No.

AFFIDAVIT

I, Robert N. Scola, Jr., do swear that the information provided in this statement is, to the best of my knowledge, true and accurate.

May 2, 2011
(DATE)

_____
(NAME)

ROBERT N. SCOLA, JR.

_____
(NOTARY)

Notary Public State of Florida
Ileana Perez
My Commission EE047642
Expires 12/08/2014