**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-80700-CV-SCOLA**
**(Case No. 06-80171-Cr-Hurley (s)(s)(s))**

**DANIEL TROYA,**
        **Petitioner,**

**vs.**

**UNITED STATES OF AMERICA,**
        **Respondent.**

_____/

**GOVERNMENT RESPONSE IN OPPOSITION TO TROYA'S MOTION TO REASSIGN**
**CASE PURSUANT TO 28 U.S.C. § 455(a)**

COMES NOW, the United States of America, by and through its undersigned Assistant United States Attorney, and hereby submits its response in opposition to Troya's Motion to Reassign. In his motion, Troya argues that United States District Court Judge Scola should be disqualified and recused from further proceedings in this matter pursuant to 28 U.S.C. § 455(a). Troya alleges that Judge Scola had worked, some thirty years ago, with Judge John S. Kastrenakes[1], a former AUSA who tried but is no longer associated with this case, when they were both state prosecutors in the Dade County State Attorney's office.  Section 455(a) requires no such result.

Section 455(a) provides, in relevant part, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned".   This is an objective standard, judged from the perspective of a reasonable person who is "aware of all the surrounding facts and circumstances." *Cheney v. United States District*

---

[1] Former AUSA John S. Kastrenakes was appointed to the Palm Beach County Circuit Court in 2009 by then Governor Charlie Crist.  *See* http://15thcircuit.co.palm-beach.fl.us/web/judge-kastrenakes/bio

*Court for the District of Columbia*, 541 U.S. 913, 924 (2004).  Furthermore, a "motion to change judges is properly denied when it is 'essentially a 'judge shopping' attempt' to have a case reassigned to another judge 'in the hopes of obtaining a more favorable result.'" *United States v. Williams*, 624 F.3d 889, 894 (8th Cir. 2010) (citing *United States v. Urben-Potratz*, 470 F.3d 740, 745 (8th Cir.2006); *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 839 F.2d 1296, 1302 (8th Cir.1988) (28 U.S.C. § 455(a), the federal recusal statute, emphatically "does not provide a vehicle for parties to shop among judges")).   As stated in *United States v. Siegelman,* 640 F.3d 1149, 1188 (2011), "a motion for recusal based upon the appearance of partiality must be timely made when the facts upon which it relies are known. The untimeliness of such a motion is itself a basis upon which to deny it." *Id. (citing  Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1472 (11th Cir.1986)). The rule has been applied when the facts upon which the motion relies are public knowledge, even if the movant does not know them. *See National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 957–59 (2d Cir.1978); *Lans v. Stuckey*, 203 Fed. Appx. 956 (11th Cir. 2006 movant failed to move for recusal until after adverse order entered when underlying facts had been known to litigant much earlier).  The purpose of the rule is to "conserve judicial resources and prevent a litigant from waiting until an adverse decision has been handed down before moving to disqualify the judge." *Summers v. Singletary,* 119 F.3d 917, 921 (11th Cir.1997).  Applying the objective standard called for by 28 U.S.C. § 455, no "reasonable and informed observer" would question Judge Scola's impartiality in this matter.  Troya's motion is neither well-grounded in fact nor timely in spirit and should be denied on its merits.

Prior to his confirmation to the federal bench, Judge Scola submitted, under oath, a fifty-six page, single-spaced questionnaire to the United States Committee on the Judiciary.  From this questionnaire, spanning the time period 1980-2011, Troya has cited to just two cases which Judge

Scola and Judge Kastrenakes tried together more than thirty years ago, *State of Florida v. Snook* and *State of Florida v. Diaz,* for the premise that Judge Scola cannot be impartial in this matter. *See* CV-DE 64-2 at pp. 48-49.  Troya cites this questionnaire as the sole basis for the historical relationship that supposedly disqualifies the Court.   Troya's sole argument appears to be that Judge Scola cannot be impartial because of his prior close professional relationship with now Judge John S. Kastrenakes on those two prior old cases.

The question to be answered herein is whether this professional contact thirty years ago between the judge and one of the prosecutors who tried, but is no longer associated with, this case would cause the court's impartiality to be questioned by a well-informed, reasonably objective third party.   On the proffered basis, the United States submits that reassignment is not mandated for the reason that no reasonable observer would question Judge Scola's impartiality in 2016 or 2017.  Furthermore, the timing of the instant motion is suspect.

The connection between Judge Scola and Judge Kastrenakes in 1985 and 1986 has been a matter of public record since at least 2011, when Judge Scola submitted his questionnaire.   The facts underlying the instant motion have been known to Troya since the case was initially assigned to Judge Scola on May 13, 2016 (CIV-DE 16), yet no motion to reassign was filed until the Court entered an order dismissing some of Troya's claims, and later declined to reconsider said order. (*Compare* CIV-DE 40 Order Dismissing Claims entered October 18, 2016, *and* Order Denying Motion to Reconsider, CIV-DE 60 entered December 2, 2016 *with* Motion to Reassign, CIV-DE 64, filed December 9, 2016).  The Court should not countenance such a blatant attempt at forum shopping.

Although the United States is not arguing that the motion to reassign is procedurally barred as untimely, the timing of the motion is suspect and smacks of disingenuousness.  A recusal issue

may not be abused as an element of trial strategy.  *See Phillips* 799 F.2d at 1472 (party may not lie in wait, knowing facts supporting a section 455(a) claim, and raise issue only after court's ruling on merits).  In *Phillips,* the party moving for recusal knew of the facts underlying the motion for recusal for some five or six months before moving for recusal, and then only acted to recuse once the Court had taken unfavorable action against it.  The Eleventh Circuit cited the timing of the motion as one factor upholding their decision that the District Judge did not abuse his discretion in refusing to recuse himself.  *See Phillips*, 799 F.2d at 1472-73.  Such a calculated and factually-baseless strategy should not be rewarded in this case.

As acknowledged in Troya's motion, friendships and acquaintances between lawyers and judges are common and such relationships do not warrant recusal.  CIV DE 64 at 4 (*citing United States v. Murphy*, 768 F.2d 1518, 1537(7th Cir. 1985)).  To overcome this hurdle, Troya has alleged that former AUSA Kastrenakes is a key government witness whose credibility will have to be judged by the Court.   Troya alleges that Kastrenakes is a key witness as to two of his remaining issues, Issue XXV, in which Troya alleges that his lawyer was ineffective in his handling of the mental health evidence, and Issue XVIII, in which Troya alleged that the government withheld a government expert's report concerning Troya's brain damage.  CIV-DE 64 at p. 6.  Kastrenakes is not a key witness.  In fact, at this time, the Government has no intention of calling Judge Kastrenakes as a witness.

Troya's issue XXV concerns the conduct of trial counsel James Eisenberg, and his alleged ineffectiveness in not presenting mental health evidence about Troya during the penalty phase of the trial.  The heart of those allegations properly focus on Eisenberg's effectiveness, and his credibility and actions, not those of the prosecution team.  It is hard to imagine how former AUSA

4

Kastrenakes would be a key witness with regard to the ineffectiveness of Troya's trial counsel. Indeed, Troya makes no specific allegations concerning Kastrenakes's testimony in this area.

The bulk of Troya's motion concerns potential testimony from Judge Kastrenakes regarding Issue XVIII, and the alleged creation and suppression of a government expert report interpreting a PET scan of Troya's brain. The PET scan had been ordered by Dr. Wu, a defense expert. In anticipation of Dr. Wu's testimony, the government contacted its own expert and asked for the original PET scan so that the government expert could form his/her own opinion. Although an expert was contacted, the United States never retained the expert by contract because it never received the original PET scan. There is no need for testimony on this issue as it is clearly contained in the record below. During a status hearing on March 10, 2009, prior to commencement of the penalty-phase of the trial, the following discussion ensued, often-described but never quoted:

> MR. KASTRENAKES:      Your Honor, I forgot to mention one thing.  Mr. Eisenberg has been communicating back and forth by e-mail.  There was a Dr. Wu, W-U, who administered a PET Scan, P-E-T scan of Mr. Troya. He, Mr. Eisenberg, said he is not calling Dr. Wu.
>
> However, it is up in the air as far as I am concerned. I don't know whether these other doctors are going to refer to the PET Scan.   If they don't, I don't need filing.      If they do, then I need it.     And I have retained a neuro psychiatrist who is very familiar with PET Scans.  I need the original PET Scan to be able to supply to him for possible rebuttal testimony. I told Mr. Eisenberg that. He sent us a color copy of an e-mail which   doesn't cut it as far as the doctor's ability to review the raw data.     That would be the extent of what I have for Mr. Troya.
>
> THE COURT: Okay.
>
> MR. EISENBERG:    If I can respond in the order -- the opposite order, Dr. Wu.  Dr. Wu is a doctor out of California who did a PET Scan on Mr. Troya. We are not going to bring in Dr. Wu, we are not going to make this a feature of the case.
>
> THE COURT: Do you agree no other psychologist or any other expert will rely on it?
>
> MR. EISENBERG:    No.
>
> THE COURT: No, they will not, or you don't agree?
>
> MR. EISENBERG:    I don't agree.
>
> THE COURT: Then you need to produce the PET Scan.     How do we do that?

MR. EISENBERG:    Let me tell you what I produced.

THE COURT: No.    Is any other expert you recall going to rely on the PET Scan?

MR. EISENBERG:    Yes.

THE COURT: Then you need to produce the PET Scan.  How do we do that?

MR. EISENBERG:    I thought I did that.    The exact information provided to the other experts, exact same information --

THE COURT: No.    You need to give them what they need.  They need the original.  How do we get that?

MR. EISENBERG:    I have to call Dr. Wu if the Court wants me to get the original.  I want The Court to know the exact same information provided to my expert has been provided to theirs.  If The Court wants the original, I will call Dr. Wu and have him do it.

. . .

MR. EISENBERG:    All right.  If they can – I was going to suggest that gentleman call Dr. Wu.  I have given them his telephone number in California.

THE COURT: It is your obligation to provide it.

MR. EISENBERG:    I will do that this afternoon.

[CR-DE 795 at pp. 7775-77].

Troya asserts that "[w]hat happened next is a matter of dispute" [CIV-DE 64 at p. 6]. There is no dispute.   It is the government's position, substantiated by Troya's own evidence, that Mr. Eisenberg never provided the government with the original PET scan and therefore no government expert was able to review the PET scan or prepare a report analyzing this PET scan.  Indeed, Troya has made no showing that the original PET scan was provided to the government even though he bears the burden of proof.   Troya's lawyers—unlike the government[2]-- have the ability to speak with Eisenberg and access his files for documentary proof. Yet despite this ability and access, there has been no showing or allegation—through documentary evidence or affidavit—that subsequent

---

[2] The government has been hamstrung in its ability to demonstrate that this issue has no basis in fact.  Prior to filing its substantive response to the allegations raised in Troya's petition, government counsel attempted to contact all trial counsel to discuss allegations raised in the 2255 petition. All trial counsel declined to speak with the prosecuting attorney unless there was a court order in place holding that the attorney-client privilege had been waived.  Thereafter the United States filed a motion seeking an order waiving the attorney-client privilege, but the motion was denied.  [CV-DEs 30, 31] The United State has no ability to find out what Eisenberg did on this issue.

to the March 10 hearing Mr. Eisenberg subsequently obtained the original PET scan image from

Dr. Wu and provided it to the government.  In fact, Troya's own filings counter his claims.    In

his unsworn statement, filed by Troya as exhibit CIV-DE 5-21, Dr. Joseph Wu states:

> I was contacted to perform PET scan of Daniel Troya to the best of my recollection and records approximately May 2008. I flew out to supervise the PET scan in July, 2008. I wrote an initial report in September, 2008 in which I described the metabolic abnormalities in the brain PET scan of Daniel Troya and recommended clinical correlation. I indicated that clinical records could be forwarded to me for further differential diagnostic consideration and citation of relevant literature. *I have no records indicating that there was any further contact from the defense attorneys for Mr. Troya regarding the abnormal PET scan report* and no correspondence requesting clinical correlation as recommended and no clinical records forwarded for review. *I was never contacted regarding the possibility of trial testimony and no records of any discussions regarding the PET scan.*

CIV-DE 5-21 (emphasis added).  Dr. Wu's own statement indicates that he had no further contact

with Eisenberg after the initial evaluation.  This contact would have been a necessary step in

providing the original PET scan to the government.  If the original PET scan was not delivered

there was nothing to show to a government neuropsychiatrist, and no government report analyzing

the PET scan could have been generated.  The allegations about the government not turning over

a non-existent report are made up out of whole cloth.  Troya's counsel have known this all along,

as Dr. Wu's statement was included with the original 2255 filing in May 2016.

In this proceeding there has been no allegation or showing that Eisenberg in fact complied

and delivered the original PET scan to the government.  Absent such a showing on the record,

which clearly is within Troya's present power to procure, given the very limited allegations made,

Kastrenakes's participation is not required; there is no need for the Government to call Judge

Kastrenakes as a rebuttal witness or for the Court to judge his credibility.   Neither Kastenakes nor

any other government actor ever represented to the court or to counsel that the original PET scan

had been provided to a government expert neuropsychiatrist, or that any government expert authored an opinion based on their review of this PET scan. There is no factual dispute, and nothing to discover; the entire issue of the PET scan evidence evaporated when Eisenberg failed to get the original PET scan and provide it to the government. Dr. Wu's statement confirms this indisputable fact.

The United States asserts that there is no basis for recusal in this matter. Friendships and professional acquaintances among lawyers and judges are not uncommon and do not, in and of themselves, warrant recusal. This is especially true where the allegation of lack of impartiality rests only on the two cases cited in Troya's motion. While recusal may be warranted where a judge's friend is testifying as to a key matter, that is not the case here. Professional relationships notwithstanding, Judge Scola's entire legal career has been in Miami, Dade County, while Judge Kastrenakes has been in Palm Beach County, more than sixty miles north, for more than twenty years. Furthermore, Troya's claims concerning the necessity of Kastrenakes's testimony as a Government rebuttal witness do not stand up to scrutiny and are, in fact, disputed and rendered moot by Troya's own filings and failure to meet his burden of proof. Simply put, Troya's inability to meet his burden of proof means that there will likely be no evidentiary hearing on this matter and, even if a hearing is held, the Government does not believe, at this time, that Judge Kastrenakes's testimony would be required. This entire motion to reassign is a thinly-veiled effort to get a new judge assigned to this matter after counsel have decided they are dissatisfied

with the Court's orders to date.   For all the foregoing reasons, the Government respectfully

requests that the instant motion be denied.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:   */s Stephen Carlton*
STEPHEN CARLTON
ASSISTANT UNITED STATES ATTORNEY
500 S. Australian Ave., Suite 400
West Palm Beach, Florida 33401-6235
Admin. No. A5500011
Tel. (561) 209-1053
Telefax (561) 659-4526
E-mail: Stephen.Carlton@USDOJ.GOV
*Attorney for the United States*

9

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 10, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/  Stephen Carlton
    Stephen Carlton
    Assistant United States Attorney

## SERVICE LIST

**Daniel Troya v. United States**
**Case No. 16-80700-CV-SCOLA**
**United States District Court, Southern District of Florida**

**Stephen Carlton**
**Brandy Galler**
**Stephanie Evans**
Assistant U.S. Attorneys
Stephen.Carlton@usdoj.gov
Brandy.Galler@usdoj.gov
Stephanie.D.Evans@usdoj.gov
U.S. Attorney's Office
500 S. Australian Ave, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 820-8711
Facsimile: (561) 659-4526
Attorneys for United States
[Service via CM/ECF]

**Donald Todd Doss**
201 S. Orange Avenue
Suite 300
Orlando, FL 32801
todd_doss@fd.org
Attorney for Plaintiff
[Service via CM/ECF]

**Steven Holt Malone**
1217 South Flagler Drive
Second Floor, Flagler Plaza
West Palm Beach, FL  33401
stevenhmalone@bellsouth.net
Attorney for Plaintiff
[Service via CM/ECF]