UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


**DANIEL A. TROYA,**
**Movant**

**v.**                                              **CASE NO. 16-80700-Civ-BLOOM**

**UNITED STATES OF AMERICA,**
**Respondent**

_____/

**MOVANT'S RESPONSE TO RESPONDENT'S MOTION FOR COURT TO ENTER AN**
**ORDER HOLDING THAT THE ATTORNEY-CLIENT PRIVILEGE HAS BEEN**
**WAIVED**

Pursuant to this Court's order of February 21, 2017 (Doc. 88), the movant Daniel Troya

responds to the government's motion for the Court to enter an order holding the attorney-client

privilege waived as follows:

**I.      Introduction.**

The Government argues that Mr. Troya has waived the attorney-client privilege by

putting his prior counsel's performance at issue in his §2255 motion, and therefore it should be

allowed to interview prior counsel about Mr. Troya's case and obtain their files. The

Government's motion should be denied because it improperly attempts to bypass established

discovery procedures, as well as the process by which the contours of implied waivers of the

privilege are judicially determined.

First, the Government's motion is simply a motion for discovery in disguise. Motions for

discovery must comply with Rule 6 of the Rules Governing §2255 Proceedings. The

Government cannot circumvent the requirements of Rule 6 – including making a fact-specific

demonstration of the materiality of the requested information and establish that the requisite

"good cause" standard has been met – by styling its discovery request as a motion for an order

1

concerning the attorney-client privilege. *See* Section II, *infra*. The law sets out an established procedure for adjudicating discovery requests in habeas proceedings, and the Government should not be allowed to bypass that procedure to obtain the discovery it seeks. Until the Government complies with Rule 6, its request for discovery is premature and should be denied.

Second, the Government attempts to bypass the process of narrowly tailoring the scope of any waiver to the specific allegations contained in the § 2255 motion. At the outset, the Government's motion conflates two distinct concepts: *express* and *implied* waivers. Although Mr. Troya acknowledges that the ineffective assistance of counsel claims in his § 2255 motion necessarily implicate the issue of an implied waiver, he has never expressly waived the attorney-client privilege, and this difference is material. As one court has explained,

> [W]aivers by implication differ materially from the more traditional express waivers. An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public. Disclosures that effect an express waiver are typically within the full control of the party holding the privilege; courts have no role in encouraging or forcing the disclosure--they merely recognize the waiver after it has occurred. Because these express waiver cases do not involve the court-ordered disclosure of privileged information after the client has asserted a claim or defense that placed at issue the nature of the privileged material, we do not find them particularly useful in ascertaining the scope of [a habeas petitioner's] waiver of his attorney-client privilege under the fairness principle.

> We look, instead, to the doctrine of implied waiver. The doctrine of implied waiver allocates control of the privilege between the judicial system and the party holding the privilege. The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it. Essentially, the court is striking a bargain with the holder of the privilege by letting him know how much of the privilege he must waive in order to proceed with his claim.

*Bittaker v. Woodford*, 331 F.3d 715, 719-20 (9th Cir. 2003) (internal quotation marks, footnotes, and string citations omitted).

Thus, an implied waiver does not result in an automatic forfeiture of the privilege, as the Government seems to suggest in its motion. Rather, when an implied waiver is asserted,

> Three important implications flow from this regime. The first is that the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it. Because a waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose. Courts, including ours, that have imposed waivers under the fairness principle have therefore closely tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question.
>
> Second, the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition.
>
> Finally, if a party complies with the court's conditions and turns over privileged materials, it is entitled to rely on the contours of the waiver the court imposes, so that it will not be unfairly surprised in the future by learning that it actually waived more than it bargained for in pressing its claims. It follows that the court imposing the waiver must be able to bind the party receiving the privileged materials to the court's limitations and conditions. The party receiving and using privileged materials pursuant to a court-imposed waiver implicitly agrees to the conditions of the waiver; if it does not wish to be bound, it is free to reject the materials and litigate without them, but it must do so before any disclosure is made.

*Bittaker*, 331 F.3d at 720-21 (internal quotation marks and citations omitted).

In other words, once an implied waiver has been asserted, it does not end the discussion about a habeas petitioner's ability to rely on the privilege; rather, it requires additional process so that the scope of any waiver can be adjudicated and narrowly tailored to the specific allegations in the § 2255 motion. *See* Section III, *infra*. Once again, the Government cannot simply bypass this process and ask for a blanket finding that the privilege has been waived; the Court must be given an opportunity to accurately determine and narrowly tailor the precise boundaries of any implied waiver. Moreover, even after the scope of any such waiver has been determined, the law requires judicial supervision of any release of otherwise privileged information so as to prevent

inadvertent exposure of privileged information that is not implicated by the § 2255 motion. *See* Section IV, *infra*.

The Government has attempted to bypass the established procedure for seeking discovery, the established procedure for identifying the scope of any implied waiver, and the established procedure for determining an appropriate judicially-supervised disclosure of privileged information. It should not be allowed to circumvent the law, and its motion should accordingly be denied.

**II.     The Government has failed to comply with the applicable rules of procedure governing § 2255 cases.**

The Government's motion to enter an order holding the attorney-client privilege is waived is a motion for discovery in disguise. It seeks an order directing trial and appellate counsel "to supply any and all documents, correspondence relating to issues raised in the separate 2255 petitions. The United States also seeks an order directing the same trial and appellate attorneys to meet with the United States at a reasonable time and place in to discuss the issues raised in the separate petitions...." Doc. 30 at 11[1] *See also*, Doc. 30 at p. 9: "The government also requests that the order direct defense counsel to provide all information to the United States that counsel believes is reasonably necessary to respond to the allegations of ineffectiveness, and to meet with counsel for the United States to enable the government to respond to the Sixth Amendment claims raised in each petition." Essentially, the Government seeks an order requiring trial and appellate counsel to disclose their files, and to meet with the

---

[1] However, in other parts of its motion, the Government limits its request to claims alleging ineffective assistance, seeking this Court's order that trial and appellate counsel: "supply any and all documents, correspondence and/or an affidavit regarding conversations and decisions made involving every issue alleged in the pending 2255 petition alleging ineffective assistance of counsel." Doc 30 at 5.

Government's counsel in an unsupervised setting to discuss Mr. Troya's case. The motion sets forth no specific requests or good cause for those requests, instead just listing the claims alleging the ineffectiveness of trial and appellate counsel. Doc. 30 at 2-5. The Government's motion should be denied.

Under Rule 6(a) of the Rules Governing § 2255 Proceedings, a party seeking discovery in § 2255 proceedings must establish "good cause" for its request. In *Bracy v. Gramley*, 520 U.S. 899 (1997), the Supreme Court discussed the contours of the Rule 6(a) "good cause" requirement,[2] holding any such requests must relate to "specific allegations" made by the moving party that, if supported, would entitle that party to relief. Here, the moving party is the Government, so the relevant question is whether the Government's discovery request is related to a sufficiently specific allegation that, if supported, would entitle the Government to "relief," *i.e.*, a dismissal of the § 2255 motion. *See* Order, *Fields v. USA*, No. 6:10-cv-00115-RAW (E.D. Okl. 3/29/12) (vacating prior order requiring disclosure of trial counsel's file; disclosure of such material must be made "by requests to the court pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings"); *Newman v. Gaetz*, No. 08 C 4240, 2010 U.S. Dist. LEXIS 117049. *4 (N.D. Ill. 11/2/10) (Rule 6 "good cause" standard governs discovery requests by respondent); *Lenart v. Warden*, No. 2:05-cv-1912 MCE CKD, 2013 U.S. Dist. LEXIS 115764 (E.D. Ca. 8/15/13) (same); *Wessinger v. Cain*, Civ. No. 04-637-JJB-SCR, 2009 U.S. Dist. LEXIS 2591 (M.D. La. 1/15/09) (same).

The Government's motion, however, makes no such specific allegations, nor does it explain with any particularity what it reasonably believes might be in the requested materials that

---

[2] Although *Bracy* involved discovery in a § 2254 proceeding, the Rule 6(a) "good cause" requirement is identical for both § 2254 and § 2255 proceedings.

would be responsive to the specific allegations of ineffective assistance raised in the § 2255 motion. At a minimum, the Government should be compelled to give some rationale -- with reference to the particular allegations raised in the § 2255 motion – that justifies the breadth and scope of its request. Rule 6(a) permits no party to cast such a wide net in the mere hope it might ultimately turn up something relevant and probative. Rather, the Government must narrowly tailor its discovery requests, referring to the specific allegations at issue in the proceeding, in order to satisfy the "good cause" standard. Absent a particularized showing as to why such expansive access to these materials is necessary for it to defend itself against the specific allegations raised in the § 2255 motion, or even what reason it has to believe that these materials contain any information that is responsive to the specific allegations contained in the § 2255 motion, the Government's request should be denied outright.  Even if a particularized showing is made, as discussed *infra*, questions will remain as to the extent to which privileged material must be disclosed.

A showing of "good cause" requires far more than the Government has alleged in support of its motion. "A district court has discretion to grant discovery in a habeas case upon a *fact-specific showing* of good cause under Rule 6." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) (emphasis added); *see also Wallace v. Ward*, 191 F.3d 1235, 1245 (10th Cir. 1999); *United States v. Moya-Breton*, 439 F. App'x 711, 716 (10th Cir. 2011) (applying same standard to section 2255 petitions).[3] "The burden of demonstrating the materiality of the information

---

[3] *Clark v. Johnson*, 202 F.3d 760, 767 (5th Cir. 2000) ("Discovery must relate solely to a specifically alleged factual dispute, not to a general allegation."); *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) ("Conclusory allegations are not enough to warrant discovery under Rule 6 of the Federal Rules Governing Section 2254 Petitions; the petitioner must set forth specific allegations of fact. Rule 6, which permits the district court to order discovery on good cause shown, does not authorize fishing expeditions."); *Braden v. Bagley*, No. 2:04-cv-842, 2007 WL 1026454, *2 (S.D. Ohio Mar. 30, 2007) ("In keeping with the well-settled principle that habeas

requested is on the moving party." *Stanford*, 266 F.3d at 460. Discovery will not be granted where the moving party's allegations are "general and conclusory" or "pure speculation." *Wallace*, 191 F.3d at 1245; *cf. Braden v. Bagley,* No. 2:04-cv-842, 2007 WL 1026454, *4 (S.D.Ohio Mar. 30, 2007) (granting discovery where "[t]he discovery he requests is specific, limited, and reasonably calculated to lead to evidence in support of his claim...").

Here, the Government has made no attempt to abide by the applicable rules of procedure. Its discovery request does not comply with Rule 6. The Government fails to specify the items it seeks in discovery, and has made no attempt to demonstrate its requests satisfy the requisite "good cause" standard. Until and unless the Government complies with Rule 6 and the applicable process for resolving whether there is "good cause" to order the disclosure of specific requested discovery materials, the Government's motion should not be entertained and its pending requests for broad-based disclosure of information should be denied.

This Court has already set a hearing for June 2, 2017, at which the Movant's discovery motion will be considered. Doc. 87. The Movant suggests this Court order the Government to file a motion setting forth with specificity the discovery it is seeking, permit the Movant to respond to the specific requests, and argue the motion at the June 2nd hearing.

### III.   By raising ineffective assistance of counsel claims, there has not been a blanket waiver of the attorney-client privilege.

The Government's motion asserts that by raising ineffective assistance of counsel claims, Mr. Troya has waived the attorney-client privilege entirely, and this Court has ordered counsel to "address whether the Movant acknowledges a waiver of attorney-client privilege as to privileged communications relevant to his pending claims of ineffective assistance of trial and appellate

---

[litigants] are not entitled to go on a fishing expedition in search of damaging evidence, Rule 6's 'good cause' standard requires [litigants] to at least attempt to identify what he expects to uncover through his discovery requests.").

7

counsel." Doc. 88 at 1. In response, Movant concedes the ineffective assistance allegations of the § 2255 motion imply a limited waiver of attorney-client privilege, but only for those specific communications which address potential strategy decisions directly related to ineffective assistance claims, and that any resulting disclosure should be narrowly tailored and judicially supervised. The Government's contention that filing of the § 2255 motion waives the attorney-client privilege *in toto*, that it can discover trial and appellate counsels' entire file and engage in unsupervised discussion with them about Mr. Troya's case, is contrary to the law.

There is no question the files of trial and appellate counsel for Mr. Troya developed in his defense are attorney-client privileged. The attorney-client privilege protects "confidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Mr. Troya does not waive that privilege, and does not give his former attorneys authority to do so. *See United States v. Noriega*, 917 F. 2d 1543, 1550 (11th Cir.1990). The attorney case files are also work-product privileged. The work-product privilege is broader than the attorney-client privilege and protects "materials prepared by the attorney, whether or not disclosed to the client" and "material prepared by agents for the attorney." *In re Grand Jury Proceedings*, 601 F. 2d 162, 171 (5th Cir.1979); *see Cox v. Adm'r U.S. Steel & Carnegie*, 17 F. 3d 1386, 1421 (11th Cir. 1994) (lawyers must be able to work in privacy free from unnecessary intrusion by opposing parties and counsel). The work product doctrine applies in criminal cases. *United States v. Nobles*, 422 U.S. 225, 236 (1975). Because of Fifth and Sixth Amendment implications, "Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital." *Id.* at 238.

A habeas petitioner's implied waiver of attorney-client privilege is limited to areas related only to the claims of ineffective assistance of counsel made in the § 2255 motion. J*ohnson v. Alabama*, 256 F.3d 1156, 1179 (11th Cir. 2001)("Simply put, when a habeas petitioner such as Johnson launches an attack on the reasonableness of his attorney's strategy in conjunction with a claim of ineffective assistance of counsel, he puts at issue his communications with counsel *relating to those strategic choices*.")(e.s.); *See United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009); *Barrett v. United States*, No. 09-CIV-105-JHP, 2009 WL2982670, at *5 (E.D. Okla. Sept. 11, 2009) (finding movant's waiver of attorney-client privilege "is limited to claims of ineffective assistance of counsel claims as raised in the §2255 motion").

So while Mr. Troya acknowledges a habeas petitioner may impliedly waive the attorney-client privilege and work product protection by claiming trial counsel were ineffective, that waiver is strictly limited to information relevant to the petitioner's specific claims of ineffectiveness and is not a broad waiver of the attorney-client privilege or work product protection for all purposes. *See United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009) ("when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney *necessary to prove or disprove his claim*") (emphasis added); *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) ("Implied waivers are consistently construed narrowly. Courts must impose a waiver no broader than needed to ensure the fairness of the proceedings before it. A broad waiver rule would no doubt inhibit the kind of frank attorney client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote.") (internal quotation marks & citations omitted); *see also Bittaker v. Woodford*, 331 F.3d 715, 720

(9th Cir. 2003) ("[C]ourt must impose a waiver *no broader than needed* to ensure the fairness of the proceedings before it. Because a waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose. Courts . . . that have imposed waivers under the fairness principle have therefore *closely tailored the scope of the waiver* to the needs of the opposing party in litigating the claim in question.") (emphasis added). In other words, the limited waiver implied by a petitioner's allegation of ineffectiveness is not a justification for the Government to rummage through the confidential files of the petitioner's counsel or engage in unfettered and unsupervised questioning of prior counsel regarding privileged information and communications.

**IV.     Even where an implied waiver exists and the scope of the waiver has been narrowly tailored, any disclosure of privileged information must be judicially supervised.**

If and when the Government establishes good cause for specific discovery requests, judicial supervision of any disclosure is required. As the Eleventh Circuit holds in *Johnson*, 256 F. 3d at 1178-79 (emphasis supplied), this Court must carefully evaluate the extent to which privileged information is disclosed:

> Although **the precise boundaries of the waiver will vary from case to case and in many instances will require careful evaluation by the district court**, there should be no confusion that a habeas petitioner alleging that his counsel made unreasonable strategic decisions waives any claim of privilege over the contents of communications with counsel relevant to assessing the reasonableness of those decisions in the circumstances.

Without judicial supervision, it would not be possible for this Court to ensure the Government stays within the "precise boundaries" of any implied waiver. This is the procedure adopted by the American Bar Association in ABA Formal Opinion 10-456 (*Disclosure of Information to Prosecutor When Lawyer's Former Client Brings Ineffective Assistance of Counsel Claim*) (Jul. 14, 2010), as the Government points out in its motion.

10

Opinion 10-456 is well-reasoned. It describes the limited nature of an implied waiver of privilege in the lawyer's "self-defense," and explains "[a]lthough the scope of the exception has expanded over time,[FN] the exception is a limited one, because it is contrary to the fundamental premise that client-lawyer confidentiality ensures client trust and encourages the full and frank disclosure necessary to an effective representation." *ABA Op*. 10-456 at 3 (footnotes omitted). An attorney is not entirely unleashed from the privilege simply by the filing of an ineffective assistance claim.

Lasting and irremediable harm can flow from attorney disclosure beyond the boundaries of an implied waiver. For instance, some courts, including the Eleventh Circuit, hold once an attorney discloses information in a proceeding challenging their conduct without a protective order, that information may be used in a subsequent criminal trial. *See*, e.g., *United States v. Suarez*, 820 F.2d 1158 (11th Cir.1987).[4]  Unnecessarily divulging privileged information also chills the attorney-client relationship. For these and other reasons, the ABA has concluded for an attorney to ethically provide otherwise privileged materials or communications to the government, it should be done only under judicial supervision:

> Permitting disclosure of client confidential information outside court-supervised proceedings undermines important interests protected by the confidentiality rule. Because the extent of trial counsel's disclosure to the prosecution would be unsupervised by the court, there would be a risk that trial counsel would disclose information that could not ultimately be disclosed in the adjudicative proceeding.[FN] Disclosure of such information might prejudice the defendant in the event of a retrial.[FN] Further, allowing criminal defense lawyers voluntarily to assist law enforcement authorities by providing them with protected client information might potentially chill some future defendants from fully confiding in their lawyers.

*ABA Op*. 10-456 at 4-5 [footnotes omitted).

---

[4] For this reason, the movant will seek a protective order preventing use outside of these proceedings of any otherwise confidential information disclosed to the Government, should the Court order such discovery. *See Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003).

11

The Government argues the ABA's formal opinion is not binding on this Court, and shockingly proposes the following rule for disclosure of privileged information: "Once a client makes allegations against an attorney, the lawyer may exercise his/her discretion as to whether to disclose such information as may be reasonably necessary to defend against the allegations; no court supervision is necessary." Doc. 30 at 8. There is no support for such a rule, and the Government has cited none.

While it is true, as the Government suggests, the ABA Formal Opinion is not binding on this Court, a number of courts have recognized it is well-reasoned and serves as a useful guide for navigating the relevant ethical issues implicated here. *See Cross v. United States*, 2016 U.S. Dist. LEXIS 122868, *5-*10 (S.D. W. Va. 9/12/16) (noting that although ABA Formal Op. 10-456 is not binding on the court, "it provides a reasoned discussion of the competing interests that arise in the context of an ineffective assistance of counsel claim and their impact on the continued confidentiality of attorney-client communications"); *see also Daugherty v. Dingus*, 2013 U.S. Dist. LEXIS 55617, *18-*21 (S.D. W. Va. 4/18/13) (relying on ABA Formal Op. 10-456 to grant petitioner's motion to prohibit trial counsel from communicating with counsel for the West Virginia Attorney General; "Unsupervised communications between the Petitioner's or Movant's trial and appellate attorney and the attorney for the State or the United States in Section 2254 and Section 2255 proceedings are prohibited. This process insures against a broader disclosure of confidential and attorney-client privileged information than necessary respecting the Petitioner's or Movant's claim of ineffective assistance of counsel"); *Thomas v. United States*, 2017 U.S. Dist. LEXIS 13585, *2-*3 & n.1 (N.D. Iowa 2/1/17) (directing trial counsel to file with the court an affidavit "that responds only to the movant's specific allegation(s)" of IAC, but advising trial counsel to read ABA Formal Op. 10-456 and that if "counsel concludes that he or

12

she cannot comply with this order without violating an attorney-client privilege or if counsel concludes that he or she cannot reasonably determine the scope of the waiver of the attorney-client privilege, counsel is directed to file a response, *in camera* with a request for a protective order if necessary, that specifically states the reasons for his or her conclusion."; also permitting movant's counsel to file objections.)

The Government also suggests the opinion is not binding on counsel; however, ethical rules similar to those relied upon in the ABA's opinion govern every attorney on Mr. Troya's case. Moreover, the privilege belongs to Mr. Troya, not his previous counsel. Thus, not only are prior counsel prohibited from waiving the privilege absent his consent, but current counsel are authorized and have an obligation to assert the privilege on Mr. Troya's behalf to prevent the disclosure of privileged and confidential information unrelated to the ineffective assistance claims contained in his § 2255 motion. Current counsel can only exercise that authority if a judicially-supervised procedure exists whereby objections can be raised and adjudicated before any confidential information is disclosed.

Although many judicially-supervised procedures might be available for this purpose – for example, use of depositions or the submission of interrogatories – it is premature at this stage to employ any such mechanisms because the Government has not yet established that it is even entitled to any discovery. The Government must first comply with the relevant procedural rules and file a proper discovery motion pursuant to Rule 6. Such a motion must make particularized requests for discovery, and this Court must find that "good cause" has been demonstrated for each request. Then, assuming the relevant standard for Rule 6 discovery has been met, the Court must determine the scope of the waiver of the privilege as it relates to the specific allegations made in the § 2255 motion. Only after these steps have been taken would it be necessary for the

13

parties to litigate the issue of the appropriate judicially-supervised mechanism that should be adopted to ensure that Mr. Troya can adequately assert the privilege and protect himself from unauthorized disclosure of confidential information unrelated to his § 2255 claims.

**WHEREFORE**, Mr. Troya requests this Court deny the Government's motion.

Respectfully submitted,

| | |
|---|---|
| */s/ Steven H. Malone* | */s/ D. Todd Doss* |
| STEVEN H. MALONE | D. TODD DOSS |
| Steven H. Malone, P.A. | Assistant Federal Defender |
| 1217 South Flagler Drive | Federal Defender's Office, MDFL |
| Second Floor | 201 South Orange Ave., Ste. 300 |
| West Palm Beach, FL 33401 | Orlando, FL 32801 |
| Tele: 561-805-5805 | Tele: 407-648-6338 |
| Email: stevenhmalone@bellsouth.net | Email: todd_doss@fd.org |
| Florida Bar No. 305545 | Florida Bar No. 0910384 |
| *Counsel for Daniel A. Troya* | *Counsel for Daniel A. Troya* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 10, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in this case, either via transmission of the Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ *Steven H. Malone*
STEVEN H. MALONE


/s/ *D. Todd Doss*
D. TODD DOSS

14