UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-CV-80700-BLOOM
(Case No. 06-CR-80171-HURLEY (s)(s)(s))


DANIEL A. TROYA,

   Petitioner,

vs.

UNITED STATES OF AMERICA,

   Respondent.
_____/

## UNITED STATES'S OPPOSITION TO TROYA'S MOTION TO INTERVIEW JURORS

COME NOW the United States of America, by and through its undersigned counsel, Assistant United States Attorney, and opposes Troya's motion to interview jurors (CV-DE 33). Troya claims that he should be permitted to conduct petit juror interviews, despite Local Rule 11.1(e) prohibiting precisely such contact without a showing of good cause and Federal Rule of Evidence 606(b) which bars juror testimony except in very limited circumstances. The juror misconduct Troya alleges does not fall within any of Fed. R. Evid. 606(b)'s exceptions, so he fails to establish good cause under Local Rule 11.1(e). Accordingly, and as set forth below in more detail below, Troya's Motion is without merit and should be denied.

### A. The No-Impeachment Rule Precludes the Type of Post-Verdict Juror Interviews Troya Seeks.

Federal Rule of Evidence 606(b) is also known as the "no-impeachment" rule. *Pena-Rodriguez v. Colorado*, 580 U.S. ___ (2017) (slip op., at 9). The rule "promotes full and vigorous discussion [during jury deliberations] by providing jurors with considerable assurance that after

being discharged they will not be summoned to recount their deliberations, and they will not otherwise be harassed or annoyed by litigants seeking to challenge the verdict." *Id*. Additionally, "[t]he rule gives stability and finality to verdicts." *Id*.

Specifically, the rule provides:

> (1) Prohibited Testimony or Other Evidence.  During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.  The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
>
> (2) Exceptions. A juror may testify about whether:
>
> (A) extraneous prejudicial information was improperly brought to the jury's attention;
> (B) an outside influence was improperly brought to bear on any juror; or
> (C) a mistake was made in entering the verdict on the verdict form.

Fed. R. Evid. 606(b).

Troya does not satisfy any of the three narrow exceptions.  He accuses certain jurors of lying during *voir dire* about their family members' employment, criminal histories, or involvement with illegal drugs.  His allegations do not involve a mistake in entering the verdict on the verdict form or claims that the jury was exposed to any extraneous prejudicial information or outside influence.  Accordingly, the rule prohibits the relief he seeks.

The Supreme Court case law addressing Fed. R. Evid. 606(b) and whether the Constitution mandates some additional exception is clear, and it weighs entirely against Troya.  In *Tanner v. United States,* 483 U.S. 107 (1987), the Supreme Court reaffirmed the long-standing common law rule prohibiting the admission of juror testimony offered to impeach a jury's verdict.  Despite allegations that some jurors were under the influence of drugs and alcohol during the trial, the

Court rejected a Sixth Amendment claim and upheld the rule's protection of jurors from being "harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict."  483 U.S. at 119-120.  The Court observed that, otherwise, "what was intended to be a private deliberation" would become a "constant subject of public investigation" jeopardizing the "frankness and freedom of discussion" required for jury deliberations.  *Id.*  The Court steadfastly cautioned, "It is not at all clear . . . that the jury system could survive such efforts to perfect it."  *Id.* at 120-21.  Significantly, the Court outlined other safeguards for the defendant's right to an impartial and competent jury, including the opportunity to examine and observe venire members during *voir dire*, to learn of juror misconduct during trial, to have jurors themselves report misconduct before the verdict, and to use evidence of misconduct other than juror testimony after the verdict.  *Id.* at 127.

More recently, the Supreme Court again rejected the argument that certain circumstances justify an exception to the no-impeachment rule.  *Warger v. Shauers*, 135 S.Ct. 521 (2014).  In that civil case, the jury forewoman failed to disclose a pro-defendant bias during the *voir dire*.  Echoing the safeguards laid out in *Tanner*, the Court held that "a party's right to an impartial jury remains protected despite Rule 606(b)'s removal of one means of ensuring the jurors were unbiased."  *Id*. at 529.  Notably, the Court explained, "Even if jurors lie in *voir dire* in a way that conceals bias, juror impartiality is adequately assured by the parties' ability to bring to the court's attention any evidence of bias before the verdict is rendered, and to employ nonjuror evidence even after the verdict is rendered."  *Id.*  Like Troya, Warger claimed he would have struck the juror if she had honestly revealed her bias during *voir dire*, but the Court specifically rejected the argument.  *Id*. at 530.  Explaining that *Tanner* defined such bias as an "internal," rather than "external," influence, the Court ruled that the matter did not fall within one of Rule 606(b)'s

3

exceptions.  *Id*.  "[T]he mere fact that a juror would have been struck [because of incompetence or bias] does not make admissible evidence regarding that juror's conduct and statements during deliberations."  *Id*.

Very recently, the Supreme Court had another opportunity to consider Rule 606(b) in *Pena-Rodriguez*, 580 U.S. ___ (2017).  After reviewing the extensive history of the rule and its sound foundations, the Court carved out a single narrow area that requires extra precaution:  racial bias.  Distinguishing racial bias from all other potential bases for juror misconduct, the Court expressed a critical difference between "a bigot" and a juror with "a personal experience that improperly influences her consideration of the case" as in *Warger*.  *Id*. (slip op., at 16).  Even in cases alleging juror misconduct based on racial bias, "there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict."  *Id*. (slip op., at 17).  Furthermore, "the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict."  *Id*.

Troya has made no allegations that the jurors espoused any racial bias.  Furthermore, his allegations that some jurors concealed their family members' experiences with drugs or violent crime in an effort to hide their bias against him are wholly unsubstantiated.  In sum, the content of his claims fall squarely within Rule 606(b)'s protections prohibiting post-verdict delving into jurors' personal lives in an attempt to shore up his theoretical claims of bias.  This Court should reject such an unwarranted invasion of the long-standing principle of the inviolability and secrecy of jury deliberations.

### B.  Troya's Request to Interview Jurors is Barred by Local Rule 11.1 Because He Can Not Show Good Cause.

Given that Fed. R. Evid. 606(b) prohibits jurors' statements from being used in any inquiry

into the validity of a verdict except in very limited circumstances (when considering whether a mistake was made on the verdict form, claims that the jury was exposed to any extraneous prejudicial information or outside influence, or allegations that jurors were racially biased), our local rule requires attorneys to obtain express permission from the Court before engaging in any communication with jurors.

This general principle is codified in the Southern District of Florida through the Court's implementation and application of Local Rule 11(e):

> **(e) Relations with Jury.** Before, during, and after the trial, a lawyer should avoid conversing or otherwise communicating with a juror on any subject, whether pertaining to the case or not. Provided, however, after the jury has been discharged, upon application in writing and for good cause shown, the Court may allow counsel to interview jurors to determine whether their verdict is subject to legal challenge. In this event, the Court shall enter an order limiting the time, place, and circumstances under which the interviews shall be conducted. The scope of the interviews should be restricted and caution should be used to avoid embarrassment to any juror and to avoid influencing the juror's action in any subsequent jury services.

Local Rule 11.1(e) implements the no-impeachment rule, which has been cited and followed in the Eleventh Circuit.   The local rule provides that neither attorneys, nor those acting on their behalf, may contact jurors unless the Court grants them permission for good cause shown, and only after application made in writing.  The lack of good cause mandates denial of Troya's motion.

Troya apparently hopes to make use of juror interviews ultimately to demonstrate that one of the Rule 606(b)(2) exceptions applies and jurors' statements should be admissible to show that some extraneous prejudicial information improperly influenced the jury that convicted him.  As discussed above, his claims of *voir dire* misconduct, however, involve alleged internal – not external—biases.  As such, inquiry into these matters would not reveal *extraneous* influence.

Furthermore, for all of the reason discussed above, such inquiry of former jurors cannot be entered into lightly.  Indeed, it is simply is not allowed without an initial showing putting forth some evidence of an extraneous influence on the jury.

In *United States v. Siegelman*,[1] the Eleventh Circuit described the threshold hurdle:  "A defendant who alleges denial of this right resulting from juror exposure to extraneous information has the burden of making a colorable showing that the exposure has, in fact, occurred."  640 F.3d 1159, 1182 (2011), *cert. denied*, 132 S.Ct. 2711 (2012), (*citing United States v. Ayarza–Garcia*, 819 F.2d 1043, 1051 (11th Cir. 1987)).

This requirement applies equally to cases on direct appeal and habeas claims.  In considering an appeal of a denial habeas relief, the Eleventh Circuit upheld a trial court's denial of a post-verdict motion to depose jurors because the petitioner failed to make a threshold showing.  *Tejada v. Dugger*, 941 F.2d 1551 (11th Cir. 1991).  "To justify a post-trial hearing involving the trial's jurors, the defendant must do more than speculate; he must show clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred."  *Id*.  (*quoting United States v. Cuthel*, 903 F.2d 1381, 1382 (citations and internal quotation marks omitted)).  Thus, in *Tejada*, the Eleventh Circuit unequivocally foreclosed the possibility of questioning or deposing jurors where the habeas petition fails to make the required showing of an extraneous influence on the jury during its deliberations:

> Unless *extraneous* information has been brought to jurors' attention or *outside* influences have been brought to bear upon them, federal courts refuse to question jurors after the verdict is rendered—especially when the inquiry concerns juror

---

[1] Noting the very same concerns voiced by the Supreme Court in *Tanner*, the Eleventh Circuit also observed that post-verdict investigation would "induce tampering with individual jurors subsequent to the verdict."  *Mattox v. United States*, 146 U.S. 140, 148 (1892).  "In a justice system that depends upon public confidence in the jury's verdict, such events are unacceptable."  *Siegelman*, 640 F.3d at 1186.

misconduct before deliberations.

*Tejada,* 941 F.2d at 1561 (emphasis added); *see also, United States v. Griek*, 920 F.2d 840, 843 (11th Cir. 1991) (expanding on policy reasons for not allowing inquiry into jury deliberations or questioning a verdict where there has been no showing or allegation of an extraneous influence on the jury deliberations).

Neither Troya's Motion to Interview Jurors, nor his underlying section 2255 petition, establish any extraneous or outside influence being inserted into the jury deliberations. Accordingly, he has not alleged a proper ground for habeas relief, and there is no showing of good cause for interviewing jurors.

**C.** **Other Defendants' Opportunities To Interview Jurors Does Not Violate Equal Protection or Fundamental Fairness.**

Troya notes that other defendants were convicted in different jurisdictions, some of which do not have local rules prohibiting post-verdict contact with jurors. He then leaps to a conclusion that this difference somehow constitutes an equal protection or fundamental fairness violation (CV-DE 33 at 21).

First, the chart Troya includes in his Motion and his determination that "there has only been a single case out of 16 where a court has affirmatively denied a request to interview jurors" are fraught with problems (CV-DE 33 at 20). The capital section 2255 cases Troya cites span twelve different districts. Like our district, nine of these districts, 75% of them, have local rules barring contact with jurors absent prior court approval. [2] Troya's representation that Vermont, the

---

[2] Eastern District of Louisiana, Local 47.5; District of Maryland, Local Rule 107(16); Southern District of Indiana, Local Rule 47-2(a); Western District of North Carolina, Local Rule 47.1; Southern District of Ohio, Local Rule 47.1; Eastern District of Texas, Local Rule24a, Criminal; Eastern District of Virginia, Local Rule 24(C); Western District of Virginia, Local Rule 10; District of Vermont, Local Rule 83.5.

Western District of Virginia, the Eastern District of Texas, and the Southern District of Indiana do not have local rules barring contact appears to be erroneous.

Troya is also mistaken that a district court has only affirmatively denied a request to interview jurors in one capital section 2255 case filed within the last five years. While Troya accurately portrays that the court denied such a motion in *Lighty v. United States*, Case No. 03-CR-457-PJM (D. Md.) (DE 433), he overlooks a similar ruling in *Barnette v. United States*, Case No. 12-CV-00327-RLV (W.D.N.C.) (DE 50) (finding "Petitioner has failed to make the threshold showing necessary to support his Motion [to interview jurors], and it will be denied). Moreover, Troya ignores altogether the capital habeas case of *Bolden v. United States*, Case No. 10-CV-02288-CEJ (E.D. Mo.), in which the court denied Bolden's motion to interview jurors (DE 232). Additionally, in *Ruynon v. United States*, Case No. 08-CR-00016-DEM, although the case did not involve a specific motion to interview jurors, in ruling on a different jury-related motion, the court essentially denied jury interviews *sua sponte* by requiring counsel to acknowledge "that *no juror contact has been made*, directly or indirectly, through someone else, or by any means" (DE 475) (emphasis in original).

Accordingly, even a cursory review of Troya's chart illustrates that it does not accurately summarize courts' rulings on permitting or prohibiting juror contact in capital habeas cases over the last five years. As such, it does not support his assertion that "among all the capital § 2255 cases filed within the last 5 years, litigants were free to conduct juror interviews in more than 80% of the cases" (CV-DE 33 at 21).

Finally, regardless of whether counsel in other cases interviewed jurors, with or without a court order depending on local rule requirements, Fed. R. Evid. 606(b) will preclude juror testimony at any evidentiary hearing unless the alleged misconduct falls into one of the very

narrowly construed exceptions to the no-impeachment rule.  Thus, any contention that other defendants are somehow able to prevail upon claims of juror misconduct where he cannot is wholly misguided.  If Troya could show good cause that juror interviews would help him establish that his jury was impacted by extraneous prejudicial information, improper outside influence, or racial bias, or involved a mistake on the verdict form, this Court could grant his motion.  Troya's stumbling block is not that Local Rule 11.1 somehow unfairly affects him; the rule prevents fishing expeditions for which there is no showing of good cause.  Troya fails to meet the good cause threshold because he has not alleged the type of juror misconduct that constitutes a cognizable claim.

### CONCLUSION

For all of the foregoing reasons, Troya's Motion to Interview Jurors should be denied.


Respectfully submitted,

BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY


By:  */s Stephen Carlton*
STEPHEN CARLTON
ASSISTANT UNITED STATES ATTORNEY
500 S. Australian Ave., Suite 400
West Palm Beach, Florida 33401-6235
Admin. No. A5500011
Tel. (561) 209-1053
Telefax (561) 659-4526
E-mail: Stephen.Carlton@USDOJ.GOV

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on April 3, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Stephen Carlton*
Stephen Carlton
Assistant United States Attorney

10

## SERVICE LIST

**Daniel Troya v. United States**
**Case No. 16-80700-CV-BLOOM**
**United States District Court, Southern District of Florida**

**Stephen Carlton**
**Stephanie Evans**
Assistant U.S. Attorneys
Stephen.Carlton@usdoj.gov
Stephanie.D.Evans@usdoj.gov
U.S. Attorney's Office
500 S. Australian Ave, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 820-8711
Facsimile: (561) 659-4526
Attorneys for United States
[Service via CM/ECF]

**Donald Todd Doss**
201 S. Orange Avenue
Suite 300
Orlando, FL 32801
todd_doss@fd.org
Attorney for Plaintiff
[Service via CM/ECF]

**Steven Holt Malone**
1217 South Flagler Drive
Second Floor, Flagler Plaza
West Palm Beach, FL  33401
stevenhmalone@bellsouth.net
Attorney for Plaintiff
[Service via CM/ECF]