UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-80700-CV-BLOOM
(Case No. 06-80171-Cr-Hurley/Vitunac(s)(s)(s))


DANIEL A. TROYA,
            Movant,

vs.

UNITED STATES OF AMERICA,
            Respondent.
_____/

### RESPONDENT'S FIRST SET OF REQUESTS FOR PRODUCTION


Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Respondent, United States of America  hereby propounds upon the Petitioner, Daniel Troya, the following Requests for Production of Documents from his former attorneys James Eisenberg and Ruben Garcia, and former mitigation specialist Kerry Sheehan, and former appellate counsel Barry Fisher and Robert McGlasson. Petitioner  is requested to produce and/or permit the Respondent to inspect and copy each of the requested documents that may be in any Petitioner's possession, custody, or control, or those which are in the possession, custody, or control of that Petitioner's attorneys, agents, or representatives. Pursuant to Rule 34(b)(2)(A), Pettioner's responses to these Requests for Production must be provided within thirty days of service. Production of documents should be made to counsel for the movant, or at any other location and time to which counsel mutually agree.

As used herein, the following terms shall have the following meanings:

1.      "Petitioner" refers to Daniel Troya, and to all persons who are attorneys, employees, mitigation specialists, expert witnesses, and to all other persons acting, or purporting to act, on behalf of Daniel Troya at trial or direct appeal.

2.      The words "you," "yours," and/or "yourselves" means the respondent as well as any employees, agents, representatives or other persons acting, or purporting to act, on behalf of the respondent.

3.      "Document(s)" should be construed in the broadest sense permissible, and includes all "writings," "recordings," and "photographs," as those terms are defined in Rule 1001 of the Federal Rules of Evidence, as well as all "communications" as defined below. Accordingly, "document(s)" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions, electronic mail, or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, optically or otherwise on hard drive, diskette, compact disk, primary or backup tape, audio tape or video tape) from whatever source derived and however and by whomever prepared, produced, reproduced, disseminated or made.

4.      "Communication" means any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, telex message, cable, correspondence, message, electronic mail, voice mail, exchange, provision or relay of a document, or other occurrence whereby thoughts, opinions, data, or other information are transmitted between or among one or more persons, or through any photographic, mechanical, electrical or electronic device or devices for receiving, transmitting, or storing data or other information.

5.      "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association, or any other entity. "Person" includes the present and former officers,

executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of the person and also its subsidiaries. 6.

6. The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and "including without limitation" and shall not indicate limitation to the examples or items mentioned.

7. The singular shall include the plural and vice versa; the terms of each word shall be construed to include its plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive.

8. The root word and all derivations (i.e., "ing," "ed," etc.) shall be construed to include each other.

9. The word "each" shall be construed to include "every" and vice versa.

10. The word "any" shall be construed to include "all" and vice versa.

11. The present tense shall be construed to include the past tense and vice versa.

12. The masculine shall be construed to include the feminine and vice versa.

13. "Agent" shall mean any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

14. The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

15. The term "action" shall mean the case entitled Daniel Troya v. United States of America, Case No. Civil Action No. 16-80700-Civ-Scola, and its predecessor criminal case, United States of America v. Daniel Troya et al., Crim. No.: 9:06-cr-80171-CR-DTKH-3 Southern District of Florida.

## **INSTRUCTIONS**

1.      Pursuant to Fed. R. Civ. P. 26(e)(1), these production requests are continuing in nature and Respondent shall provide supplemental answers and documents, which will augment or modify any answers contained in their responses.

2.      Each request herein constitutes a request for each document referred to or a true, complete, and legible copy thereof.

3.      Each request seeks documents that are in any way in any Petitioner's  possession, custody, or control from any source, wherever situated, including, but not limited to, the files, records, and documents of his trial or appellate attorneys, or entities or persons acting at the direction or in concert with  them and any agents or its attorneys hired or directed, and all documents to which the Petitioner or his attorneys or agents have or had access, including all documents in the possession, custody, or control of agents, contractors, experts, or consultants.

4.      A document is deemed to be in Respondent's "control" if Respondent or any of Respondent's attorneys have the right to secure the document or a copy thereof from another person or entity having actual possession of the document.

5.      If a requested document was, but no longer is, in Respondent's possession, custody, or control, respondent shall identify the document, its current location, and the person who has possession, custody, or control of the document; if such information is unavailable, the defendant shall identify the last known location and person who had possession, custody, or control of the document and explain the reason for and circumstances under which the document left the Respondent's possession, custody, or control.

6.      If Respondent does not answer any document request or part thereof, on the basis of privilege, the Respondent shall provide with respect to each such document the following:

   a.      The nature of the document (letter, memorandum, chart, picture, report, etc.);

   b.      The number of pages comprising the document and a description of any identifying marks or designations (e.g., Bates numbers) if any, on the document;

   c.      The date of the document;

   d.      The name(s) of the author(s) and of any recipient(s) of the document;

   e.      The name and address of any person who is not included in response to subpart (d) with respect to such document and who has access to or has seen, read, or heard any portion of the material in the document; and

   f.      The nature of the privilege asserted.

7.      For each request or part of a request that Petitioner refuses to answer  on grounds of burdensomeness, the Petitioner shall explain in as much detail as possible the basis for its contention.

8.      If any Petitioner objects to any request, or portion of a request herein, the Petitioner must produce all documents covered by the request, or portion of the request, not subject to the objection. Similarly, if Petitioner objects to production of a document, they must produce the parts of the document that are not subject to objection, redacting and clearly  indicating the parts of the document that are subject to the objection.

9.      Petitioner shall produce all documents as they are kept in the usual course of business and label them to correspond to the categories in the request.

10.      Petitioner must produce all responsive documents in their original format.

## REQUESTS FOR PRODUCTION

**Pre-Trial & Trial Matters (trial counsel only):**

1. All documents, records or files relating to pretrial investigation or legal research conducted concerning possible challenges to the process used by the Southern District of Florida, United States District Court, to select grand jurors;

2. All documents, records or files relating to pretrial investigation or legal research conducted concerning possible challenges to the process used by the Southern District of Florida, United States District Court, to select petit jurors;

3. All documents, records or files relating to pretrial investigation or legal research conducted to file legal challenges to the indictment, specifically as to objections to charging language for violations of 18 USC 924(j);

4. All documents, records or files relating to pretrial investigation or legal research conducted to file legal challenges to the indictment, specifically as to objections to charging language for violations of 18 USC 924(c);

5. All documents, records or files relating to pretrial investigation or legal research conducted to file legal challenges to the indictment on duplicity grounds; **(applies to appellate counsel also)**;

6. All documents, records or files relating to pretrial investigation or legal research conducted to file legal challenges to substitution of a forensic pathologist expert witness;

7. All documents, records or files relating to pretrial investigation or legal research conducted to consult with or hire an independent forensic pathologist expert witness;

8. All documents, records or files relating to pretrial investigation or legal research conducted to consult with or hire an independent firearms expert, including joint defense agreements, formal or informal, allowing for delegation of this area to counsel for Ricardo Sanchez, Jr.;

9. All documents, records or files relating to pretrial investigation or legal research conducted to consult with or hire an independent toolmark expert, including joint defense agreements, formal or informal, allowing for delegation of this area to counsel for Ricardo Sanchez, Jr.;

10. All documents, records or files relating to pretrial investigation or legal research conducted to prepare cross examination of government experts on following areas:

    a. Firearms examination;

    b. Toolmark identification;

11. All documents, records or files relating to pretrial investigation or legal research conducted to document dangers of traveling to Matamoros, Mexico to investigate the murders, or to seek a continuance on the grounds of inability to investigate;

12. All documents, records or files relating to pretrial investigation or legal research conducted to consult with an independent latent fingerprint examiner or expert;

13. All documents, records or files relating to pretrial investigation or legal research conducted to cross examine the government's fingerprint expert;

14. All documents, records or files relating to pretrial investigation or legal research conducted to challenge the government's cellular telephone evidence;

15. All documents, records or files relating to pretrial investigation or legal research conducted to consult with or hire an independent cellular telephone expert, including

joint defense agreements, formal or informal, allowing for delegation of this area to counsel for Ricardo Sanchez, Jr.;

16. All documents, records or files relating to pretrial investigation or legal research conducted to consult with or hire an independent GIS mapping expert;

**Specific Trial, Guilt Phase Ineffectiveness Claims & Document Requests:**

17. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) as follows:

   a. For failing to object to improper questioning of government cooperating witnesses, Vetere, Rodriguez and Fernandez;

   b. For not calling witnesses to testify about drug dealing and drug usage by Kevin Vetere and Melvyn Fermandez;

   c. For not gathering records or presenting evidence about Yessica Escobedo's cell phone and calls on evening of October 12, 2006;

18. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) not to object to the following prosecution acts:

   a. References to "thug mansion" , and "pimp plaza," during trial testimony and any government closing argument;

   b. Government prosecutor's description of government witness Doran as nervous and hesitant to testify;

   c. Government prosecutor calling Sanchez a liar numerous times when recounting his statement;

   d. Prosecutor referring to a matching suitcase found in the van, which still had in it a hotel receipt from Yessica for October 11, and then arguing that, "the

suitcase is Yessica's way of speaking from the grave and identifying her killers.

**Specific Trial, Penalty Phase Issue Claims & Document Requests:**

19.  All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) not to file *Crawford* objections during penalty phase of trial concerning government's prison escape evidence;

20. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) to do or not do the following:

   a.   Call Karl Busch or any other witness concerning the Troya battery of Carol Pawlowski

   b.   Limit witness testimony of the Pawlowski battery episode to Karl Busch and not any other witness;

21.  All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) to call or not call witnesses related to the Troya battery of a former girlfriend;

22.  All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) to call or not call witnesses related to Troya's prior state conviction for escape from prison;

23. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) to call or not call witnesses related to Conniston Middle School as follows:

   a.   Troya's witnessing a shooting at Conniston Middle;

   b.   Troya suffering physical or mental abuse while a student at Conniston Middle;

c. Troya's being traumatized or affected by anything seen or endured at Conniston Middle;

24. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) to call or not call witnesses related to Troya's total family history on both his father's and mother's family trees;

25. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) to call or not call witnesses related to Troya's mental health, including all medical records relating to head injuries;

26. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) to call or not call witnesses related to Troya's mental health, specifically:

a. Dr. Wu;

b. Dr. Harry Krop;

c. Dr. Michael Maher.

27. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) not to object to the following prosecution acts:

a. Government prosecutor stating juror service is like military service;

b. Government prosecutor improper vouching for integrity and character of law enforcement witnesses;

c. Government prosecutor attacking defense counsel;

28. All documents, records or files relating to pretrial investigation or legal research conducted to prepare for trial between August, 2008 and December 22, 2008 when the Department of Justice rejected a proposed settlement;

29. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) to concede in penalty closing Troya's involvement in two prior shooting incidents introduced by the government during the guilty phase;

30. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) to not object to the three-part process described to the jury by the court in its penalty instructions on qualifying for the death penalty;

31. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) to not object to the prosecution use of juvenile convictions for any purpose in the penalty phase of the trial;

32. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) to not attempt collateral challenge in state court to Troya's prior prison escape conviction;

33. All documents, records or files relating to pretrial investigation or trial action concerning interactions with Dr. Wu and ensuring defense counsel compliance with Judge Hurley's oral directive of March 10, 2009 directing James Eisenberg to provide the government's neurologist with the original Dr. Wu PET scan of 2008, including:

    a. Records of communication with Dr. Wu on or after March 10, 2009 relating to the above;

    b. Records of communication with any retained government expert on or after March 10, 2009 relating to the above;

**Penalty Phase Issue Claims & Document Requests Related to Penalty Closing:**

34. All documents, records or files relating to pretrial investigation or legal research conducted to support trial decision(s) not to object to the following prosecution comments in penalty closings:

    a.  That Mr. Troya exhibited a lack of remorse;

    b.  That the defense was engaged in a contest of how much mud can be thrown against a wall and how much it sticks.

    c.  The fact Mr. Troya's grandmother died was tragic, but there was not anyone on the jury who hadn't had that happen to. It was a fact of life, not a mitigator

    d.  The prosecutor's question as to how many murders and attempted murders are required before you forfeit your right to exist in this society?

    e.  The prosecutor's statement that anything other than death would not be justice

    f.  That the issue is the appropriate sentence for mass murderers, not whether Uncle Tito was in West Palm Beach for 30 or 60 days;

    g.  Comparing jury service to serving one's country in war;

    h.  The prosecutor telling jurors that they should act to impose death as the conscience of the community;

    i.  That there was no evidence Mr. Troya had below-average intelligence or learning disorder;

    j.  That Mr. Troya was "evil."

Respectfully submitted,

BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY


By:     */s Stephen Carlton*
       STEPHEN CARLTON
       ASSISTANT UNITED STATES ATTORNEY
       500 S. Australian Ave., Suite 400
       West Palm Beach, Florida 33401-6235
       Admin. No. A5500011
       Tel. (561) 209-1053
       Telefax (561) 659-4526
       E-mail: Stephen.Carlton@USDOJ.GOV
       *Attorney for the United States*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 3, 2017,  I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Stephen Carlton*
Stephen Carlton
Assistant United States Attorney

## SERVICE LIST

**Daniel Troya v. United States**
**Case No. 16-80700-CV-SCOLA**
**United States District Court, Southern District of Florida**

**Stephen Carlton**
**Stephanie Evans**
Assistant U.S. Attorneys
Stephen.Carlton@usdoj.gov
Stephanie.D.Evans@usa.doj.gov
U.S. Attorney's Office
500 S. Australian Ave, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 820-8711
Facsimile: (561) 659-4526
**Attorney for United States**
[Service via CM/ECF]


**Steven H. Malone**
1217 South Flagler Drive
Second Floor
West Palm Beach, FL 33401
Phone:  (561) 805-5805
stevenhmalone@bellsouth.net
[Service via CM/ECF]


**D. Todd Doss**
Federal Defender's Office, MDFL
201 South Orange Ave., Ste. 300
Orlando, FL 32801
Phone:  (407) 648-6338
stevenhmalone@bellsouth.net
[Service via CM/ECF]