**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**DANIEL A. TROYA,**

**Movant,**

**v.**                                                    **CASE NO. 16-80700-Civ-BLOOM**

**UNITED STATES OF AMERICA,**

**Respondent.**

_____/

**REPLY TO UNITED STATES RESPONSE TO
TROYA'S MOTION TO INTERVIEW JURORS**

The movant Daniel Troya replies to the United States' response to his Motion to Interview Jurors and states:

### I.        INTRODUCTION

In his Motion to Interview Jurors, Mr. Troya demonstrated good cause to speak with jurors to fully develop and document evidence of juror misconduct. Doc. 33. This request was also supported by his post-conviction motion, where Mr. Troya provided documentation to demonstrate that several jurors, "[a]ppear to have provided answers that were untrue and/or seriously misleading." Doc. 25 at 60.

The Government's characterization of the claim as an issue governed by FRE 606(b) is a red herring because the alleged misconduct and requested interviews do not address the jury's deliberations. The Government argues that the claim is "wholly unsubstantiated" ignoring the facts meticulously pled by Mr. Troya and the voluminous appendix that painstakingly documents those facts. Lastly, the Government suggests that Mr. Troya's analysis of capital § 2255 cases in other jurisdictions was incorrect. Each of these issues are addressed in turn.

1

## II. FRE 606(b) ONLY APPLIES TO JURY DELIBERATIONS AND NOT JUROR MISCONDUCT DURING VOIR DIRE

FRE 606(b) does not apply to juror misconduct during voir dire but only to inquiries into the validity of a verdict or indictment. In those cases, Rule 606(b) specifically prohibits jurors from testifying or providing affidavits relative to three subject areas.

The first prohibited area is juror testimony "about any statement made or incident that occurred during the jury's deliberations." FRE 606(b). Jury deliberations are defined as, "where the jury sorts through all of the evidence and the facts of a case before they make a decision." *Black's Law Dictionary Free Online Dictionary*, 2d Ed.  Mr. Troya has alleged no misconduct relating to the jury's deliberations. He does not seek to question any juror regarding the deliberations in his case. The jury misconduct here occurred during *voir dire* when specifically-identified jurors failed to fully and truthfully answer material questions posed by the Court, not at any point during jury deliberations.

The second prohibited area contemplated within FRE 606(b) forbids jury testimony concerning, "the effect of anything on that juror's or another juror's vote." FRE 606(b). Mr. Troya's claim of juror misconduct is irrespective of any individual juror's vote. Discussion of juror's votes would not be necessary during any interview permitted by the Court. The misconduct alleged by Mr. Troya occurred long before the juror's ever began deliberations, much less voted.

The third prohibited topic disallows juror testimony on "any juror's mental processes concerning the verdict or indictment." FRE 606(b). Questions posited to reveal juror misconduct during *voir dire* will not delve into juror's mental processes regarding the verdict or indictment. Such questions will probe the reasons relating to the lack of candor, untruthfulness, and incomplete testimony provided by the identified jurors.

### III.    CASES CITED BY THE GOVERNMENT ARE DISTINGUISHABLE

The Government cites a litany of cases. However, each one of them is distinguishable and fails to address the gravamen of Mr. Troya's claim. The Government first relies upon *Tanner v. United States*, 483 U.S. 107 (1987). *Tanner* involved a situation where jurors were purportedly drinking and abusing drugs *during* a trial that reportedly caused them to sleep during significant portions of the afternoon. *Id.* at 113. The district court denied an evidentiary hearing determining evidence of juror intoxication was inadmissible pursuant to FRE 606(b) to impeach the jury's verdict. As discussed *supra*, juror misconduct clearly does not come within the dictates of FRE 606(b); therefore, any reliance on *Tanner* is inapposite here. Furthermore, in *Tanner*, unlike here, the alleged juror misconduct occurred after these jurors had already been sworn, the evidentiary portion of the proceedings were underway, and the fundamental question was whether the drugs and alcohol effected jurors' perceptions and deliberations.

The Government continues their misplaced reliance upon FRE 606(b) cases by citing to *Warger v. Shauers*, 135 S.Ct. 521 (2014). A superficial reading of *Warger* could lead to the conclusion that its holding applies any time a claim of juror dishonesty during *voir dire* is alleged, however, simply reading the question addressed reveals the fallacy of such superficiality. The Court in *Warger* clearly states, "The question presented in this case is whether Rule 606(b) precludes a party seeking a new trial from using one juror's affidavit of what another juror said in deliberations to demonstrate the other juror's dishonesty during *voir dire*. We hold that it does." *Id.* at 524. The issue is the source of proof, not that juror dishonesty in *voir dire* can never be addressed as an issue. Here, Mr. Troya does not seek to question jurors about statements made in the jury room during deliberations, nor does he seek to admit such statements to support his claim of juror misconduct. Mr. Troya has established prima facie evidence of his

claim through extra-record searches and publicly available official documents that have nothing to do with the jury deliberations in his case. *Warger* has no application to Mr. Troya's case.

Last, the Government cites to the recently decided case of *Pena-Rodriguez v. Colorado*, 137 S.Ct. 855 (March 6, 2017), which involved statements of a juror ***during deliberations*** that evinced racial bias and stereotyping. The Court held that the no-impeachment rule of FRE 606(b) must yield to a defendant's Sixth Amendment rights where a juror makes a clear statement indicating a reliance on racial stereotypes and racial bias to convict a criminal defendant. *Id.* at 863-871. Yet again, this case involves a statement during deliberations. That is the focus of the case and the subsequent decision. The false statements at issue in Mr. Troya's case were all made during *voir dire* proceedings before the jury was selected and sworn, much less deliberating.

## III.   GOOD CAUSE HAS BEEN DEMONSTRATED TO ALLOW JUROR INTERVIEWS

The government hypothesizes, with no basis to do so, that this claim was raise in the "hopes to make use of juror interviews ultimately to demonstrate that one of the Rule 606(b)(2) exceptions applies and jurors' statements should be admissible to show that some extraneous prejudicial information improperly influenced the jury that convicted him." Doc. 97 at 5.

Again, Mr. Troya does not raise any claim regarding misconduct in the jury's verdict or deliberation and seeks interviews for the entirely legitimate and unrelated purpose of supporting his claim of misconduct during *voir dire*.

## IV.   THE GOVERNMENT IS MISTAKEN THAT SIMILARLY-SITUATED CAPITAL § 2255 LITIGANTS ARE BARRED FROM JUROR INTERVIEWS.

In his discovery request Mr. Troya demonstrated that the ability to raise and prove certain juror-related claims in federal capital post-conviction has been based, in large part, on the happenstance of geography. In response, the government accuses Mr. Troya of misinforming this

Court about the status of juror interviews in other federal capital § 2255 cases. Mr. Troya initially noted that "among all federal capital cases where the § 2255 was filed in the last five years, litigants were free to conduct juror interviews in more than 80% of the cases where the issue was ripe." Doc 33 at 21. The government excerpts this quote from Mr. Troya's pleading but blatantly omits the phrase "where the issue was ripe" and then castigates Mr. Troya for alleged inaccuracy.[1] Doc 97 at 8.

Counsel have reviewed and recalculated the cases filed within the last five years and realized that the 80% number was, in fact, erroneous. The correct percentage of relevant cases filed in the last five years where litigants were free to conduct juror interviews is actually 90.9%. The government is nevertheless incorrect on each point.

### 1.   The government is wrong in its review of local rules applicable to other cases

Respondent informs this Court that "75% of [the districts where other capital 2255 motions were filed] have local rules barring contact with jurors absent prior court approval." Doc 97 at 7. According to the government, Mr. Troya misinformed this Court about "Vermont, the Western District of Virginia, the Eastern District of Texas, and the Southern District of Indiana…" *Id*. at 7-8. Respondent is incorrect. First, there are no federal capital post-conviction cases from the Southern District of Indiana.[2] Moreover, the government is wrong about the other districts. In Vermont, the government itself complained to the judge in *United States v. Fell* that

---

[1] Mr. Troya excluded "non-ripe" cases (i.e. cases still pending before the district court) because, without a final decision, even an interim order on juror interviews is not final. This is even more true when the request was made pre-petition because at that point in time there are no claims pending and it is difficult to show good cause. Moreover, many courts do not believe pre-petition discovery is allowed at all.

[2] Mr. Troya's chart had a typographical error which listed the case of *United States v. Marvin Gabrion* as from SDID, a non-existent district. Mr. Troya assumes that typo is what led to the government's discussion of the Southern District of Indiana. In fact, Mr. Gabrion's case is from the Western District of Michigan, a district where there is no prohibition on juror interviews.

the attorneys had interviewed jurors and those complaints were rejected. The Fell judge made clear that there was no prohibition on contacting jurors. *See United States v. Fell*, 5:01-cr-00012 (D.VT. 8/2/13), Doc 396 at 4 (Judge: "I conducted some research and came to the conclusion that, really, the issue as to whether or not defense counsel or government counsel at that point, in December of 2010, had the right to speak with jurors was pretty well established. They have the right to speak with jurors, and the Court has no authority to stop that from happening.").[3] It is frankly surprising that the government would suggest to this Court that juror interviews were prohibited in *Fell* because, despite the government's protestations, Mr. Fell was granted habeas relief on a claim based on the interviews of the jurors and the government is currently in the process of seeking to retry Mr. Fell. *United States v. Fell*, 2014 WL 3697810 (D. Vt. Dec. 13, 2016).

The Western District of Virginia, contrary to the government's claim, also has no prohibition on juror interviews in § 2255 proceedings. Local Criminal Rule 10 of the Western District of Virginia only prohibits communicating with a juror "during the juror's term of service". This is consistent with the practice in post-conviction litigation. The capital § 2255 motion filed in the Caro case clearly shows that jurors were interviewed. *See United States v. Caro*, 1:06-cr-00001 (W.D. Va. 3/22/13), Doc 790 at 40 ("In a subsequent affidavit, this same juror said 'It was obvious from the evidence that Carlos Caro was guilty of first-degree murder. I

---

[3] While the *Fell* case was still pending a rule was adopted in the district which appears to place limits on juror interviews. This is not relevant here for several reasons. First, the process in Mr. Troya's case must be compared to what actually occurred in other cases not what the government believes would occur in a future case. There have been no capital 2255 cases in Vermont since that rule was adopted. Furthermore, the Fell judge himself was skeptical about the new rule applying in capital § 2255 cases. *See Id* at 5 ("Now, we have had a change in the local rule, but that would not, in my view, apply in this situation, or even if it did, it would not be fair.").

am now, and was at the time of the trial, strongly in favor of the death penalty where evidence of guilt is obvious.").

The local rules in the Eastern District of Texas have likewise never prohibited a capital § 2255 movant from contacting and interviewing jurors.[4] In fact, interviews of jurors in federal death penalty cases were conducted with approval of the local judges. *See* Declaration of Christine Lehmann, Appendix A ("In Mr. Garcia's case the presiding judge acknowledged our right to contact the jurors and asked that we clearly identify ourselves to the jurors to avoid confusion.").

### 2.   The government cherry picks its facts to accuse Mr. Troya of error.

As discussed above, Mr. Troya selected a set of relevant cases to compare the availability of process in capital § 2255 proceedings. The group selected by Mr. Troya was limited to cases filed in the last five years and excluded those where the litigation in the district court was still pending.[5] Mr. Troya believed this would provide a representative selection of cases from across the country and was recent enough to reflect current practice in capital § 2255 cases. The government tries to rebut Mr. Troya's approach by pointing to random and irrelevant facts. For example, the government accuses Mr. Troya of "ignor[ing] altogether the capital habeas case of *Bolden v. United States*..." Doc 7 at 8. However, Mr. Bolden's 2255 motion was filed on

---

[4] A change to the local rule in May 2015 adds constraints to juror interviews but there have been no capital § 2255 cases filed since that change. As noted previously, speculation about how future cases may be treated is irrelevant to the issue before this Court. There also does not appear to be a general trend in rule changes. The Western District of Texas, for example, forbade juror interviews when several capital § 2255 cases were previously pending but has since amended its local rules and removed all prohibitions on juror contact in post-conviction proceedings.

[5] These cases were excluded because either juror interviews had not been requested, a request had not been ruled on, or where a request was denied there was still an opportunity for reconsideration. Because juror interview requests are fact specific, sometimes discovery in other areas of a case will support juror interviews where good cause for such requests was previously not established.

December 6, 2010; clearly not within the last 5 years. *See Bolden v. United States*, No. 4:10-cv-02288 (E.D. Mo. Dec. 6, 2010) Doc. 2. If the government wishes to cherry pick cases which support its argument, it should also mention cases which contradict it such as *United States v. Rodriguez*, No. 2:04-cr-00055 (Dist. N.D.), a case filed in 2011 where juror interviews were allowed by rule and where the court held an evidentiary hearing on the juror misconduct claims in 2015. Mr. Troya "ignored" the *Bolden* case not because it did not support his argument, but rather because it was not filed within the last five years.

Counsel has reviewed each capital § 2255 case filed in the last five years anew and learned that there was, indeed, an error in the chart previously submitted. In that chart, Mr. Barnette's case was marked by a question mark and Mr. Lighty's case was marked as a case where juror interviews were denied. In fact, Mr. Barnette's case was the case where juror interviews were denied by the Court and Mr. Lighty's case should not have been included because his § 2255 proceedings are still active in the district court. Thus, of the cases where the issue was ripe (i.e. a final judgment in the district court), only one of eleven was denied access to the jurors. *See* Corrected juror interview chart. Appendix B. The government is therefore correct that Mr. Troya's 80% figure was in error; litigants were actually free to conduct juror interviews in more than 90% of the cases where this issue was ripe.[6]

---

[6] Since the time Mr. Troya filed his original request, the district court in the Eastern District of Virginia denied the capital § 2255 motion of David Runyon. The government claims this case contradicts Mr. Troya's argument because prior to the filing of his § 2255 motion the judge, in an order discussing, inter alia, access to grand jury information, issued a blanket statement that counsel should not contact the jurors. Doc. 97 at 8. Although the local rule in that district permits juror interviews upon a showing of good cause and with leave of the court, §2255 counsel never filed any post-petition request for juror interviews prior to the district court's denial of the §2255 motion. Mr. Troya does not believe this case suggests that interviews were denied because they were never requested. But even assuming the government's position on this case, it would still mean that approximately 83% of the cases in the last five years were allowed juror interviews.

## CONCLUSION

Mr. Troya requests he be afforded the opportunity to contact jurors and alternates that served in the above-styled cause.

Respectfully submitted,

| | |
|---|---|
| */s/ Steven H. Malone* | */s/ D. Todd Doss* |
| STEVEN H. MALONE | D. TODD DOSS |
| Steven H. Malone, P.A. | Assistant Federal Defender |
| 1217 South Flagler Drive | Federal Defender's Office, MDFL |
| Second Floor | 201 South Orange Ave., Ste. 300 |
| West Palm Beach, FL 33401 | Orlando, FL 32801 |
| Tele: 561-805-5805 | Tele: 407-648-6338 |
| Email: stevenhmalone@bellsouth.net | Email: todd_doss@fd.org |
| Florida Bar No. 305545 | Florida Bar No. 0910384 |
| *Counsel for Daniel A. Troya* | *Counsel for Daniel A. Troya* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in this case, either via transmission of the Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ *Steven H. Malone*
STEVEN H. MALONE

/s/ *D. Todd Doss*
D. TODD DOSS

9