UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DANIEL A. TROYA,

Movant,

v.                                                          CASE NO. 16-80700-Civ-BLOOM
UNITED STATES OF AMERICA,

Respondent.
_____/

MOVANT'S RESPONSE TO RESPONDENT'S RENEWED MOTION FOR COURT TO
ENTER AN ORDER HOLDING THAT THE ATTORNEY-CLIENT PRIVILEGE HAS
BEEN WAIVED

I.      Introduction

On March 17, 2017, this Court denied the United States' Motion for the Court to Enter an

Order Holding that the Attorney-Client Privilege has Been Waived. Doc. 93. The Order

identified two fundamental defects with that Motion:

> (1) The Government was "seeking to conduct discovery without satisfying the 'good
> cause' requirement of Rule 6 of the Rules Governing §2255 Proceedings." *Id.* at 2.
> Absent that showing of "good cause," the Court was "unable to authorize the [United
> States] to conduct discovery." *Id.*

> (2) The Government sought a blanket waiver of the attorney-client privilege. This is
> contrary to established precedent, which holds that any such waiver must be narrowly
> tailored to the scope of the allegations raised in the §2255 motion because "the precise
> boundaries of the waiver will vary from case to case and in many instances will require
> careful evaluation by the district court." *Id.* (quoting *Johnson v. Alabama*, 256 F.3d 1156,
> 1179 (11th Cir. 2001)).

The Government has now filed a Renewed Motion for the Court to Enter an Order

Holding that the Attorney-Client Privilege has Been Waived. Doc. 98. Although the renewed

motion requests that this Court reconsider its prior ruling, the Government's request still does not

comport with the requirements of Rule 6; the Government has essentially just refiled its original

motion with very minor changes. Indeed, not only has the Government failed to address and

1

remedy the defects identified by this Court's prior Order, the renewed motion suffers from additional defects – namely, failing to meet the procedural requirements established by Federal Rule of Civil Procedure concerning the propounding of interrogatories. These various defects are explained in more detail below.

As with its original motion, the Government is once again attempting to bypass the established procedure for seeking discovery. It has not met the requirements necessary to authorize this Court to allow it to conduct discovery, and its motion should accordingly be denied.

**II.    The Government has still not established "good cause" under Rule 6 for its discovery requests.**

Although once again styled as a request for the Court to "Enter an Order Holding that the Attorney-Client Privilege Has Been Waived," there is no question the Government's motion is a request for discovery subject to the requirements of Rule 6 of the Rules Governing § 2255 Proceedings. As with the prior motion, the Government requests that Mr. Troya's prior counsel "supply any and all documents, correspondence and/or an affidavit regarding conversations and decisions made involving every issue alleged in the pending 2255 petition alleging ineffective assistance of counsel." Doc. 98 at 3. As this Court correctly ruled in its prior Order, such a request is governed by Rule 6, and the Court cannot authorize the Government to conduct discovery under Rule 6 until and unless the Government has satisfied the "good cause" requirement for each of its requests. Doc. 93 at 2.

In order to establish "good cause" under Rule 6 for its discovery requests, the Government must engage in two analytically distinct steps:

2

(1) It must identify with particularity the information sought.[1]

(2) It must make a fact-specific showing regarding the *materiality* of the requested information (i.e., why is the requested information necessary to defend against the specific allegations raised in the § 2255 motion).[2]

The Government's request does not satisfy either step.

### A.   The Government has not identified with particularity the information it seeks.

The Government attaches a chart to its renewed motion that sets out each ineffective assistance of counsel claim ("IAC") raised in Mr. Troya's § 2255 motion. Doc. 98 at Appendix A. However, this chart does not identify with any particularity the information the Government seeks from prior counsel as to each claim;[3] it merely restates each IAC claim and identifies the

---

[1] *See Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir. 1994) ("Conclusory allegations are not enough to warrant discovery under Rule 6 of the Federal Rules Governing Section 2254 Petitions; the petitioner must set forth specific allegations of fact. Rule 6, which permits the district court to order discovery on good cause shown, does not authorize fishing expeditions."); *Braden v. Bagley*, No. 2:04-cv-842, 2007 WL 1026454, *2 & *4 (S.D. Ohio Mar. 30, 2007) ("In keeping with the well-settled principle that habeas [litigants] are not entitled to go on a fishing expedition in search of damaging evidence, Rule 6's 'good cause' standard requires [litigants] to at least attempt to identify what he expects to uncover through his discovery requests."; granting discovery because "[t]he discovery he requests is specific, limited, and reasonably calculated to lead to evidence in support of his claim").

[2] *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) ("The burden of demonstrating the materiality of the information requested is on the moving party."); *Clark v. Johnson*, 202 F.3d 760, 767 (5th Cir. 2000) ("Discovery must relate solely to a specifically alleged factual dispute, not to a general allegation."); *see also Richardson v. United States,* 2011 WL 2682963, *3 (S.D. Fl. July 11, 2011) ("discovery requests made under Rule 6 'should be denied if a Defendant does not state how they [will] help him prosecute his section 2255 motion.'" (quoting *United States v. Hollis*, No. 3-04-cr-00140-HRH-JDR, 2010 WL 892196 (D. Ak March 10, 2010).

[3] Although the Government has also attached proposed interrogatories and proposed requests for production to its motion, these materials are defective because they fail to satisfy the procedural requirements of Rule 33 and Rule 34 of the Federal Rules of Civil Procedure, as is explained in Section IV, *infra*. Moreover, the Government has failed to establish "good cause" for the information sought by the interrogatories and requests for production. The Government has not attempted to demonstrate the materiality of the information sought by each request, explain how

3

attorneys whose ineffectiveness is alleged in that claim. What is missing from this chart is a column that sets out a specific request for information pertaining to that claim.

Similarly, the body of the Government's motion fails to identify with particularity the information it seeks as to each IAC claim. Indeed, not only does the Government fail to specifically articulate what type of information or documents it hopes to find that might support its defense, it rather boldly seeks to conduct the very type of "fishing expedition" through counsel's files that Rule 6 prohibits. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) ("Simply put, Rule 6 does not authorize fishing expeditions.").

For example, the Government requests "permission to speak with Messrs. Murrell and Cohen and review their files and documents limited to these subject areas insofar as that may enable the United States to respond meaningfully as to whether Troya counsel's delegation was reasonable or not within the range of the Sixth Amendment." Doc. 98 at 2-3. This does not comply with Rule 6. The fact that the Government proposes to limit its request to the "subject areas" of the § 2255 motion is not a substitute for stating in advance the specific types of documents and information that it seeks. The Government is still attempting to cast a wide net in the mere hope that it might ultimately turn up something "that may enable the United States to respond meaningfully" to the IAC claims. That plainly fails to satisfy Rule 6's requirement that the moving party identify with particularity the items it seeks in discovery.

Similarly, the Government requests an "order direct[ing] defense counsel to provide all information to the United States that counsel believes is reasonably necessary to respond to the allegations of ineffectiveness[.]" *Id*. at 7. Once again, this request fails to comport with Rule 6. Not only does the request fail to identify with particularity any of the documents or information

---

the requests relate to the specific allegations in the § 2255 motion, nor make a showing of how the information sought by each request would support a claimed defense.

that it believes would be "reasonably necessary to respond to the allegations of ineffectiveness," the Government effectively requests that prior counsel conduct a fishing expedition of their own files on the Government's behalf. The Government's proposed order is problematic in another respect, as well. As is explained in more detail in Section V, *infra*, prior counsel are governed by rules of professional conduct that prohibit them from making their own determinations about the scope of the waiver and divulging privileged attorney client communications and work product; any such disclosure must be conducted pursuant to judicial supervision to safeguard against unauthorized disclosures.[4]

**B.      The Government has not established the materiality of the information it seeks.**

Under Rule 6, the Government "must provide reasons for the request." Rule 6(b), *Rules Governing Section 2255 Proceedings for the United States District Courts*. That "reason" cannot be pitched at the level of generality the Government offers in its motion – *i.e.*, that the requested information "may enable the United States to respond meaningfully" to the § 2255 motion. Doc. 98 at 2-3. Rather, the moving party must make a "fact specific showing of good cause under Rule 6." *Stanford*, 266 F.3d at 460 (6th Cir. 2001). Moreover, the "burden of demonstrating the materiality of information requested is on the moving party." *Id*.

This Court's Order noted the Government's prior request failed to make the requisite showing of "good cause" under Rule 6. The Government has made no effort between its initial motion and its renewed motion to correct that defect. It still has not made a fact specific showing as to how the requested discovery relates to the specific allegations in the § 2255 motion, nor has

---

[4] Although the Government has submitted proposed interrogatories that appear to be directed to prior counsel, the interrogatories are defective. *See* Section IV, *infra*.

it articulated how the requested discovery would support any alleged defense to the § 2255 motion.

The chart the Government proffered as Appendix A is not a substitute for a proper showing of "good cause"; at best, it is merely an outline of the IAC claims alleged in the § 2255 motion. In order to satisfy the procedural requirements of Rule 6, the Government would need to include at least two more columns in that chart: (1) a column that identifies the specific item of information sought as to each IAC claim; and (2) a column that explains the materiality of each item – i.e., how the requested discovery would support any alleged defense to the specific allegations raised in the § 2255 motion.

The Government's renewed motion has not cured any of the defects identified by this Court's prior Order. Contrary to the requirement of Rule 6, its requests for discovery are not "specific, limited, and reasonably calculated to lead to evidence in support of" any claimed defenses. *Braden v. Bagley*, 2007 WL 1026454 at *4 (S.D.Ohio Mar. 30, 2007). The Government has still not provided the requisite information required by Rule 6 to make a proper "good cause" showing, so the Court is not authorized to permit the Government to conduct discovery. Accordingly, the Government's request that this Court reconsider its prior Order and permit it to conduct discovery should be denied.

**III.    The Government's request "in the alternative" for a hearing to determine if the attorney client privilege has been waived improperly attempts to bypass Rule 6.**

The Government's motion proposes that if the Court is not inclined to issue an order directing prior counsel to supply the privileged documents, correspondence, and affidavits regarding conversations about the issues alleged in the § 2255 motion, it should "in the alternative … [order] a hearing to determine if Movant has waived his attorney-client privilege as to the matters referred to in his pleadings relating to his ineffective assistance of counsel

6

claims." Doc. 98 at 3-4. The Government's request should be denied because, once again, it improperly seeks to bypass the "good cause" requirements of Rule 6.

As this Court has already recognized, the Government's request for an order finding the attorney-client privilege has been waived is simply a request to conduct discovery of prior counsel.[5] As such, the request is governed by Rule 6 and cannot be granted until the requisite "good cause" showing is made. The Government's new proposal—that if it cannot satisfy its burden under Rule 6 to obtain discovery from counsel, then a hearing should be held "in the alternative" to determine whether the privilege has been waived—is hardly an acceptable alternative. The Government is once again simply trying to bypass Rule 6. Its "alternate" proposal for a hearing must therefore fail for the same reason its initial request for an order did; namely, the Government is not entitled to such a hearing until it can meet the threshold "good cause" standard for seeking discovery from prior counsel in the first place.[6]

## IV.   The Government's proposed interrogatories and requests for production are defective.

The Government has submitted 77 proposed interrogatories[7] and requests for production of 69 categories of documents, record, or files.[8] These requests are defective. To begin with, the

---

[5] As the Government previously admitted, prior counsel stated they were ethically prohibited from divulging privileged work product and attorney-client communications, so the Government sought an order that the privilege had been waived in order to compel prior counsel to disclose its privileged documents and communications in their entirety.

[6] The Government's request directly contradicts the purpose of Habeas Rule 6. Under the habeas rule, a party must make a good cause showing before the civil or criminal rules of discovery even come into play. As this Court is well aware, the privilege doctrine is a defense to a discovery request pursuant to Fed. Rule Civ. Pro. 26. Therefore, an assertion of privilege is a defense that Mr. Troya would assert in response to a specific discovery request and only after that request was authorized by this Court pursuant to Habeas Rule 6.

[7] Although the Government's proposed interrogatories lists 30 numbered interrogatories, many of the proposed interrogatories contain multiple lettered subparts that constitute discrete questions.

Government has failed to make the threshold "good cause" showing to justify such interrogatories and requests for production. Much like the motion itself, the requests are overly broad, unduly burdensome in their scope, and constitute an attempt to conduct an improper fishing expedition. Moreover, the interrogatories and requests for production are procedurally deficient for failing to comply with the relevant provisions of Civil Rules 33 and 34. These various procedural defects are outlined below. However, Mr. Troya explicitly reserves the right to lodge additional objections to the proposed interrogatories and requests for production if and when the Government cures the relevant defects and resubmits them for the Court's consideration.

**A.      The Government has failed to make the threshold "good cause" showing for each proposed request.**

Each proposed interrogatory and request for production constitutes a discrete request for discovery that must satisfy the Rule 6 "good cause" requirement. The Government has neither provided a reason for its requests, nor attempted to make the requisite "good cause" showing for each request. At a minimum, the Government must make a fact specific showing about the materiality of the particular request and/or how the request is reasonably calculated to lead to evidence in support of any claimed defense to the specific allegations contained in the § 2255 motion. Until and unless the Government makes such a showing as to each request, the proposed interrogatories and requests for production are procedurally deficient under Rule 6 and should be denied.

---

Under Rule 33(a)(1) of the Federal Rules of Civil Procedure, "all discrete subparts" are counted as separate interrogatories.

[8] Although the Government's requests for production contains 34 numbered items, many of the proposed requests contain multiple lettered subparts that identify separate categories of documents, records, or files.

**B.     The proposed interrogatories are procedurally defective because they exceed the limit of 25 interrogatories established by Civil Rule 33(a)(1).**

Under Civil Rule 33(a)(1), "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Here, the Government has submitted a list of 30 numbered interrogatories; however, once the separately enumerated subparts are included, the number of interrogatories rises to 77.  Either way, the proposed interrogatories are procedurally defective because they exceed the 25-interrogatory limit imposed by Rule 33(a)(1). *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 369 (S.D.N.Y. 2010) (16 numbered interrogatories containing 49 subparts, many of which amounted to discrete questions in and of themselves, exceeded 25-interrogatory limit).

**C.     The proposed interrogatories and requests for production are procedurally defective because they are directed to non-parties.**

Under Civil Rule 33(a)(1), a party may serve interrogatories "on any other party" to the action. Interrogatories, however, may not be served on a person who is not a party. *See* 7-33 Moore's Federal Practice - Civil § 33.20 (2017) ("Interrogatories may not be served on a person who is not a party[.]"). The same is true of Civil Rule 34, which governs requests for production. *See* Rule 34(a) ("A party may serve *on any other party*…") (emphasis added); *Transamerican Ref. Corp. v. Dravo Corp.*, 139 F.R.D. 619, 621 (S.D. Tex. 1991) ("Rules 33 and 34 generally apply to parties").

Although the Government's proposed interrogatories are styled as "Respondent's Proposed First Set of Interrogatories to Petitioner," the interrogatories are not, in fact, directed to the Petitioner, Mr. Troya, but rather to his former counsel. His former counsel are not parties to the § 2255 action. As such, the interrogatories are procedurally defective and must be rejected. *United States v. Lot 41, Berryhill Farm Estates*, 128 F.3d 1386, 1397 (10th Cir. 1997) (district

9

court properly refused to allow claimant's discovery requests, which consisted of large number of interrogatories directed to nonparties). Similarly, to the extent that the Government's requests for production are directed at former counsel, they too are defective under Civil Rule 34 and must also be rejected.

**V.      The Government's renewed motion repeats its previously rejected argument about counsel control of the scope of any implied waiver and ignores the need for judicial supervision to ensure any disclosure of privileged information does not exceed the narrowly tailored scope of any implied waiver.**

Following binding caselaw, this Court denied the Government's first motion, stating: "a §2255 movant can waive his attorney-client privilege if the privileged communication is relevant to his claims of ineffective assistance of counsel but 'the precise boundaries of the waiver will vary from case to case, and in many instances will require careful evaluation by the district court.' *Johnson v. Alabama*, 256 F.3d 1156, 1179 (2001)" Doc. 93 at 2. Ignoring this ruling and the supporting caselaw, the Government continues to assert counsel, not the Court, decides the boundaries of the waiver, again arguing, "[o]nce a client makes allegations against an attorney, the lawyer may exercise his/her discretion as to whether to disclose such information as may be reasonably necessary to defend against the allegations; no court supervision is necessary." Doc. at 6. In so arguing, the Government again attempts to bypass the process of narrowly tailoring the scope of any waiver to the specific allegations contained in the § 2255 motion.

Once again, the Government's motion conflates two distinct concepts: *express* and *implied* waivers. Although Mr. Troya acknowledges that the ineffective assistance of counsel claims in his § 2255 motion necessarily implicate the issue of an implied waiver, he has never expressly waived the attorney-client privilege. This difference is material. As one court has explained:

10

> [W]aivers by implication differ materially from the more traditional express waivers. An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public. Disclosures that effect an express waiver are typically within the full control of the party holding the privilege; courts have no role in encouraging or forcing the disclosure--they merely recognize the waiver after it has occurred. Because these express waiver cases do not involve the court-ordered disclosure of privileged information after the client has asserted a claim or defense that placed at issue the nature of the privileged material, we do not find them particularly useful in ascertaining the scope of [a habeas petitioner's] waiver of his attorney-client privilege under the fairness principle.

> We look, instead, to the doctrine of implied waiver. The doctrine of implied waiver allocates control of the privilege between the judicial system and the party holding the privilege.  The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it. Essentially, the court is striking a bargain with the holder of the privilege by letting him know how much of the privilege he must waive in order to proceed with his claim.

*Bittaker v. Woodford*, 331 F.3d 715, 719-20 (9th Cir. 2003) (internal quotation marks, footnotes,

and string citations omitted).

Thus, contrary to the Government's suggestion, an implied waiver does not result in an automatic forfeiture of the privilege, as the Government seems to suggest in its motion. Rather, when an implied waiver is asserted, the following obligations are triggered:

> Three important implications flow from this regime. The first is that the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it. Because a waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose. Courts, including ours, that have imposed waivers under the fairness principle have therefore closely tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question.
> Second, the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition.

Finally, if a party complies with the court's conditions and turns over privileged materials, it is entitled to rely on the contours of the waiver the court imposes, so that it will not be unfairly surprised in the future by learning that it actually waived more than it bargained for in pressing its claims. It follows that the court imposing the waiver must be able to bind the party receiving the privileged materials to the court's limitations and conditions. The party receiving and using privileged materials pursuant to a court-imposed waiver implicitly agrees to the conditions of the waiver; if it does not wish to be bound, it is free to reject the materials and litigate without them, but it must do so before any disclosure is made.

*Bittaker*, 331 F.3d at 720-21 (internal quotation marks and citations omitted).

In other words, once an implied waiver has been asserted, it does not end the discussion about a habeas petitioner's ability to rely on the privilege; rather, it requires additional process so that the scope of any waiver can be adjudicated and narrowly tailored to the specific allegations in the § 2255 motion. The Government cannot simply bypass this process and ask for a blanket finding that the privilege has been waived; the Court must be given an opportunity to accurately determine and narrowly tailor the precise boundaries of any implied waiver. Moreover, even after the scope of any such waiver has been determined, the law requires judicial supervision over the dissemination of otherwise privileged information to prevent inadvertent exposure of privileged information that is not implicated by the § 2255 motion.

There is no question the files and client communications of trial and appellate counsel for Mr. Troya developed in his defense are attorney-client privileged. The attorney-client privilege protects "confidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Mr. Troya does not waive that privilege, and does not give his former attorneys authority to do so. *See United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990). The attorney case files are also protected by the work-product privilege. The work-product privilege is broader than the attorney-client privilege and protects "materials prepared by the attorney, whether or not disclosed to the client" and "material

12

prepared by agents for the attorney." *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979); *see Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1421 (11th Cir. 1994) (lawyers must be able to work in privacy free from unnecessary intrusion by opposing parties and counsel). The work product doctrine applies in criminal cases. *United States v. Nobles*, 422 U.S. 225, 236 (1975). Because of Fifth and Sixth Amendment implications, "Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital." *Id*. at 238.

A habeas petitioner's implied waiver of attorney-client privilege is limited to areas related only to the claims of ineffective assistance of counsel asserted in the § 2255 motion. *Johnson v. Alabama*, 256 F.3d at 1179) ("Simply put, when a habeas petitioner such as Johnson launches an attack on the reasonableness of his attorney's strategy in conjunction with a claim of ineffective assistance of counsel, he puts at issue his communications with counsel *relating to those strategic choices*.") (e.s.); *see United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009); *Barrett v. United States*, No. 09-CIV-105-JHP, 2009 WL2982670, at \*5 (E.D. Okla. Sept. 11, 2009) (finding movant's waiver of attorney-client privilege "is limited to claims of ineffective assistance of counsel claims as raised in the § 2255 motion").

So while a habeas petitioner may impliedly waive the attorney-client privilege and work product protection by claiming trial counsel were ineffective, that waiver is strictly limited to information relevant to the petitioner's specific claims of ineffectiveness. It is not a broad waiver of the attorney-client privilege or work product protection for all purposes. *See United States v. Pinson*, 584 F.3d at 978) ("when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney *necessary to prove or disprove his claim*") (emphasis added); *In re Lott*, 424 F.3d 446, 453 (6th

Cir. 2005) ("Implied waivers are consistently construed narrowly. Courts must impose a waiver no broader than needed to ensure the fairness of the proceedings before it. A broad waiver rule would no doubt inhibit the kind of frank attorney client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote.") (internal quotation marks & citations omitted); *see also Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) ("[C]ourt must impose a waiver *no broader than needed* to ensure the fairness of the proceedings before it. Because a waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose. Courts . . . that have imposed waivers under the fairness principle have therefore *closely tailored the scope of the waiver* to the needs of the opposing party in litigating the claim in question.") (emphasis added). In other words, the limited waiver implied by a petitioner's allegation of ineffectiveness is not a justification for the Government to rummage through the confidential files of the petitioner's counsel or engage in unfettered and unsupervised questioning of prior counsel regarding privileged information and communications.

If the Court finds good cause has been established and ultimately grants any of the Government's discovery requests, this Court should set definitive limits on any implied waiver and provide strict judicial supervision to assure such limitations are stringently observed. The ABA advises that for an attorney to ethically provide otherwise privileged materials or communications to the government, it should be done only under judicial supervision:

> Permitting disclosure of client confidential information outside court-supervised proceedings undermines important interests protected by the confidentiality rule. Because the extent of trial counsel's disclosure to the prosecution would be unsupervised by the court, there would be a risk that trial counsel would disclose information that could not ultimately be disclosed in the adjudicative proceeding.[FN] Disclosure of such information might prejudice the defendant in the event of a retrial.[FN] Further, allowing criminal defense lawyers voluntarily to assist law enforcement authorities by providing them with protected client

information might potentially chill some future defendants from fully confiding in their lawyers.

*ABA Op*. 10-456 at 4-5 [footnotes omitted].

While the Government asks this Court to disregard the ABA's Ethics Opinion, *Renewed Motion* at 6, courts have utilized it as a practical resource that serves as an equitable tool to provide wise judicial supervision in such an ethical quagmire. *See Cross v. United States*, 2016 U.S. Dist. LEXIS 122868, *5-*10 (S.D. W. Va. 9/12/16) (noting that although ABA Formal Op. 10-456 is not binding on the court, "it provides a reasoned discussion of the competing interests that arise in the context of an ineffective assistance of counsel claim and their impact on the continued confidentiality of attorney-client communications"); *see also Daugherty v. Dingus*, 2013 U.S. Dist. LEXIS 55617, *18-*21 (S.D. W. Va. 4/18/13) (relying on ABA Formal Op. 10-456 to grant petitioner's motion to prohibit trial counsel from communicating with counsel for the West Virginia Attorney General; "Unsupervised communications between the Petitioner's or Movant's trial and appellate attorney and the attorney for the State or the United States in Section 2254 and Section 2255 proceedings are prohibited. This process insures against a broader disclosure of confidential and attorney-client privileged information than necessary respecting the Petitioner's or Movant's claim of ineffective assistance of counsel"); *Thomas v. United States*, 2017 U.S. Dist. LEXIS 13585, *2-*3 & n.1 (N.D. Iowa 2/1/17) (directing trial counsel to file with the court an affidavit "that responds only to the movant's specific allegation(s)" of IAC, but advising trial counsel to read ABA Formal Op. 10-456 and that if "counsel concludes that he or she cannot comply with this order without violating an attorney-client privilege or if counsel concludes that he or she cannot reasonably determine the scope of the waiver of the attorney-client privilege, counsel is directed to file a response, *in camera* with a request for a protective

15

order if necessary, that specifically states the reasons for his or her conclusion."; also permitting movant's counsel to file objections.).

Although many judicially-supervised procedures might be available for this purpose – for example, use of depositions or the submission of interrogatories – it is premature at this stage to employ such mechanisms because the Government has not yet established it is even entitled to any discovery. Should this Court find the relevant standard for Rule 6 discovery has been met, Mr. Troya requests an opportunity to brief the proper scope of the implied waiver and the appropriate means to effectuate any discovery. Such judicial supervision would ensure that Mr. Troya can adequately assert the privilege and protect himself from unauthorized disclosure of undiscoverable confidential information.

Respectfully submitted,

| | |
|---|---|
| */s/ Steven H. Malone* | */s/ D. Todd Doss* |
| STEVEN H. MALONE | D. TODD DOSS |
| Steven H. Malone, P.A. | Assistant Federal Defender |
| 1217 South Flagler Drive | Federal Defender's Office, MDFL |
| Second Floor | 201 South Orange Ave., Ste. 300 |
| West Palm Beach, FL 33401 | Orlando, FL 32801 |
| Tele: 561-805-5805 | Tele: 407-648-6338 |
| Email: stevenhmalone@bellsouth.net | Email: todd_doss@fd.org |
| Florida Bar No. 305545 | Florida Bar No. 0910384 |
| *Counsel for Daniel A. Troya* | *Counsel for Daniel A. Troya* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in this case, either via transmission of the Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ *Steven H. Malone*
STEVEN H. MALONE

/s/ *D. Todd Doss*
D. TODD DOSS

17