**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**DANIEL TROYA,**

      **Movant,**

v.                                                    **Civil Action No. 16-80700-Civ-Bloom**

**UNITED STATES OF AMERICA,**

      **Respondent.**

_____/

**AMENDED REPLY TO UNITED STATES' AMENDED RESPONSE IN OPPOSITION**
**TO TROYA'S MOTION FOR DISCOVERY AND MEMORANDUM IN SUPPORT**

Daniel A. Troya, through undersigned counsel, files this reply in support of his Motion

for Leave to Conduct Discovery and Memorandum in Support and states:

    **I.**    **The Government's Response Misstates the Law Governing Discovery in Capital**
          **2255 Cases.**

In his initial motion Mr. Troya provided the law governing discovery in capital § 2255

cases and explained why it is appropriate and necessary in his case. Doc. 34.  In this Amended

Reply Mr. Troya will only address the several misstatements of the law contained in the

government's response to that motion.

The theme of the government's response is that there is an onerous standard for obtaining

discovery in § 2255 cases. Though the government explicitly makes that claim, it cites no

authority. Doc. 99 at 2 ("The legal standard for 'good cause' is a high bar"). Contrary to the

government's assertions, [1] the standard for obtaining discovery, as the Supreme Court explained

---

[1] The cases the government relies upon do not provide this Court with much guidance in deciding
Mr. Troya's case because, rather than clarifying "good cause", they deny discovery on very
specific factual grounds. In *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006), the court
rejected discovery because the request "relie[d] heavily" on two affidavits that were retracted by
the affiants. In *Saucedo v. Brazelton,* 2015 WL 4481795 (N.D. Cal. 2015), discovery was denied
because 1) the request was based on a misreading of the record, 2) the relevance of the discovery

in *Bracy v. Gramley*, is not a high bar at all. As explained in Hertz & Liebman's **Federal Habeas Corpus Practice and Procedure**:

> The Supreme Court's decision in *Bracy v. Gramley* rather clearly rejects any requirement of a "*prima facie*" case of relief in advance of discovery. First, *Bracy* omits any reference to *Harris's* "*prima facie*" language, relying instead on a considerably more forgiving formulation of the "good cause" rule taken from the same case, which only requires some " '*reason to believe* that the petitioner *may*, if the facts are fully developed, be able to develop that he is … entitled to relief.' " 520 U.S. at 908-09 (emphasis added)…In addition, the Court rejected the court of appeals' conclusion that discovery was properly denied "because petitioner had failed to uncover any evidence of actual bias without discovery," so that "'the probability is slight that a program of depositions aimed at crooks and their accomplices…will yield such evidence.'" *Id*. at 903. Finally and most importantly, *Bracy* held that denying discovery was an abuse of discretion even though the petitioner's factual allegation of unconstitutional, case-specific judicial bias was concededly "quite speculative," "only a theory at this point," "not supported by any solid evidence," and premised on facts that "might be equally likely" to support an inference contrary to the one the petitioner advanced. *Id*. at 905, 909.

Randy Hertz & James S. Liebman, **Federal Habeas Corpus Practice and Procedure**, Sixth Edition § 19.4[c], n.17 (Matthew Bender). In this case, Mr. Troya has certainly shown "reason to believe" he is entitled to relief after full factual development of his claims and evidentiary hearing.

The government continues to repeat an erroneous standard of review for discovery in § 2255 cases. Just as it did in its response to Mr. Troya's initial discovery request, Doc 49 at 3, the government informs this Court that § 2255 is a very narrow remedy "designed to redress only 'fundamental defect[s] which inherently [result] in a complete miscarriage of justice.'" Doc. 99 at 3. This is a misreading of Supreme Court law. § 2255 provides a remedy for four types of

---

requested had been decided on direct appeal, 3) the claim was unexhausted, 4) § 2254(d) barred discovery on the claim in federal court, 5) § 2254(e) prevented the district court from accepting new evidence in federal court, and 6) the discovery motion was not timely filed. In *Rivera v. Humphrey*, 2015 WL 3648054 (S.D. GA. 2015) discovery seeking documents related to suspected sexual abuse for an IAC claim was denied because 1) all parties agreed that the documents were "not available at the time of Mr. Rivera's trial or even at his state habeas proceeding…" and 2) Mr. Rivera "adamantly denied that any abuse occurred".

2

claims: where a "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. 2255(a). The § 2255 statute was intended to provide all the protections of federal habeas corpus. "Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions." *United States v. Hayman*, 342 U.S. 205, 219 (1952). The language quoted by the government applies only to claims which are *not* based on violations of the Constitution or upon jurisdictional grounds. *See United States v. Addonizio*, 442 U.S. 178 (1979) ("But unless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited.") For such claims a movant does have to show "a fundamental defect which inherently results in a complete miscarriage of justice." *Id*. But Mr. Troya's claims here are based on either jurisdictional bases or constitutional violations, thus the government's argument is not germane to the issue before the Court.

The government also reiterates the canard that "[g]ood cause for discovery requires a showing to be made with factual support, demonstrating that the evidence sought would raise sufficient doubt about the defendant's guilt to undermine confidence in the result of the trial. *Arthur v. Allen*, 459 F.3d 1310 (11th Cir. 2006) *citing Schlup v. De[l]o*, 115 S.Ct. 851 (1995)." Doc 99 at 2. The government conflates the discovery standard with its specific application to Arthur's case. Perusal of the *Arthur* case shows the reason for the government's confusion. Good cause for discovery is demonstrated where the allegations "show reason to believe that the petitioner may, *if the facts are fully developed*, be able to demonstrate that he…entitled to relief." *Arthur* at 1311. In *Arthur*, the allegation was that he was actually innocent of the crime for which

he was convicted. Thus, to show good cause Arthur had to show that the evidence would "raise sufficient doubt about the defendant's guilt." The government extrapolates from this analysis that every habeas petitioner seeking discovery must demonstrate that the evidence sought would prove the petitioner's innocence of the crime. This clearly is not the law.

The government makes much of its contention that because discovery was provided pre-trial, there is no need to engage in the discovery process in habeas, *See* Doc. 99 at 4 *et passim*, though pre-trial criminal discovery has little or no bearing on habeas discovery pursuant to Rule 6. The scope of the discovery process in habeas is much broader than that allowed in pre-trial proceedings. Federal Rule of Criminal Procedure 16 provides only for narrow discovery, exempting, for example, "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Rule 16(a)(2). Habeas Rule 6, however, permits broad discovery once a showing of "good cause" is made. *See* Rule 6 (authorizing discovery under the Federal Rules of Criminal Procedure, the Federal Rules of Civil Procedure, or in accordance with the practices and principles of law). Moreover, habeas discovery allows for methods of discovery not contemplated pre-trial (e.g. the plain text of Rule 6 discusses interrogatories and depositions).

The government contends its supposed compliance with Rule 16 discovery effectively ends the matter when in fact it in no way resolves the issue before this Court regarding habeas discovery, as the caselaw discussed in the initial discovery motion and herein shows.[2]

---

[2] Even the Government's response to Mr. Troya's informal discovery letter was framed by Rule 16: the request "is overly broad and beyond the scope of either this District's Standing Discovery Order, or Rule 16, Fed. R. Crim. Proc." Doc. 49, Appendix B at 2.

**II.    Shifting Government Responses to Prior Mental Health Discovery Requests Require viewing all of the Government Responses with Skepticism.**

As it describes in some detail in its response, the government gave plainly inaccurate and misleading answers to the discovery requests concerning its mental health case and files. Doc. 99 at 19-24. This issue is discussed more fully in Section F, *infra*. The government's misrepresentations about experts it hired and supporting documents in its possession show at the least it is unable to effectively review its files for relevant responses to Mr. Troya's discovery requests. The government's similar representations it is not in possession of documents related to Mr. Troya's other discovery requests cannot be accepted without verification. Mr. Troya must be permitted access to the United States Attorney's Office files that bear on his claims in order to see for himself whether there are supporting documents within them.

**III. Reply to Response to Specific Discovery Requests.**

**A. Claim V (P. 41-53) - *Juror misconduct in providing misleading or incomplete information during voir dire*.[3]**

The Government says it has searched its files and located a single responsive juror questionnaire with a Post-It Note attached. Doc 99 at 5. That note shows someone conducted a criminal background investigation of the juror, as it describes a charge, a "failure to appear" warrant, and the resolution date of the charge. It is highly unlikely such an investigation would have been undertaken by the Government on only one prospective juror. This Court should order all of the Government's jury selection files disclosed to the movant.

---

[3] (Government framed) Request A. Documents about the alleged government investigation of prospective jurors (without any specific allegation of bias extraneous influence on the selected jury).

**B. Claim VI (P. 53-63) -** *failure to timely challenge the composition and selection of grand and petit juror members.* [4]**(Government framed) Request B. Documents or information in the possession of the Clerk, United States District Court, concerning the composition and selection of grand and petit juror members (Troya claim VI, pp. 53-63 of his Petition).**

The Government replies that the U.S. Attorney's Office does not maintain the information sought on this issue. Doc 99 at 5. This response is irrelevant because Mr. Troya requested the discovery from the United States District Clerk. The Government provides no reason the clerk should not provide this information to Mr. Troya. The Government also "suggests that this issue has been procedurally defaulted, as it could have been raised on direct appeal; therefore discovery should not now be ordered on such a claim." *Id.* The Government is mistaken. The discovery requested supports Mr. Troya's ineffective assistance of counsel claim, a claim that cannot be procedurally defaulted by failing to raise it on direct appeal. *Massaro v. United States*, 538 U.S. 500 (2003).

**C. Claim XI (P. 93-153).** *Ineffective retention and use of experts, and government's false and misleading expert testimony.* [5] **Request C. Documents about expert witnesses:**

Claim XI of the Section 2255 motion alleges both the ineffectiveness of counsel and in some subsections the independently unlawful conduct of the government in its use of expert testimony in the case. Doc. 25 at 112. Every section contains details of the errors, and is supported by reports of experts.

In response to petitioner's discovery requests relating to expert testimony, the government writes to the merits of the claims as if the courts have repudiated reliance upon a

---

[4] (Government framed) Request B. Documents or information in the possession of the Clerk, United States District Court, concerning the composition and selection of grand and petit juror members.

[5] (Government Framed) Request C. Documents about expert witnesses.

defense expert who reaches a different conclusion than that attested to for the government at trial. It argues:

> "To the extent this new expert challenges or contradicts the trial testimony, such a finding seven years after the original trial is irrelevant. New experts who have come to different conclusions, or who might in the future come to different conclusions than the United States' firearms experts, is insufficient to support an ineffective assistance claim. *See Floyd v. Secretary*, 638 Fed. Appx. 909, 920 (11th Cir. 2016) (death penalty case); *Davis v. Singletary*, 119 F.3d 1471, 1475 (11th Cir. 1997) ("[T]he mere fact a defendant can find, years after the fact, a mental health expert who will testify favorably for him does not demonstrate that trial counsel was ineffective for failing to produce that expert at trial.") (death penalty case); *see also Horsley v. State of Alabama*, 45 F.3d 1486, 1495 (11th Cir. 1995) ("That experts were found who would testify favorably years later is irrelevant.") (death penalty case)."

The government's legal position misstates the law, and the quote the government breezily relies upon for this and every other response to petitioner's claims regarding expert testimony is misleading standing alone. Contrary to the government's position, the courts do not automatically reject in habeas petitioner-favorable opinions that are either different from those provided by the government at trial, or from "new" experts not consulted by trial counsel. The government's response contains two distinct arguments: (1) "To the extent this new expert challenges or contradicts the trial testimony, such a finding seven years after the original trial is irrelevant;" and (2) "New experts who have come to different conclusions, or who might in the future come to different conclusions than the United States' firearms experts, is insufficient to support an ineffective assistance claim." The first plainly misstates the law, and the second, together with the quotes cited, is misleading standing alone.

First, the caselaw is replete with grants of postconviction relief where "a new expert challenges or contradicts the trial testimony," whether the trial testimony was that of state or defense experts. *See Hinton v. Alabama*, 134 S.Ct. 1081 (2014) (counsel's conduct constitutionally unreasonable in retaining **inadequate expert in firearms and toolmark evidence** based on mistaken belief funding was limited; remanded for prejudice determination);

7

*Gersten v. Senkowski*, 426 F.3d 588 (2nd Cir. 2005), *cert. denied sub nom. Artus v. Gersten*, 547 U.S. 1191 (2006) (counsel ineffective in child sex abuse case for failing to investigate the prosecution's medical and psychological evidence; testimony of **new experts** showed state's expert theories at trial no longer valid); *Richey v. Bradshaw*, 498 F.3d 344, 351-52 (6th Cir. 2007) ( that trial counsel was ineffective for hiring an arson expert whose only training had come at two seminars conducted by the state arson experts utilized by the prosecution in this case, accepting the expert's agreement with the state's experts without question, and listing the expert as a trial witness before learning of his opinion, which led to the state calling him at trial and eliciting his agreement with its own experts on the critical issue of whether accelerants were used; prejudice also shown by the testimony of two **new arson experts** first presented in post-conviction proceedings); *Showers v. Beard*, 635 F.3d 625 (3rd Cir. 2011) ( trial counsel ineffective for failing to present expert medical testimony by a forensic pathologist to rebut the prosecution's medical expert testimony; **new expert** testifying in postconviction opined death more likely resulted from suicide from overdose rather than homicide); *Thomas v. Clements*, 789 F.3d 760 (7th Cir. 2015), *cert. denied,* 136 S.Ct. 1454 (2016)( trial counsel ineffective for failing to consult forensic pathologist to review the autopsy findings and evaluate the reliability of the conclusions reached by the prosecution's pathologist death resulted from intentional strangulation; **new expert** pathologist reconciled Thomas's statement and the evidence to conclude the strangulation was accidental). The cases cited above do not even include the numerous ones in which relief was granted for failure to effectively use mental health expert evidence at the sentencing phase of a capital trial where new experts were presented postconviction.

The government's second proposition, and its supporting quotes, that it is insufficient to show "new" defense experts have come to different conclusions than government experts, is accurate as far as it goes. But the proposition and quote relied upon is but one observation in the courts' far more nuanced explanation of the standard for judging a *Strickland* or *Napue* claim involving experts. True, the courts hold it is not sufficient for a habeas petitioner to simply posit the opinions of new experts; however, the courts also hold it *is* sufficient to prove a *Strickland* expert claim where a petitioner is able to demonstrate the "new" expert could have testified to the postconviction opinion at the time of trial (as well as proof of the resulting prejudice).

In *Horsley*, the case in which the quote cited by the government originated, the Eleventh Circuit reviewed a claim in which the petitioner asserted trial counsel should have presented expert mental health testimony to show his "vulnerability to domination by his codefendant." *Id.* at 1493. The District Court, after an evidentiary hearing, had concluded the petitioner "'presented no evidence that it was reasonably probable that experts such as those who testified at the evidentiary hearing were available' at the time of the 1977 trial. The district court also found that "there was no evidence that state funds were available for such experts in 1977 and that no evidence was presented about the practice in 1977 for presentation of mental state evidence when the defendant appeared to be lucid and attentive with normal intelligence." *Id.* at 1494.

The Eleventh Circuit, after quoting *Elledge v. Dugger*, 823 F.2d 1439, 1447 n. 15 (11th Cir.1987), wrote "… to prove prejudice by failure to investigate and failure to produce a certain kind of expert witness, a habeas petitioner must demonstrate a reasonable likelihood that an ordinarily competent attorney conducting a reasonable investigation would have found an expert

similar to the one eventually produced." *Id*. at 1495.  Concluding the petitioner in that case had

not, the Court reasoned:

> Based on a review of the record, we conclude that Horsley has made no showing that it was reasonably probable that an ordinary, reasonable lawyer given the constraints of time and money Horsley's counsel faced and using reasonable diligence would have discovered mental health experts who would have testified as did Dr. Phillips and Dr. Lyman.[FN] **That experts were found who would testify favorably almost twenty years later is irrelevant.** The record in this case simply does not demonstrate that either of Horsley's experts would have come to Monroe County, Alabama to testify in 1977. The record also does not show that other experts who would testify favorably to the plaintiff would have been available at that time. [FN] The record fails to demonstrate what kind and how much investigation a reasonable lawyer would have made *in the circumstances of this case*. As in *Elledge*, we make no comment on whether similar experts were reasonably discoverable or whether a source of funds would have made their testimony possible. We merely hold that the record reveals too little to demonstrate the likelihood of such an occurrence. Accordingly, Horsley has failed to demonstrate that he was prejudiced by counsels' alleged failure to investigate his mental condition and failure to produce a favorable expert witness. [FN]

*Horsley*, 45 F. 3d at 1495. (boldface supplied, italics in original).  The subsequent cases cited by

the government, *Floyd* and *Davis*, adopt similar reasoning in the same context of assessing

whether the petitioners met *Strickland*'s performance and prejudice requirements. But those

Courts most assuredly do not, as the government argues, preemptively reject the opinion of a

petitioner's "new" expert as "insufficient."

### 1.     *Firearms and Toolmark Testimony*.

Mr. Troya alleges both ineffective use of an expert by trial counsel and significantly

flawed ballistics testimony was presented by the government, and that claim was supported by a

report of an expert who could have testified as such at the time of trial. Doc. 25 at 123, Appendix

D-3. The government refuses to provide the requested discovery claiming the requests are merely

speculative and not sufficiently specific, pre-trial discovery was provided,[6] cross-examination

was afforded,[7] and claims to not have any documents relative to the Indian River Crime Lab.[8]

---

[6] See *supra* at Section I why not appropriate.
[7] See *supra* at Section I why not appropriate.

Doc. 49 at 10-12. The government alleges these erroneous assertions in a conclusory fashion, while overlooking the substantially detailed claim, affidavit, and discovery motion filed by Mr. Troya. Doc. 25, at Appendix D-3, and Doc. 34.

Mr. Troya specifically referenced his claim and supporting affidavit when requesting discovery related to Claim XI. Doc. 34 at 11. Mr. Troya alleged that the ". . . information requested is essential to demonstrating the significant deficiencies in the testimony and other evidence presented at trial regarding ballistics and firearm identification." Id. The claim itself specifically alleges that, "an expert opinion that ammunition components 'match' each other is not grounded in empirical science; it involves a subjective qualitative judgment by an examiner based on unarticulated standards and no statistical foundation for estimation of error rates." Doc. 25 at 125. Mr. Troya further alleged in the claim the specific deficiencies demonstrating the lack of scientific bases for the supposed science and supposed matches testified to by the government experts. Doc. 25 at 131- 139.

The specificity of these claims belies the government's misguided assertions that Mr. Troya's claims are merely speculative. The requested discovery goes directly to whether the Indian River Crime Lab and its expert analysts engaged in following protocols and procedures that comport with the scientific rigor necessary to provide a sufficient foundation to establish reliability and admissibility. Such factual development is precisely what Rule 6 contemplates in permitting habeas petitioners, such as Mr. Troya, to fully develop the facts relating to their properly pled claims.

---

[8] Mr. Troya specifically seeks to issue a subpoena *duces tecum* to the Indian River County Sheriff's Office Crime Laboratory. Doc. 34.

*Cell Tower Tracking Expert*[9]

Here the government repeats its assertion that a postconviction movant cannot successfully challenge the trial testimony or government expert opinion with that of a "new" expert. Doc. 49 at 14. The movant has addressed the insufficiency of that legal analysis above, but that argument here completely misses the allegations in this case, where the movant relies on the opinion of the very expert retained by the defense at trial, Jeff Fischbach, to demonstrate the misleading nature of the government's trial testimony regarding cell tower locating.  Mr. Fishbach's detailed report prepared postconviction is attached to the § 2255 motion, together with the allegations. This claim is plainly in play, and is a substantial one.

The movant requests subpoenaes *duces tecum* to the phone companies issue for the requested documents, though it is unlikely such records continue to be maintained at this date by the cellphone companies.

**D. Claim XVI (p. 221-225) – *Brady/Giglio claim regarding promises made to cooperators, a*nd Claim XV-IAC (p. 207-225)- *Cross of cooperators*[10]**

The Government again points to discovery it provided before trial, as well as its representations there were no promises made to cooperators beyond those disclosed. As set forth in the § 2255 motion, the subsequent treatment of these witnesses suggests otherwise. The Government categorically refuses to release NADDIS (Narcotics and Dangerous Drugs Information System) files on witnesses related to the case "without a specific court order." Doc. 99 at 16. This Court should enter one, so the movant can independently assess the information gained from and promises made to cooperating witnesses.

---

[9] As framed at Government Response P. 12: Sub-request C2. Documents about cellular telephone evidence (Troya claim XI from p. 144 of his Petition).

[10] (Government framed) Request D. Documents concerning Brady and or Giglio claims concerning cooperating witnesses.

**E.  Claim XII, Section 12 (p. 182-187):** *The false vouching the government would continue to investigate and prosecute Danny Varela*, **and Claim XVII, Section 2 (p. 226-239)-** *The Government's violation of Brady and Napue in failing to disclose exculpatory information about Varela and others*.[11] **Request E (as framed by government). Investigating Varela Further.**

Tellingly, the Government does not respond to subsection (e), which requests information relating to any continued investigation of Mr. Varela since trial, promised to the jury by the Government at both guilt and penalty phase. The Government should be required to provide any documentation of a further investigation, as well as access of Mr. Troya's attorneys to its files relating to the witnesses described in the motion.

**F.  Claim XVIII (p. 239-240)** – *The Government's failure to disclose exculpatory evidence about Mr. Troya's brain damage*, **Claim XXV (p. 292-332)-** *Trial counsel's ineffective investigation and development of mental health evidence*, **and Claim XXVI (p. 332-432)-** *Ineffective failure to investigate personal history and background.*[12]

In its most recent amended response, the Government concedes it "regrettably and inadvertently provided incomplete and inaccurate information…" Doc. 96 at 23. A more thorough review of its conduct is required.

In its initial discovery response, the government carefully crafted responses to this discovery request, which the movant argued required further inquiry by this Court and counsel. The government represented first it "does not have any of these documents." Doc. 49 at 15. It then argued it provided discovery relating to Dr. Brannon pretrial and pursuant to the more recent informal discovery requests. Next, the government cited to emails in which counsel who was firewalled at trial says "she did not maintain records of any type relating to that assignment."

---

[11] Request E (as framed by government). Investigating Varela Further.

[12]  Request F (as framed by government). Documents concerning Troya's brain damage (Troya Claim XVIII at pp. 239-240), mental health evidence (Troya Claim XXV at pp. 292-332), and personal history and background (Troya Claim XXVI at pp.332-432).

Doc. 49 at n. 2. As for documents relating to any neuropsychiatrist consulted by the government to assess the defense PET scan, the government said there are "no such documents. While the United States did seek the original PET scan from Troya's counsel before the penalty phase began (CR-DE 795 at 7775), the United States ultimately did not engage the neuropsychiatrist to review or to interpret any PET scan."

Addressing the last response which is now known to be false first, the representation the government made previously was directly at odds with the one it made to the Court by then Assistant United States Attorney Kastrenakes. Shortly before trial, this Court held a hearing to discuss the discovery of the parties' experts' findings and raw data. During that hearing, the government told the Court it required the original PET scan of Mr. Troya's brain for review by a government-retained neuropsychiatrist. The request was very specific, and even implied then-AUSA Kastrenakes had already spoken with the government neuropsychiatrist about the first disclosure trial counsel had provided:

> MR. KASTRENAKES: And I have retained a neuropsychiatrist who is very familiar with PET Scans. I need the original PET Scan to be able to supply to him for possible rebuttal testimony. I told Mr. Eisenberg that. He sent us a color copy of an e-mail which doesn't cut it as far as the doctor's ability to review the raw data.

T7775.

After defense counsel reaffirmed at least one of their experts would refer to the PET scan at trial, the Court ordered the original produced for the government neuropsychiatrist and Mr. Eisenberg promised to comply later that day. T7777. The government's representation was detailed and clear. It was not that the government was going to, or was considering, retaining a neuropsychiatrist, but that it had already retained a neuropsychiatrist "very familiar with PET scans" to review the actual PET scan, not just colored photos attached to an email. This

government expert was not Dr. Brannon, because he is a psychologist and not a neuropsychiatrist, and was not trained to read PET scans. As Mr. Troya pointed out in his initial reply to the government's initial response, the government had to have retained a different expert – a neuropsychiatrist, specifically to review and provide an opinion on the PET scan.

But in its carefully worded initial response, the government contended "there are no such documents," and the United States ultimately *did not engage* the neuropsychiatrist to review or to interpret any PET scan." Doc. 49 at 16 (e.s.). What that meant was extraordinarily unclear. Mr. Troya has alleged the PET scan evidence supports his sentencing phase mitigation theory and based on the government's representations at trial is entitled to further discovery on this issue. Given the government's conflicting statements in its responsive pleading, as well as in its most recent amended pleading, Mr. Troya further requests this Court authorize depositions *duces tecum* of relevant parties, including former AUSA Kastrenakes, any government agent who spoke with representatives of Dr. Lopez, the staff of Dr. Lopez, the firewalled attorney Jacqueline Arango, and the DOJ Attorney who does not normally work in the Southern District U.S. Attorney's Office, but who appeared at trial, Richard Burns.

Both the firewalled attorney Arango and DOJ attorney Burns dealt specifically with issues relating to the mental health examination of Mr. Troya before sentencing.  It is not credible for Attorney Arango to say she did not maintain any files in the case, and Attorney Burns likewise had to have maintained files. Sworn statements should also be required both as to all discovery issues.

      **G.**    **Claim XXI, Section 14 (p.189-191)-IAC** *The defense sentencing summation ineffectively concedes uncharged shootings*

The government asks this Court to reject some of Mr. Troya's requests pertaining to collateral offenses because it had "specifically informed Troya about the pre-trial discovery it

had previously provided and where to find it" and it had provided pre-trial *Jencks* material. However, prior to trial the government assured this Court that "[t]he government has advised its agents and officers involved in this case to preserve all rough notes." Doc. 58 (11/27/06).  Mr. Troya has never been provided any rough notes from any agent or officer involved in this case. While those documents may not be discoverable pursuant to Rule 16, they are clearly discoverable pursuant to Habeas Rule 6.

Here, Mr. Troya expressly relies upon the Government's assertion in their response to his discovery motion that, "The United States has already provided the documentation in its possession related to these shootings during pre-trial discovery." Doc. 49 at 16.

As to specific law enforcement agencies, Mr. Troya seeks full disclosure of these documents via the issuance of *subpoena duces tecum* to the Palm Beach County Sheriff's Office, West Palm Beach Police Department, DEA, FBI, State Attorney's Office for the Fifteenth Circuit.

**H.  Claim XXIII (p. 267-284).** *Arbitrary Application of the Death Penalty.*[13]

To the extent the Government does not have the documents requested, the Movant requests the Court issue subpoenas *duces tecum* to the Bureau of Prisons and other agencies.

**I.   Claim XXIV (p. 284-292)** *Matamoros dangers preclude defense investigation prior and subsequent to trial.*[14]

The government responds to this request by saying the defense already has its own documents demonstrating dangers in Matamoros, Doc. 99 at 27, but that has never been a sufficient reason to deny discovery of information in the government's possession.

---

[13] Request H. Documents relating to alleged arbitrary application of the death penalty, including documents relating to post-conviction conditions of confinement at Terre Haute Penitentiary (Troya Claim XXIII at pp. 267-284).

[14] Request I. Documents relating to dangers of traveling to Matamoros, Mexico (Troya Claim XXIV at pp. 284-292).

**J. Documents withheld by the following agencies from Troya's prior written requests: ATF, DEA, FBI, BOP, FDLE, West Palm Beach Police Department, and Greenacres City Police Department, and documents withheld by non-governmental entity Crimestoppers.**

The government has indicated that they have none of these requested documents.

Subpoenas *duces tecum* are requested for the respective agencies.

**WHEREFORE**, Mr. Troya respectfully requests the Court grant him leave to conduct the requested discovery related to the claims contained in his § 2255 motion.

**Respectfully Submitted**,

| | |
|---|---|
| */s/ Steven H. Malone* | */s/ D. Todd Doss* |
| STEVEN H. MALONE | D. TODD DOSS |
| Steven H. Malone, P.A. | Assistant Federal Defender |
| 1217 South Flagler Drive | Federal Defender's Office, MDFL |
| Second Floor | 201 South Orange Ave., Ste. 300 |
| West Palm Beach, FL 33401 | Orlando, FL 32801 |
| Tele: 561-805-5805 | Tele: 407-648-6338 |
| Email: stevenhmalone@bellsouth.net | Email: todd_doss@fd.org |
| Florida Bar No. 305545 | Florida Bar No. 0910384 |
| *Counsel for Daniel A. Troya* | *Counsel for Daniel A. Troya* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in this case, either via transmission of the Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ *Steven H. Malone*
STEVEN H. MALONE


/s/ *D. Todd Doss*
D. TODD DOSS