**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-80700-CIV-BLOOM**


DANIEL A. TROYA,
            Movant


v.


UNITED STATES OF AMERICA,
            Respondent
_____/


## OMNIBUS DISCOVERY ORDER


**THIS CAUSE** is before the Court upon the Movant's Motion for Leave to Conduct Discovery and Memorandum in Support ("Discovery Motion"), ECF No. [34], and the Movant's Motion to Interview Jurors ("Interview Motion"), ECF No. [33].  The Movant is in the custody of the United States Bureau of Prisons after having been sentenced to death for the October 13, 2006, murders of two young children: Luis Damian Escobedo (three years old) and Luis Julian Escobedo (four years old). (Case No. 06-CR-80171 (Hurley, J), ECF No. [796]). The Movant was also sentenced to life imprisonment for the murder of the children's parents, Jose Luis Escobedo and his wife, Yessica Escobedo.  The Movant's convictions and sentences were affirmed on direct appeal. *United States v. Troya*, 733 F.3d 1125 (11th Cir. 2013).  The United States Supreme Court has denied a writ of certiorari.  *Sanchez v. United States*, 135 S.Ct. 2048 (2015).  On May 31, 2016, the Movant filed an Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. ("Amended Motion") ECF No. [25]. The Discovery Motion seeks leave of Court to conduct discovery to develop a factual record in support of his Amended Motion.  The Interview Motion seeks "to contact and interview [ ] jurors

to explore the circumstances of [alleged] misconduct and obtain the necessary facts to successfully present the information to this Court in a fully pled § 2255 motion and evidentiary hearing." ECF No. [33] at 3.   On November 14, 2016, the Government filed a Response in Opposition to the Motion for Discovery ("Response"), ECF No. [49]. On December 2, 2016, the Movant filed his Reply. ("Reply") ECF No. [61].   However, in the time between the filing of the Discovery and Interview Motions and the parties' Response and Reply, the undersigned's predecessor had, pursuant to Rule 4, Rules Governing Section 2255 Proceedings, conducted an initial review of the Movant's claims and determined that certain, but not all, of his §2255 claims should be dismissed.   ECF No. [29]. Therefore, the Response and Reply did not address the claims which had been dismissed nor did they address the Interview Motion as it was denied as moot by the dismissal.   On February 22, 2017, the undersigned vacated the dismissal.   ECF No. [86]. The Court further ordered the Government to file an amended response to the Movant's discovery requests, ("Amended Response") ECF No. [99], and the Movant to file an amended reply. ("Amended Reply") ECF No. [107]. On June 2, 2017,  the Court heard oral argument from the parties on certain of the issues presented in the Discovery Motion and Interview Motion. ("June Hearing")[1] ECF No. 115. After careful review of the parties' arguments and written submissions, the Discovery Motion is **GRANTED**, in part, and **DENIED**, in part.  The Interview Motion is **DENIED**.

---

[1]  The Court also heard argument on the Government's Renewed Motion for the Court to Enter an Order Holding that the Attorney-Client Privilege has Been Waived. ("Renewed Motion")  ECF No. [98]. During the hearing, the Court *ore tenus* ordered the Movant to produce documents to the Government where attorney-client privilege has been waived. ECF No. [115] at 47-65.  Following that production, the Court will confer with the parties to assess the status of the production and any remaining requests. The substance and merits of the Government's Renewed Motion is not discussed in detail herein.

### *Standard of Review*

Unlike the usual civil litigant in federal court, the Movant is not entitled to discovery as a matter of course. *Wellons v. Hall*, 554 F.3d 923, 925 (11th Cir. 2009) (Rule 6(a) provides that "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."). Movant shows such "good cause" for discovery by making specific allegations that establish reason to believe that, if the facts are fully developed, he will be able to demonstrate entitlement to habeas relief. *Id*. at 925. What constitutes "good cause" is expounded upon in the Advisory Committee Notes to Rule 6 of the Rules Governing Section 2254 Proceedings[2] to include reasons that are based, not in fantasy, but in specific allegations that give the court reason to believe that the movant's allegations, if proven, show that the movant is illegally incarcerated. However, "good cause for discovery cannot arise from mere speculation." *Arthur v. Allen,* 459 F.3d 1310, 1311 (11th Cir. 2006). Therefore, when considering entitlement to discovery pursuant to Rule 6, the Court must consider the underlying §2255 claims as plead in the Amended Motion in conjunction with the proposed discovery requests. To be sure, certain discovery could be appropriate and could demonstrate an entitlement to relief based on the factual allegations of the claims in the Amended Motion but the discovery, *as requested here*, may not demonstrate entitlement to relief. Without good cause, the discovery requests must be denied. Denying a party discovery does not necessarily mean that the underlying claim is entirely without merit; perhaps, the

---

[2] The Advisory Committee Notes to Rule 6 of the Rules Governing Section 2255 Proceedings state that the discussion in the Advisory Committee Notes for Rule 6 of the Rules Governing Section 2254 apply fully to both § 2254 and § 2255 proceedings.

discovery request is not drafted such that it would advance the claim past the factual allegations alleged in the Amended Motion. Nothing contained herein should be construed as a determination on the merits, or lack thereof, of the Movant's claims for Section 2255 relief.

### *Section 2255 Claims and Discovery Requests*

The Amended Motion contains *twenty-three* claims for relief with multiple sub-claims: (V) juror misconduct, (VI) trial counsel failed to timely challenge the composition and selection of the grand and petit jury venires, (VII) the statute that was used to convict and sentence the Movant to death is impermissibly vague, (VIII) denial of effective assistance of counsel when the Movant was charged with a non-existent crime of felony murder used to enhance his sentence - trial and appellate counsel, (IX) ineffective assistance of counsel for failing to move to dismiss the indictment - trial and appellate counsel, (X) ineffective assistance of counsel for failing to request a jury instruction on manslaughter, (XI) ineffective assistance of counsel for failing to retain competent experts, failure to consult with experts, failure to file motions to exclude govt. experts, and failure to object to Government expert testimony, (XII) ineffective assistance of counsel for failing to object to numerous trial errors, (XIII) ineffective assistance of counsel for failing to object to the use of juvenile convictions in aggravation, (XIV) ineffective assistance of counsel for failing to properly challenge the "three step process", (XV) ineffective assistance of counsel for failing to object to improper questioning of Government cooperating witness, (XVI) *Brady* and *Giglio* violations (promises made to certain cooperating witnesses), (XVII) *Brady* violations during sentencing, (XVIII) *Brady* violation for failure to provide evidence of defendant's brain damage, (XIX) ineffective assistance of counsel for failing to challenge battery conviction used in aggravation, (XX) ineffective assistance of counsel for

failing to object to jury instructions and verdict forms, (XXI) ineffective assistance of counsel for conceding defendant's involvement in two uncharged shootings, (XXII) ineffective assistance of counsel for failing to challenge the Government's evidence regarding an escape, (XXIII) the death penalty violates the Eighth Amendment, (XXIV) ineffective assistance of counsel for failing to move for appropriate relief  when counsel could not adequately investigate due to "life-threatening dangers", (XXV) ineffective assistance of counsel for failing to appropriately investigate mental health mitigation, (XXVI) ineffective assistance of counsel for failing to timely and effectively investigate the Movant's personal history and background, and (XXVII) cumulative effects of error.  ECF No. [25].

In his Discovery Motion, the Movant raises *nine* specific discovery requests as to eleven individual claims in his Amended Motion and one general discovery request that is "relevant to all claims." ECF No. [34] at 19.  First, the Movant seeks discovery to support his claim of juror misconduct - providing misleading or incomplete information during voir dire. (Claim V). Second, the Movant seeks discovery to support his claim of ineffective assistance of counsel for failing to timely challenge the composition of the grand and petit jury venires. (Claim VI). Third, the Movant seeks discovery to support his claim of ineffective assistance of counsel for failing to retain competent experts, failure to consult with experts, failure to file motions to exclude government experts, and failure to object to government expert testimony. Specific discovery requests for sub-claims: (1) firearms and toolmark testimony and (2) cell tower tracking expert. (Claim XI).  Fourth, the Movant seeks discovery as to his claims of ineffective assistance of counsel for failing to effectively cross examine cooperators and *Brady*/*Giglio* violations regarding promises made to cooperating witnesses. (Claim XV and Claim XVI). Fifth, the Movant seeks discovery to support his claims of prosecutorial misconduct for raising

5

false claims that they are continuing to investigate Danny Varela and *Brady*/*Napue* violations for failure to disclose exculpatory information about co-defendant. (Claim XII and Claim XVII). Sixth, the Movant seeks discovery to support his claim of a *Brady* violation for failure to provide evidence of defendant's brain damage. (Claim XVIII, Claim XXV, Claim XXVI). Seventh, the Movant seeks discovery to support his claim of ineffective assistance of counsel for conceding defendant's involvement in two uncharged shootings. (Claim XXI). Eighth, the Movant seeks discovery to support his claim of an arbitrary application of the death penalty. (Claim XXIII). Ninth, the Movant seeks discovery to support his claim of ineffective assistance of counsel for failing to move for appropriate relief when counsel could not adequately investigate due to "life threatening dangers." (Claim XXIV).  Finally, the Movant seeks "all discovery relevant to all claims." ECF No. [34] at 19.  A summary of the claims and corresponding discovery requests, the Government's Responses, the Movant's Replies, the parties' arguments during the June Hearing and the Court's analysis and disposition of the discovery requests are detailed below.

   *Claim V*

   In Claim V, the Movant contends six jurors "[a]ppear to have provided answers that were untrue and/or seriously misleading." ECF No. [25] at 60.  The jurors transgressions as alleged by the Movant range in severity from one juror who failed to disclose that his brother-in-law had a criminal history and substance abuse problem to an alternate juror who was a convicted felon in the State of New Jersey at the time she served. *Id*. at 60-69. The Movant argues that these factual omissions during the voir dire violated his due process rights and his right to an impartial jury. In the Discovery Motion, the Movant seeks document discovery from the Respondent regarding

6

its knowledge of the criminal history of the jurors who were seated, served as an alternate, or a family member thereof.

* Request for Production to the Respondent:

1. Documents concerning or referencing the criminal history of seated juror, alternate juror, or family member thereof;

2. Documents concerning or referencing the former or current employment by a prosecutor of law enforcement agency of seated juror, alternate juror, or family member thereof;

3. Documents concerning or referencing the witnessing of a crime of seated juror, alternate juror, or family member thereof;

4. Documents concerning or referencing the prosecution's awareness of any undisclosed information relevant to the accuracy and completeness of information provided by jury venire;

5. Juror interviews.

ECF No. [34] at 9.  Further, in the Interview Motion, the Movant seeks to interview "all sitting jurors to 'determine whether their verdict is subject to legal challenge.'" ECF No. [33] at 11.  In sum, the combined result of a request for production and interviews would be the Movant obtaining documents from the United States Government and taking oral testimony from the jurors.

Initially, the Government responded by denying that it had conducted any research on the background of the jurors. *See* ECF No. [49], Appx. B.   The Government objected to the

production of the attorney's notes regarding jury selection. Later, the Government did find a juror questionnaire with a post-it note attached with unidentified handwriting. The Government has provided a copy of this document to defense counsel. ECF No. [99] at 5.

In Reply, the Movant advised that they have reviewed the single post-it note provided by the Government and it showed that someone working for the United States Government had conducted a criminal background check of, at least, one juror. As this is incongruent with the Government's prior statements regarding the investigation of jurors, the Movant argues he is entitled to the Government's jury selection files. ECF No. [107] at 5.

During argument before the Court at the June Hearing, both parties clarified and narrowed the scope of discovery. *See* ECF No. [115]. Specifically, the Movant conceded that he needed to conduct the interviews of the jurors because he was unaware of the accuracy of the "relationships between individuals." *Id*. at 8. The Movant further acknowledged that "I don't believe I can establish good cause" to interview the entire venire panel and, as such, would limit his requests to the six jurors identified in his Amended Motion. *Id*. at 16. The Government argued that, first and foremost, it believes that this claim is procedurally barred; however, even if it were not, the claim lacks merit. It asserts that before trial, the judge and the lawyers asked the prospective jurors if "anything in their background [would] cause them to not be fair to either side in the case." *Id*. at 29. The inference being that the Movant has failed to show these jurors to be challengeable for cause based purely on what their answers "should" have been to those voir dire questions had they answered accurately.

The Court has carefully considered both parties arguments. The question before the Court is whether the Movant has established good cause to conduct discovery as to the six remaining jurors at issue. The Court finds the Movant has not.

For the purposes of the Court's "good cause" analysis, the Court accepts the factual allegations raised in the Amended Petition as true.  The Court will assume that the jurors knew of the alleged familial criminal charges, knew that those criminal charges had been or were pending against their family members at the time they completed the juror questionnaires.  The Court will further assume that the jurors answered questions during the voir dire process and gave accurate answers to the Court during jury selection.  The question before the Court is whether those facts entitle the Movant to habeas relief pursuant to 28 U.S.C. §2255.  It would matter little to spend time and effort to conduct discovery to prove the allegations alleged in the Amended Petition when, even if those allegations were true, he would not be entitled to relief.   Therefore, the Court analyzes the law regarding juror disqualification and misleading answers during the voir dire process.

According to the Movant, four jurors who served on the jury and two alternates who did not serve[3] failed to disclose "certain telling personal information that was highly relevant to matters at issue at both guilt and sentencing." ECF No. [25] at 60.  Diane Gooch was an alternate juror who was "a convicted felon and a cooperating government witness." *Id*.  Dorothy Barba was an alternate juror who "failed to disclose her grandson's problem with illegal drugs." *Id*. at 67.   Mark Sollenberger was a juror who served although he "failed to disclose the full nature and extent of [his son's, brother's, and brothers-in-law's] problems with illegal drugs."  *Id*. at 63.  Connie Thomas also served as a juror but failed to disclose information regarding the illegal firearms and drug problems of her [brother, ex-husband and ex-brother-in-law]." *Id*. at 66.  The

---

[3] The Court gives no consideration to the Movant's claim regarding the alternate jurors as they did not deliberate or participate in the verdict or sentence. *See Smith v. Whisman*, 431 F.2d 1051, 1054-55 (5th Cir.1970) (improper exclusion of veniremen in selection of alternate juror did not invalidate sentence where alternate juror did not participate in deliberations or verdict, despite defendant's allegations that the alternate's mere presence and association with the regular jurors influenced the final verdict).

Movant also asserts that Ms. Thomas failed to disclose that her sister "has worked in the State's Attorney's Office, however, the dates of her service are unclear." *Id*. Donald Little served on the Movant's jury despite the fact that he "failed to disclose information regarding the illegal firearms and drug problems of his [sons-in-law]." *Id*. at 68. Finally, Donald Boser sat on the Movant's jury although he "failed to disclose the illegal drug problems of his brother-in-law." *Id*. at 69. The Movant maintains that these jurors would have been excused for cause because the prosecution involved both drugs and firearms. The Court disagrees.

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.'" *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Here, the Movant asserts that four sitting jurors and two alternates gave false and misleading answers to voir dire questions which deprived him of a fair and impartial jury guaranteed by the United States Constitution. ECF No. [25] at 60. "Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equipment Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). "[T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, *and then further show that a correct response would have provided a valid basis for a challenge for cause*." *Id*. at 556 (emphasis added). A review of the relevant portion of jury selection and voir dire shows the following:

On January 6, 2009, jury selection began. (Case No. 06-CR-80171 (Hurley, J), ECF No. [648]. Prior to voir dire, each potential juror was given a juror questionnaire which consisted of

thirty-four questions. *See* ECF No. [100-1]. The questionnaires were answered and then distributed to the attorneys to review prior to voir dire. The jurors were called into the courtroom in groups of fifteen and were addressed by the Court. The Court began with a summary of the allegations of the case which included an explanation of the conspiracy to possess with intent to distribute drugs, specifically crack cocaine and powder cocaine. (Case No. 06-CR-80171 (Hurley, J), ECF No. [648] at 22-23. The Court then walked the jurors through questions on the juror questionnaire highlighting the importance of certain issues. The final question being "having thought about all of this, do you think you could be a fair and impartial juror." *Id*. at 39. The Court further expounded on what it means to be a fair and impartial juror.

> I am convinced when people hear that question in general they really say to themselves, yes, I sure like to think I am a fair person. But as I mentioned in that video this morning, what the law is really asking you is, would you be able to sit here, really with an open mind and listen to everything, and then only after you heard all of the evidence, you decide for yourself what evidence has been established, if any, beyond a reasonable doubt regarding the crime itself.
>
> Now, remember, on the issue of sentence, those mitigating factors, they don't have to be established beyond a reasonable doubt, just by a preponderance of the evidence.
>
> But are you the kind of person that can make your mind up based on what you hear in the courtroom and based on the law as I will explain it to you?

*Id*. at 39-40. Over the multiple days of jury selection, the Court repeated a similar variation of this explanation regarding fairness and impartiality to all the prospective jurors. *See* (Case No. 06-CR-80171 (Hurley, J), ECF No. [648-650], [687-690], [711-713] & [727]). Depending on

the individual juror's responses to the questions, the Court would then voir dire the jurors as to specific questions of interest.   More often than not, the Court would inquire directly as to whether their response to the specific question would affect their ability to be a fair and impartial juror.   In addition, prior to jury selection, the Court and counsel had agreed to certain grounds which jurors would uniformly be excused for cause, primarily for financial hardship. *See* (Case No. 06-CR-80171 (Hurley, J), ECF No. [648] at 124).   The day before jury selection began, the parties agreed to preemptively strike thirty jurors for cause due to financial hardship.  *See* (Case No. 06-CR-80171 (Hurley, J), ECF No. [636-1].   During the voir dire process, the Court further excused jurors for cause due to financial hardship, pre-trial media exposure, inability to impose the death penalty, health, and racial bias toward the defendants. However, a constant throughout jury selection was that the jurors excused for cause (other than financial or health reasons) were jurors who were unable to assure the Court that they could be a fair and impartial. *See generally* (Case No. 06-CR-80171 (Hurley, J), ECF No. [648] at 62, [649] at 109, & [690] at 69.   In other words, there were no *per se* cause challenges or removals from jury service without the Court attempting to rehabilitate the juror to see if they could set aside their pretrial biases and be a fair and impartial juror.   There were no cause challenges granted exclusively for having "any family members or friends" who had a problem involving firearms or illegal drugs. Quite the opposite, there were several jurors who did have family members who had problems with drugs or firearms and the defense did not challenge for cause, including Marye Allen, who served on the jury. *See* (Case No. 06-CR-80171 (Hurley, J), ECF No. [713] at 52.

In order for the Movant to establish good cause, he must show that if he fully developed the facts as alleged in his Amended Motion through the requested discovery, he would be entitled to relief.  He has not done so. The Court has conducted its analysis of his claim with the

assumption that his factual allegations are proven to be true but his claim still fails as he cannot show actual bias. *See Bank Atlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1473 (11th Cir.1992) (citing *Perkins*, 748 F.2d at 1532); s*ee also United States v. Tutt*, 704 F.2d 1567, 1569 (11th Cir.1983) ("The defendant is required to demonstrate an actual, identifiable prejudice on the part of the juror."). Actual bias may be shown either "by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *Bank Atlantic*, 955 F.2d at 1473. The Movant has failed to show the requisite good cause to support his discovery requests. Discovery is **DENIED** as to Claim V.

*Claim VI*

Claim VI for Section 2255 relief is that counsel was ineffective for failing to "challenge the composition and selection of the Grand and Petit Jury Venires in Violation of the Fifth, Sixth, and Eighth Amendments." ECF No. [25] at 72. The Movant's sole argument on the deficiency prong of *Strickland* is that "[i]t cannot be disputed that the defense bar recognized the ability to challenge the grand jury process, as such a challenge had been available for years prior to Mr. Troya's trial." *Id*. The underlying constitutional claim is that his jury was selected from a jury pool "that underrepresented racial and ethnic and minorities." *Id*. Effectively, the Movant is contending that between 2006 – 2009 the Southern District of Florida's jury selection process did not comport with the constitutional requirement that the jury pool be selected from a fair racial cross section of the community. In support, the Movant has provided statistical data and census information for Palm Beach County, Florida. *Id*. at 82-88. Some of the Movant's data came from this Court's statistical records while the remainder came from outside sources. The Movant alleged that the Court's AO 12 reports ("Report on Operation of the Jury Selection

13

Plan") inaccurately reported the percentage of Hispanics and African-Americans residing in Palm Beach County, Florida at the time of the Movant's trial.  According to the Movant, this inaccuracy resulted in minority groups being underrepresented in the jury pool. The Movant has not asserted that *his* jury specifically was underrepresented by minority venire persons; rather, simply that the entire jury selection process in the Southern District of Florida was flawed.  The Movant seeks to serve the following Request for Production on the Respondent.

    * Request for Production to the Respondent:

1.  AO-12 Report (11/93-10/97).

2.  AO-12 Report (11/05-10/07).

3.  All current census estimates the AO Office of the Courts provided to the district clerk for each year referenced in the 2255.

4.  All voter registration data that was used to fill the wheels.

5.  Any underlying data from years 2007-2010 and explanations or discussion about how that data relates to census information.

ECF No. [34] at 9-10.

The Government responded that it does not have any documentation from the Clerk's Office regarding the selection of grand jury or petit jury members.  The Government also argues that the Movant has not shown good cause and the claim is procedurally barred because it should have been raised on direct appeal.  ECF No. [99] at 5. In reply, the Movant argues that the request was not directed to the United States Attorney's Office but rather it was directed to the United States District Clerk.   The Movant also argues that the claim could not have been

procedurally defaulted because it is an ineffective assistance of counsel claim which cannot be raised on direct appeal.  ECF No. [107] at 6.

At the June Hearing, the Court inquired regarding the basis for the claim and the purpose of the requested discovery to which counsel for the Movant clarified that the claim for relief was that "a reasonable attorney would have collected these documents at the time" and "made a systematic challenge" and not the underlying substantive claim that the Court had violated the constitutional protection regarding a fair cross section of the community.  ECF No. [115] at 17-18.

As an initial matter, the Court finds that the Movant is correct regarding the procedural default. "The better-reasoned approach is to permit ineffective-assistance claims to be brought in the first instance in a timely motion in the district court under § 2255. We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500 (2003).  This is a claim of ineffective assistance of counsel and is properly before the Court in a motion to vacate sentence and judgment pursuant to 28 U.S.C. §2255.

However, the Court finds that the Movant has failed to establish good cause to conduct discovery.  Here, the Movant is seeking to conduct discovery which, at best, would establish that the Court's jury composition and selection processes did not represent a fair racial composition of the community.  Should he develop facts that prove this allegation it will not, in and of itself, provide him the relief he is seeking because his claim is not a freestanding claim of unconstitutional composition of the jury but a claim of ineffective assistance of counsel.  As such, the Movant has not shown good cause for discovery.  "[A] petitioner must provide the court with specific allegations that show a reason to believe that the petitioner could, with fully

15

developed facts, demonstrate he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997).  It is not enough for the Movant to show that the composition and selection of the grand and petit jury venires were in violation of the Fifth, Sixth, and Eighth Amendments but; rather, that counsel's performance was deficient and that the Movant was prejudiced by the deficiency. The discovery requested would not show the Movant was entitled to relief on a *Strickland* claim.

Any analysis of an ineffective assistance of counsel claim should begin with *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the United States Supreme Court set forth the two-prong test that a convicted defendant must meet to demonstrate that his or her counsel rendered ineffective assistance.  First, a defendant "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688.  Second, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The Court defines a "reasonable probability" as one "sufficient to undermine confidence in the outcome."  *Id.*  And "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693. In 2011, the Supreme Court clarified the *Strickland* standard.

> In *Strickland*, this Court made clear that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation ... [but] simply to ensure that criminal defendants receive a fair trial." 466 U.S., at 689, 104 S. Ct. 2052. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*, at 686, 104 S. Ct. 2052 (emphasis added). The

16

Court acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689, 104 S. Ct. 2052; *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). The Movant would have to show that defense counsel should have known that the Southern District of Florida was inaccurately reporting statistical data and that inaccurate reporting resulted in an unconstitutionally disproportionate amount of racial minorities being underrepresented in the jury pool in Palm Beach County, Florida from 2006 - 2009. In other words, just about every criminal defense lawyer in the Southern District of Florida should have been challenging the racial make-up of its client's juries from 2006-2009. *Wood v. Allen*, 542 F.3d 1281, 1309 (11th Cir. 2008) ("To put it another way, trial counsel's error must be so egregious that no reasonably competent attorney would have acted similarly."). Here, the Movant's discovery requests do not advance either prong of *Strickland*. The Movant has failed to show the requisite good cause to support his discovery request. Discovery is **DENIED** as to Claim VI.

### Claim XI

In Claim XI, the Movant contends that his counsel was ineffective for failing to: (1) retain competent and appropriate experts; (2) consult with those who were retained; (3) file the appropriate motions to exclude the Government's experts; (4) effectively cross-examine and object to improper testimony; and (5) introduce appropriate expert testimony during the guilt and penalty phase of the trial. ECF No. [25] at 112. Specifically, the Movant argues that his counsel was ineffective for failing to retain a firearms and toolmark expert and for failing to request a

*Daubert*[4] hearing as to the Government's firearm and toolmark experts. *Id*. at 123.   Further, the Movant asserts that his counsel was ineffective for failing to consult with and utilize the cell tower tracking expert funded by the Court.  *Id.* at 163.

>   i.        *tool mark experts*

The Movant seeks not only to serve the Respondent with a Request for Production for the following information but also for the Court to issue a subpoena duces tecum to the Bureau of Alcohol, Tobacco, and Firearms, the Drug Enforcement Agency, the Federal Bureau of Investigations, the Bureau of Prisons, the Florida Department of Law Enforcement, the West Palm Beach Police Department, the Greenacres Police Department, Crimestoppers and the Indian River County Sheriff's Office Crime Laboratory.  *See* ECF No. [34] at 11.

* Request for Production to the Respondent:

1. Any and all documents including opinions, reports (including interim or amended reports), memoranda, testing results, bench notes, and correspondence concerning the examination of casings and projectiles from the crime scene, the casings and projectiles collected at Suwanee Drive, Mercer Avenue, the projectiles collected from Garden Court, and the AK-47 rifle collected from Garden Court;

2. Documents relating to the manufacturer and model of the microscopes used for comparison purposes, and any manuals describing proper uses and maintenance of the instrument;

---

[4] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

16-80700-CIV-BLOOM

3. Documents containing internal written policies and standards for toolmark comparisons and guidelines for rendering an opinion internal written policies and standards for toolmark comparison;

4. Any and all photomicrographs of the comparison subjects;

5. Diagrams and photographs of subject evidence at all stages of collection and testing;

6. Results of all test-firings of the recovered weapon, including notes, reports, opinions and photomicrographs of the test-firing subjects;

7. Copies of written procedures (often called Standard Operating Procedures (SOPs)) for evidence testing, including procedures for preparation, instrument analysis, instrument calibration, and all required quality control practices;

8. Laboratory quality manuals (however named) in effect at the time the subject work was performed;

9. Laboratory quality procedures (however named), including internal audit procedures, training and qualification procedures, and document control procedures, in effect at the time the subject work was performed;

10. Internal and external audit reports generated or received by the laboratories;

11. For the analysts involved in the subject casework, a copy of the personnel file and all internal and external proficiency testing results for toolmark identification (including sponsoring agency, date(s) performed, responsible analyst, true values, reported results raw data, scores, related correspondence, and corrective action records, as appropriate); analyst's personnel file, proficiency testing;

19

12. Access by defense experts to the casings and projectiles collected from the crime scene, the casings and projectiles collected from Mercer Avenue and Suwanee Drive, the projectiles collected from Garden Court, and the AK-47 rifle collected from Garden Court.

ECF No. [34] at 11-12

The Government responded that it has provided the Movant with pre-trial discovery and otherwise does not have any information. *See* ECF No. [49] at 6.  Also, the Government argues that the Movant has failed to establish "good cause" because he does not allege specific facts that, if disclosed, would demonstrate he is entitled to relief on this claim. *Id.*   In its Amended Response, the Government argued that the Movant "has failed to establish good cause on any of his requests concerning tool marks because he does not allege specific facts that, if disclosed, would demonstrate he is entitled to relief on this claim." ECF No. [99] at 10.  The Government asserts that the mere fact that the Movant has now retained a different expert who would, if called, give a more favorable opinion regarding the tool mark evidence does not create an ineffective assistance of counsel claim. *Id*. at 11.  Given the rigorous cross-examination at trial, the Government maintains that the discovery, as requested, would do little, if anything, to demonstrate that trial counsel was deficient or that the Movant was prejudiced.

In Reply, the Movant argues that he seeks to serve subpoenas and that he has pled his Section 2255 claim with the requisite specificity.  ECF No. [61] at 9. The Movant further asserts that the Government misstates the law on "new experts" in order to preclude the requested discovery. *Id*. at 5.  The Movant contends that "[t]he specificity of these claims belies the government's misguided assertions that Mr. Troya's claims are merely speculative." *Id*. at 9.

During the June Hearing, the Court inquired about the broad scope of the request and whether trial counsel would have had access to the requested documents during the course of Rule 16 discovery. ECF No. [115] at 18-20.  The Movant asserted that trial counsel could have sought to obtain these records through a public records request pursuant to state law. *Id*. at 19. The Government argued that pursuant to Rule 16, Fed. R. Crim. P.,  which is the obligation of the United States Government, the reports and curriculum vitae of Mark Chapman, the Government's toolmark examiner, was provided to the defense.  *Id*. at 31. Moreover, the Government contends that Mr. Chapman was cross-examined by death qualified defense counsel during trial.

  ii.   *cell tower tracking expert*

In addition to the tool mark experts, the Movant seeks to serve subpoenas duces tecum to cell tower companies (Verizon, T-Mobile, Metro PCS) for documents relating to:

1. Documents concerning or referencing the operational behavior, engineered capabilities, tuning and alignment, maintenance, and service history for cellular towers maintained by Verizon Wireless, T-Mobile, and MetroPCS in Florida during the applicable periods;

2. Documents concerning or referencing system information, cell site, and switch data for T-Mobile cellular towers in Florida and Texas for October 2006;

3. Cell phone records for all cell phones searched, seized or voluntary consent;

4. Call detail reports (CDR's) for 786-853-8416 and 956-266-2004 for October 2006.

ECF No. [34] at 13.

The Government responds that it does not have this information or has already provided the information it had during pre-trial discovery. *See* ECF No. [49] at 6. The Government also asserts that this is a mere fishing expedition because direct and cross examination "made clear that the evidence did not pinpoint the caller's actual location, but only the location of the cellular tower through which the call connected." *Id*. at 15. As to the actual cell tower records, the Government maintains that the Movant "still fails to make a sufficient factual showing to establish that there is reason to believe that the information sought from these third parties would allow him to prevail on a claim of ineffective assistance." *Id*. at 14. In Reply, the Movant argues that he has pled proper allegations and is entitled to documents from the cell companies (although he concedes that they are unlikely to have been preserved for this long). ECF No. [61] at 10.

To begin, during the June Hearing an issue was raised worthy of discussion here as it is applicable to most of the Movant's discovery requests in support of his ineffective assistance of counsel claims. It is regarding Rule 6, Rules Governing Section 2255 Proceedings, Rule 16, Fed. R. Crim. P. (discovery) and Rule 17, Fed. R. Crim. P. (subpoenas to third parties).

Federal Rules of Criminal Procedure, Rule 16 limits the documents that are available to be discovered in a criminal prosecution by the defendant. In part, discovery is limited to documents and objects: (i) material to preparing the defense; (ii) the government intends to use the item in its case-in chief at trial; or (iii) the item was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E). Clearly, this is a much more limited disclosure than the "good cause" requirement of Rule 6. Likewise, a criminal defendant is limited in issuing subpoenas to third parties by Rule 17, Fed. R. Crim. P. Rule 17 permits a party to subpoena *a*

22

*witness* to produce "any books, papers, documents, data, or other objects the subpoena designates, either before trial or at trial and before the item is to be offered into evidence." (emphasis added). This too is far more limited in its scope than Rule 6; however, that is precisely the point. When considering an ineffective assistance of counsel claim for a failure based on information that is contained in a undiscoverable document, the Court must consider what was available to counsel at the time of trial. In other words, if the information sought now through Rule 6 discovery requests are documents that would have been precluded from discovery at trial by either Rule 16 or Rule 17, the Movant has not shown good cause. The Movant is unable to demonstrate an entitlement to relief on an ineffective assistance of counsel claim for failing to retain, consult, or cross-examine experts using documents that were unavailable to them at trial. Accordingly, the Movant has failed to show good cause for discovery. Discovery is **DENIED** as to Claim XI.

### *Claims XV and XVI*

Claim XV argues that trial counsel was ineffective for failing to object to improper questioning and to effectively cross-examine the Government's cooperating witnesses. ECF No. [25] at 226. Specifically, the Movant asserts that counsel failed to effectively cross-examine Melvin Fernandez, Kevin Vetere, and Carlos Rodriguez. Claim XVI is that the Government failed to disclose *Brady* material. ECF No. [25] at 240-259. The Movant argues that the Government relied primarily on the testimony of cooperating witnesses to obtain a conviction. *Id*. at 240. The Movant maintains that these cooperating witnesses and the Government had reached undisclosed agreements for favorable treatment. The Movant asserts that those agreements were not disclosed to the defense. The Movant takes issue with three witnesses who testified at trial: Melvin Fernandez, Kevin Vetere, and Carlos Rodriguez. The Movant appears to

argue that because these witnesses were never charged or had their existing sentences greatly reduced (even less than what the Government was asking), there must have been an undisclosed cooperation agreement.  The Movant contends that the witnesses did not testify before the jury about these agreements and the Government did not disclose their existence. The Movant asserts that the results of the witnesses' favorable treatment by the Government "point[s] to the strong possibility a promise of leniency was made directly to his defense counsel" but withheld from the jury. *Id.* at 244.  In order to develop the factual record necessary to prove this claim, the Movant requests:

* Request for Production to the Respondent:

1. Documents that contain information that Kevin Vetere, Melvin Fernandez, Carlos Bonilla, and Carlos Rodriguez expected or received any benefit of any type from the government, whether or not that benefit accrued as a result of a formal deal or cooperation agreement;

2. NADDIS files for Jose Luis Escobedo (NN 4004649), Yessica Escobedo, Hugo Flores (NN 3239166), Jose Manuel Escobedo, Benito Rodriguez, Danny Varela, Daniel Troya, Liana Lopez, Ricardo Sanchez, Kevin Vetere, Juan Gutierrez, Andres Molina, Servando Salazar, Martin Soto, "Muneco," Oscar Flores-Venegas, Jose Luis Escobedo, Sr. (NN4004649), Belinda Guerra, Rudy Espinosa- Garza, Vicente Garcia, Guadalupe Garcia, Ana Jessica Garza, Fructuoso Garza, Eduardo Diaz, Leonel Diaz, Robert Ruiz, Roberto Carlos Iracheta-Gonzalez, Erlinda Garza, and Ramiro Nevarez, Jr.

ECF No. [34] at 13.

24

The Government responded by stating that the responsive documents regarding cooperating witnesses were provided in pre-trial discovery and that there was no witness named Carlos Bonilla.  *See* ECF No. [99] at 15.  The Government also asserts that NADDIS files are not discoverable absent a court order because they are investigative files maintained by the DEA which contains confidential and privileged information regarding individuals who have a connection to violations of federal drug laws.  *Id.* at 16-17.

In Reply, the Movant argues that the Government's treatment of the cooperating witnesses following the Movant's trial justifies the release of the NADDIS records for the witnesses related to the case.  The Movant argues that he should be able to "independently assess the information gained from and the promises made to cooperating witnesses." ECF No. [107] at 12.

At the June Hearing, the Movant acknowledged that Rule 16, Fed. R. Crim. P. did not provide for the discovery of NADDIS files before or during trial but argues that Rule 6 of the Rules Governing Section 2255 Proceedings is much broader than Rule 16.  However, the Court inquired further as to whether that distinction was relevant to a claim of ineffective assistance of counsel because it is not as to what is discoverable now but rather as to what was discoverable to counsel at the time of trial, *i.e.*: counsel cannot be ineffective for failing to discover or seek to discover the undiscoverable.  The Movant conceded that although counsel's inability to obtain this information either pre-trial or during trial does not constitute *Strickland* deficiency, there is still a *Brady* claim which is also encompassed in this discovery request regarding the NADDIS files. ECF No. [115] at 21.[5]    In response, the Government argued it is "adamant that it did

---

[5]  Several of the Movant's discovery requests follow this pattern; the Movant seeks discovery on a claim of ineffective assistance of counsel claim *and* another claim for relief but later concedes that the discovery

comply with its *Brady* and *Giglio* obligations in this case." *Id*. at 38.   The Government further asserted that of all the persons referenced in the discovery request only Kevin Vetere testified at trial. *Id*. at 38.  The Government maintains that NADDIS files are not discoverable unless the person is interviewed by the DEA, agrees the report constitutes his or her statement, and that person gives testimony at trial. *Id*. at 37-38.  The Government advised this was not the case here.

     i.      <u>*ineffective assistance of counsel*</u>

As to Claim XV, the Movant has failed to establish good cause for discovery.  In order to establish deficient performance as defined by *Strickland*,

> a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.*, at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687, 104 S.Ct. 2052.

*Harrington v. Richter*, 562 U.S. 86 (2011).  Here, at issue is the "*subsequent* treatment of these [cooperators]" which would not have been known to trial counsel.  ECF No. [107] at 12. (emphasis added).  Likewise, trial counsel would not have been privy to or had the opportunity to review the NADDIS files prior to or during the trial.  Regardless of the content, and similar to Claim XI, counsel cannot be said to have been ineffective for failing to use the information contained in undiscoverable documents to effectively cross-examine the Government's

---

requests are inapplicable to his claim of ineffective assistance of counsel and further concedes that he cannot establish the requisite good cause. *See* ECF No. [115] at 18-22.  All future discovery requests are limited to one Rule 6 discovery request per one §2255 claim.

witnesses. *See Order* at pg. 14-15.  Accordingly, the Movant has failed to show good cause for discovery.  Discovery is **DENIED** as to Claim XV.

    ii.      <u>*Brady material*</u>

Claim XVI is that the Government has violated *Brady* by failing to disclose material which would show favorable treatment to cooperating witnesses not previously disclosed to the defense.

> In order to establish a *Brady* violation, a defendant must prove: (1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense.

*United States v. Schier*, 438 F.3d 1104, 1106, n. 1 (11th Cir. 2006) (citing *Moon v. Head*, 285 F.3d 1301, 1308 (11th Cir. 2002)).   Here, the sum and substance of the Movant's claim is that the Government has withheld a post-trial revelation of promises made to three cooperating witnesses: Melvin Fenandez, Kevin Vetere, and Carlos Rodriguez.  ECF No. 25 at 240-244.  The Movant's factual basis for this claim is that the cooperators received  an "extraordinary reduction in sentence" and "extraordinarily lenient post-trial treatment" resulting in a "*strong possibility* a promise of leniency was made directly to [Rodriguez's] defense counsel and communicated by counsel to Mr. Rodriguez, but withheld from the jury." *Id*. at 244. (emphasis added).   In other words, if it sounds too good to be true, it probably is. This adage, however, is not enough to establish good cause to conduct Rule 6 discovery of a *Brady* violation.  Mere speculation that the prosecution might possess information helpful to the defense  or an assertion, without more, of the presence of exculpatory information in the prosecution's files is sufficient to warrant a *Brady*

*d*etermination. Here, the Movant does little more than speculate that the witnesses must have reached an undisclosed agreement with the Government in exchange for their testimony. A favorable outcome for the cooperating witnesses, in and of itself, does not serve as the basis for a *Brady* claim. Moreover, even if it did, this basis would not establish good cause to discover the NADDIS files here as the Movant's *Brady* claim does not involve or reference any of the individuals listed in the discovery request. *See* ECF No. [25] at 240-245. Accordingly, the Movant has failed to show good cause for the discovery of the NADDIS files and the Government has otherwise provided *Brady* materials regarding the three cooperating witnesses. Discovery is **DENIED** as to Claim XVI.

### *Claims XII and XVII*

Claim XII, sub-claim 12, argues that the Government's improper and false vouching, along with its reference to non-record facts, in its assertion that it would continue to investigate and prosecute Danny Varela, was improper and unlawful. ECF No. [25] at 201. The Movant asserts that the lead prosecutor intentionally mislead the jury by repeatedly referencing an on-going investigation of Mr. Varela. The prosecutor alluded that he could and would eventually charge Mr. Varela with murder. Claim XVII asserts that the Government violated its obligation pursuant to *Brady* by failing to disclose exculpatory information to the defense. ECF No. [25] at 245. The Movant asserts that the Respondent failed to disclose why it did not indict Danny Varela for murder, failed to disclose information regarding Yessica Escobedo's cell phone, failed to provide exculpatory information regarding the alleged drug deal in Daytona Beach which preceded the murders, failed to disclose exculpatory information from the security booth at the Briar Bay neighborhood, and failed to disclose material exculpatory information of the Movant's

28

lessened culpability for the murders. *Id.* at 245-58.   The Movant is seeking the following discovery from the Respondent:

* Requests for Production to the Respondent:

1. Documents that contradict the government's stated reason for failing to charge Danny Varela with murder; namely, that the government purportedly did not have enough evidence to prosecute him. Such documents include, but are not limited to: any cooperation agreement between Mr. Varela and the government; documents indicating that Mr. Varela provided information to the government, whether or not such information was provided as part of a formal cooperation agreement; documents indicating that prosecution of Mr. Varela would adversely affect any criminal investigation or prosecution; and/or documents indicating that any improper conduct on the part of law enforcement rendered prosecution of Mr. Varela infeasible;

2. Documents that indicate that Mr. Varela was a co-conspirator in the carjacking conspiracy;

3. Documents that indicate that Mr. Varela participated in the murder of the Escobedos in any way, including as an accomplice; that Mr. Varela intended to murder the Escobedos; or that Mr. Varela knew that the murders of the Escobedos would occur beforehand;

4. Documents regarding cooperating witness Mario Davis that Mr. Varela had direct involvement in the murders and from Phillip Perez regarding Mr. Varela's large-scale drug trafficking and gun possession;

5.  Documents indicating further investigation of Varela for the murders in this case was conducted since trial;

6.  Documents that indicate or suggest that Yessica Escobedo's cell phone traveled to Texas on October 12th or 13th, 2006;

7.  Documents that reveal the identity of the individual or individuals with whom the Escobedos allegedly conducted a drug deal in the Daytona Beach area on the night/morning of October 12th/13th and documents that provide information as to the details, nature, and scope of this drug deal;

8.  Documents that contain video footage of the area around the Briar Bay security booth;

ECF No. [34] at 14-16.

The Government responded that there was no cooperation agreement with Mr. Varela nor was there a debriefing. The Government has no information that Mr. Varela participated in the murders. According to the Government: (1) there are no known documents tending to show Mr. Varela was a co-conspirator in the carjacking conspiracy, and (2) no documents are known to exist tending to establish that Mr. Varela participated in the murder of the Escobedos in any way, including as an accomplish.  ECF No. [99] at 18.  The Government also denies that Mario Davis and Phillip Perez were cooperating witnesses; in fact, the Government denies any knowledge of their existence. *Id*. at 17-19.

In Reply, the Movant does not comment on any of the Government's arguments other than to assert that the Government did not respond to "subsection e" (Discovery Request #5) which requests information relating to any continued investigation of Mr. Varela since trial.

30

ECF No. [107] at 13. The Movant argues that the Government should "be required to provide any documentation of a further investigation, as well as access of [sic] Mr. Troya's attorneys to its files relating to witnesses described in the motion." *Id*. at 13.

During the June hearing, the Government advised:

With regard to the assertion that the Government should reveal information favorable to the Defense in terms of its agreements or reports with Danny Varela, there was no interview of Varela. There was no plea agreement with Varela. In fact, the Government filed a mandatory 851 sentencing enhancement notice under 21 USC Section 851, which resulted in - - after Varela was convicted of drug trafficking in this case, he was sentenced to mandatory life in prison. There was no agreement with the Government not to prosecute him for the murders. There was no agreement with him to do anything. And there is no evidence, and there's been no showing that such records exist.

And, in fact, the independent evidence, as borne out by the Government's 851 filing, establishes corroboration for my representation to the Court as an officer of the Court that there was no agreement at any time with Danny Varela.

ECF No. [115] at 39-40. The Court finds that the Movant has failed to establish good cause for discovery. The Movant is seeking discovery to establish that the Government has violated *Brady*. However, the first step in the four step process of establishing a *Brady* violation is "that the prosecution suppressed evidence." *United States v. Severdija*, 790 F.2d 1556, 1558 (11th Cir. 1986). Here, the Government has stated multiple times, including before this Court, that the documents the Movant seeks do not exist because no agreements existed with Mr. Varela. As such, the Court does not find good cause exists

for discovery as the Movant is unable to demonstrate an entitlement to relief on this claim.  Discovery is **DENIED** as to Claim XVII.[6]

*Claim XVIII, Claim XXV, and Claim XXVI*

Claim XVIII is that the Government failed to provide the defense with exculpatory evidence of the Movant's brain damage. ECF No. [25] at 258.  During trial, the Government represented to the Court that it had retained a neuropsychiatrist who could read and interpret PET scans and was prepared to read the Movant's PET scan.  The trial court ordered the defense to provide the scan to the Government.  The Government never produced or disclosed any information about the results of their expert's review.  Here, the Movant would like to see what the Government's expert revealed.  Claim XXV is that trial counsel was ineffective for failing to investigate and develop mental health evidence to mitigate the death penalty.  ECF No. [25] at 311.  The Movant alleges that he has brain damage caused by head trauma to his frontal lobe. He contends that due to trial counsel's deficiencies, the jury never learned about his "longstanding brain injury" which manifested in significantly compromised cognitive and psychiatric functioning and affected all aspect of his life. *Id*.  Claim XXVI argues that trial counsel was ineffective because counsel "unreasonably neglected to timely and effectively investigate" the Movant's personal history and background.  *Id*. at 351.  The Movant asserts that "counsel presented the jury only the thinnest veneer of Daniel Troya's life history, and one that distorted its reality beyond recognition." *Id*.  The Movant seeks the following documents:

* Requests for Production to the Respondent:

---

[6]  The Movant alleged that the prosecutor falsely and unlawfully asserted during the penalty phase that the Government would continue to investigate Mr. Varela.  The documents requested here will do little to entitle the Movant to Section 2255 relief.  Movant has not shown good cause pursuant to Rule 6. Discovery is **DENIED** as to Claim XII.

32

1. Documents relating to Mr. Troya's character; economic, educational, and psychosocial background; mental health history; cognitive, intellectual, and adaptive functioning; and/or related to individuals involved in Mr. Troya's life and upbringing, that would tend to mitigate his convictions or lead to other mitigating evidence. This information includes, but is not limited to, information about Mr. Troya's or his family members' substance abuse; physical, psychological, or sexual abuse; dysfunctional family patterns and dynamics; dysfunctional peer relationships; poverty and attendant economic disadvantages; poor educational or employment performance; racism; organic, neurological, or other medical problems; mental disorders; and developmental disabilities;

2. Documents concerning the government's mental health case, including the identity of any experts who were consulted and the content of those consultations; and any documents regarding Mr. Troya, including the reports and notes of experts. This request includes the firewalled U.S. Attorney's file.

ECF No. [34] at 16-17.

Initially, the Government responded that the only expert retained was Dr. David Brannon, the court appointed expert, and his documents were turned over to defense; no neuropsychiatrist was ever retained.  ECF No. [49] at 15. The Government advised the Court and Movant's counsel that the United States does not possess any records of a neuropsychiatrist's review of a PET scan. *Id* at 16.   However, after further review and consultation with the former AUSA who tried the case, the Government reversed course.  Now, it does appear that the Government did retain a Dr. Ray Lopez who reviewed the Movant's records, including the PET scan, and had a

one hour phone consultation with counsel for the Government.  ECF No. [99] at 22.  The record is silent as to whether information was given to defense counsel at trial.  The Government obtained a copy of Dr. Lopez's file (he has since suffered a debilitating stroke and cannot communicate) which included a CD-ROM that contains Troya's PET scan, portions of the government contract and a 30-page fax from AUSA Kastrenakes with the defense expert reports. *Id.* Yet, the Government disputes that this constitutes a *Brady* violation and, even so, the claim is procedurally barred from review. The Government maintains that it has now provided all documents relevant to the request. *Id*.

In Reply, the Movant asserted that a "more thorough review of [the Government's] conduct is required. *See* ECF No. [61] at 12.  The Movant requests that the Court authorizes subpoena duces tecum to former AUSA John Kastrenakes, any government agent who spoke with representatives of Dr. Lopez, the staff of Dr. Lopez, the firewalled attorney Jacqueline Arango, and the DOJ Attorney who appeared at trial, Richard Burns.  ECF No. [107] at 15.  The Movant further argues that he would like sworn statements from the Governmental attorneys regarding the record keeping and maintenance and files on this issue.  *Id*. at 15.

At the heart of these discovery requests is that the Movant believes there is significant mental health mitigation which was not presented to the jury during the sentencing phase of his capital trial. Prior to opening statements of the penalty phase, Movant's counsel advised the Court that there was a doctor in California, Dr. Wu, who had conducted a PET scan on the Movant. (Case No. 06-CR-80171 (Hurley, J), ECF No. [795] at 7).  Movant's counsel also advised that while the defense was not going to call Dr. Wu to testify, it would be calling other mental health experts to testify who would be referencing the PET scan. *Id*. at 7-9.  The Government advised the Court that it had "retained a neuropsychiatrist who is very familiar with

PET Scans. [It] need[s] the original PET scan to be able to supply to him for possible rebuttal testimony." *Id*. at 7.  The Court granted the Government's request and the defense provided the PET scan.  During opening statements, the Movant advised the jury that "you will hear from two of the most renowned and respected mental health experts in the State of Florida…[y]ou will hear from Dr. Harry Krop, who is a psychologist from Gainesville, got his Ph.D. in clinical psychology, practicing for over 30 years…[y]ou will also hear from Dr. Michael Maher. Dr. Maher is a psychiatrist. A psychiatrist is a medical doctor, not a Ph.D. like a psychologist is, and Dr. Maher has been a doctor also since 1979, with 30 years' experience." (Case No. 06-CR-80171 (Hurley, J), ECF No. [818] at 116).   However, when the Movant made his penalty phase presentation before the jury, he called no mental health expert witnesses and presented no mental health expert testimony.  Before the case was given to the jury for deliberation, the Government raised the issue of whether the Movant had made a strategic decision not to call any mental health experts.

> MR. KASTRENAKES: The only thing I wanted to make sure, Mr. Eisenberg in
> his opening discussed calling two mental health experts, and I want to know if
> that is a strategic avenue. Those are mental health professionals that we received
> notice of.  *I talked to Mr. Eisenberg* that if this were to happen, that it be another
> matter raised at a collateral  matter later that he would be covered in that respect.
> THE COURT: Do you want to speak to that Mr. Eisenberg?
> MR. EISENBERG: No, I don't have a problem.
> THE COURT: Is it true you contemplated bringing in a mental health expert and
> you provided a report from that expert?
> MR. EISENBERG: Yes.

THE COURT: Is it fair to say after your discussion was Mr. Troya and consultation with Mr. Garcia, you have reached a determination that it would not be appropriate to call that person?

MR. EISENBERG: We changed our mind, yes.

THE COURT: And you have done it in full consultation with your client and co-counsel?

MR. GARCIA: For the record, I join Mr. Eisenberg in that decision.

THE COURT: Good. Does that satisfy everybody's concerns?

MR. KASTRENAKES: Yes.

(Case No. 06-CR-80171 (Hurley, J), ECF No. [845] at 270-272). However, the unknown is what information did the Movant and his counsel have or should have had before the decision was made not to call any mental health experts to testify during the penalty phase of trial. As it relates to deficient performance, counsel enjoys "wide latitude . . . in making tactical decisions" under *Strickland*. 466 U.S. at 668, 689. Yet, counsel also "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 689, 691. This duty includes an obligation to "conduct a thorough investigation of the defendant's background." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Based on the record, a strategic decision was made after consultation with co-counsel and the defendant, as well as, a discussion with the Government. Whether the conclusion or opinion of the Government's mental health expert was ever discussed between defense counsel and the Government remains unknown.

Specifically, discovery is warranted "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *U.S. v. Roane*, 378 F.3d 382, 402-03 (4th Cir.2004) (citing *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)). The Movant is seeking documents from the Government which could show entitlement to relief under a *Strickland* theory of the claim. If the Government had been privy to information which was clearly mitigating for the Movant, it could indicate that trial counsel for the Movant should have likewise been able to discover this information through basic and available research. Moreover, if the Government has information which would was clearly mitigating for the Movant, it could indicate that there is a reasonable likelihood the outcome of the penalty phase would have been different. These implicate both prongs of *Strickland*. Knowing what the Government's mental health experts knew and whom they shared their expert opinions may show an entitlement to relief on this claim. While the claim may ultimately fail on its merit, the Court finds that the Movant has shown good cause for discovery and **GRANTS,** in part**,** the Movant's requests for production as to Claims XVIII, XXV, & XXVI. However, the Request for Production, as written, is overbroad. The Request for Production is limited to documents regarding mental health mitigation evidence reviewed or analyzed by a mental health expert which is contained in either the expert's file or the Assistant United States Attorney's (past, present, or firewalled) files.

### *Claim XXI*

Claim XXI, sub-claim 14, is that trial counsel was ineffective for conceding that the Movant's was involved in two prior shootings. ECF No. [25] at 208. These prior shootings established nonstatutory aggravation. The Movant contends that counsel's concession ran afoul of the defense strategy to rebut the nonstatutory aggravation by highlighting the weakness of the

Respondent's evidence as to these shootings. In support of his claim, the Movant seeks to discover:

> \* Request for Production to the Government (and subpoena individual agencies involved):
>
> 1. Documents relating to the investigation of a shooting on April 28, 2006, at 1305 Suwanee Drive, Apartment B, West Palm Beach; the investigation of a shooting on April 28, 2006, at 1910 Mercer Avenue, West Palm Beach; and the investigation of a shooting on September 11, 2006, on the 1300 block of Haverhill Road in West Palm Beach.

ECF No. [34] at 17. (emphasis added)

The Government responded that it has provided all the information it has on those investigations. ECF No. [49] at 16. Further, that the Movant has not shown good cause as he has failed to make any factual allegations demonstrating that he would be entitled to relief if discovery were allowed. The Government contends that it provided, in advance of direct examination, any *Jencks* material it had prior to calling any witness with knowledge of these shootings. *Id*. at 18. Further, the Government argues that the Movant has failed to assert how additional discovery in this area would support his claim. ECF No. [99] at 26-27.

In Reply, the Movant accepts the representation of the Government but seeks to subpoena the individual agencies involved for documents. ECF No. [61] at 13. The Movant argues that this information should be available because the Government advised the trial court that the agents and officers involved were told to "preserve all rough notes." ECF No. [107] at 15.

Similar to Claims XI & XV, what the Movant is asking for are documents that were not discoverable at trial. *See Order* at 14-15.  The Government had turned over, and the Movant has accepted its representation, relevant *Jencks* material. *See United States v. Jordan*, 316 F.3d 1215 (11th Cir. 2003).  Counsel was in possession of material which was discoverable; the documents the Movant now seeks are documents he would have been unable to obtain before trial.  *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case…").  Discovery in a criminal case is not at all as expansive as discovery in civil cases. *United States v. Johnson*, 713 F.2d 654, 659 (11th Cir. 1983).  Counsel cannot be said to be deficient for failing to do something based on documents unavailable to him.  Therefore, the Request for Production, as drafted, does not meet the good cause standard of Rule 6 because regardless of the content, the documents will not establish an entitlement to Section 2255 relief.  Discovery is **DENIED** as to Claim XXI.

*Claim XXIII*

In Claim XXIII for relief, the Movant argues that his "death sentences are unconstitutional under the Eighth Amendment to the United States Constitution because the death penalty is inconsistent with evolving standards of decency, is arbitrary, serves no valid penological purpose, and is torturous." ECF No. [25] at 286.  The Movant asserts that his death sentence was obtained "pursuant to an arbitrary process" and "operated by means of and promoted discrimination of race." *Id*.  The Movant contends that his sentence and continued confinement deprive him of his rights to due process; equal protection, and freedom from the infliction of torture and cruel and unusual punishment as guaranteed by the "United States Constitution, decisional law, and other mandatory rules; and international law as set forth in

39

treaties, customary law, and international human rights law." *Id*. With the limited exception of certain dissenting opinions from the United States Supreme Court, the Movant has offered no binding precedent for his argument. The Movant cites to statutes or case law from certain states within the United States that have abolished or abandoned the death penalty. The Movant also presents statistical information from the international community on the worldwide evolution of the abolition of the death penalty. The Movant contends that the administration of the death penalty lacks reliability and is arbitrary. Finally, the Movant asserts "[t]he conditions under which Mr. Troya is confined under sentence of death, and the length of time under which he will be confined prior to execution, constitute conditions of physical and psychological torture and inhumane treatment." *Id*. at 297. The Movant seeks the production of documents from the Respondent; however, the Movant has asked, in the alternative, that the Court issue a subpoena duces tecum to the Bureau of Prisons should the Court not require production by the Respondent.

* Request for Production to the Respondent:

1. Documents relating to prosecutor's discretion under the Federal Death Penalty Act that lead to the selection of defendants to prosecute capitally, including data regarding the seeking of the death penalty by location and jurisdiction; the criteria used by United States Attorneys to determine whether or not to seek the death penalty; and the criteria used by the United States Attorney General to determine whether or not to authorize the death penalty and whether or not to reject a settlement or to overrule a United States Attorney's decision not to seek the death penalty in a particular case;

2. Documents relating to the United States Attorney's agreement to waive the seeking of the death penalty against Mr. Troya and the Attorney General's decision to reject the

proffered settlement and direct the United States Attorney's Office to seek the death penalty against him;

3. Documents relating to the conditions of confinement on federal death row at the United States Penitentiary--Terre Haute, including but not limited to interim and final reports of investigations into the provision of medical and mental health treatment to death row prisoners, and interim and final reports of investigations into the use of force by prison staff upon death row prisoners.

ECF No. [34-2] at 9.

The Government responds that it has no access nor does it possess the requested documents. ECF No. [99] at 27. In Reply, the Movant requests the Court issue a subpoenas duces tecum to "the Bureau of Prisons and other agencies." ECF No. [107] at 16.

The Movant has failed to show good cause for discovery. A review of the claim and the documents requested from the Bureau of Prisons show that even if the facts are fully developed, the Movant will not be able to show entitlement to Section 2255 relief based on the allegations within the Amended Motion. In the Amended Motion, the Movant argues that his death sentence is unconstitutional based on a variety of factors, only one of which is the subject of a corresponding discovery request. *See* ECF No. [25] at 286-303. It is the third factor cited by the Movant, "[t]he conditions under which Mr. Troya is confined under sentence of death, and the length of time under which he will be confined prior to execution, constitute conditions of physical and psychological torture and inhumane treatment." *Id*. at 297. This factual allegation could be addressed by his third request for production of documents. *See* ECF No. [34-2] at 9.

After review, the Court does not find that the Movant has shown good cause to warrant discovery. The Amended Motion is a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. §2255. The Movant's discovery request seeks documents regarding his conditions of confinement. Section 2255 motions do not address conditions of confinement. "Movant cannot obtain relief under § 2255 for allegedly unconstitutional conditions of confinement." *See Nelson v. Campbell*, 541 U.S. 637, 643-44 (2004); *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990) ("If these claims are considered in a habeas corpus context, however, this Court has held that even if a prisoner proves an allegation of mistreatment in prison that amounts to cruel and unusual punishment, he is not entitled to release."). Moreover, even if the conditions of confinement applied to the Movant were cruel and unusual, it would not amount to a judicial determination that the Federal Death Penalty Act violated the Eighth Amendment of the United States Constitution. Therefore, he has not demonstrated an entitlement to relief or good cause for discovery. Discovery is **DENIED** as to Claim XXIII.

### *Claim XXIV*

The Movant's Claim XXIV is that the dangers in Matamoros, Mexico prevented the defense team from traveling and investigating "a substantial segment of their case at both guilt and sentencing" phases. ECF No. [25] at 303. The Movant argues that counsel should have alerted the Court to this problem, sought relief for their client, moved for a continuance, or contacted an expert in the dangers in that part of Mexico. At a minimum, the Movant argues, counsel should have notified the Court and the Department of Justice of the problem. Failing to do so, the Movant was provided ineffective assistance of counsel. In seeking to prove his claim, the Movant requests documents from the Respondent.

* Request for Production to the Respondent:

42

Any investigation that was undertaken by the U.S. Government or cooperating agencies prior or subsequent to trial related to the charges in this case, and any measures taken by any investigators, law enforcement or otherwise to ensure their safety.

ECF No. [34] at 19.

The Government rejects the necessity for discovery on this claim asserting that it is meritless. Further, the defense has factual information on this issue but is silent about how such information would have changed the outcome of his case. ECF No. [49] at 18. The Government argues that the Movant's "claim that some still hidden key in Matamoros would have unlocked a potential defense or additional mitigation is wholly unsupported." ECF No. [99] at 27. In Reply, the Movant argues that simply because the defense may have documents is not a valid reason to deny discovery. ECF No. [107] at 16.

While the precise theory of the claim is unclear, the crux appears to be that the Movant's counsel was ineffective and did not properly investigate and develop a theory of defense case. This is due to the dangers of traveling to Matamoros, Mexico, and their failure to notify the authorities of this prohibition was deficient. The Movant asserts that he needs the Government to provide him with certain documents to fully develop facts which would entitle him to relief. Nonetheless, the Movant has not established a reason to believe that if the facts are fully developed he would be able to demonstrate an entitlement to relief. The Movant has failed to show how any investigations that the Government may or may not have conducted had any effect on his counsel's failure to raise this issue before or during trial. A habeas petitioner is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). Leave of court is required to pursue discovery, which courts only grant

for good cause. 28 U.S.C. § 2255, Rule 6.   The Movant has failed to show good cause for discovery.  Discovery is **DENIED** as to Claim XXIV.

*Discovery relevant to all claims*

Finally, the Movant seeks "all documents within the U.S. Attorney's file" and a subpoena duces tecum to the agencies below:

1. Documents requested from the Bureau of Alcohol, Tobacco, and Firearms that were withheld or redacted from Mr. Troya's record request dated June 22, 2015;

2. Documents requested from the DEA that were withheld or redacted from Mr. Troya's record request dated June 15, 2015;

3. Documents requested from the FBI that were withheld or redacted from Mr. Troya's record request dated June 22, 2015;

4. Documents requested from the Bureau of Prisons that were withheld or redacted from Mr. Troya's record request dated June 22, 2015;

5. Documents requested from the Florida Department of Law Enforcement that were withheld or redacted from Mr. Troya's record request dated July 14, 2015;

6. Documents that were requested from West Palm Beach Police Department purportedly held by DEA and not provided pursuant to Mr. Troya's record request dated June 15, 2015;

7. Documents that were requested from Greenacres Police Department purportedly held by DEA and not provided pursuant to Mr. Troya's record request dated July 14, 2015;

8. Documents requested from Crimestoppers and never provided.

ECF No. [34] at 19-20.

The Government responds that the Movant is not entitled to discovery unless he can show with specificity how such records would support a cognizable claim and; moreover, the Government does not possess the documents from other agencies. ECF No. [49] at 20. More importantly, the Government objects to the "wholesale review of the entire U.S. Attorney file" as it would not "bolster any particular claim." *Id.* In Reply, the Movant accepts that the Government does not have the requested documents but argues that all of the agencies need to be subpoenaed. ECF No. [61].

During the June Hearing, the Movant advised the Court that it had tried to obtain this information from the various governmental agencies via a Freedom of Information Act ("FOIA") Request but received, hundreds, maybe, thousands of pages of documents which were blank except the mark "REDACTED." ECF No. [115] at 22. The Movant requested, as a more productive way of proceeding, that the Court issue a subpoena duces tecum, let the agencies file their objections to the individual requests and the Court can rule on any objections. *Id*.

Here, the Court finds these requests vague and overbroad. Before the Court would consider the issuance of a subpoena duces tecum, the Movant must provide a detailed and precise request for documents directed to each agency with the bases for each request clearly delineated. "In order to show good cause, a petitioner must provide the court with specific allegations that show a reason to believe that the petitioner could, with fully developed facts, demonstrate he is entitled to relief." *Bracy*, 520 U.S. at 908–09. These FOIA requests as drafted fall far short of

the good cause requirement of Rule 6. The Movant's request to convert his outstanding FOIA requests into a Rule 6 discovery request in the form of subpoena duces tecum is **DENIED.**

It is **ORDERED AND ADJUDGED** as follows:

The Discovery Motion, **ECF No. [34]**, is **GRANTED** in part and **DENIED** in part. **On or before August 1, 2017**, the Movant may serve his Request for Production. The Request for Production is limited to documents regarding mental health mitigation evidence reviewed or analyzed by a mental health expert which is contained in either the mental health expert's file or the Assistant United States Attorney's (past, present, or firewalled) files. The Interview Motion, **ECF No. [33]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th day of July, 2017.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record